# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
_____
                              )
                              )
VALERIE PLAME WILSON and      )
JOSEPH C. WILSON IV,          )
                              )
          Plaintiffs,         )
                              )          Civil Action No.
     v.                       )          06-CV-1258
                              )
I. LEWIS (a/k/a/ "SCOOTER") LIBBY, JR., )
KARL C. ROVE, RICHARD B. CHENEY )
and JOHN DOES NO. 1-10,       )
                              )
          Defendants.         )
_____)
```

## DEFENDANT I. LEWIS LIBBY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS MOTION TO DISMISS THE COMPLAINT

Theodore V. Wells, Jr. (DC Bar 468934)
James L. Brochin (DC Bar 455456)
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY  10019-6064
(212) 373-3089 (telephone)
(212) 373-2217 (facsimile)

William H. Jeffress, Jr. (D.C. Bar 041152)
Alex J. Bourelly (D.C. Bar 441422)
BAKER BOTTS, LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C.  20004-2400
(202) 639-7700 (telephone)
(202) 639-7890 (facsimile)

## TABLE OF CONTENTS

BACKGROUND ................................................................................................................. 1

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................... 4

ARGUMENT ..................................................................................................................... 6

   I.   PLAINTIFFS HAVE NO CAUSE OF ACTION UNDER BIVENS ................................. 6

   II.   PLAINTIFFS' ACTIONS ARE TIME-BARRED .......................................................... 15

   III.   PLAINTIFFS' BIVENS CLAIMS FAIL BECAUSE PLAINTIFFS HAVE NOT
        PLEADED VIOLATIONS OF CONSTITUTIONAL RIGHTS, MUCH LESS THE
        CLEARLY ESTABLISHED RIGHTS NECESSARY TO OVERCOME THE
        DEFENSE OF QUALIFIED IMMUNITY ..................................................................... 19

   IV.   DEFENDANT LIBBY MUST BE DISMISSED FROM COUNT V. ............................. 28

CONCLUSION ................................................................................................................ 31

# TABLE OF AUTHORITIES

*3883 Connecticut LLC v. v. Dist. of Columbia*, 336 F.3d 1068 (D.C. Cir. 2003) ........................24

*Alexander v. Sandoval*, 532 U.S. 275 (2001).................................................................................8

*American Federation of Government Employees v. Department of Housing & Urban Development*, 118 F.3d 786 (D.C. Cir. 1997).............................................................25, 26

*Anderson v. Creighton*, 483 U.S. 635 (1987) ...............................................................................23

*Anderson v. Davila*, 125 F.3d 148 (3d Cir. 1997).........................................................................21

*Ballas v. City of Reading*, 2001 WL 856627 (E.D. Pa. 2001) .....................................................21

*Banks v. Chesapeake & Potomac Tel. Co.*, 802 F.2d 1416 (D.C. Cir. 1986)..............................17

*Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564 (1972).......................................................27

*\*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).................................................................................................................. *passim*

*\*Blazy v. Tenet*, 979 F. Supp. 10 (D.D.C. 1997) ....................................................................12, 26

*Block v. Community Nutrition Institute*, 467 U.S. 340 (1984)......................................................11

*Bolling v. Sharpe*, 347 U.S. 497 (1954)........................................................................................3, 4

*Brown v. United States*, 742 F.2d 1498 (D.C. Cir. 1984).......................................................16, 17

*\*Browning v. Clinton*,2001 U.S. Dist. LEXIS 24537 (D.D.C. Feb. 8, 2001)...............................17

*Burnett v. Grattan*, 468 U.S. 42 (1984) .......................................................................................16

*\*Bush v. Lucas*, 462 U.S. 367 (1983) ........................................................................................9, 13

*Cannon v. University of Chicago*, 441 U.S. 677 (1979) .................................................................8

*Carlson v. Green*, 446 U.S. 14 (1980) ...........................................................................................6

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994).............................................................................................................................8

*Chappell v. Wallace*, 462 U.S. 296 (1983) ...................................................................................15

*Chung v. Dep't of Justice*, 333 F.3d 273 (D.C. Cir. 2003) ..........................................................12

*Chung v. Department of Justice, 2001 WL 34360430 (D.D.C. 2001) ................................12, 13

Cleburne v. Cleburne Living Ctr., 473 U.S. 432 (1985)................................................................24

Collins v. City of Harker Heights, 503 U.S. 115 (1992)...............................................................25

Colson v. Grohman, 174 F.3d 498 (5th Cir. 1999)......................................................................22

*Correctional Servs. Corp. v. Malesko, 534 U.S. 61 (2001) .........................................................6

Council on American-Islamic Relations v. Ballenger, 444 F.3d 659 (D.C. Cir. 2006).....28, 29, 30

Crocker v. Piedmont Aviation, Inc., 49 F.3d 735 (D.C. Cir. 1995) ..............................................16

Curley v. Vill. of Suffern, 268 F.3d 65 (2d Cir. 2001) ............................................................22, 23

Dangler v. Yorktown Central Schools, 771 F. Supp. 625 (S.D.N.Y. 1991) .................................21

Davis v. Passman, 442 U.S. 228 (1979) .......................................................................................6

DiMeglio v. Harris, 45 F.3d 790 (4th Cir. 1995)..........................................................................22

Doe v. Dept. of Justice, 753 F.2d 1092 (D.C. Cir. 1985)............................................................16

Doe v. Gates, 981 F.2d 1316 (D.C. Cir. 1993) ...........................................................................27

Doe v. Southeastern University, 732 F. Supp. 7 (D.D.C. 1990)..................................................18

Grossbaum v. Indianapolis-Marion County Bldg Auth., 100 F.3d 1287 (7th Cir. 1996).............24

Grunseth v. Marriott Corp., 872 F. Supp. 1069 (D.D.C. 1995) ..................................................18

Harlow v. Fitzgerald, 457 U.S. 800 (1982) .................................................................................19

Hatfill v. Ashcroft, 404 F. Supp. 2d 104 (D.D.C. 2005) ........................................................12, 23

Hobson v. Brennan, 625 F. Supp. 459 (D.D.C. 1985).................................................................17

Hobson v. Wilson, 737 F. 2d 1 (D.C. Cir. 1984)..........................................................................17

Hunter v. Bryant, 502 U.S. 224 (1991).......................................................................................20

J.I. Case Co. v. Borak, 377 U.S. 426 (1961) .................................................................................8

Kartseva v. Dep't of State, 37 F.3d 1524 (D.C. Cir. 1994)..........................................................27

*Kielczynski v. United States C.I.A.*, 128 F. Supp. 2d 151 (E.D.N.Y. 2001) ................................15

*Kounitz v. Slaatten*, 901 F. Supp. 650 (S.D.N.Y. 1995) ................................................................21

*Lederman v. United States*, 131 F. Supp. 2d 46 (D.D.C. 2001).....................................................17

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ....................................................................20

*M.K. v. Tenet*, 196 F. Supp. 2d 8 (D.D.C. 2001) ...........................................................................27

*Martinez v. City of New York*, 2003 WL 2006619 (S.D.N.Y. 2003) .............................................21

*\*McClam v. Barry*, 697 F.2d 366 (D.C. Cir. 1983) .................................................................16, 17

*Mittleman v. U.S. Treasury*, 773 F. Supp. 442 (D.D.C. 1991) ......................................................11

*Moore v. Agency for Int'l Dev.*, 80 F.3d 546 (D.C. Cir. 1996) ......................................................27

*Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977).................21

*Nix v. Hoke*, 139 F. Supp. 2d 125 (D.D.C. 2001) ......................................................................6, 18

*Nixon v. Administrator of General Servs.*, 433 U.S. 425 (1977) ...................................................25

*Paul v. Davis*, 424 U.S. 693 (1976) ...............................................................................................27

*Penthouse Int'l Ltd. v. Meese*, 939 F.2d 1011 (D.C. Cir. 1991).....................................................22

*Powers v. Ohio*, 499 U.S. 400 (1992) .............................................................................................21

*Ratliff v. DeKalb County, Ga.*, 62 F.3d 338 (11th Cir. 1995)........................................................24

*Romano v. Harrington*, 664 F. Supp. 675 (E.D.N.Y. 1987).........................................................21

*Romer v. Evans*, 517 U.S. 620 (1996).............................................................................................24

*Saucier v. Katz*, 533 U.S. 194 (2001) .............................................................................................19

*Schweiker v. Chilicky*, 487 U.S. 412 (1988) ....................................................................................9

*Siegert v. Gilley*, 500 U.S. 226 (1991)............................................................................................19

*Singleton v. Wulff*, 428 U.S. 106 (1976) .........................................................................................21

*Spagnola v. Mathis*, 859 F.2d 223 (D.C. Cir. 1988).....................................................................13

*Suarez Corp. Indus. v. McGraw*, 202 F.3d 676 (4th Cir. 2000) ....................................22

*Tenet v. Doe*, 544 U.S. 1 (2005) ...................................................14, 15

*Thompson v. City of Starkville, Miss.*, 901 F.2d 456 (5th Cir. 1990) ...........................24

*Toolaprashad v. Bureau of Prisons*, 286 F.3d 576 (D.C. Cir. 2002)..............................22

*Trifax Corp. v. Dist. of Columbia*, 314 F.3d 641 (D.C. Cir. 2003)..............................27

*United States v. Gilman*, 347 U.S. 507 (1954)...................................................9

*United States v. Stanley*, 483 U.S. 669 (1987)..................................................14

*Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) .........................................24

*Vukadinovich v. Bartels*, 853 F.2d 1387 (7th Cir. 1988) .......................................25

*Wade v. Goodwin*, 843 F.2d 1150 (8th Cir. 1988) ..............................................26

*Warth v. Seldin*, 422  U.S. 490 (1975) ........................................................20

*Whalen v. Roe,* 429 U.S. 589 (1977)............................................................24

*Williams v. Department of Veteran Affairs*, 879 F. Supp. 578 (E.D. Va. 1995)...........11

*Wilson v. Garcia*, 471 U.S. 261 (1985) ........................................................17

*Wilson v. Layne*, 526 U.S. 603 (1999) .........................................................19

*Wolf v. Regardie*, 553 A.2d 1213 (D.C. 1989) .................................................30

*Wood v. Strickland*, 420 U.S. 308 (1975) ......................................................20

## STATUTES

D.C. Code § 12-301(4)..............................................................5, 16, 17, 18

Privacy Act, 5 U.S.C. § 552a(g) ..............................................................11

Civil Service Reform Act, 5 U.S.C. § 7513, *et seq*............................................13

Westfall Act, 28 U.S.C. § 2679 ..........................................................5, 28, 30

The Intelligence Identities Protection Act of 1982 ("IIPA"), 50 U.S.C. §§ 421-426....................9

Foreign Intelligence Surveillance Act, 50 U.S.C. §§ 1809-1810 ................................................10

## MISCELLANEOUS

Restatement (Second) of Torts § 652D (1977) ...........................................................................30

This case arises out of the release of information to the press regarding plaintiff Valerie Plame Wilson's employment by the CIA.  Mrs. Wilson and her husband, Joseph C. Wilson IV, assert a variety of constitutional claims and one common-law tort claim against four executive branch officials (and nine unnamed John Does alleged to have been senior government officials) based on their alleged involvement in  releasing that information.  The complaint fails to state a claim for at least three independent reasons.  First, plaintiffs purport to assert their constitutional claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  But that would require this Court to extend *Bivens* to create a novel constitutional cause of action for the government's release of information about one of its intelligence agents. Such an expansion would be unwarranted under any circumstance, but it is wholly improper here given that Congress has already addressed this issue through an intricate web of remedial schemes.  Second, plaintiffs' claims are untimely.  Finally, the complaint itself makes clear that defendant Libby is entitled to qualified immunity, because it does not allege the violation of any constitutional right, much less rights that are so clearly established that no reasonable officer could have thought the alleged conduct consistent with the Constitution.

## BACKGROUND

A.      Factual Allegations

In light of what is now known about the public disclosure by Robert Novak of Valerie Plame Wilson's employment at the CIA, the allegation that Mr. Libby had anything to do with it is preposterous.  Nonetheless, for purposes of the motion to dismiss, the allegations of the complaint are presumed to be true.  According to the complaint, this case has its origins in President George W. Bush's January 28, 2003, State of the Union address, in which he cited British intelligence reports indicating "that Saddam Hussein recently sought significant

quantities of uranium from Africa." Am. Compl. ¶ 19(a). A few months later, in May and June 2003, the New York Times, Washington Post, and New Republic ran stories contradicting that assertion. They reported that an unnamed ambassador (now known to be Mr. Wilson) had been sent on a trip to Niger in 2002 to investigate those allegations, and that he had informed the CIA that the allegations were false. *Id.* ¶ 19(b), (i), (k). On July 6, 2003, Mr. Wilson published an op-ed in the New York Times asserting that he had taken a trip to Niger at the request of the CIA, and that he doubted Iraq had obtained uranium from Niger recently. *Id.* ¶ 19(n). Mr. Wilson repeated those assertions in various other media appearances. *Id.*

Plaintiffs allege that, shortly after the news media reported Wilson's trip in June 2003, defendant I. Lewis Libby, former Assistant to the Vice President for National Security Affairs, learned from CIA and State Department officials that plaintiff Wilson was the ambassador described in news reports and that plaintiff Valerie Plame Wilson—Wilson's wife—worked at the CIA in the Counterproliferation Division. *Id.* ¶ 19(c)-(e), (h). The officials also advised Libby that Valerie Plame Wilson had instigated Mr. Wilson's trip to Niger. *Id.* ¶ 19(e)-(f).

Plaintiffs allege that defendants—Libby, Vice President Richard B. Cheney, former Deputy Secretary of State Richard L. Armitage, and senior Bush administration official Karl C. Rove—then began a campaign to discredit and punish Mr. Wilson for his public statements, primarily by revealing that Mrs. Wilson was a classified CIA operative. *Id.* ¶¶ 2-3, 24, 35. Plaintiffs claim that, on June 23, July 8, and July 12, 2003, defendant Libby spoke with reporter Judith Miller of the New York Times, and on July 12 with Matthew Cooper of Time Magazine, telling them of his belief that Mrs. Wilson was a CIA officer who had been involved in her husband's trip, and criticizing CIA's apparent leaking of the outcome of the trip. *Id.* ¶ 19(m), (r), (w), (x). Plaintiffs allege that defendant Rove advised Matthew Cooper on July 11, 2003, that

2

Mrs. Wilson worked at the CIA on "WMD" issues and that she was responsible for sending Mr. Wilson to Niger.  *Id.* ¶ 27-29.  Finally, plaintiffs allege that, after learning from a classified document that Mrs. Wilson was a CIA analyst on weapons of mass destruction, defendant Armitage revealed that information to Bob Woodward of the Washington Post on June 13, 2003, *id.* ¶ 37, and then to Robert Novak on July 8, 2003, *id.* ¶ 39.

On July 14, 2003, Robert Novak published a column in the Chicago Sun-Times stating that Mr. Wilson's wife, "Valerie Plame, is a[] [CIA] operative on weapons of mass destruction." *Id.* ¶ 14.  Novak further stated that "[t]wo senior administration officials told me Wilson's wife suggested sending him to Niger" to investigate a report that Iraq was seeking nuclear materials there.  *Id.*  According to plaintiffs, this was the first time that "Mrs. Wilson's previously secret and classified CIA identity became public."  *Id.*

B.    Plaintiffs' Claims

Plaintiffs allege five causes of action.  In Count I, Mr. Wilson alleges that defendants violated his First Amendment right to free speech by revealing his wife's employment with the CIA as retaliation for his statements contradicting the President.  *Id.* ¶¶ 46-49.  In Count II, Mr. and Mrs. Wilson allege that defendants "violate[d] the Equal Protection Clause of the Fifth Amendment"[1] by "subjecting the Plaintiffs to differential treatment" in a manner that was "motivated by vindictiveness and an illegitimate animus."  *Id.* ¶¶ 51, 52.  In Count III, Mrs. Wilson alleges that defendants violated her Fifth Amendment right to privacy "by publicly disclosing personal information."  *Id.* ¶ 56.  In Count IV, Mrs. Wilson alleges that defendants

---

[1] Plaintiffs, of course, presumably mean to refer to the equal protection component of the Due Process Clause of the Fifth Amendment. Unlike the Fourteenth Amendment, the Fifth Amendment does not have an Equal Protection Clause. The Supreme Court, however, has ruled that the Due Process Clause of the Fifth Amendment includes an equal protection component. *See Bolling v. Sharpe*, 347 U.S. 497 (1954).

deprived her of property without due process by "eliminating the secrecy of her status that was essential to her continuing to perform in her job" at the CIA and by "injur[ing] her ability to obtain other employment." *Id.* ¶¶ 61, 63. Finally, in Count V, both plaintiffs allege that defendants committed the common law tort of "public disclosure of private facts" by revealing Mrs. Wilson's classified CIA employment. *Id.* ¶ 66. In addition to the alleged impairment of their professional opportunities, *id.* ¶ 44, plaintiffs claim that the alleged disclosure of Mrs. Wilson's employment at the CIA has caused them to suffer "gross invasions of privacy" and to "fear for their safety and the safety of their children." *Id.* ¶ 41-42.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Because each and every count of the complaint is legally insufficient, the complaint must be dismissed for failure to state a claim. First, plaintiffs purport to assert their constitutional claims (Counts I through IV) under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). But *Bivens* cannot be extended into this new context, because "special factors counsel hesitation" against judicially implying that cause of action here. The Supreme Court has refused to create a *Bivens* cause of action where, as here, Congress has already enacted a web of carefully drawn remedial schemes relating to the wrongs the plaintiffs seek to assert. In this case, Congress has comprehensively regulated the subject of plaintiffs' suit—the release of allegedly classified information or otherwise confidential information regarding federal employees like Mrs. Wilson—through the Privacy Act, Civil Service Reform Act, and the Intelligence Identities Protection Act. That web of statutory remedies makes it improper for federal courts to create a new cause of action directly under the Constitution for the wrongs that Congress has already addressed by statute. The impropriety is further heightened by the fact that this case deals with sensitive matters of national security and classified intelligence procedures best handled by the executive rather than the judicial branch.

Second, plaintiffs' claims are untimely.  *Bivens* actions have the same limitations period as the most closely analogous state law claim.  In this case, the analogous state law claim is the common-law cause of action for public disclosure of private facts (which plaintiffs included as Count V in their Complaint).  In the District of Columbia, the limitations period for public disclosure of private facts is one year.  *See* D.C. Code § 12-301(4).  Yet plaintiffs waited about three years to bring this action.

Third, defendant Libby is entitled to qualified immunity.  Federal officials are entitled to qualified immunity unless their conduct violates clearly established rights—unless the rights are so clear that no reasonable officer could have, under the circumstances, thought the conduct constitutional.  Mr. Wilson's First Amendment claim in Count I fails to establish the violation of any cognizable constitutional right, much less a clearly established one.  Mr. Wilson does not allege actionable retaliation against him or that his speech has been chilled.  Indeed, Mr. Wilson for that reason lacks standing to assert his First Amendment claim.  Count II is simply the retaliation claim cloaked in Equal Protection terms—a claim courts have consistently rejected.  Count III fails because there is no clearly established constitutional right under the Due Process Clause to avoid disclosure of personal facts.  Finally, in Count IV, Mrs. Wilson has not alleged any recognized property interest of which she was deprived.  Mrs. Wilson continued to work for the CIA long after the defendants' alleged actions.  In any case, a CIA employee has no property right to continued employment, and there is no general property right to obtain future employment.

As to plaintiffs' common-law tort claim in Count V, defendants have absolute immunity under the Westfall Act, 28 U.S.C. § 2679, because defendants were acting within the scope of their employment at the time of the allegedly tortious conduct.  The United States has filed a

scope certification under the Westfall Act to this effect. As a result, Count V must be dismissed as to the individual defendants and the United States substituted as the sole defendant.

## ARGUMENT

### I.    PLAINTIFFS HAVE NO CAUSE OF ACTION UNDER *BIVENS*

#### A.    The Supreme Court Has Clearly Indicated That Further Expansion Of *Bivens* Is Unwarranted

Since creating a cause of action directly under the Fourth Amendment in *Bivens* in 1971, the Supreme Court has extended that case's holding to new circumstances only twice. *See Correctional Servs. Corp. v. Malesko*, 534 U.S. 61 (2001). In 1979, the Court extended *Bivens* to claims under the Due Process Clause of the Fifth Amendment. *See Davis v. Passman*, 442 U.S. 228 (1979). In 1980, the Court extended *Bivens* to claims under the Eighth Amendment's prohibition on cruel and unusual punishment. *See Carlson v. Green*, 446 U.S. 14 (1980). Since *Carlson*, however, the Court has "consistently refused to extend *Bivens* liability to any new context or new category of defendants." *Malesko*, 534 U.S. at 68. The Court explained that "[s]o long as the plaintiff ha[s] an avenue for some redress" under administrative or statutory remedial schemes "bedrock principles of separation of powers foreclose[] judicial imposition of a new substantive liability." *Id.* at 69. In fact, even where there is an "absence of statutory relief for a constitutional violation," that "does not by any means necessarily imply that courts should award money damages against [those] responsible for the violation." *Id.*

That refusal to recognize additional, judicially implied damages actions for constitutional violations under *Bivens* parallels the Supreme Court's refusal to establish or extend implied rights of action for statutory violations. At the time *Bivens* was decided, the Supreme Court had an expansive view of its authority to create causes of action to effectuate statutory goals, even absent any textual basis for believing that Congress intended to create a right of action. The

Supreme Court thought it "the duty of the courts to be alert to provide such remedies as are necessary to make effective the congressional purpose." *J.I. Case Co. v. Borak*, 377 U.S. 426, 433 (1964). But the Supreme Court has long "abandoned that understanding" of the judicial role, and repeatedly has declined to "revert" to "the understanding of private causes of action that held sway 40 years ago." *Alexander v. Sandoval*, 532 U.S. 275, 287 (2001). Instead, the Supreme Court, emphasizing separation of powers principles, now confines itself to "interpretation of the text and structure of the Act" in recognition of Congress's exclusive authority to create new causes of action. *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 188 (1994); *see Cannon v. University of Chicago*, 441 U.S. 677, 688 (1979). The Supreme Court's deep reluctance to create new causes of action on its own, whether under a statute or the Constitution, weighs dispositively against the creation of the novel *Bivens* action plaintiffs urge the Court to create here.

        **B.**      **Special Factors Counsel Hesitation In The Creation Of *Bivens* Remedies Here**

Even on its own terms, the Supreme Court's decision in *Bivens* precludes the creation of a cause of action in this new context. As the Court explained in *Bivens* itself, courts should not imply a new constitutional cause of action where (among other things) there are "special factors counselling [sic] hesitation by the court in the absence of affirmative action by Congress." 403 U.S. at 396. Here, the special factors counseling hesitation are myriad.

        **1.**      *Congress Rather Than The Courts Should Establish The Remedies For Plaintiffs' Claims*

In no context have the courts been more reluctant to expand *Bivens* remedies than in the federal employment context. In *Bush v. Lucas*, 462 U.S. 367 (1983), for example, the Supreme Court declined to create a *Bivens* remedy against individual government officials for a First Amendment violation arising in the federal employment context. In that case, a federal

employee claimed that he was demoted in violation of the First Amendment for making public statements critical of his employer. Concluding that the administrative review mechanisms crafted by Congress provided meaningful redress, the Court refused to create a damages action, even though it assumed a violation of the First Amendment and the absence of a complete remedy under the statutory scheme. *Id.* at 372-73, 386, 388. As the Supreme Court later observed, *Bush* relied on the fact "that the Legislature is far more competent than the Judiciary to carry out the necessary 'balancing [of] governmental efficiency and the rights of employees,'" and "refused to 'decide whether or not it would be good policy to permit a federal employee to recover damages from a supervisor who has improperly disciplined him for exercising his First Amendment rights.'" *Schweiker v. Chilicky*, 487 U.S. 412, 423 (1988) (quoting *Bush*, 462 U.S. at 389, 390).

The Supreme Court likewise has declined to create new causes of action in favor of the government in the employment context. In *United States v. Gilman*, 347 U.S. 507 (1954), for example, the Supreme Court rejected the government's attempt to recover indemnity from one of its employees after the government was held liable under the Federal Tort Claims Act for the employee's negligence. The Court noted that "[t]he relations between the United States and its employees have presented a myriad of problems with which the Congress over the years has dealt. . . . Government employment gives rise to policy questions of great import, both to the employees and to the Executive and Legislative Branches." *Id.* at 509. "The selection of that policy which is most advantageous to the whole involves a host of considerations that must be weighed and appraised. That function is more appropriately for those who write the laws, rather than for those who interpret them." *Id.* at 511-13.

Here, the claims that plaintiffs allege reflect broad policy concerns regarding the work of the United States' intelligence community abroad, the relations between intelligence analysts and the government itself, and the conditions under which government officials may release information to the public about other government employees. Whether allegations like the ones at issue here should give rise to a private cause of action is best "weighed and appraised" by the Congress—not by the courts.

### 2. *Plaintiffs' Claims Intrude On A Complex Web of Statutory Remedies That Reflect A Careful Balancing Of Interests*

Hesitation is particularly warranted here because Congress has specifically considered issues relating to the revelation of CIA operatives' employment status, revelation by the government of private facts about an individual, and relations between the federal government and its employees. To that end, it has enacted a web of three, carefully crafted statutes. Each of those statutes separately counsels hesitation. Collectively, they foreclose the creation of a *Bivens* remedy that would upset the balance of rules, rights, and remedies that Congress has established.

*Intelligence Identities Protection Act*. All of plaintiffs' claims stem from the alleged disclosure of a CIA employee's name. The Intelligence Identities Protection Act of 1982 ("IIPA"), 50 U.S.C. §§ 421-426, prohibits the disclosure of names and identities of intelligence agents working undercover. The law carries penalties of up to 10 years in prison and substantial fines for the disclosure of the names and identities of agents. Unlike some other criminal statutes relating to intelligence, however, the IIPA does not provide a private cause of action for victims of the prohibited activity. *Compare* Foreign Intelligence Surveillance Act, 50 U.S.C. §§ 1809-10.

Congress thus has specifically considered the issue of "outing" CIA agents, and it has chosen to enact a *criminal* statute that the government itself must enforce. But it chose not to

9

create a private cause of action that may be asserted by private individuals. That makes perfect sense: For one thing, Congress has determined that any secrecy about the identity of its agents exists for the government's benefit, not for the agent's private purposes, and that it should therefore be the government that has the exclusive right to enforce the statute. For another, by reserving the right to punish the release of such information to the executive branch, Congress ensured that private parties and the courts would not become embroiled in sensitive matters—including the operation of the CIA—except where the executive branch, by commencing a prosecution, chooses to involve them. The federal courts are in no position to second-guess the Congress's determination that the executive branch should have exclusive authority to enforce the secrecy requirements regarding the identity of covert agents, and to enact those requirements for the benefit of the government and not individual agents. Congress's enactment of the IIPA and its decision not to provide a private remedy counsel dispositively against the judicial creation of a supplemental *Bivens* remedy to establish the cause of action Congress itself chose not to create.

*Privacy Act.*    The Privacy Act provides extensive remedies for violations of disclosure and access requirements regarding federal employment and federal employees. 5 U.S.C. § 552a(g). Although the Privacy Act does not provide remedies against individual officials who disobey its terms, it does provide aggrieved parties with significant remedies against the offending agency. Specifically, an agency that fails to comply with any provision of the Privacy Act "in such a way as to have an adverse effect on an individual," *id.* § 552a(g)(1)(D), is subject to suit in United States District Courts, *id.* at § 552a(g)(1). Congress's decision to create a remedy against one entity, but not against individual officers, speaks volumes about its intent.

*Cf. Block v. Community Nutrition Inst.*, 467 U.S. 340, 349-50 (1984) (only listed entities entitled to seek review).

Recognizing as much, court after court has concluded that plaintiffs alleging that the government improperly disclosed their private information cannot bring an action under *Bivens*. Instead, such plaintiffs must bring their claims under the Privacy Act:

> Congress has crafted what it considers to be appropriate remedies for disclosure and record access violations. Given the extensiveness of this remedial scheme, its failure to include additional remedies, such as damages against individual officials or punitive damages, does not appear to be inadvertent.

*Williams v. Department of Veteran Affairs*, 879 F. Supp. 578, 586-87 (E.D. Va. 1995) (declining to create a *Bivens* remedy for a disabled veteran alleging violations of his constitutional right to privacy under the First, Fourth, Fifth, and Ninth Amendments and his due process right to a valuable property interest, namely his entitlement to Veterans Affairs services); *see also Mittleman v. U.S. Treasury*, 773 F. Supp. 442, 454 (D.D.C. 1991) (finding special factors counseling hesitation because "the Privacy Act provides a comprehensive scheme addressing plaintiff's concerns about disclosure [of records] to third parties."); *see generally Blazy v. Tenet*, 979 F. Supp. 10, 27 (D.D.C. 1997), *aff'd*, No. 97-5330, 1998 WL 315583 (D.C. Cir. May 12, 1988) (finding that an employee of the Central Intelligence Agency does not have any right to the status of his employment, as that fact is expressly precluded in the Privacy Act, the Freedom of Information Act, and the Central Intelligence Agency Act).

This Court recently held that the Privacy Act precludes a *Bivens* action on analogous facts. *See Hatfill v. Ashcroft*, 404 F. Supp. 2d 104 (D.D.C. 2005). The plaintiff in *Hatfill* was declared a "person of interest" by the Department of Justice and the FBI in connection with their investigation of the Senate anthrax mailings. *Id.* at 108. He sued under *Bivens*, alleging First and Fifth Amendment violations based on government agents' leak of "erroneous and

prejudicial" information about him to the press, his ensuing loss of employment, and his inability to obtain a new job in his field of expertise. *Id.* at 109. This Court held that the plaintiff could not maintain a Fifth Amendment claim against Justice Department and FBI officials—even though he alleged a campaign of harassment, intimidation, defamatory public statements, and retaliation for his public complaints. The Privacy Act, the Court held, was a "comprehensive legislative scheme to provide meaningful remedy for the kinds of harm ... allege[d]" and thus counseled hesitation against the expansion of *Bivens* to encompass the new claims. *Id.* at 115, 116 (citing *Downie v. City of Middleburg Heights*, 301 F.3d 688, 696 (6th Cir. 2002)). The Court adhered to that conclusion even though the Privacy Act would not redress all of the plaintiff's claims. *Id.*

*Chung v. Department of Justice*, 2001 WL 34360430 (D.D.C. Sept. 20, 2001), is likewise on point. Chung was a native of Taiwan who agreed to cooperate with the Department of Justice in an ongoing investigation as part of his plea agreement for charges of conspiracy to violate the Federal Election Campaign Act. Chung alleged that he and his family faced substantial risk of harm from agents of the People's Republic of China if his cooperation became public. His cooperation did become public when it was published in major newspapers, including the New York Times. After learning that high-ranking DOJ officials had leaked the information, Chung sued under *Bivens*, alleging First and Fifth Amendment claims. The Court held that *Bivens* cannot be extended to encompass those claims because the Privacy Act provides a remedy for improper disclosure of information. *Id.* at *14. The D.C. Circuit affirmed the dismissal of the *Bivens* claim "because, as the district court correctly held, they are encompassed within the remedial scheme of the Privacy Act." *Chung v. Department of Justice*, 333 F.3d 273, 274 (D.C. Cir. 2003). The same result is appropriate here.

*Civil Service Reform Act.*  Finally, the Civil Service Reform Act (CSRA), 5 U.S.C. § 7513 *et seq.*, provides remedies for government employees (like plaintiff Valerie Plame Wilson) who are subjected to adverse personnel action or who otherwise have grievances.  Time and again, the Supreme Court has held that federal courts should not employ *Bivens* to create new, supplemental remedies for federal employees.  In *Bush v. Lucas, supra,* for example, a NASA aerospace engineer filed a First Amendment claim alleging that he was demoted because of his public criticism of the agency.  The Supreme Court refused to extend *Bivens* to cover those claims because they arose out of "an employment relationship that is governed by comprehensive procedural and substantive provisions [under the Civil Service Commission regulations] giving meaningful remedies against the United States."  462 U.S. at 367.  *See also Spagnola v. Mathis*, 859 F.2d 223, 228 (D.C. Cir. 1988) (en banc) (refusing to recognize *Bivens* action for alleged First Amendment violations in light of remedial scheme provided by the CSRA).

Here, many of plaintiff Valerie Plame Wilson's claims arise from her relationship with her employer, the federal government.  To the extent the release of her employment status or other information about her employment adversely affected her—as in the complaint's words, "impaired . . . her ability to carry out her duties at the CIA, and to pursue her career there serving her country," Am. Compl. ¶ 43—that is a matter that may be considered, if at all, only within the confines of the CSRA and the other federal statutes.

In the end, of course, it is possible that none of those statutes will afford Valerie Plame Wilson and Joe Wilson the relief they seek here.  But Congress's decision to withhold relief is entitled to the same judicial deference as a decision to provide relief, so long as congressional inaction has not been inadvertent.  *See Chilicky*, 487 U.S. at 423 (holding that, where Congress

13

has provided what it considers adequate remedial mechanisms for constitutional violations, additional *Bivens* remedies may not be implied even if claims go partially or fully unremedied); *see also United States v. Stanley*, 483 U.S. 669, 683 (1987) ("[I]t is irrelevant to a special factors analysis whether the laws currently on the books afford [plaintiff] an adequate federal remedy for his injuries"). The issue is not whether the relief is as comprehensive as the plaintiffs would like. It is whether the courts, in deference to Congress's role, should be creating new judicial remedies where Congress has already regulated in the area. In cases like this one, the answer is clearly "no."

### 3. *The Subject Matter of This Suit Is A Special Factor Counseling Hesitation*

Finally, the secretive nature of a CIA covert operative's work strongly counsels hesitation in creating a *Bivens* remedy here. Matters of espionage are uniquely for the Executive's consideration, and uniquely beyond the judiciary's capacity. In *Tenet v. Doe*, 544 U.S. 1 (2005), for example, two foreign nationals who had served as secret agents for the CIA brought suit alleging that the CIA had reneged on its financial and other obligations to them and therefore had violated their equal protection and due process rights. The Supreme Court held that the claims had to be dismissed because the case involved "confidential matters" relating to a secret espionage relationship. *Id.* at 8. Noting the important intelligence and national security issues involved, the Court concluded that lawsuits premised on clandestine spy agreements are altogether forbidden. *Id.* (citing *Totten v. United States*, 92 U.S. 105 (1875)). *See also Kielczynski v. United States C.I.A.*, 128 F. Supp. 2d 151, 164 (E.D.N.Y. 2001) ("The decision of whether information that must be revealed is sensitive, including even an admission or denial of the existence of a secret espionage contract, is reserved ... to the United States." In addition, this

policy is not disturbed even if judicial review of the issues would not require revelation of any sensitive information).

The policy articulated in *Tenet* has particular force here. In matters of national security and CIA activities, decisions regarding the release of information are uniquely the domain of the executive branch. *Cf. Chappell v. Wallace*, 462 U.S. 296 (1983) (categorically refusing to recognize *Bivens* claims by military personnel against superior officers). Here, the issue is the status of an allegedly covert CIA operative. The complaint alleges that Valerie Plame Wilson's status was sensitive and should have been kept secret. But the relationship between the government and its covert agents—including its spies—is a matter for the political branches and not the courts to regulate. For the very same reasons the courts declined to permit suit on the claims in *Tenet* and *Kielczynski*, this Court should not fashion a new *Bivens* remedy for plaintiffs here.

## II.    PLAINTIFFS' ACTIONS ARE TIME-BARRED

Plaintiffs in this case filed their suit nearly three years after the last of the allegedly improper disclosures occurred. Because plaintiffs failed to comply with the applicable one-year limitations period, their actions are time-barred.

### A.    The Limitations Period For Plaintiffs' *Bivens* Actions Is The One-Year Limitations Period Applicable to Actions for Public Disclosure of Private Facts

The judicially-created *Bivens* action looks to state law for the relevant limitations period. Under D.C. Circuit precedent, this Court must borrow the limitations period from the most "analogous" cause of action under local law. *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 742 (D.C. Cir. 1995); *see also McClam v. Barry*, 697 F.2d 366, 373 (D.C. Cir. 1983); *Hobson v. Wilson*, 737 F.2d 1, 32 (D.C. Cir. 1984); *Doe v. Dept. of Justice*, 753 F.2d 1092 (D.C. Cir. 1985) (citing *Burnett v. Grattan*, 468 U.S. 42, 47 (1984)).

In *McClam*, for example, the D.C. Circuit applied the D.C. Code's one-year statute of limitations for assault, D.C. Code § 12-301(4), to a *Bivens* claim arising from a physical altercation. The Court rejected the argument that constitutional claims are inherently different from underlying state actions and, therefore, should not have the same statute of limitations. Writing for the Court, Judge Bork explained:

> At the outset it is important to note that we need not reject appellant's contentions that constitutional claims differ from closely analogous common-law claims in the interests they protect, in their elements and origins, and in their importance. For some claims, and in some respects, those contentions are undoubtedly true. Appellant has failed, however, to establish that they entail rejection of the local limitations period for the common-law cause of action.

*McClam*, 697 F.2d at 373, *overruled on other grounds, Brown v. United States*, 742 F.2d 1498 (D.C. Cir. 1984).

In identifying the most analogous cause of action, courts must "select the [underlying] claim most clearly comparable to the federal claim with respect to factfinding accuracy and settled expectations. The comparison of any two claims will generally focus on the facts that must be litigated in trying them." *Id.* at 374. Whenever the *Bivens* claim and a state cause of action "are so alike that plaintiffs can be expected to plead the common law claim as a pendent claim in constitutional suits, then the same judgment about repose applies to both claims." *Id.* at 375. "For such pairs of claims, the facts to be proved are largely the same, and principally for that reason but also because the two claims grow out of the same incident and seek to vindicate the same interests, settled expectations must be judged the same." *Id.* *Accord Doe*, 753 F.2d at 1114-15 (affirming the district court's application of the one-year limitations period for

defamation to a *Bivens* action in a wrongful termination suit where the "gist" of Doe's claim was that the plaintiffs "destroyed her reputation as a sober and serious person").[2]

In this case, the most analogous state cause of action is evident—public disclosure of private facts. Indeed, that is the only state-law claim plaintiffs bring (Count V). As the D.C. Circuit observed in *McClam*, when the *Bivens* claim and a state cause of action are sufficiently similar that the plaintiff "can be expected to plead [the] common law [claim] as a pendent claim in constitutional suits, then the same judgment about repose applies to both claims." *McClam*, 697 F.2d at 375. The complaint itself, moreover, makes clear that public disclosure of private facts provides the relevant analogy: All of plaintiffs' claims arise from the alleged disclosure of Valerie Plame Wilson's employment by the CIA—a fact that, according to plaintiffs, was

---

[2] The Supreme Court's decision in *Wilson v. Garcia*, 471 U.S. 261 (1985), is not to the contrary. In that case, the Supreme Court held that one uniform statute of limitations—the state's statute of limitations for personal injury claims—should govern all 42 U.S.C. § 1983 claims brought within a state. But the Supreme Court has never suggested that *Bivens* actions should be governed by the same rule. To the contrary, the Court based its decision in *Wilson* on the congressional intent behind enactment of § 1983 in the 19th Century. 471 U.S. at 278-79. *Bivens* claims do not share that history. They were created by the Supreme Court in 1971. In any event, even after *Wilson*, the D.C. Circuit has adhered to its holding in *McClam*. *See Banks v. Chesapeake & Potomac Tel. Co.*, 802 F.2d 1416, 1429 n. 22 (D.C. Cir. 1986); *see also Hobson v. Brennan*, 625 F. Supp. 459, 464 (D.D.C. 1985) (on remand from D.C. Circuit) ("In short, it is not at all obvious that *Wilson* requires application in this case [involving *Bivens* claims] of the same umbrella statute that would be applied to Section 1983 actions in this jurisdiction after *Wilson*"). The courts in this district have continued to follow *McClam* as well. *Browning v. Clinton*, 2001 U.S. Dist. LEXIS 24537 (D.D.C. Feb. 8, 2001) (reaffirming that the appropriate *Bivens* statute of limitations is the "limitations period applicable to the most nearly analogous state cause of action" and applying D.C. Code §12-301(4) to intentional torts; holding that the three year catchall statute of limitations under §12-301(8) should apply to all acts "not otherwise prescribed"); *but see Lederman v. United States*, 131 F. Supp. 2d 46, 61-62 (D.D.C. 2001) (holding, without discussing *McClam* and other Circuit case law, that the three-year catchall statute of limitations under D.C. Code § 12-301(8) applied to *Bivens* claim for unlawful arrest).

supposed to be kept private.  Indeed, the complaint's allegations, including those relating to the alleged constitutional violations, precisely parallel the elements of the common-law tort.[3]

**B.    Plaintiffs Failed To Comply With The One-Year Limitations Period Applicable To These Claims**

District of Columbia law regards violations of privacy as "essentially a type of defamation."  *Grunseth v. Marriott Corp.*, 872 F. Supp. 1069, 1074 (D.D.C. 1995) (*citing Doe v. Southeastern University*, 732 F. Supp. 7, 8 (D.D.C. 1990)).  Accordingly, causes of action for public disclosure of private facts are subject to the one-year limitations period in D.C. Code § 12-301(4).  *Nix*, 139 F. Supp. 2d at 134 n. 9 (D.D.C. 2001).[4]

In this case, plaintiffs assert that the allegedly private information was revealed to reporters on or before July 14, 2003.  Am. Compl. ¶¶ 14, 19(m), 19(p).  Plaintiffs do not allege any publications after July 14, 2003.[5]   And plaintiffs knew of the disclosures no later than July 14, 2003, when Robert Novak's article was published.  *See, e.g., Doe*, 753 F.2d at 1115 n. 31;

---

[3] The elements of the tort are:  (1) publicity, (2) absent any waiver or privilege, (3) of private facts, (4) in which the public has no legitimate concern, and (5) which would be highly offensive to a reasonable person of ordinary sensibilities.  *Nix v. Hoke*, 139 F. Supp. 2d 125, 134 (D.D.C. 2001).  Here, plaintiffs allege that defendant Libby met with Judith Miller, a New York Times reporter, on July 8, 2003 and "advised Miller of his belief that Wilson's wife worked at the CIA."  Am. Compl. ¶ 19(r).  Plaintiffs assert that prior to the disclosure, "[t]he fact that [Valerie Plame Wilson] was a CIA officer was not well known for her protection and for the benefit of all of us."  *Id.* at ¶ 21.  Plaintiffs further allege that, as a result of the improper disclosure of Valerie Plame Wilson's CIA employment, "[b]oth Mr. and Mrs. Wilson have suffered gross invasions of privacy."  *Id.* at ¶ 41.

[4] D.C. Code §§ 12-301(4) (1981) provides that, except "as otherwise specifically provided by law, actions for the following purposes may not be brought after the expiration of the period specified below from the time the right to maintain the action accrues:  . . . (4) for libel, slander, assault, battery, mayhem, wounding, malicious prosecution, false arrest or false imprisonment—l year."

[5] In any case, by the very nature of the tort, the initial publication would mean that later publications did not reveal a "private" fact.

*Grunseth*, 872 F.Supp. at 1075.  Yet plaintiffs did not bring suit until July 13, 2006, nearly three

years after publication.  Accordingly, plaintiffs' *Bivens* claims are time-barred.

### III. PLAINTIFFS' *BIVENS* CLAIMS FAIL BECAUSE PLAINTIFFS HAVE NOT PLEADED VIOLATIONS OF CONSTITUTIONAL RIGHTS, MUCH LESS THE CLEARLY ESTABLISHED RIGHTS NECESSARY TO OVERCOME THE DEFENSE OF QUALIFIED IMMUNITY

Executive branch officials are entitled to qualified immunity when they are sued in their

individual capacities.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Under Supreme Court

precedent, the qualified immunity inquiry proceeds in two steps.  First, the court must determine

whether "the facts alleged show the officer's conduct violated a constitutional right."  *Saucier v.

Katz*, 533 U.S. 194, 201-02 (2001); *Siegert v. Gilley*, 500 U.S. 226, 232 (1991).

If the court finds that the complaint alleges a constitutional violation, the court must then

determine whether that right was clearly established—that is, "whether it would be clear to a

reasonable officer that his conduct was unlawful in the situation he confronted."  *Saucier*, 533

U.S. at 201-02; *Wilson v. Layne*, 526 U.S. 603, 609 (1999).  That inquiry is objective and context

specific.  It "must be undertaken in light of the specific context of the case, not as a broad

general proposition."  *Saucier*, 533 U.S. at 201.  Immunity, moreover, may not be denied merely

because, in the end, the officer's conduct was unlawful.  Instead, even where an officer errs and

violates the Constitution, qualified immunity shields the officer from liability and suit unless,

"on an objective basis, it is obvious that *no reasonably competent officer* would have concluded"

that the actions at issue were constitutional at the time they were undertaken.  *Malley v. Briggs*,

475 U.S. 335, 341 (1986). "[I]f officers of reasonable competence could disagree on" the

constitutionality of the conduct, "immunity should be recognized." *Id.*

Official immunity is rooted in the recognition that officers sometimes err in their

assessment of the constitutionality of their conduct.  "The concept of immunity assumes this and

goes on to assume that it is better to risk some error and possible injury from such error than not to decide or act at all." *Id.* at 342. Qualified immunity thus serves to ensure that officials do not "exercise their discretion with undue timidity." *Wood v. Strickland*, 420 U.S. 308, 321 (1975). Consistent with that goal, it provides "'ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley*, 475 U.S. at 341, 343).

Here, the allegations of the complaint are insufficient to establish that defendant Libby violated plaintiffs' constitutional rights, much less the "clearly established rights" necessary to overcome the defense of qualified immunity.

### A.    Count I Does Not State a Violation of the First Amendment And Is Insufficient To Overcome Qualified Immunity In Any Event

Mr. Wilson's First Amendment retaliation claim (Count I) does not state a claim at all, and it certainly does not plead a violation of clearly established First Amendment rights.   As a threshold matter, Mr. Wilson lacks standing to assert that claim.   To establish constitutional standing, a party must demonstrate that he has suffered (1) a concrete and particularized injury (2) which is fairly traceable to alleged conduct and (3) which is redressable by the court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).   The alleged injury must be actual or imminent, distinct and palpable, not abstract. *Id.*   In addition to these constitutional limitations on standing, prudential standing requires plaintiffs to assert their own legal rights and interests; plaintiffs cannot rest their claims to relief on the rights and interests of third parties. *Warth v. Seldin*, 422 U.S. 490, 499 (1975).   In other words, a party can assert only the injuries he has suffered, and only for the invasion of his rights.

In this case, plaintiff Joe Wilson does not have standing to bring a First Amendment retaliation claim because he did not suffer the alleged retaliation. *See Mt. Healthy City Sch. Dist.*

*Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977) (an individual has a viable claim against the government if he can prove that the government took action *against him* in retaliation for the exercise of his First Amendment rights); *see also Anderson v. Davila*, 125 F.3d 148, 160 (3d Cir. 1997).   Mr. Wilson does not plead any injury to himself.   Plaintiffs allege that Defendants "sought to punish Mr. Wilson for his public statements regarding assertions by the President of the United States in the 2003 State of the Union address that he used to justify war against Iraq." Am. Compl. ¶ 2.   But the alleged punishment for Joe Wilson's speech was "destroy[ing] *Mrs. Wilson's cover* by revealing *her classified employment* with the CIA to reporters." *Id.*   Thus, the Complaint alleges only retaliation directed at Valerie Plame Wilson.   Having suffered no cognizable injury himself, Joe Wilson lacks standing to sue.[6]

---

[6]    Nor is third-party standing appropriate.   Sometimes courts have allowed the *victim of the retaliation* to seek relief, even where the government's motive was to punish someone else's speech. *See, e.g., Martinez v. City of New York*, 2003 WL 2006619 (S.D.N.Y. 2003); *Serena H. v. Kovarie*, 209 F. Supp. 2d 453 (E.D. Pa. 2002); *Ballas v. City of Reading*, 2001 WL 856627 (E.D. Pa. 2001); *Romano v. Harrington*, 664 F. Supp. 675 (E.D.N.Y. 1987); *Dangler v. Yorktown Central Sch.*, 771 F. Supp. 625 (S.D.N.Y. 1991).   But they do not allow someone who like Mr. Wilson who did not suffer injury—someone who was not the victim of retaliation—to assert the right of the person who was retaliated against, as Mr. Wilson attempts here. Plaintiffs, moreover, fail to meet the requirements for third-party standing.   Under *Singleton v. Wulff*, 428 US. 106 (1976), such standing is permissible only if (1) the enjoyment of the right is inextricably bound up with the activity the litigant wishes to pursue and (2) if the litigant is as effective a proponent of the right as the third party. *Id.* at 114-15.   Among other things, the court must look at the ability of the third party to vindicate his own rights and whether the rights of the third party will be diluted if standing is not allowed. *Id.*; *see also Powers v. Ohio*, 499 US. 400 (1992). Here, Mr. Wilson's enjoyment of freedom of speech is not "inextricably bound up" with Mrs. Wilson's ability to work for the CIA.   The two are independent, as evidenced by the absence of any chill on Mr. Wilson's speech:   He continues to discuss his findings in Niger and the President's assertions despite the fact that Valerie Plame Wilson no longer works for the CIA.   In similar circumstances, other courts have declined to allow third-party standing. *Kounitz v. Slaatten*, 901 F.Supp. 650 (S.D.N.Y. 1995) (holding that a husband did not have standing to bring First Amendment retaliation claim when his wife was fired after he telephoned a Director to complain about his wife's supervisor's incompetence because the husband had no concrete injury and his exercise of his right to free speech was not inextricably tied up with his wife's employment).   Valerie Plame Wilson, moreover, is fully capable of asserting her own rights; those rights will not be diluted if Mr. Wilson is denied standing here.

Moreover, the alleged retaliation did not violate Mr. Wilson's First Amendment rights. Not every retaliatory action "is sufficient to chill the exercise of First Amendment rights." *DiMeglio v. Harris*, 45 F.3d 790, 806 (4th Cir. 1995). For example, to the extent Mr. Wilson alleges that defendants "spread rumors" about his wife's involvement in his Niger trip and otherwise sought to discredit him, it is well established that mere criticism and accusations by government officials do not constitute actionable retaliation. *See, e.g., Penthouse Int'l Ltd. v. Meese*, 939 F.2d 1011, 1015-16 (D.C. Cir. 1991); *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686-88 (4th Cir. 2000); *Colson v. Grohman*, 174 F.3d 498, 511-12 (5th Cir. 1999). Rather, "the widely accepted standard for assessing whether harassment for exercising the right of free speech [is] . . . actionable . . . depends on whether the harassment is likely to deter a person of ordinary firmness" from exercising that right. *Toolaprashad v. Bureau of Prisons*, 286 F.3d 576, 585 (D.C. Cir. 2002) (internal citations and quotation marks omitted).

Consequently, "where a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech." *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001). Here, Mr. Wilson has not pleaded a change in his behavior as a result of the alleged retaliation directed at his wife. To the contrary, Mr. Wilson to this day continues to speak out against the Iraq war and recount his views regarding weapons of mass destruction and his investigation in Niger.

In *Hatfill*, this Court dismissed a First Amendment claim for precisely those reasons. As noted above, the plaintiff in *Hatfill* was named a "person of interest" in the federal anthrax investigation; he claimed that government officials retaliated against him for publicly claiming innocence and complaining about the conduct of the investigation. The court held that Hatfill failed to state a claim because "it appears that Dr. Hatfill's free speech has not been chilled in

any manner, as he has continued to protest the government's actions." *Id.* at 118. The same result is required here.

Even if that were open to question—and it is not—Mr. Libby would be entitled to qualified immunity. An officer is entitled to qualified immunity unless "on an objective basis, it is obvious that *no reasonably competent officer* would have concluded" that the actions at issue were constitutional. *Malley*, 475 U.S. at 341. "[T]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Here, the court has concluded on analogous facts that such conduct does not violate the Constitution. A *fortiori*, a reasonably competent officer could think the conduct constitutional. Qualified immunity is therefore appropriate.

**B.    Count II Does Not State a Clearly Established Violation of the Fifth Amendment's Equal Protection Principle**

Count II's allegation that Libby treated plaintiffs "differential[ly]" due to "vindictiveness and illegitimate animus" does not state a violation of clearly established Equal Protection principles. Plaintiffs do not allege that they were discriminated against because they are members of a suspect class. *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440-41 (1985) (discussing suspect classifications). Nor do plaintiffs allege the sort of class-based, irrational animus that can support an Equal Protection claim by plaintiffs who are not part of a suspect class. *See Romer v. Evans*, 517 U.S. 620, 634-35 (1996) (striking down a Colorado law aimed at homosexuals because "a bare . . . desire to harm a politically unpopular group cannot constitute a legitimate government interest"); *Cleburne Living Ctr.*, 473 U.S. at 446-47, 450 (striking down a zoning ordinance based upon "fear" and "irrational prejudice against the mentally retarded"). Nor do they allege the sort of "irrational and wholly arbitrary" treatment that could support a non-class-based Equal Protection claim. *See, e.g., Village of Willowbrook v. Olech*, 528 U.S.

562 (2000) (recognizing "class of one" Equal Protection claims "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment"); *3883 Connecticut LLC  v. Dist. of Columbia*, 336 F.3d 1068, 1075 (D.C. Cir. 2003) (rejecting class-of-one claim because differential  treatment had rational basis).

Instead, the Wilsons' claim that government officials acted in response to Mr. Wilson's speech is simply a First Amendment retaliation claim dressed up in Equal Protection garb. Courts have repeatedly rejected such claims.  *See, e.g., Grossbaum v. Indianapolis-Marion County Bldg. Auth.*, 100 F.3d 1287, 1296 (7th Cir. 1996) ("[The Equal Protection] clause does not establish a general right to be free from retaliation."); *Ratliff v. DeKalb County, Ga.*, 62 F.3d 338, 340-41 (11th Cir. 1995) ("no clearly established right exists under the equal protection clause to be free from retaliation"); *Thompson v. City of Starkville, Miss.*, 901 F.2d 456, 468 (5th Cir. 1990) (holding that differential treatment based on exercise of free speech does not violate the Equal Protection clause); *Vukadinovich v. Bartels*, 853 F.2d 1387, 1391-92 (7th Cir. 1988) (same).  The Court should do likewise here.  Even if it does not, Mr. Libby is entitled to qualified immunity, since it is not "clearly established" that retaliating against someone for First Amendment speech violates the Equal Protection clause.

### C.    Count III Does Not State a Clearly Established Violation of Mrs. Wilson's Substantive Due Process Rights

Count III asserts that Mr. Libby's alleged disclosure of Mrs. Wilson's CIA employment violated the Fifth Amendment's Due Process Clause, "which prohibits government officials from violating any individual's right to privacy by publicly disclosing personal information."  Am. Compl. ¶ 56.  In fact, neither the Supreme Court nor the D.C. Circuit has recognized *any* such

right of informational privacy under the Due Process Clause, much less a right that would clearly encompass the unique facts alleged here.

Mrs. Wilson essentially restates, in substantive-due-process terms, her common-law tort claim for public disclosure of private facts. The Supreme Court, however, has repeatedly "rejected claims that the Due Process Clause should be interpreted to impose federal duties that are analogous to those traditionally imposed by state tort law." *Collins v. City of Harker Heights*, 503 U.S. 115, 128 (1992) (collecting cases). More specifically, in *Whalen v. Roe*, the Supreme Court suggested that the state's duty to avoid "unwarranted disclosures" of private facts "in *some circumstances . . . arguably* has its roots in the Constitution," but declined to decide whether such a right exists. 429 U.S. 589, 605-06 (1977) (emphasis added); *see also Nixon v. Administrator of Gen. Servs.*, 433 U.S. 425, 457 (1977).

The D.C. Circuit comprehensively examined *Whalen, Nixon* and its own precedent in *American Fed'n. of Gov't Employees v. Dep't of Hous. & Urban Dev.*, 118 F.3d 786 (D.C. Cir. 1997). The D.C. Circuit expressed its "grave doubts as to the existence of a constitutional right of privacy in the nondisclosure of personal information" and noted that "this court has not purported to resolve the issue." *Id.* at 791, 792. The court explained that the other circuits were divided over the existence of such a right and observed that even those that recognize the right did not "cit[e] a constitutional provision in support of [their] holding." *Id.* at 793. The Supreme Court, for its part, has "always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Collins*, 503 U.S. at 125.

In view of that precedent, there is no clearly recognized due-process right to informational privacy even in the abstract. As a result, there can be no clearly established right

in the "particularized" sense required before an officer is stripped of his qualified immunity. *Saucier*, 533 U.S. at 202.  The "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* (quoting *Anderson*, 483 U.S. at 640).  Since it is far from clear that any right to informational privacy exists, it goes without saying that the contours of such a right are not clearly established, much less that the unique facts alleged here constitute the violation of any such right.[7]

> **D.    Count IV Does Not Allege an Actionable Deprivation of Property in Violation of the Due Process Clause**

Count IV, entitled "Violation of Fifth Amendment Right to Property," alleges that the defendants' actions (1) deprived Mrs. Wilson of "a property interest in employment without due process" and (2) "injured her ability to obtain other employment."  Am. Compl. ¶¶ 60-61.  Mrs. Wilson does not plead that she lost her CIA job as a result of defendants' action.  Indeed, she continued to work for the CIA until January 2006, nearly two-and-a-half years after the alleged disclosure of her covert status in July 2003.  *Id.* ¶ 7.  In any event, it is well established that an undercover CIA employee has no property interest in continued employment with the CIA.  *Doe v. Gates*, 981 F.2d 1316, 1320-21 (D.C. Cir. 1993).  Nor, relevant to Mrs. Wilson's vague second allegation, does Mrs. Wilson possess any property interest in "the ability to obtain other

---

[7] Even if a constitutional privacy right exists that parallels the common-law public disclosure tort, Mrs. Wilson's CIA employment is not the type of personal fact that would be protected.  The common law tort protects intimate private information-not employment status.  *See* Restatement (Second) of Torts § 652D (public disclosure tort protects matters concerning one's "private life"); *Benz v. Washington Newspaper Pub. Co.*, 2006 WL 2844896 at *7 (D.D.C. 2006) (public disclosure tort protects against public revelation of "deeply private and intimate matters"); *see also Wade v. Goodwin*, 843 F.2d 1150, 1153 (8th Cir. 1988) (the right to privacy is "generally limited to only the most intimate aspects of human affairs").  In any event, this Court's discussion in *Blazy v. Tenet* demonstrates that Congress vested the CIA—not individual agents—with the right to withhold or disclose information relating to the "functions, names, [and] official titles. . . of personnel employed by the Agency."  979 F. Supp. 10, 23 (D.D.C. 1997) (quoting 50 U.S.C. § 403g), *aff'd*, No. 975330,1998 WL 315583 (D.C. Cir. May 12, 1998).

employment." *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972) (explaining that property interest in employment depends on a "legitimate claim of entitlement" under positive law or government contract); *cf. Trifax Corp. v. Dist. of Columbia*, 314 F.3d 641, 643 (D.C. Cir. 2003) (explaining that the right to follow one's chosen profession is a liberty interest). In sum, Count IV utterly fails to state the claim for the "Violation of a Fifth Amendment Right to Property" that it advertises.

Although Mrs. Wilson does not plead deprivation of a liberty interest, she could not state that type of due process claim either. Her bare allegation of harm to future employment prospects is inadequate to prove a deprivation of liberty, much less a clearly established one. Even statements or actions by government officials that injure an individual's reputation and thereby "seriously impair his future employment opportunities" do not work a deprivation of liberty. *Siegert*, 500 U.S. at 233-34; *Paul v. Davis*, 424 U.S. 693, 708-09 (1976); *Moore v. Agency for Int'l Dev.*, 80 F.3d 546, 548-49 (D.C. Cir. 1996). Nor is it enough for plaintiff to show that she has merely been precluded from one specific employment position. *Kartseva v. Dep't of State*, 37 F.3d 1524, 1529 (D.C. Cir. 1994); *M.K. v. Tenet*, 196 F. Supp. 2d 8, 15-16 (D.D.C. 2001). Rather, a plaintiff must show that the government took some official action that altered her legal status and "formal[ly] debarred" her from government employment, or otherwise "broadly preclud[ed]" her from her chosen profession. *Trifax Corp.*, 314 F.3d at 643-44; *Moore*, 80 F.3d at 548-49; *Kartseva*, 37 F.3d 1524, 1528-30 (D.C. Cir. 1994). Mrs. Wilson does not come close to meeting this high standard, nor does she even attempt to. The defendants' alleged revelation of her covert status did not result in her dismissal from her job, much less render her "unable to gain employment in another government job, or in the private sector within her career field." *M.K.*, 196 F. Supp. 2d at 15-16 (dismissing former CIA

27

employee's due process claim).  Mrs. Wilson's due process claim therefore fails regardless whether she alleges deprivation of liberty or property.

## IV.    DEFENDANT LIBBY MUST BE DISMISSED FROM COUNT V

Finally, defendant Libby is entitled to dismissal of Count V because, as a federal employee acting within the scope of employment at the time of the alleged conduct, he has absolute immunity from state-law tort claims under the Westfall Act, 28 U.S.C. § 2679(b)(1). The United States has filed a Westfall Act "scope certification" to that effect and a motion asking that the United States be substituted as the sole defendant on the common-law claim.  *See* 28 U.S.C. § 2679(d)(1)-(2).

The government's scope certification is "*prima facie* evidence that [Libby] was acting within the scope of his employment," and the plaintiff bears the burden of pleading specific facts to refute it.  *Council on American-Islamic Relations v. Ballenger*, 444 F.3d 659, 662 (D.C. Cir. 2006).  Here, the plaintiffs have done nothing more than allege that defendants "acted outside the scope of their employment," without pleading any facts to support this naked assertion.  Am. Compl. ¶ 69.  That deficiency alone warrants dismissal of Libby from the common-law claim.

Recent D.C. Circuit precedent, in any event, places the correctness of the government's certification beyond doubt.  In *Ballenger, supra*, the D.C. Circuit held that a U.S. Congressman acted within the scope of his employment when he allegedly defamed the Council on American-Islamic Relations (CAIR) during a conversation with a reporter about his recent marital separation.  Applying District of Columbia law, the court held that the Congressman's alleged defamatory conversation was within the scope of employment because it was (1) "conduct of the kind he was employed to perform" and  (2) "actuated at least in part, by a purpose to serve the master."  444 F.3d at 664-66.

In examining the conduct, the court of appeals refused to limit the inquiry to the "defamatory statement itself." *Id.* at 664. Rather, the court explained that "[t]he proper inquiry in this case 'focuses on the underlying dispute or controversy, not on the nature of the tort, and is broad enough to embrace any intentional tort arising out of a dispute that was originally undertaken on the employer's behalf.'" *Id.* (quoting *Weinberg v. Johnson*, 518 A.2d 985, 992 (D.C. 1986)). Therefore, the question was whether the phone call with the reporter—"not the allegedly defamatory sentence"—was the kind of conduct Ballenger was employed to perform. *Id.* The Court concluded that it was: "Speaking to the press during regular work hours in response to a reporter's inquiry falls within the scope of a congressman's authorized duties." *Id.* (internal quotation marks omitted). In reaching that conclusion, the court "liberally construed" the Congressman's duties and rejected CAIR's attempt to limit them to strictly legislative tasks. *Id.* at 664-65.

Turning to the second element, the Court concluded that Ballenger's actions were actuated by at least a "partial desire" to serve his master—his constituents—because his constituents were concerned about his views on his recent marital separation. *Id.* at 665-66. Again, the Court refused to limit the inquiry to the allegedly defamatory statement and focused on the purpose of the entire conversation with the reporter. Accordingly, the Court dismissed the state-law claim against Ballenger and substituted the United States as the sole defendant under the Westfall Act. *Id.* at 666.

*Ballenger* compels the same result here. Libby's "authorized duties" certainly extend to "the underlying dispute or controversy," 444 F.3d at 664—a very public dispute over Mr. Wilson's criticism of President Bush and defendants' rebuttal of that criticism in conversations with reporters. Just as in *Ballenger*, a senior executive official's duties certainly include

speaking with reporters in defense of the Executive Branch's policy positions and responding to reporters' inquiries when those positions are challenged. Indeed, Libby's conversations with reporters were far more directly tied with his policy-related duties than was Ballenger's conversation about his marital status.

Libby likewise satisfies the second element discussed in *Ballenger* because plaintiffs themselves plead that Libby's actions were actuated, at least in part, by a purpose to "serve the master." Plaintiffs allege that Libby conspired with his direct "master" (Vice President Cheney) in an attempt to discredit and punish Mr. Wilson so as to vindicate the statements of his ultimate master (President Bush) about Saddam Hussein's nuclear ambitions. Am. Compl. ¶¶ 2-3, 19(h), 19(o), 19(q), 24. The complaint itself therefore conclusively refutes plaintiffs' unadorned assertion that Libby acted outside the scope of his employment. Accordingly, Libby must be dismissed from Count V and the United States substituted as the sole defendant. 28 U.S.C. § 2679(d)(1).[8]

---

[8] Plaintiffs in any event fail to state a claim as to Count V. The statute of limitations for public disclosure of private facts is one year in the District of Columbia. *Nix*, 139 F. Supp. 2d at 134 n.9. Yet plaintiffs filed their complaint nearly *three years* after the alleged public disclosure occurred. *See* pp. 18-19, *supra*. Moreover, plaintiffs cannot satisfy at least two elements of the public disclosure tort under D.C. law. *See Wolf v. Regardie*, 553 A.2d 1213, 1221 (D.C. 1989) (recounting elements as set forth in Restatement (Second) of Torts § 652D (1977)). First, Mrs. Wilson's CIA employment is not a "private fact" controlled by Mrs. Wilson; rather the CIA has the right to control the release of information about its employees. *See* p. 26 n.7, *supra*. Nor is Mrs. Wilson's CIA employment "a matter concerning [her] private life," and is therefore not covered by the public disclosure tort. Restatement (Second) of Torts § 652D (1977) (emphasis added); *see* p. 26 n.7, *supra*. Second, the public has a legitimate interest in learning information about family members of a public figure, like Mr. Wilson, particularly when that information bears on his credibility with respect to important public statements. Restatement (Second), cmts. (d)-(i). Finally, Mr. Wilson lacks standing to assert Count V for the same reasons he lacks standing as to Count I. He alleges no concrete injury *to himself*, but only the disclosure of *his wife's* CIA employment. *See* pp. 21-22, *supra* (discussing Mr. Wilson's lack of standing as to Count I).

## <u>CONCLUSION</u>

For the foregoing reasons, defendant Libby's motion to dismiss the complaint should be granted.

Dated: November 14, 2006                    Respectfully submitted,


                                            /s/ William H. Jeffress, Jr.
Theodore V. Wells, Jr.                      William H. Jeffress, Jr.
(DC Bar No. 468934)                         (DC Bar No. 041152)
James L. Brochin                            Alex J. Bourelly
(DC Bar No. 455456)                         (DC Bar No. 441422)
Paul, Weiss, Rifkind, Wharton               Baker Botts LLP
  & Garrison LLP                            1299 Pennsylvania Avenue, NW
1285 Avenue of the Americas                 Washington, DC  20004
New York, NY  10019-6064                    Tel:  (202) 639-7751
Tel:  (212) 373-3089                        Fax: (202) 585-1087
Fax: (212) 373-2217


                                            *Counsel for Defendant I. Lewis Libby*

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of November, 2006, I did cause a true and correct copy of Plaintiffs' Amended Complaint to be served on counsel listed below via facsimile and First Class Mail, postage prepaid:

Melanie Sloan (D.C. Bar 434584)
Anne Weissman (C.C. Bar 298190)
Citizens for Responsibility and Ethics in Washington
1400 Eye Street, N.W.
Suite 450
Washington, DC  20005
202-408-5565 (telephone)
202-588-5020 (facsimile)

Joseph Cotchett (D.C. Bar 325498)
Cotchett, Pitre, Simon & McCarthy
840 Malcolm Road
Suite 200
Burlingame, CA  94010
650-697-6000 (telephone)
650-697-9577 (fax)

Erwin Chemerinsky (D.C. Bar 289330)
Duke University School of Law
Science Drive and Towerview Road
Durham, NC  27708-0360
919-613-7173 (telephone)
919-613-7231 (facsimile)

/s/ William H. Jeffress, Jr.
William H. Jeffress, Jr.
(DC Bar No. 041152)
Baker Botts LLP
1299 Pennsylvania Avenue, NW
Washington, DC  20004
Tel:  (202) 639-7751
Fax: (202) 585-1087