# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| VALERIE PLAME WILSON and JOSEPH C. WILSON IV, | ) ) ) |  |
| Plaintiffs, | ) ) |  |
| v. | ) ) | Civil Action No. 06-1258 (JDB) |
| I. LEWIS LIBBY JR., KARL C. ROVE, RICHARD B. CHENEY, RICHARD L. ARMITAGE 9979 Stone Vale Drive Vienna, VA 22181, | ) ) ) ) ) ) ) |  |
| and JOHN DOES NOS. 1-9, | ) ) |  |
| Defendants. | ) ) |  |

## <u>DEFENDANT RICHARD L. ARMITAGE'S<br>MOTION TO DISMISS</u>

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Richard L. Armitage, by his undersigned counsel, respectfully moves this Court to dismiss, with prejudice, all claims against him for failure to state a claim upon which relief may be granted. The grounds for this motion are set forth in the accompanying memorandum of points and authorities. A proposed order is attached hereto.

WHEREFORE, Mr. Armitage respectfully requests that this Motion be granted.

Dated: November 14, 2006                    Respectfully submitted,


                                            /s/ Michael L. Waldman_____
                                            William H. Taft (DC Bar No. 055087)
                                            Michael L. Waldman (DC Bar No. 414646)
                                            Eugene N. Hansen (DC Bar No. 483638)
                                            Karen S. Bloom (DC Bar No. 499425)
                                            FRIED, FRANK, HARRIS, SHRIVER
                                              & JACOBSON LLP
                                            1001 Pennsylvania Avenue, NW
                                            Washington, DC  20004-2505
                                            Telephone:  (202) 639-7000
                                            Facsimile:  (202) 639-7008

                                            Attorneys for Defendant Richard L. Armitage

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| VALERIE PLAME WILSON and JOSEPH C. WILSON IV, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civil Action No. 06-1258 (JDB) |
| I. LEWIS LIBBY JR., KARL C. ROVE, RICHARD B. CHENEY, RICHARD L. ARMITAGE and JOHN DOES NOS. 1-9, | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF
## DEFENDANT RICHARD L. ARMITAGE'S MOTION TO DISMISS

William H. Taft (DC Bar No. 055087)
Michael L. Waldman (DC Bar No. 414646)
Eugene N. Hansen (DC Bar No. 483638)
Karen S. Bloom (DC Bar No. 499425)
FRIED, FRANK, HARRIS, SHRIVER
  & JACOBSON LLP
1001 Pennsylvania Avenue, NW
Washington, DC  20004-2505
Telephone:  (202) 639-7000
Facsimile:  (202) 639-7008

Attorneys for Defendant
Richard L. Armitage

November 14, 2006

# TABLE OF CONTENTS

**PAGE**

PLAINTIFFS' ALLEGATIONS AGAINST ARMITAGE ............................................................4

ARGUMENT....................................................................................................................6

I.      NUMEROUS "SPECIAL FACTORS COUNSELING HESITATION" EXIST
        THAT COMPEL DISMISSAL OF THE ALLEGED CONSTITUTIONAL
        VIOLATIONS AGAINST MR. ARMITAGE (COUNTS III AND IV)............................6

        A.      The Privacy Act Is A "Special Factor" Precluding Creation Of A *Bivens*
                Cause Of Action Against Mr. Armitage ...................................................9

        B.      The Grievance Procedures Available To Federal Employees Are A
                "Special Factor" Precluding Creation Of A *Bivens* Cause Of Action
                Against Mr. Armitage ..........................................................................12

        C.      The Intelligence Identities Protection Act Is A "Special Factor" Precluding
                Creation Of A *Bivens* Cause Of Action Against Mr. Armitage ............14

        D.      National Security Concerns Are A "Special Factor" Precluding Creation
                Of A *Bivens* Cause Of Action Against Mr. Armitage ..........................16

II.     THE CONSTITUTIONAL CLAIMS (COUNTS III AND IV) SHOULD BE
        DISMISSED BECAUSE MR. ARMITAGE HAS QUALIFIED IMMUNITY ...............17

        A.      Ms. Wilson Does Not Allege A Violation of Any Clearly Established
                "Right to Privacy" (Count III) .............................................................18

        B.      Ms. Wilson Does Not Allege A Violation of Any Clearly Established
                "Right to Property" (Count IV) ............................................................21

III.    UNDER THE WESTFALL ACT, MR. ARMITAGE IS NOT SUBJECT TO
        STATE TORT LIABILITY (COUNT V) ........................................................25

IV.     ALL OF THE ALLEGATIONS AGAINST MR. ARMITAGE ARE
        TIME-BARRED UNDER THE APPLICABLE STATUTES OF LIMITATIONS .........30

CONCLUSION.................................................................................................................31

i

# TABLE OF AUTHORITIES

**PAGE**

## CASES

**\*\*American Fed'n of Gov't Employees, AFL-CIO v. HUD,**
118 F.3d 786 (D.C. Cir. 1997). ..............................................................................3, 20, 21

*Anderson v. Creighton,*
483 U.S. 635 (1987).............................................................................................................17

*Arar v. Ashcroft,*
414 F. Supp. 2d 250 (E.D.N.Y. 2006) ..............................................................................17

*Aversa v. United States,*
99 F.3d 1200 (1st Cir. 1996)..............................................................................................28

*Beattie v. Boeing Co.,*
43 F.3d 559 (10th Cir. 1994) .............................................................................................16

*Berry v. Hollander,*
925 F.2d 311 (9th Cir. 1981) .............................................................................................13

**\*\*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,**
403 U.S. 388 (1971)......................................................................................................passim

**\*\*Bush v. Lucas,**
462 U.S. 367 (1983)......................................................................................................7, 8, 13

*Chappell v. Wallace,*
462 U.S. 296 (1983).............................................................................................................7

**\*\*Chung v. Department of Justice,**
No. 00-CV-1912, 2001 WL 34360430 (D.D.C. Sept. 20, 2001),
*aff'd in pertinent part by* 333 F.3d 273 (2003)..........................................................passim

*CIA v. Sims,*
471 U.S. 159 (1985).............................................................................................................16

**\*\*Council on Islamic Relations v. Ballenger,**
444 F.3d 659 (D.C. Cir. 2006) ...........................................................................26, 27, 28

*Crawford-El v. Britton,*
523 U.S. 574 (1988).............................................................................................................18

*Department of Navy v. Egan,*
484 U.S. 518 (1988).............................................................................................................23

PAGE

*Doe v. Cheney*,
      885 F.2d 898 (D.C. Cir. 1989) .................................................................................23

**Doe v. Gates*,
      981 F.2d 1316 (D.C. Cir. 1993) .............................................................................3, 23

*Doe v. Medlantic Health Care Group*,
      814 A.2d 939 (D.C. 2003) ....................................................................................4, 30

*Downie v. City of Middleburg Heights*,
      301 F.3d 688 (6th Cir. 2002) ......................................................................... 2, 9, 11-12

*Greene v. Nguyen*,
      2005 WL 3275897 (D.D.C. Sept. 7, 2005) .............................................................. 4, 27-28

*Griswold v. Connecticut*,
      381 U.S. 479 (1965)............................................................................................19

*Grunseth v. Marriott Corp.*
      872 F. Supp. 1069 (D.D.C. 1995) ...........................................................................4, 30

*Hall v. Ford*,
      856 F.2d 255 (D.C. Cir. 1988) ................................................................................23

***Harlow v. Fitzgerald*,
      457 U.S. 800 (1982)..........................................................................................2, 17

***Hatfill v. Ashcroft*,
      404 F. Supp. 2d 104 (D.D.C. 2005) .......................................................................2, 11, 12

*Healy v. United States*,
      435 F. Supp. 2d 157 (D.D.C. 2006) ...........................................................................26

*Hobson v. Wilson*,
      737 F.2d 1 (D.C. Cir. 1984) ...................................................................................31

*Johnson v. Weinberg*,
      434 A.2d 404 (D.C. 1981) ......................................................................................27

*Lee v. Hughes*,
      145 F.3d 1271 (11th Cir. 1998) ................................................................................14

*Lyon v. Carey*,
      533 F.2d 649 (D.C. Cir. 1976) .................................................................................27

*Malley v. Briggs*,
      475 U.S. 335 (1986)............................................................................................18

PAGE

*Mangino v. Department of Army,*
    1994 WL 477260 (D. Kan. Aug. 24, 1994) .................................................................12

*Maron v. United States,*
    126 F.3d 317 (4th Cir. 1997) ........................................................................................26

*Mazaleski v. Treusdell,*
    562 F.2d 701 (D.C. Cir. 1997) ......................................................................................24

*McClam v. Barry,*
    697 F.2d 366 (D.C. Cir. 1983) ......................................................................................31

*Mitchell v. Forsyth,*
    427 U.S. 511 (1985) ......................................................................................................18

**\*\*M.K. v. Tenet,*
    196 F. Supp. 2d 8 (D.D.C. 2001) ..................................................................................24

*Moore v. Glickman,*
    113 F.3d 988 (9th Cir. 1997) ........................................................................................13

*Nix v. Hoke,*
    139 F. Supp. 2d 125 (D.D.C. 2000) ..............................................................................30

*Nixon v. Administrator of General Services,*
    433 U.S. 425 (1977) ......................................................................................................20

*O'Donnell v. Barry,*
    148 F.3d 1126 (D.C. Cir. 1998) ....................................................................................24

*Roe v. Wade,*
    410 U.S. 113 (1973) ......................................................................................................19

*Saucier v. Katz,*
    533 U.S. 194 (2001) ......................................................................................................17

*Schweiker v. Chilicky,*
    487 U.S. 412 (1988) ................................................................................................7, 8, 14

**\*\*Spagnola v. Mathis,*
    859 F.2d 223 (D.C. Cir. 1988) ..............................................................................8, 11, 13

*Stokes v. Cross,*
    327 F.3d 1210 (D.C. Cir. 2003) ....................................................................................26

*Tenet v. Doe,*
    544 U.S. 1 (2005) ..........................................................................................................16

PAGE

*Totten v. United States*,
    92 U.S. 105 (1876) ..................................................................................... 16

*United States v. Stanley*,
    483 U.S. 669 (1987) ..................................................................................... 7

*Webster v. Doe*,
    486 U.S. 592 (1988) ............................................................................... 13, 23

*Weinberger v. Catholic Action of Haw./Peace Educ. Project*,
    454 U.S. 139 (1981) ..................................................................................... 16

*Whalen v. Roe*,
    429 U.S. 589 (1977) ............................................................................... 19, 20

*Wilkinson v. Legal Servs. Corp.*,
    27 F. Supp. 2d 32 (D.D.C. 1998) ............................................................... 13

*Williams v. Department of Veterans Affairs*,
    879 F. Supp. 578 (E.D. Va. 1995) ............................................................. 10

*Zweibon v. Mitchell*,
    720 F.2d 162 (D.C. Cir. 1983) ....................................................... 2, 3, 17, 21

**STATUTES**

Federal Employees Liability Reform and Tort Compensation Act of 1988 ("Westfall Act")
    28 U.S.C. § 2679 .......................................................................................... 25

    28 U.S.C. § 2679(d)(1) ...................................................................... 3, 25, 26

Federal Tort Claims Act,
    28 U.S.C. §§ 2671-2680 .............................................................................. 25

Intelligence Identities Protection Act of 1982,
    50 U.S.C. § 421 *et seq.* ....................................................................... 2, 14, 15

Privacy Act of 1974
    5 U.S.C. § 552a .............................................................................................. 9

    5 U.S.C. § 552a(a)(4) ..................................................................................... 9

    5 U.S.C. § 552a(b) ......................................................................................... 9

    5 U.S.C. § 552a(g)(1)(D) ............................................................................... 9

5 U.S.C. § 7511(b)(7) ....................................................................................... 14

50 U.S.C. § 403-4a(e)(1) ............................................................................ 14, 22

PAGE

**RULES**

Federal Rule of Civil Procedure 12(b)(6) .............................................................1, 6, 10

**MISCELLANEOUS**

Glenn Kessler, *Rice Bucks Tradition with Pre-Election Appearances*,
WASH. POST, Nov. 4, 2006 ...............................................................................28

OFFICE OF THE FEDERAL REGISTER,
U.S. GOVERNMENT MANUAL (2006/2007) .......................................................28

Restatement (Second) of Agency § 228 .......................................................................27

U.S. GEN. ACCOUNTING OFFICE, GAO/NSIAD-96-6, INTELLIGENCE AGENCIES:
PERSONNEL PRACTICES AT CIA, NSA, AND DIA COMPARED WITH THOSE
OF OTHER AGENCIES (1996)................................................................................13

H.R. Rep. No. 96-1219 (Part I: Aug. 1, 1980, Part II: Sept. 4, 1980) .......................15

H.R. Rep. No. 97-221 (Sept. 10, 1981) .......................................................................15

S. Rep. No. 96-730 (May 15, 1980) .............................................................................15

S. Rep. No. 96-990 (Sept. 24, 1980)............................................................................15

S. Rep. No. 96-896 (Aug. 13, 1980).............................................................................15

S. Rep. No. 97-201 (Oct. 6, 1981)................................................................................15

66 Fed. Reg. 22,065 (May 2, 2001)..............................................................................28

** Indicates the authorities upon which Mr. Armitage principally relies.

Defendant Richard L. Armitage hereby moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that the Amended Complaint fails to state a claim against him upon which relief can be granted.

This case is a political exercise masquerading as a civil lawsuit.  Plaintiffs Valerie Plame Wilson and Joseph Wilson apparently seek to score public relations points through the filing and prosecution of this lawsuit.[1]  However, the Wilsons' constitutional and state tort causes of action against Defendant Armitage fail to survive even minimal legal scrutiny.  Taking all the facts alleged in the Amended Complaint as true, the Wilsons do not state a viable claim against Mr. Armitage and therefore the Amended Complaint must be dismissed.

The Wilsons' three claims against Mr. Armitage are deficient on a host of separate and independent grounds:

1.    The Amended Complaint sets forth two constitutional claims against Mr. Armitage, alleging that he violated Ms. Wilson's "right to privacy" (Count III) and "right to property" (Count IV).  In bringing these constitutional tort claims, the Wilsons explicitly rely on *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), where the Supreme Court recognized a judicially-created remedy based upon an implied cause of action under the Constitution.  Yet, *Bivens* and its progeny have emphasized that the judiciary has limited powers in fashioning remedies for constitutional violations and that no private right of action should be created where there are "special factors counseling hesitation."

---

[1]      According to press accounts, Ms. Wilson has accepted a large seven-figure monetary advance to author a book about the subject of this lawsuit.  The Wilsons also insisted in the Proposed Briefing Schedule that Defendants not file their motions to dismiss before election day.  Motion to Enter Joint Proposed Briefing Schedule, dated September 20, 2006, ¶ 4.

Here, Congress has considered and created a comprehensive statutory scheme to address the very subject matter of the constitutional claims against Mr. Armitage, namely, the allegedly improper disclosure of personal information by a federal government official. The Privacy Act was enacted by Congress to provide remedies for just such government disclosures. Courts in this and other jurisdictions have repeatedly found Congress' passage of the Privacy Act to be a "special factor" warranting dismissal of *Bivens* claims in closely comparable cases. *See Chung v. Department of Justice*, No. 00-CV-1912, 2001 WL 34360430 (D.D.C. 2001), *aff'd in pertinent part by* 333 F.3d 273 (D.C. Cir. 2003); *Hatfill v. Ashcroft*, 404 F. Supp. 2d 104 (D.D.C. 2005); *see also Downie v. City of Middleburg Heights*, 301 F.3d 688, 696 (6th Cir. 2002). The Intelligence Identities Protection Act of 1982 ("IIPA"), 50 U.S.C § 421 *et seq*., also demonstrates that Congress consciously focused on the precise problem about which the Wilsons complain -- the disclosure of the identity of CIA employees -- thereby adding a further "special factor" counseling against the creation of a judicial remedy here. In addition, Congress has afforded numerous procedural and administrative avenues for federal employees, including CIA employees, to redress personnel grievances, and the existence of this extensive personnel scheme also weighs strongly against creating a remedy for Ms. Wilson's allegations. Finally, the judiciary's historical and well-founded reluctance to involve itself in secret national security matters, especially the workings and operations of the CIA, makes particularly inappropriate the creation of a *Bivens* remedy in this case.

2.     The two constitutional claims also should be dismissed under the qualified immunity doctrine. As a federal official, Deputy Secretary of State Armitage was immune from suit unless his conduct violated a "clearly established" constitutional right. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Here, Ms. Wilson does not allege a violation of any "settled, indisputable" constitutional right. *See Zweibon v. Mitchell,* 720 F.2d 162, 172-73 (D.C.

Cir. 1983). Count III alleges a violation of the "right to privacy" in Mr. Armitage's disclosure of Wilson's employment at the CIA, but the courts have restricted the constitutional right to privacy to intimate personal matters such as abortion and contraceptives use. The District of Columbia Circuit has stated its "grave doubts" as to whether any constitutional right to "informational privacy" exists. *American Fed'n of Gov't Employees, AFL-CIO v. HUD*, 118 F.3d 786, 791 (D.C. Cir. 1997). Regardless of whether this circuit would ultimately find a constitutional privacy right based on the disclosure of information about one's employment status, it is self-evident that any such constitutional right is not "clearly established" at the present time.

Similarly, Ms. Wilson alleges a constitutional "right to property" in continued employment as a covert agent (Count IV) that has been rejected by this Circuit. In *Doe v. Gates*, 981 F.2d 1316 (D.C. Cir. 1993), the D.C. Circuit held that CIA employees have no property interest in any continued employment at the Agency. The *Doe* decision is on all fours with the allegations in the instant Complaint. Because Ms. Wilson fails to allege the violation of any "clearly established" constitutional right, Mr. Armitage is entitled to immunity from her lawsuit.

3.  The Wilsons' state tort allegation of "public disclosure of private facts" (Count V) fares no better. Under the Westfall Act, a federal employee cannot be held personally responsible for any state tort liability when "acting within the scope of his office or employment," 28 U.S.C. § 2679(d)(1); in such circumstances, the Westfall Act requires the substitution of the United States for the individual federal employee. *Id.* Here, the Department of Justice has certified that Mr. Armitage's conversations with journalists about Ms. Wilson's status as a CIA agent took place within the scope of his employment duties. This certification is plainly correct. As Deputy Secretary of State, one of Mr. Armitage's official responsibilities was to explain United States actions and foreign policy to the media. He frequently gave interviews and held news conferences in order to help the public at home and abroad understand the U.S.

Government's perspective on international matters.  Here, Mr. Armitage's alleged tortious acts took place in interviews he held in his State Department office with journalists Bob Woodward and Robert Novak.  Mr. Armitage's discussions with these journalists about issues raised by the President's State of the Union speech are well within the "expansive definition of conduct that falls within the scope of employment."  *Greene v. Nguyen*, No. Civ. 05-0407, 2005 WL 3275897, at *5 (D.D.C. Sept. 7, 2005).

4.     Moreover, it is well established that the statute of limitations for the tort of public disclosure of private facts is one year.  *Doe v. Medlantic Health Care Group*, 814 A.2d 939, 944 (D.C. 2003); *Grunseth v. Marriott Corp.*, 872 F. Supp. 1069, 1075 (D.D.C. 1995). Mr. Armitage's interviews with Messrs. Woodward and Novak allegedly took place in June and July of 2003, and Mr. Novak published his nationally syndicated article on July 14, 2003.  Yet, the Wilsons did not bring this lawsuit until 2006.  Accordingly, the state tort allegations in Count V are barred by the applicable statute of limitations.  In addition, because the *Bivens* claims are governed by the most nearly analogous state cause of action, in this case the tort of public disclosure of private facts, these constitutional causes of action also are time-barred under the District of Columbia's one-year limitations period.

## PLAINTIFFS' ALLEGATIONS AGAINST ARMITAGE

On July 13, 2006, the Wilsons filed this civil lawsuit against Vice President Richard Cheney, Deputy Chief of Staff to the President Karl Rove, and former Chief of Staff to the Vice President I. Lewis Libby alleging constitutional, statutory, and state law violations.  The thrust of the original Complaint was that these officials made public Ms. Wilson's employment with the CIA as part of a "conspiracy" to discredit and punish Ms. Wilson's husband for an Op-Ed article published in the *New York Times* and for other public remarks made by Mr. Wilson.  Compl. ¶ 2.

Mr. Wilson's July 6, 2003 article, entitled "What I Didn't Find in Africa," essentially questioned the veracity of President Bush's State of the Union Address of January 2003 and, in particular, President Bush's statement that "[t]he British government has learned that Saddam Hussein recently sought significant quantities of uranium from Africa." *Id.* ¶ 18(a), (n).

On September 13, 2006, the Wilsons filed an Amended Complaint. In this Amended Complaint, the Wilsons added former Deputy Secretary of State Richard Armitage as a defendant. However, the Amended Complaint does not allege that Mr. Armitage participated in the supposed conspiracy engaged in by the other named defendants. Nor does the Amended Complaint allege (in contrast to the allegations against the other defendants) that Mr. Armitage revealed Ms. Wilson's employment status out of "vindictiveness" or "illegitimate animus." Am. Comp. ¶ 52. Mr. Armitage is not alleged to have violated Mr. Wilson's First Amendment right to freedom of speech, and so is not a defendant in Count I of the Amended Complaint. Mr. Armitage also is not named in Count II, which alleges a violation of the Wilsons' Fifth Amendment right to equal protection of the laws.

Rather, the Amended Complaint asserts three claims against Mr. Armitage. Count III alleges that Mr. Armitage (in addition to the other defendants) violated Ms. Wilson's constitutional right to privacy by disclosing "personal information" about Ms. Plame. Count IV alleges that Mr. Armitage and the other defendants deprived Ms. Wilson of her constitutional right to property, apparently by interfering with her continued employment as a covert CIA agent. Lastly, Count V alleges a District of Columbia tort against Mr. Armitage and the other defendants for "public disclosure of private facts."

The factual support for the claims against Mr. Armitage is briefly set out at paragraphs 36-39 of the Amended Complaint. The Wilsons allege that on June 13, 2003, Mr. Armitage met with *Washington Post* reporter Bob Woodward in Mr. Armitage's State Department office and

informed Woodward during the course of that conversation that Ms. Wilson worked as an analyst at the CIA.  *Id.* ¶ 37.  The Wilsons also allege that Mr. Armitage disclosed her employment at the CIA to journalist Robert Novak in a July 8, 2003 meeting at Mr. Armitage's State Department office.  *Id.* ¶ 39.

For the purposes of this motion, Mr. Armitage will assume *arguendo* that the factual allegations contained in the Amended Complaint are true.  Nevertheless, as demonstrated below, these facts fail to state any claim against Mr. Armitage, and the Court therefore should dismiss all claims against Mr. Armitage.  Fed. R. Civ. P. 12(b)(6).

## ARGUMENT

### I. NUMEROUS "SPECIAL FACTORS COUNSELING HESITATION" EXIST THAT COMPEL DISMISSAL OF THE ALLEGED CONSTITUTIONAL VIOLATIONS AGAINST MR. ARMITAGE (COUNTS III AND IV)

In Counts III and IV of the Amended Complaint, Ms. Wilson alleges that Mr. Armitage and the other defendants violated Ms. Wilson's constitutional "right to privacy" and "right to property" by disclosing that she was a CIA employee.  For both Counts III and IV, Ms. Wilson expressly cites to "the rule of *Bivens*" as the basis for bringing these constitutional claims.  Am. Compl. ¶¶ 4, 58, 64.  Thus, Ms. Wilson asks the Court to create these causes of action in order to sanction Mr. Armitage's alleged conduct.

Ms. Wilson's reliance on *Bivens* is misplaced.  While the *Bivens* Court recognized that, in certain limited instances, a plaintiff may seek damages from federal officials for alleged violations of constitutional rights, it made clear that constitutional tort causes of action are not to be inferred where there are "special factors counseling hesitation in the absence of affirmative action by Congress."  403 U.S. at 396-97.  In the instant case, numerous "special factors" foreclose the availability of a *Bivens* cause of action.

Since *Bivens*, the Supreme Court repeatedly has held that the "special factors" exception precludes judicial creation of an implied remedy for alleged constitutional violations. *See Schweiker v. Chilicky*, 487 U.S. 412 (1988); *United States v. Stanley*, 483 U.S. 669 (1987); *Bush v. Lucas*, 462 U.S. 367 (1983); *Chappell v. Wallace*, 462 U.S. 296 (1983). Congressional action touching on the subject matter of a plaintiff's lawsuit is the "special factor" most commonly found to preclude recognition of a *Bivens* cause of action. Where Congress has explicitly considered an issue and developed a remedial scheme, the courts should refrain from fashioning their own remedy. For example, in *Bush v. Lucas*, the plaintiff alleged that he had been demoted in retaliation for certain statements he had made about his government job, and that this demotion violated his First Amendment rights. 462 U.S. at 369-72. The Supreme Court noted that plaintiff's claims arose out of an employment relationship governed by "comprehensive procedural and substantive provisions giving meaningful remedies against the United States[.]" The Court concluded that "it would be inappropriate for [the court] to supplement that regulatory scheme with a new judicial remedy" and dismissed the alleged constitutional cause of action. *Id.* at 368.

In *Chilicky*, the Court addressed a claim for improper denial of Social Security disability benefits allegedly resulting from due process violations by government officials who administered the program. The Court declined to create a *Bivens* remedy. According to the Court, Congress is in a "better position to decide whether or not the public interest would be served by creating it [a remedy]," and Congress had implicitly determined that this damages remedy was unnecessary. *Chilicky*, 487 U.S. at 427 (quoting *Bush*, 462 U.S. at 390). The Court so held notwithstanding the fact that Congress had failed to provide the plaintiff with "complete relief" and that plaintiffs' injuries "must now go unredressed." *Chilicky*, 487 U.S. at 425; *see also id.* at 421-22 ("the absence of statutory relief for a constitutional violation, for example,

does not by any means necessarily imply that courts should award money damages against the officers responsible for the violation"). *Chilicky* therefore makes clear that legislation may be a "special factor counseling hesitation" even where Congress provides an incomplete or insufficient remedy.[2]

The case law reflects the courts' respect for the separation of powers and, in particular, the policy judgments of Congress. As the *Bush* Court noted, the judiciary is in no position to create a private remedy where Congress already has considered and constructed a statutory framework for addressing the grievances of federal civil servants. *See* 462 U.S. at 390 ("we are convinced that Congress is in a better position to decide whether or not the public interest would be served by creating [the private remedy]"); *Chilicky*, 487 U.S. at 427 ("Congress is in a better position to decide whether or not the public interest would be served by creating [a damages remedy]."); *Spagnola v. Mathis*, 859 F.2d 223, 288 (D.C. Cir. 1988) ("it is not for the judiciary to question whether Congress' response was the best response") (quotation marks and citation omitted).

In this case, Congress has focused on the very issues and conduct that form the basis for the Wilsons' allegations. The Privacy Act of 1974, the Intelligence Identities Protection Act of 1982, the remedial processes available at the CIA for employee grievances, and national security concerns, all are "special factors" that argue convincingly against creating a judicial remedy for the supposed constitutional violations alleged against Mr. Armitage.

---

[2]    This Circuit's decision in *Spagnola v. Mathis*, 859 F.2d 223 (D.C. Cir. 1988), confirms the point. The court affirmed dismissal of a former federal employee's *Bivens* claims on the ground that the Civil Service Reform Act ("CSRA") was a special factor precluding recognition of a judicial remedy. The D.C. Circuit recognized that the CSRA failed to provide the plaintiff with any means for redressing the alleged constitutional violations. Yet, the *Spagnola* court concluded that Congress had "not inadvertently" omitted to provide a remedy, and therefore it would be inappropriate for the courts to create one. *Id.* at 229.

A.    **The Privacy Act Is A "Special Factor" Precluding Creation Of A *Bivens* Cause Of Action Against Mr. Armitage**

The Amended Complaint alleges that Mr. Armitage violated Ms. Wilson's constitutional rights by disclosing to two journalists that Ms. Wilson was employed by the CIA. In Count III, Plaintiff Wilson complains that the disclosure of her employment with the CIA "violate[d] the . . . United States Constitution, which prohibits government officials from violating any individual's right to privacy by publicly disclosing personal information." Am. Compl. ¶ 56. Count IV alleges that her Due Process Clause rights were violated "because exposure of the Plaintiff's covert status injured her ability to obtain other employment." *Id.* ¶ 61. Thus, the gravamen of Ms. Wilson's constitutional claims is the allegedly wrongful disclosure of her "private" employment status with the CIA.

Congress considered and addressed the very conduct and injury at the center of this lawsuit in enacting the Privacy Act of 1974, 5 U.S.C. § 552a. "The Privacy Act of 1974 regulates the collection, maintenance, use and dissemination of information concerning individuals." *Downie*, 301 F.3d at 696 (citation and quotation marks omitted). The Privacy Act explicitly covers "any item, collection, or grouping of information about an individual" maintained by the United States Government. 5 U.S.C. § 552a(a)(4). The Privacy Act mandates, with certain delineated exceptions, that "no Agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains."[3]  5 U.S.C. § 552a(b). Any failure to comply with the Act subjects the offending Agency to suit in federal district court. 5 U.S.C. § 552a(g)(1)(D).

---

[3]    A "record," for purposes of the Act, can be "any item . . . of information about an individual that is maintained by an Agency."

This Circuit and other courts in this jurisdiction and elsewhere have found the Privacy Act to be a "special factor" foreclosing the creation of any *Bivens* remedy in government "leak" cases closely comparable to the instant case. In *Chung*, an FBI confidential informant brought *Bivens* actions against unknown officials at the Department of Justice (DOJ) for allegedly leaking information regarding the plaintiff's cooperation with government investigators. *Chung*, 2001 WL 34360430, at *2. Like Plaintiffs here, Chung charged that disclosure of his status as an undercover agent in the criminal investigation was improper and had placed his life in jeopardy. Chung's lawsuit asserted that the leaks about his undercover status violated his constitutional rights and sought redress under a *Bivens* theory. *Id*.

The federal district court in *Chung* granted dismissal under Federal Rule of Civil Procedure 12(b)(6), concluding that the *Bivens* claims were precluded by the Privacy Act. In a lengthy opinion, the court found the Privacy Act to be a comprehensive remedial scheme that constituted a special factor counseling against the creation of *Bivens* liability in the case. The district court cited a long list of cases supporting the view that constitutional claims brought for leaking an individual's undercover status "were unavailable 'given the comprehensive remedial structure of the Privacy Act.'" *Chung*, 2001 WL 34360430, at *9 (quoting *Williams v. Department of Veteran Affairs,* 879 F. Supp. 578, 580-81 (E.D. Va. 1995)). The *Chung* court concluded:

> [T]he Court finds that all of the plaintiff's claims stem from the alleged leaks -- namely, the allegedly wrongful disclosure of government records, that the Privacy Act comprehensively covers such claims and accordingly has not inadvertently omitted damages remedies, and that Congress has not plainly expressed an intention to preserve *Bivens* remedies. Thus, the Court will not recognize a *Bivens* action for the plaintiff's constitutional claims in this case.

*Chung*, 2001 WL 34360430, at *12 (citations omitted).

Chung then appealed this ruling to the court of appeals. The D.C. Circuit was clear and emphatic in agreeing with the lower court that the Privacy Act precluded his constitutional claims concerning the improper leaks:

> We affirm the dismissal of Chung's constitutional claims because, as the district court correctly held, they are encompassed within the remedial scheme of the Privacy Act. *See Chung v. Dep't of Justice*, No. 00-CV-1912, slip op. at 17-26 (D.D.C. Sept. 20, 2001) (citing *Spagnola v. Mathis*, 859 F.2d 223, 228 (D.C. Cir. 1988) (en banc) (per curiam)).

333 F.3d at 274. Given the similar facts and legal theories, the D.C. Circuit's decision in *Chung* should be dispositive of the instant case.

 More recently, a court in this jurisdiction followed *Chung* and its reasoning in dismissing constitutional claims based on government leaks of personal information in a high profile matter. *Hatfill v. Ashcroft*, 404 F. Supp. 2d 104 (D.D.C. 2005). The plaintiff in *Hatfill* complained that he was the victim of leaks and public statements by FBI and Justice Department officials during the investigation of the anthrax attacks in 2001 and charged that his First and Fifth Amendment rights were violated. *Id*. at 108-09. Pertinent here, he claimed specifically that the government's actions in publicly identifying him as a "person of interest" and leaking his personal information precluded him from his chosen employment and deprived him of his liberty in violation of the Due Process Clause. *Id*. The *Hatfill* court dismissed the claims, holding that the Privacy Act precluded the judicial creation of a remedy: "the Privacy Act, being a comprehensive legislative scheme that provides a meaningful remedy . . . qualifies it as a special factor counseling hesitation against the applicability of *Bivens*." *Id.* at 116.[4]

---

[4]     The Sixth Circuit in *Downie v. City of Middleburg Heights*, 301 F.3d 688, 696 (6th Cir. 2002), also found that the Privacy Act precluded the plaintiff's constitutional claims. Downie alleged that he was an undercover operative for the U.S. Customs Service who was retaliated against for resigning and criticizing the Service. Along with blackballing Downie and his assistant, the defendants were alleged to have caused the entry of false records in police files and to have engaged in a campaign to discredit him.

**Footnote continued**

*Hatfill* and *Chung* are directly on point.   In each case, the plaintiff alleged that government officials leaked confidential personal information to the media and sought to assert constitutional violations against federal officials.   Ms. Wilson makes the same allegations of improper disclosure of confidential information and asserts constitutional violations.   In both *Hatfill* and *Chung*, the courts determined that Congress had spoken on the issue of government leaks of the sort alleged here by enacting the Privacy Act, which established a comprehensive remedial scheme addressing the inappropriate disclosure of personal information by government officials.   Consistent with the decisions in *Hatfill* and *Chung*, this Court should find the Privacy Act to be a special factor precluding creation of a *Bivens* remedy against Mr. Armitage.

### B.    The Grievance Procedures Available To Federal Employees Are A "Special Factor" Precluding Creation Of A *Bivens* Cause Of Action Against Mr. Armitage

Ms. Wilson contends that she suffered an adverse employment action as a result of Mr. Armitage's disclosure of her CIA status.   According to the Amended Complaint, the improper disclosure of her CIA employment "impaired [] her ability to carry out her duties at the CIA, and to pursue her career there serving her country as she had planned."  Am. Compl. ¶ 43.[5]

---

**Footnote continued from previous page**

Nevertheless, the appeals court concluded that "the fact that the Privacy Act is a comprehensive legislative scheme that provides a meaningful remedy for the wrong Downie alleges is sufficient as a 'special factor [] counseling hesitation' for us to refuse to imply a separate damages remedy under *Bivens*."  *Id*. at 697; *see also Chung*, 2001 WL 34360430, at *10 (numerous cases cited and quoted in support of proposition that "[t]he Privacy Act provides a comprehensive scheme for addressing plaintiff's concerns about the disclosure of records to third parties . . .") (quoting *Mangino v. Department of Army*, 1994 WL 477260, at *9 (D. Kan. Aug. 24, 1994)).

[5]    Count IV of the Amended Complaint, in which Ms. Wilson alleges a violation of her right to continued employment as a covert agent, obviously is dependent upon her suffering some adverse employment action.  Absent an adverse employment action, Ms. Wilson plainly has not been deprived of any property interest.

Congress has afforded federal employees numerous avenues for redressing personnel grievances, and the availability of these remedies is a special factor foreclosing any *Bivens* remedy. *See Bush*, 462 U.S. at 367 (employee has no cause of action for damages under the First Amendment "in view of the available remedies under the Civil Service Commission regulations"); *Spagnola*, 859 F.2d at 230 (the CSRA [Civil Service Reform Act] is a special factor "preclud[ing] the creation of a Bivens remedy for civil service employees and applicants who advance constitutional challenges to federal personnel actions"); *Moore v. Glickman*, 113 F.3d 988 (9th Cir. 1997) (employee's statutory right to Administrative Procedures Act (APA) review of her termination by the Agricultural Stablilization and Conservation Service precluded her *Bivens* claim); *Berry v. Hollander*, 925 F.2d 311 (9th Cir. 1991) (denying a *Bivens* claim to a Veterans Administration physician because he was subject to the regulations of the Department of Medicine and Surgery).

Employees of the CIA also are afforded procedures for addressing personnel grievances. Internal CIA regulations establish protections for agency personnel. *See* U.S. GEN. ACCOUNTING OFFICE, GAO/NSIAD-96-6, INTELLIGENCE AGENCIES: PERSONNEL PRACTICES AT CIA, NSA, AND DIA COMPARED WITH THOSE OF OTHER AGENCIES 28 (1996) ("GAO Report"). Judicial review may be available under the APA if the Agency violates its own internal employment procedures, at least for matters other than termination. *See Webster v. Doe*, 486 U.S. 592, 602 n.7 (1988); *Wilkinson v. Legal Servs. Corp.*, 27 F. Supp. 2d 32, 56 (D.D.C. 1998). In addition, CIA employees may raise personnel issues with the Inspector General of the Agency or with the President's Intelligence Oversight Board. *See* Letter from Nora Slatkin (Executive Director of the CIA) to Richard Davis (GAO) (Jan. 18, 1996), *in* GAO Report at 48-49 (1996).

To the extent that the employment rights of a CIA employee are more limited than those of other federal employees, that difference reflects the deliberate and considered judgment of

Congress.[6]  Congress has not "inadvertently" failed to provide Ms. Wilson with a remedy; to the contrary, Congress has evaluated in what circumstances the public interest would be served by affording CIA employees specific employment protections.  *See Chilicky,* 487 U.S. 424.  As the Eleventh Circuit noted concerning a federal employee who did not enjoy any judicial or administrative remedies under the Civil Service Reform Act ("CSRA"):

> The exclusion of certain classes of employees from the remedies provided by the CSRA reflects not Congressional silence from which courts may imply that an excluded employee is 'free to pursue whatever judicial remedies he would have had before enactment of the CSRA' . . . but rather congressional intent to *deny* the excluded employee specific protections otherwise afforded by the Act.  In light of Congress' deliberate exclusion of certain employees from the protections of the CSRA and this country's long-respected separation of powers doctrine, courts should be hesitant to provide an aggrieved plaintiff with a remedy where Congress has intentionally withheld one.

*Lee v. Hughes,* 145 F.3d 1272, 1276 (11th Cir. 1998).

Consequently, the comprehensive remedial scheme for the personnel grievances of federal employees -- whether or not it provides full remedies to CIA employees in all circumstances -- is another special factor counseling against creation of a *Bivens* claim here. Ms. Wilson's complaints about improper actions being taken against her in the workplace and harming her employment at the CIA should be addressed through the personnel scheme established by Congress and not through a judicially created cause of action.

### C.    The Intelligence Identities Protection Act Is A "Special Factor" Precluding Creation Of A *Bivens* Cause Of Action Against Mr. Armitage

Perhaps the clearest Congressional indication of concern with the precise conduct at issue in the Wilsons' Amended Complaint is the Intelligence Identities Protection Act of 1982

---

[6]     Congress has exempted CIA personnel from certain federal employment statutes.  *See, e.g.,* 5 U.S.C. § 7511(b)(7) (excluding CIA employees from certain provisions in Civil Service Reform Act). Congress also has provided that the Director of the CIA may terminate any CIA employee at will.  50 U.S.C. § 403-4a(e)(1).

("IIPA"), 50 U.S.C § 421 *et seq*.  In connection with the IIPA, Congress carefully considered the issue of the public disclosure of a CIA agent's identity.  Congress held several hearings from 1979 to 1982 on this topic and issued no fewer than six reports addressing how to prevent and protect covert agents from being "outed."[7]   The result was the IIPA, which criminalizes the disclosure of a secret operative's identity in certain defined instances and reflects the considered policy of Congress.  According to one Senate Report, the IIPA "strikes a proper and constitutional balance between the needs of a free society for information that might contribute to informed debate on public policy issues and the compelling concerns of the men and women who serve our nation's intelligence agencies at great risk and sacrifice." S. Rep. No. 97-201, at 161-62 (Oct. 6, 1981).

Although Congress enacted the IIPA to punish criminally the intentional disclosure of certain CIA employees' identity, it did not authorize any civil liability or create any private right of action.  This reticence in establishing a civil remedy may reflect a congressional judgment that the confidentiality of a CIA agent's identity is to advance institutional and national security objectives, and not private personal interests.  Whatever the reasons, Congress engaged in lengthy legislative deliberations leading up to passage of the IIPA but chose not to create a civil remedy for public disclosure of a CIA agent's status.  Congress clearly knew how to create a civil right of action for the affected CIA employees but declined to do so.  The IIPA is a special factor precluding the creation of any *Bivens* remedy because the Court may not rebalance the various equities considered by Congress in enacting the criminal sanctions of the IIPA but not creating a civil remedy for the affected CIA employees.

---

[7]    *See* S. Rep. No. 96-730 (May 15, 1980); S. Rep. No. 96-990 (Sept. 24, 1980); S. Rep. No. 96-896 (Aug. 13, 1980); S. Rep. No. 97-201 (Oct. 6, 1981); H.R. Rep. No. 96-1219 (Part I:  Aug. 1, 1980, Part II: Sept. 4, 1980); H.R. Rep. No. 97-221 (Sept. 10, 1981).

#### D.    National Security Concerns Are A "Special Factor" Precluding Creation Of A *Bivens* Cause Of Action Against Mr. Armitage

National security concerns also are a special factor precluding the recognition of Ms. Wilson's constitutional tort claims.  National security issues would inevitably arise were this case somehow to proceed to discovery and trial.  For example, in calculating damages, the trier of fact would need to know Ms. Wilson's salary, how long she was employed at the CIA, and a projected number of years Ms. Wilson would continue to be employed as a covert agent.  The CIA also would be required to disclose extensive information about the workings of its program for CIA operatives.  Courts are ill-equipped to review these types of secret national security activities.

The Supreme Court repeatedly has withheld judicial review in cases raising these exact concerns.  *See Tenet v. Doe*, 544 U.S. 1, 8 (2005) (refusing to enforce alleged secret agreement with CIA and stating that "[p]ublic policy forbids the maintenance of any suit in a court of justice, the trial of which would inevitably lead to the disclosure of matters which the law itself regards as confidential") (quoting and reaffirming holding of *Totten v. United States*, 92 U.S. 105, 107 (1876)); *CIA v. Sims*, 471 U.S. 159, 175 (1985) ("Even a small chance that some court will order disclosure of a source's identity could well impair intelligence gathering and cause sources to 'close up like a clam.'"); *Weinberger v. Catholic Action of Haw./Peace Ed. Project*, 454 U.S. 139, 146-47 (1981) (precluding on national security grounds a lawsuit that would require Navy to admit or deny "that it propose[d] to store nuclear weapons").

The Wilsons' lawsuit cannot go forward without implicating sensitive CIA activities.  Consequently, this Court should not create a private right of action under *Bivens* in the face of such national security concerns.  *See, e.g., Beattie v. Boeing Co.*, 43 F.3d 559, 563 (10th Cir. 1994) ("the predominant issue of national security clearances amounts to such a special factor

16

counseling against recognition of a *Bivens* claim in this case"); *Arar v. Ashcroft*, 414 F. Supp. 2d 250, 283 (E.D.N.Y. 2006) (refusing to recognize *Bivens* action for Syrian national who alleged that he was removed from the United States to Syria so that he could be tortured and noting that "the task of balancing individual rights against national-security concerns is one that courts should not undertake without the guidance or authority of the coordinate branches, in whom the Constitution imposes responsibility for our foreign affairs and national security").

## II.    THE CONSTITUTIONAL CLAIMS (COUNTS III AND IV) SHOULD BE DISMISSED BECAUSE MR. ARMITAGE HAS QUALIFIED IMMUNITY

The Court must dismiss Counts III and IV of the Complaint for a separate reason: Mr. Armitage possesses qualified immunity from suit and did not violate a "clearly established" constitutional right.

"[P]ermitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Accordingly, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate a clearly established statutory or constitutional right of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

"Clearly established" in this context means "settled, indisputable law." *Zweibon v. Mitchell*, 720 F.2d 162, 172-73 (D.C. Cir. 1983). In other words, the constitutional right alleged to have been infringed must be "basic" and "unquestioned." *Id.* An abstract right is not clearly established; the right must "particularized." *Anderson*, 483 U.S. at 640. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.*; *see also Saucier v. Katz*, 533 U.S. 194, 202 (2001) ("The relevant,

dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."). Consequently, qualified immunity cannot be overcome if there is some question as to whether the rule extends to the facts at issue. *See Malley v. Briggs*, 475 U.S. 335, 341 (1986) (qualified immunity required unless the unlawfulness of the official's conduct would have been apparent to all but the "plainly incompetent"); *Crawford-El v. Britton*, 523 U.S. 574, 592-93 (1988) (noting that "there may be doubt as to the illegality of the defendant's particular conduct" even where the general rule has been well established).

In Counts III and IV of the Amended Complaint, Ms. Wilson alleges violations of her constitutional "right to privacy" and "right to property," respectively. But neither the right to privacy in personal information nor the right to property in employment with the federal government cited in the Amended Complaint are "clearly established" in the Constitution or constitutional jurisprudence. Because there is considerable doubt about the existence of the constitutional rights alleged by the Wilsons, Mr. Armitage is entitled to qualified immunity and Counts III and IV must be dismissed.[8]

## A.  Ms. Wilson Does Not Allege A Violation of Any Clearly Established "Right to Privacy" (Count III)

In Count III, Ms. Wilson asserts that Mr. Armitage and the other defendants violated her "Fifth Amendment Right to Privacy."  According to Ms. Wilson, the Fifth Amendment "prohibits government officials from violating any individual's right to privacy by publicly disclosing personal information."  Am. Compl. ¶ 56.  While the Supreme Court has recognized a

---

[8]       The Court may (and should) decide the applicability of the qualified  immunity defense on a motion to dismiss.  *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.").

limited constitutional right to privacy, that right is very different right from the right Ms. Wilson here alleges and never has been thought to encompass the fact of a person's employment by a government agency.

For example, in *Griswold v. Connecticut*, the Supreme Court held that a husband and wife enjoy a constitutional "zone of privacy" with respect to the marital relationship. 381 U.S. 479, 485-86 (1965). Thus, the State of Connecticut could not lawfully proscribe the use of contraceptives by married couples. *Id*. ("Would we allow the police to search the sacred precincts of marital bedrooms for telltale signs of the use of contraceptives? The very idea is repulsive to the notions of privacy surrounding the marriage relationship."). Similarly, the Court stated in *Roe v. Wade* that a right to privacy may be inferred from the Fourteenth Amendment's "concept of personal liberty" and that "[t]his right of privacy . . . is broad enough to encompass a woman's decision whether or not to terminate her pregnancy." 410 U.S. 113, 153 (1973).

But *Griswold* and *Roe* do not address whether the limited right to privacy extends beyond the intimacies of marriage and procreation to reach "the individual interest in avoiding disclosure of personal matters." *See Whalen v. Roe*, 429 U.S. 589, 599 (1977).[9] Only two Supreme Court decisions have addressed the so-called right to "informational privacy," and both decisions have *declined* to recognize such a right.

First, in *Whalen v. Roe*, the Court considered a constitutional challenge to a New York State statute requiring the recording (in a centralized file maintained by the State) of the names and addresses of all persons who had obtained certain prescription drugs. 429 U.S. 589 (1977).

---

[9]     *Whalen* notes a dichotomy in "privacy" cases.  429 U.S. at 599 ("The cases sometimes characterized as protecting 'privacy' have in fact involved at least two different kinds of interests."). On the one hand are cases such as *Griswold* that concern "the interest in independence in making certain kinds of important decisions." *Id*. On the other hand are cases (such as the case at bar) concerning "the individual interest in avoiding disclosure of personal matters." *Id.*

Respondents argued that the statute violated a constitutional right to privacy. The Court rejected the argument and refused to address whether the Constitution precludes the disclosure of personal information about prescription drug use. *Id*. at 605-06. In passing on the constitutional question, the Court stated only that such a right "*arguably* has its roots in the Constitution" in "some circumstances." *Id*. at 605 (emphasis added).

Later, in *Nixon v. Administrator of General Services*, the Court rejected former President Nixon's argument that the Presidential Recordings and Materials Preservation Act ("Act") unconstitutionally infringed upon his right to privacy. 433 U.S. 425 (1977). The Act required the Administrator of General Services, *inter alia*, to (i) review all of President Nixon's papers, including private papers unrelated to his Presidency, (ii) return private papers to President Nixon, and (iii) maintain other papers in the custody of the United States. *Id*. at 433-36. The Court rejected the argument that the Act unconstitutionally made public the personal information of President Nixon. However, similar to *Whalen*, the Court declined to decide whether President Nixon in fact had a constitutional right to informational privacy (with respect to his personal papers). The Court noted only that it "*may* agree" that such a right exists. *Id*. at 457 (emphasis added).

*Whalen* and *Nixon* illustrate that the informational right to privacy at issue in the instant case is far from "clearly established." Case law from this circuit confirms the point. In *American Federation of Government Employees, AFL-CIO v. HUD*, 118 F.3d 786 (D.C. Cir. 1997), the D.C. Circuit considered a constitutional challenge to mandatory questionnaires requiring designated HUD employees to answer questions about illegal drug use and their financial history. Plaintiffs argued that the questionnaires violated "a constitutional right of privacy in the nondisclosure of personal information." *Id*. at 791. The court rejected the argument without specifically ruling on whether such a right exists. The court nonetheless took

pains to emphasize its "*grave doubts* as to the existence of a constitutional right of privacy in the nondisclosure of personal information." *Id.* (emphasis added).

This Court need go no further than *American Federation of Government Employees*. The "grave doubts" expressed by the D.C. Circuit in that case conclusively demonstrate that the right to privacy in personal information is anything but "settled, indisputable law." *Zweibon*, 720 F.2d at 172-73. Because Ms. Wilson's alleged "right" to maintain the privacy of her employment status is not clearly established, Count III of the Amended Complaint must be dismissed on qualified immunity grounds.[10]

**B.    Ms. Wilson Does Not Allege A Violation of Any Clearly Established "Right to Property" (Count IV)**

Count IV of the Amended Complaint likewise fails to allege any clearly established constitutional right. Here Ms. Wilson alleges that Mr. Armitage and the other defendants violated her "Fifth Amendment Right to Property" by (i) depriving her "of a property interest in employment without due process" and (ii) "injur[ing] her ability to obtain other employment." Am. Compl. ¶¶ 60-61.

---

[10]    Even if there were a clearly established right to "personal information," Ms. Wilson alleges the disclosure of an institutional secret -- her employment status -- and not "personal information" such as medical records or financial information. *See* Am. Compl. ¶¶ 37, 39 (alleging that Mr. Armitage revealed to reporters that Ms. Wilson "worked for the CIA on weapons of mass destruction"). There certainly is no clearly established constitutional right to keep private the fact of one's employment with the federal government. This is information known by hundreds, if not thousands, of other government employees. Significantly, the CIA maintains the secrecy of its agents for institutional reasons in order to advance its national security mission and not for any "personal" or "privacy" reasons. Consequently, the CIA may choose to declassify the status of an agent pursuant to its regulatory authority, if deemed necessary to advance U.S. security or other policy interests.

These allegations are puzzling.[11]   In fact, the Amended Complaint does not allege that any defendant (or the government generally) took any adverse employment action against Ms. Wilson.   Ms. Wilson nowhere asserts that she was terminated, demoted or denied a promotion.   To the contrary, Ms. Wilson admits that she was an employee of the CIA *until January 2006* (two and one-half years after the allegedly offending conduct and press articles), at which time she apparently decided to leave the agency on her own accord.   Am. Comp. ¶ 7. In these circumstances, Ms. Wilson's claim does not appear to allege that she suffered any employment injury, constitutional or otherwise.

In any event, Ms. Wilson cannot contend that she somehow had a constitutionally protected property interest in continuing her status as a covert CIA agent.   The pertinent statutory authority makes clear that Ms. Wilson had no continuing property interest in *any* employment with the CIA, let alone employment as a covert agent.   The Director of the CIA may, *in his or her discretion*, terminate any Agency employee.   50 U.S.C. § 403-4a(e)(1).[12]   According to the Supreme Court, the statute "exhibits . . . extraordinary deference to the Director in his decision to

---

[11]       Mr. Armitage was the Deputy Secretary of the Department of State; he did not work for the CIA and was not Ms. Wilson's supervisor.  *Id*. ¶ 12.  Mr. Armitage plainly had no authority to terminate, demote or deny a promotion to Ms. Wilson, and the Amended Complaint does not allege otherwise.

[12]       The statute provides:

Termination of employment of CIA employees

Notwithstanding the provisions of any other law, the Director of the Central Intelligence Agency may, in the discretion of the Director, terminate the employment of any officer or employee of the Central Intelligence Agency whenever the Director deems the termination of employment of such officer or employee necessary or advisable in the interests of the United States.

50 U.S.C. § 403-4a(e)(1).

terminate individual employees." *Webster v. Doe*, 486 U.S. 592, 601 (1988) (interpreting almost identical language in precursor statute).

Ms. Wilson cannot state a constitutional violation because "[t]hose who are terminable at will have no property interest" in continued employment. *Hall v. Ford*, 856 F.2d 255, 265 (D.C. Cir. 1988). The decision of *Doe v. Gates*, 981 F.2d 1316 (D.C. Cir. 1993), makes this very point in connection with CIA employment. In that case, Doe complained, *inter alia*, that his constitutional right to continued employment was violated when the CIA terminated his employment because of sexual orientation. In rejecting Doe's argument, the appeals court emphasized the "extraordinary deference" due to the Director in personnel decisions and held that such deference precluded any property interest in continued employment. *Id*. at 1320-21.[13] *See also Department of Navy v. Egan*, 484 U.S. 518, 528 (1988) ("It should be obvious that no one has a 'right' to a security clearance."); *Doe v. Cheney*, 885 F.2d 898 (D.C. Cir. 1989) (NSA employee has no due process interest when deprived of access to classified information and discharged).

Ms. Wilson manifestly had no "clearly established" property right to continued employment as a covert CIA agent. Accordingly, Mr. Armitage is immune from suit, and Count IV must be dismissed.

---

[13] The Court went on to reject Doe's argument that an Agency handbook and statements made to Doe somehow created a property interest. The Court stated:

> Understandings which in other circumstances might suggest the existence of a property right cannot do so when they are at odds with the intent of the legislature regarding the employment entitlements that can be conferred. The law is clear that if a statute relegates termination decisions to the discretion of the Director, no property entitlement exists, and any employee's statements to the contrary have no binding force.

*Id*. (citations and quotation marks omitted). Thus, notwithstanding whatever Ms. Wilson believed, she never had any property interest in continued employment at the CIA -- let alone a property interest in maintaining her status as a covert agent.

Ms. Wilson also may assert that her Fifth Amendment right to liberty was violated "because the exposure of the Plaintiff's covert status injured her ability to obtain other employment."[14]  Am. Compl. ¶ 61.  This contention fails both factually and legally.  As noted above, the Amended Complaint makes clear that Ms. Wilson remained employed by the CIA for more than two years after Novak's article publicly revealed her employment.  *Id*. ¶ 7. Ms. Wilson did not leave the Agency until January 2006, at which time she apparently left the Agency on her own accord.  *Id*.  Mr. Armitage's alleged actions quite obviously never "injured her ability to obtain other employment" -- to the contrary, Ms. Wilson never lost employment but left voluntarily.

Ms. Wilson's contention fails from a legal standpoint because the pertinent inquiry is whether Mr. Armitage's alleged actions somehow deprived Ms. Wilson of all work across her profession.  Thus, in *M.K. v. Tenet*, the court dismissed a former CIA agent's due process claim because the former agent "neither allege[d] that the CIA automatically excluded her from a definite range of employment opportunities with the government nor broadly precluded her from continuing in her chosen career."   196 F. Supp. 2d 8, 15-16 (D.D.C. 2001) ("While it appears that plaintiff C.T. has been denied employment in the specific position she previously held, there is nothing to suggest that she would be unable to gain employment in another government job, or in the private sector within her career field."); *see, e.g., O'Donnell v. Barry*, 148 F.3d 1126, 1139 (D.C. Cir. 1998) ("A loss of rank, status and pay alone is not actionable under the Due Process Clause.").

---

[14]    Count IV refers only to a violation of the "right to property" and not a "right to liberty."  An alleged injury to future employment raises a liberty, not property interest.  *See Mazaleski v. Treusdell*, 562 F.2d 701, 709-11 (D.C. Cir. 1997).

As Ms. Wilson's continued employment with the CIA after 2003 shows, she was not excluded from all work in her profession. There also is no reason to believe that she would be unable to gain employment in another government job or in the private sector in the foreign policy area. Therefore, she has not stated a violation of any "liberty" interest. Given the absence of any allegation of a clearly established constitutional right to liberty, the Court must grant qualified immunity in favor of Mr. Armitage and dismiss Count IV.

## III.    UNDER THE WESTFALL ACT, MR. ARMITAGE IS NOT SUBJECT TO STATE TORT LIABILITY (COUNT V)

Count V of the Amended Complaint, alleging the District of Columbia tort of "public disclosure of private facts," must be dismissed as to Mr. Armitage because the Federal Employees Liability Reform and Tort Compensation Act of 1988 ("Westfall Act"), 28 U.S.C. § 2679, provides that a federal employee is not personally liable for state torts so long as the employee is "acting within the scope of his office or employment at the time of the incident out of which the claim arose." 28 U.S.C. § 2679(d)(1). The Westfall Act's protection from state tort liability attaches regardless of whether the federal employee's alleged conduct was legal or illegal, intentional or unintentional. Provided the employee is "acting within the scope of his office or employment," the tort victim's only recourse is to sue the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680. For purposes of substituting the United States under the Westfall Act in Count V, the only issue is whether Mr. Armitage was acting within the scope of his employment in discussing foreign policy matters with journalists Woodward and Novak. *See* Am. Compl. ¶¶ 37, 39.

The Attorney General's designee already has certified that Mr. Armitage was acting within the scope of his office, *see* attached Exhibit A, and Mr. Armitage understands that the United States will move to substitute itself as the party defendant for Mr. Armitage. *See* 28

U.S.C. § 2679(d)(1) ("Upon certification . . . any civil action or proceeding commended upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant."). Mr. Armitage nonetheless anticipates that the Wilsons will challenge the government's substitution on the ground that Mr. Armitage somehow was not acting within the scope of his employment in speaking to reporters. Any such a challenge is without merit.

The certification of the Attorney General constitutes prima facie evidence that Mr. Armitage was, in fact, acting within the scope of his employment. *Council on Am. Islamic Relations v. Ballenger*, 444 F.3d 659, 662 (D.C. Cir. 2006). "A plaintiff challenging the government's scope-of-employment certification bears the burden of coming forward with specific facts rebutting the certification." *Id.* (quoting *Stokes v. Cross*, 327 F.3d 1210, 1214 (D.C. Cir. 2003)). The specific facts must be found in the complaint, and the court should dismiss the complaint "where a plaintiff fails to allege any facts that, if taken as true, would demonstrate that the defendant was acting outside the scope of his employment." *Healy v. United States*, 435 F. Supp. 2d 157, 162 (D.D.C. 2006). Here, the Wilsons fail to allege any facts that would defeat the substitution of the United States as the party defendant for Mr. Armitage.[15]

*Respondeat superior* law of the District of Columbia sets forth the appropriate guideposts in determining scope of employment issues. *Ballenger*, 444 F.3d at 663. The District of

---

[15] The Court obviously should not credit the Amended Complaint's bare legal conclusion that all defendants acted "outside the scope of their employment." Am. Compl. ¶ 60. *See, e.g., Maron v. United States*, 126 F.3d 317, 323 (4th Cir. 1997) (explaining that plaintiff has burden of presenting "persuasive evidence refuting the certification"). Moreover, the Amended Complaint also alleges that "each of the Defendants acted under color of federal law." Am. Compl. ¶¶ 48, 53, 57, 62.

Columbia follows the Restatement (Second) of Agency.  *Id.*  Under the Restatement, an employee's conduct is within the scope of employment if:

> (a)      it is of the kind he is employed to perform;
>
> (b)      it occurs substantially within the authorized time and space limits;
>
> (c)      it is actuated, at least in part, by a purpose to serve the [employer], and
>
> (d)      if force is intentionally used by the [employee] against another, the use of force is not unexpectable by the [employer].

Restatement (Second) of Agency § 228.

District of Columbia courts interpreting the Restatement have adopted an "expansive definition of conduct that falls within the scope of employment."  *Greene v. Nguyen*, No. Civ. 05-0407, 2005 WL 3275897, at *5 (D.D.C. Sept. 7, 2005); *see also, e.g., Lyon v. Carey*, 533 F.2d 649, 652 (D.C. Cir. 1976) (mattress deliveryman acted within scope of employment in assaulting and raping a customer following a delivery dispute); *Johnson v. Weinberg*, 434 A.2d 404, 409 (D.C. 1981) (laundromat employee acted within scope of employment when he shot customer during dispute over the customer's missing laundry).  "Only when the conduct in question bears an extremely attenuated relation to the defendant's job duties have courts found that the conduct was not of the kind that the defendant was employed to perform."  *Greene*, 2005 WL 3275897 at *4.

The relevant conduct here is speaking to journalists.  *Cf. Ballenger*, 444 F.3d at 664 ("The appropriate question, then, is whether that telephone conversation -- not the allegedly defamatory sentence -- was the kind of conduct [defendant Congressman] was employed to perform.").  With respect to each Restatement factor, Plaintiffs fail to allege any fact that would suggest that speaking to journalists is outside the scope of Mr. Armitage's employment.

Factor 1: "of the kind he is employed to perform":  The Amended Complaint nowhere alleges that speaking to journalists is outside the scope of employment for the Deputy Secretary

of State.  Any other contention would run contrary to the longstanding rule that conversations with the media are within a government official's scope of employment.  *See, e.g., Ballenger*, 444 F.3d at 664 (speaking to the press "falls within the scope of a congressman's authorized duties"); *Aversa v. United States*, 99 F.3d 1200, 1210-11 (1st Cir. 1996) (holding Assistant United States Attorney acted within scope of employment in making statements to press even though statements were in violation of Department of Justice regulations and court's local rules).

As Deputy Secretary of State, Mr. Armitage's job description included "all authorities and functions vested in the Secretary of State."  *See* Delegation of Authority 245, 66 Fed. Reg. 22065 (May 2, 2001) (delegation by Secretary of State Colin Powell to Deputy Secretary of State).  The Secretary of State's duties unquestionably include communicating United States foreign policy, including by speaking to journalists.  *See, e.g.,* Office of the Federal Register, UNITED STATES GOVERNMENT MANUAL 293 (2006/2007) (providing that "the Department [of State] engages in continuous consultations with the American public"); Glenn Kessler, *Rice Bucks Tradition with Pre-Election Appearances*, WASH. POST, Nov. 4, 2006, at A3 (quoting Secretary of State Condoleezza Rice as stating "I've always thought that it's an important part of the role of the secretary of state to get out and talk to Americans in any way possible about our foreign policy.").  Not surprisingly, then, Mr. Armitage provided innumerable statements and interviews to the press as part of his responsibilities as Deputy Secretary of State.  The Department of State's website reflects that, for the year 2004 alone, Mr. Armitage provided interviews or public remarks on *more than 150 separate occasions*.[16]

---

[16]    *See*  http://www.state.gov/s/d/former/armitage/remarks.    During his tenure with the State Department, Mr. Armitage repeatedly gave interviews to the domestic press.  *See, e.g*., Interview with Charlie Rose of PBS (12/10/04); Interview on National Public Radio with Robert Siegel (7/2/04); Interview by CNN's John King (3/19/04); Interview by Ellen Ratner of Talk News Radio Service (3/16/04).

Factor 2:  "occurs substantially within the authorized time and space limits":  The Amended Complaint alleges that Mr. Armitage spoke to both Messrs. Woodward and Novak "in his State Department office."  Am. Compl. ¶¶ 37, 39.  The meetings took place during business hours.  Thus, the allegations with respect to this factor reinforce the conclusion that Mr. Armitage acted within the scope of his employment.

Factor 3:  "is actuated, at least in part, by a purpose to serve the [employer]":  The Amended Complaint alleges that Mr. Armitage spoke to these journalists regarding foreign policy, not personal, matters.  *See* Am. Compl. ¶¶ 37, 39 (Mr. Armitage allegedly described to reporters that Ms. Wilson worked "on weapons of mass destruction").  Mr. Armitage had no personal monetary or other incentive in speaking to these reporters.  The conversations were not part of some individual frolic and detour; these were not discussions about Mr. Armitage's hobbies or out-of-office activies.  Rather, Mr. Armitage was talking to two noted journalists who were influential in shaping public opinion about events relating to the President's State of the Union address and American decision-making relating to the origins of the ongoing war in Iraq.  In giving these interviews about American foreign policy, Mr. Armitage certainly was actuated with the purpose of serving the United States.

Factor 4:  "if force is intentionally used by the [employee] against another, the use of force is not unexpectable by the [employer]":  The Amended Complaint does not allege force.

\*    \*    \*

Mr. Armitage's alleged interviews with journalists Woodward and Novak plainly are within the scope of his employment, especially as scope of employment is expansively defined by D.C. law.  Pursuant to the Westfall Act and consistent with the request of the Department of

Justice, the Court must substitute the United States for Mr. Armitage as the party defendant in Count V and dismiss the state tort claim against Mr. Armitage.[17]

## IV.    ALL   OF   THE   ALLEGATIONS   AGAINST   MR. ARMITAGE   ARE TIME-BARRED UNDER THE APPLICABLE STATUTES OF LIMITATIONS

An additional ground for dismissal is that the Wilsons' three claims against Mr. Armitage are barred by the applicable statute of limitations. The District of Columbia has set a statute of limitations of one year for the tort of public disclosure of private facts. *See Doe v. Medlantic Health Care Group*, 814 A.2d 939, 944 (D.C. 2003) (assuming one-year limitations period for violation of privacy tort); *Grunseth v. Marriott Corp.*, 872 F. Supp. 1069, 1075 (D.D.C. 1995) ("a one-year statute of limitations . . . has been applied to invasion of privacy claims in the District of Columbia"). The alleged "private fact" in this case, Ms. Wilson's employment status, became public no later than July 14, 2003, when the Novak article was published. Am. Compl. ¶ 2. The Wilsons, however, did not file this lawsuit until July 13, 2006 -- three years after the Novak article and two years after expiration of the applicable statute of limitations. Accordingly, the state tort claim is untimely and must be dismissed.[18]

---

[17]    The "public disclosure of private facts" tort (Count V) also cannot be sustained on other grounds. Mr. Wilson joins his wife in bringing this state tort claim, but he suffered no direct, cognizable injury and thus lacks standing to assert this claim. Ms. Wilson also fails to state a claim under District of Columbia law because she does not allege a "private fact" (as opposed to an institutional interest in confidentiality) nor any "highly offensive" conduct on the part of Mr. Armitage. *See Nix v. Hoke*, 139 F. Supp. 2d 125, 134 n.8 (D.D.C. 2001).

[18]    Any argument from Plaintiffs that they did not know Mr. Armitage's identity until recently should be rejected. Mr. Armitage took no action to affirmatively conceal or mislead the Wilsons. Mr. Armitage was mentioned in the press early on as a possible source for Mr. Novak. Moreover, the Wilsons could have filed an action within the limitations period naming "John Does" as defendants in order to preserve their claims. *See, e.g., Bivens*, 403 U.S. 388 (suit against "six unknown agents"); *Chung*, 333 F.3d 273 (suit against "Department of Justice and five unknown officials").

Similarly, in determining the applicable limitations period for a *Bivens* claim, a "federal court must look to the limitations period applicable to the most nearly analogous state cause of action." *Hobson v. Wilson*, 737 F.2d 1, 32 (D.C. Cir. 1984); *McClam v. Barry*, 697 F.2d 366, 370-73 (D.C. Cir. 1983). The Wilsons in their Amended Complaint have already identified the most clearly analogous state tort: public disclosure of private facts (Count V). As noted above, the statute of limitations for this tort is one year. The disclosure of Ms. Wilson's employment with the CIA was made by Mr. Novak in 2003, but the Wilsons did not file this lawsuit alleging constitutional torts until July 13, 2006. Thus, the *Bivens* claims are untimely and must be dismissed.

## CONCLUSION

Accordingly, for all the above reasons, the Court should dismiss the Wilsons' claims against Mr. Armitage *with prejudice*.

Dated: November 14, 2006                    Respectfully submitted,

                                            /s/ Michael L. Waldman_____
                                            William H. Taft (DC Bar No. 055087)
                                            Michael L. Waldman (DC Bar No. 414646)
                                            Eugene N. Hansen (DC Bar No. 483638)
                                            Karen S. Bloom (DC Bar No. 499425)
                                            FRIED, FRANK, HARRIS, SHRIVER
                                              & JACOBSON LLP
                                            1001 Pennsylvania Avenue, NW
                                            Washington, DC  20004-2505
                                            Telephone:  (202) 639-7000
                                            Facsimile:  (202) 639-7008

                                            Attorneys for Defendant Richard L. Armitage

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        )
VALERIE PLAME WILSON and                )
JOSEPH C. WILSON IV,                    )
                                        )
                Plaintiffs,             )
                                        )
        v.                              )        Civil Action No. 06-1258 (JDB)
                                        )
I. LEWIS LIBBY JR., KARL C. ROVE,       )
RICHARD B. CHENEY, RICHARD              )
L. ARMITAGE and JOHN DOES               )
NOS. 1-9                                )
                                        )
                Defendants.             )
_____)


## [PROPOSED] ORDER AND JUDGMENT

Upon consideration of Defendant Richard L. Armitage's Motion to Dismiss, and any opposition thereto, and for good cause showing, it is:

ORDERED that the Motion is hereby GRANTED and Plaintiffs' claims against Defendant Armitage are hereby DISMISSED WITH PREJUDICE, and it is

FURTHER ORDERED, that Plaintiffs take nothing and that JUDGMENT is entered in favor of Defendant Richard L. Armitage.



                                SO ORDERED:


DATE: _____            _____
                                Honorable John D. Bates