# PART 1

# Memorandum of Points and Authorities

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

VALERIE PLAME WILSON and )
JOSEPH C. WILSON IV )
    4612 Charleston Terrace, N.W. )
    Washington, D.C. 20007 )
                               )
                  Plaintiffs, )      Civil Action No. 06-1258 (JDB)
                               )
v. )
                               )
I. LEWIS (a/k/a "SCOOTER") LIBBY JR., )
KARL C. ROVE, RICHARD B. CHENEY, )
RICHARD L. ARMITAGE and JOHN DOES )
NOS. 1-9, )
                Defendants. )

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT KARL C. ROVE'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

Robert D. Luskin
James D. Colt
Heather M. McPhee
PATTON BOGGS LLP
2550 M St. N.W.
Washington, DC 20037
(202) 457-6000
*Attorneys for Defendant Karl C. Rove*

## TABLE OF CONTENTS

Table of Contents..................................................................................................i-iii

Table of Authorities......................................................................................... iv-viii

Introduction............................................................................................................ 1

Statement of Facts ................................................................................................. 2

Summary of Argument ........................................................................................... 4

Argument................................................................................................................ 7

   I.   "SPECIAL FACTORS" STRONGLY COUNSEL AGAINST RECOGNITION OF
       PLAINTIFFS' PROPOSED BIVENS REMEDIES...................................................... 8

       A.  The Remedial Schemes That Congress Has Devised To Protect Employee Privacy, And
           The Conspicuous Absence From Such Schemes Of Any Right Of Personal Privacy In
           The Fact Of Federal Employment, Counsel Against Creating A Constitutional Right Of
           Action In This Case ................................................................................................. 8

           1.  Where Congress Has Created A Remedial Scheme In An Area, Including When
               Congress Has Refused To Create A Remedy, The Supreme Court Has Held That
               *Bivens* Remedies Should Not Be Created.......................................................... 8

           2.  The Comprehensive Remedial Scheme Of The Privacy Act Is A "Special Factor"
               That Counsels Against Extending *Bivens* To Allow A First Or Fifth Amendment
               Claim Based On Alleged Disclosures of Federal Employment........................... 11

       B.  The Intelligence Identities Protection Act, Which Imposes Criminal Penalties
           For Disclosing Covert Identities, Underlines The Congressional Practice Of
           Protecting The CIA's Powers Of Institutional Secrecy Without Creating Any Personal
           Privacy Right And Constitutes A "Special Factor" That Counsels Against Extending
           *Bivens* to Allow Plaintiffs' First or Fifth Amendment Claims Based on Alleged Disclosure
           of Ms. Wilson's Employment Status ...................................................................... 15

       C.  The Highly Sensitive Nature of the Intelligence Information At Issue Is A
           "Special Factor" That Counsel Against Allowing The Proposed *Bivens* Action .................. 17

           1.  This Court Should Be Reluctant to Allow New Remedies For The
               Release Of Information In A Sensitive Area ...................................................... 17

            2.  The Determination Of Ms. Wilson's Alleged Covert Status, And The
               Degree Of Sensitivity Surrounding That Information, Will Be Non-
               Justiciable ........................................................................................................ 19

II. PLAINTIFFS FAIL TO STATE COGNIZABLE CONSTITUTIONAL CLAIMS ...... 20

   A. Mr. Wilson Has Not Properly Alleged A Violation of His First Amendment Right to Freedom of Speech ................................................................................. 22

   B. Because Plaintiffs' Second Cause Of Action Does Not Allege An Equal Protection Violation And Is Not Justiciable, It Should Be Dismissed ....................................... 24

      1. The Plaintiffs' Claims Of Retaliatory Official Speech Have Not Alleged Independent Violations Of Equal Protection Interests ............................................................ 24

      2. Any Attempt To Compare Plaintiffs' Experience To Those Of Other Couples With One Covert CIA Spouse Would Be Uniquely Non-Justiciable ......................................... 25

   C. Covert Federal Employment Status Is Not Personal Information To Which Ms. Wilson Has A Right, Thus Her Third Cause Of Action For Fifth Amendment Right To Privacy Should Be Dismissed ........................................................................................... 27

      1. D.C. Circuit Has Not Recognized A Constitutional Cause Of Action Arising From The Release Of True Information ...................................................................... 27

      2. Ms. Wilson Does Not Have A Constitutional Claim Based Upon The Alleged Revelation Of The Nature Of Her Employment For The Nation ............................... 28

   D. Because Ms. Wilson Has Not Alleged That She Was Dismissed From Her Job, Let Alone Precluded From Employment, She Has Not Alleged Any Fifth Amendment Property Right Violation ........................................................................................ 29

      1. Alleging Unfavorable Factual Revelations, In The Absence Of Loss Of Government Employment, Or Preclusion From Other Employment, Does Not State A Due Process Property Right Violation ........................................................................ 29

      2. Any Plaintiff Who Has Not Alleged Defamation Or Loss Of Government Employment Has Not Alleged A "Reputation Plus" Violation Of Her Due Process Property Rights .................................................................................................. 30

      3. Any Plaintiff Who Has Not Alleged Stigma Precluding Pursuit Of Her Career Has Not Alleged A "Stigma Or Disability" Violation Of Her Due Process Property Rights ............................................................................................................... 31

      4. Ms. Wilson, Because She Has Not Alleged That She Suffered Any Contemporaneous Loss Of CIA Employment Or That She Has Been Pre-Empted From Other Related Employment, Has Not Stated A Due Process Property Rights Violation ....................... 31

III. MR. ROVE IS ENTITLED TO QUALIFIED IMMUNITY ................................. 32

   A. Because Plaintiffs Have Not Alleged Deprivation Of Actual Constitutional Rights They Have Not Met The Threshold Requirement To Overcome The Qualified Immunity Defense ........................................................................................................... 34

B.  Mr. Rove's Alleged Actions Would Not Have Violated Any Clearly Established
    Constitutional Right Of Which A Reasonable Official Would Be Aware .............................. 35

**IV. BECAUSE PLAINTIFFS FILED THIS ACTION ALMOST THREE YEARS
     AFTER THE ALLEGED ACTIONS, PLAINTIFFS STATE LAW CLAIM AND
     THE ANALOGOUS BIVENS CLAIMS ARE ALL UNTIMELY** ................................. 37

    A.  The Plaintiffs' State Law Action For Public Disclosure Of Private Facts
        Is Untimely .......................................................................................................................... 37

    B.  The District Of Columbia Circuit Limits *Bivens* Actions Using The
        Limitations Period Of The Most Clearly Analogous State Action ....................................... 39

    C.  The Plaintiffs' *Bivens* Claims Are Most Clearly Analogous To Public Disclosure Of
        Private Facts And Are Time-Barred As Well .......................................................................... 41

**Conclusion** ...................................................................................................................................... 42

# TABLE OF AUTHORITIES

## FEDERAL CASES

*ACLU v. Wicomico County, Md.*, 999 F.2d 780 (4th Cir. 1993).................................23

*American Federation of Government Employees v. Department of Housing and Urban Development*, 118 F.3d 786 (D.C. Cir. 1997)...........................................................27, 36

*Anderson v. Creighton*, 483 U.S. 635 (1987) .....................................................32, 33, 34

*Arar v. Ashcroft*, 414 F. Supp. 2d 250 (E.D.N.Y 2006).........................................18,19

*Assassination Archives & Resource Ctr. V. Central Intelligence Agency*, 334 F.3d 55 (D.C. Cir. 2003) ...............................................................................................................18

*\*Baker v. Carr*, 369 U.S. 186 (1962)........................................................................19

*Baltimore Sun Co. v. Ehrlich*, 437 F.3d 410 (4th Cir. 2006) .......................................23

*Banks v. Chesapeake and Potomac Telegraph Co.*, 802 F.2d 1416 (D.C. Cir. 1986) ..........40

*Barr v. Clinton*, 370 F.3d 1196 (D.C.Cir.2004)............................................................7

*Board Of Regents v. Roth*, 408 U.S. 564, 92 S. Ct. 2701 (1972).....................................31

*Beattie v. Boeing Co.*, 43 F.3d 559 (10th Cir. 1994)...................................................17

*Behrens v. Pelletier*, 516 U.S. 299 (1996) ...............................................................32

*\*Bivens v. Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999 (1971)....................................................................................................... passim

*Blazy v. Tenet*, 193 F.3d 90 (D.C. Cir 1999).............................................................9,11

*Blazy v. Tenet*, 979 F. Supp. 10 (D.D.C 1997).............................................................28

*Brandon v. District Of Columbia Board of Parole*, 823 F.2d 644 (D.C. Cir. 1987) ..............26

*Briton et al. v. Palestinian Interim Self-Government Authority, et al.*, 310 F. Supp. 2d 172 (D.D.C. 2004)................................................................................................26

*Burnett v. Grattan*, 468 U.S. 42, 104 S. Ct. 2924 (1984) .......................................39, 41

*\*Bush v. Lucas*, 462 U.S. 367 (1983).....................................................................10, 12

*Cardamone v. Cohen*, 241 F.3d 520 (6th Cir. 2001)....................................................11

iv

*Central Intelligence Agency v. Sims*, 471 U.S. 159, 105 S. Ct. 1881, 85 L. Ed. 2d 173 (1985) ...................................................................................................... 28

*Chicago & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103 (1948)....................18, 19

*Chin v. Bowen*, 833 F.2d 21 (2d Cir. 1987)............................................................................. 40

*\*Chung v. United States Department of Justice*, 333 F.3d 273 (D.C. Cir. 2003).................6, 14

*\*Chung v. United States Department of Justice*, No. Civ. A. 00-912, 2001 WL 34360430 (D.D.C. Sept.20, 2001) .................................................................................. 12, 13, 14

*Church of Scientology v. Foley*, 640 F.2d 1335 (D.C. Cir. 1981) ........................................... 41

*Conley v. Gibson*, 355 U.S. 41 (1957)...................................................................................... 7

*\*Correction Services Corp. v. Malesko*, 524 U.S. 61, 122 S. Ct. 515 (2001) ................ 5, 9, 14

*In re Crawford*, 194 F.3d 954 (9th Cir. 1999) ...................................................................21, 27

*Crawford-El v. Britton*, 523 U.S. 574 (1998) ..................................................21, 22, 23, 33

*Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735 (D.C. Cir. 1995) ....................................... 39

*Curley v. Village of Suffern*, 268 F.3d 65 (2d Cir. 2001) ...................................................... 22

*Davis v. Passman*, 442 U.S. 228 (1979) .................................................................................. 8

*Doe v. Southeastern University*, 732 F. Supp. 7 (D.D.C. 1990)............................................ 38

*\*Doe v. United States Department of Justice*, 753 F.2d 1092 (D.C. Cir. 1985) ...............30, 39

*Downie v. City of Middleburg Heights*, 301 F.3d 688 (6th Cir. 2002) ...............................11, 14

*EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621 (D.C. Cir. 1997) ......................... 7

*Eagle v. Morgan*, 88 F.3d 620 (8th Cir. 1996) ...................................................................... 27

*Farmer v. Moritsugu*, 163 F.3d 610 (D.C. Cir. 1998) ........................................................... 32

*Fitzgibbon v. CIA*, 911 F.2d 755 (D.C. Cir. 1990) ................................................................. 18

*Gibson v. United States*, 781 F.2d 1334 (9th Cir. 1986) ........................................................ 40

*Graham v. Henderson*, 89 F.3d 75 (2d Cir. 1996) ................................................................. 23

*Griffin v. Ashcroft*, No. 02-5399, 2003 WL 22097940 (D.C. Circuit Sept. 3, 2003) ............. 12

*Grunseth v. Marriott Corp.*, 872 F. Supp. 1069 (D.D.C. 1995) ...................................... 38

*Guong v. United States*, 860 F.2d 1063 (Fed.Cir.1988) ............................... 19, 20, 25

*Gutierrez de Martinez v. Lamagno*, 515 U.S. 417 (1995) ............................................. 5

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ................................................... 7, 32, 33

*Hartman v. Moore*, 126 S. Ct. 1695 (2006) ............................................................... 21

*Hatfill v. Ashcroft*, 404 F. Supp. 2d 104 (D.D.C. 2005) ................................... passim

*Hobson v. Wilson*, 737 F.2d at 32 (D.C. Cir. 1984) ................................................ 39

*Hope v. Pelzer*, 536 U.S. 730 (2002) ................................................................. 34, 36

*Iglesias v. CIA*, 525 F. Supp. 547 (D.D.C. 1981) .................................................... 28

*Industrial Constructors v. Bureau of Reclamation*, 15 F.3d 963 (10th Cir. 1994) ................ 40

*Jones v. TVA*, 948 F.2d 258 (6th Cir. 1991) ........................................................... 14

*Kallstrom v. Columbus*, 136 F.3d 1055 (6th Cir. 1998) ........................................... 27

*Kartseva v. Department of State*, 37 F.3d 1529 (D.C. Cir. 1994) ........................ 31, 37

*Kelly v. Serna*, 87 F.3d 1235 (11th Cir. 1996) ....................................................... 40

*Kielczynski v. United States C.I.A.*, 128 F. Supp. 2d 151 (E.D.N.Y. 2001) ........... 20, 25

*King v. One Unknown Federal Corrections Officer*, 201 F.3d 910 (7th Cir. 2000) ................ 40

*Kowal v. MCI Comm'ns Corp.*, 16 F.3d 1271 (D.C.Cir.1994) ..................................... 7

*Lederman v. United States et al.*, 131 F. Supp. 2d 46 (D.D.C. 2001) ........................ 40

*Linder v. Portocarrero*, 747 F. Supp. 1452 (S.D. Fl. 1990) *aff'd* ............................... 26

*Malley v. Briggs*, 475 U.S. 335 (1986) .................................................................. 33

*McCausland v. Mason City Board of Education*, 649 F.2d 278 (4th Cir. 1981) ................ 40

*McClam v. Barry*, 697 F.2d 366 (D.C. Cir. 1983) ..................................... 39, 40, 41

*McSurely v. Hutchinson*, 823 F.2d 1002 (6th Cir. 1987) ........................................... 40

*Meyer v. Reno*, 911 F. Supp. 11 (D.D.C. 1996) ...................................................... 34

*Minier v. Central Intelligence Agency*, 88 F.3d 796 (9th Cir.1996)................................28

*Mittleman v. U.S. Treasury*, 773 F. Supp. 442 (D.D.C.1991) ........................................9

*Napier v. Thirty or More Unidentified Federal Agents*, 855 F.2d 1080 (3d Cir. 1988).......................40

*Nix v. Hoke*, 139 F. Supp. 2d 125 (D.D.C. 2001) ........................................38

*Nixon v. Administrator of General Services*, 433 U.S. 425, 97 S. Ct. 2777, 53 L. Ed. 2d 867 (1977)........................................27, 36

*\*O'Donnell v. Barry*, 148 F.3d 1126 (D.C. Cir. 1998) ........................29, 30, 31

*Owens v. Okure*, 488 U.S. 235, 109 S. Ct. 573 (1989) ........................................40

*\*Paul v. Davis*, 424 U.S. 693, 96 S. Ct. 1155 (1976)........................................30

*Pena v. United States*, 157 F.3d 984 (5th Cir. 1998) ........................................40

*Pfeiffer v. Central Intelligence Agency*, 721 F. Supp. 337 (D.D.C.1989) ........................28

*Pierson v. Ray*, 386 U.S. 547 (1967) ........................................33

*Pitts v. United States*, 109 F.3d 832 (1st Cir. 1997)........................................40

*Pope v. Bond*, 641 F. Supp. 489 (D.D.C. 1986) ........................................40

*Ratliff v. DeKalb County, Ga.*, 62 F.3d 338 (11th Cir. 1995) ........................................25

*Risley v. Hawk*, 108 F.3d 1396 (D.C. Cir. 1997)........................................34

*Sanchez v. United States*, 49 F.3d 1329 (8th Cir. 1995).......................................40

*Saucier v. Katz*, 533 U.S. 194 (2001) ........................................33, 34

*\*Schneider, et al. v. Kissinger, et al.*, 310 F. Supp. 2d 251 (D.D.C. 2004) ........................20, 26

*\*Schweiker v. Chilicky*, 498 U.S. 412 (1988)........................................passim

*Sheets v. Salt Lake County*, 45 F.3d 1383 (10th Cir. 1995) ........................................27

*\*Siegert v. Gilley*, 500 U.S. 226, 111 S. Ct. 1789 (1991) ........................................passim

*Southern Growers, Inc. et al. v. Veneman*, 2006 WL 2244628 (D.D.C. 2006) ........................24

*Suarez Corp. Industrial v. McGraw*, 202 F.3d 676 (4th Cir. 2000) ........................................22

*Taylor v. Resolution Trust Corp.*, 56 F.3d 1497 (D.C. Cir. 1995) ........................................31

*Thompson v. City of Starkville, Miss.*, 901 F.2d 456 (5th Cir. 1990) ................................ 25

*\*Totten v. United States*, 92 U.S. 105 (1875) ................................ 19, 20, 25

*\*Trifax Corp. v. District of Columbia et al.*, 314 F.3d 641 (D.C. Cir. 2003) ................ 12, 31, 37

*United States v. Stanley*, 483 U.S. 669 (1987) ................................ 17

*VanStraun v. Lann*, 940 F.2d 406 (9th Cir. 1991) ................................ 40

*Vanover v. Hantman*, 77 F. Supp. 2d 91 (D.D.C. 1999) ................................ 4

*Whalen v. Roe*, 429 U.S. 589, 97 S. Ct. 869, 51 L. Ed. 2d 64 (1977) ................ 27, 36

*Wilson v. Garcia*, 471 U.S. 261, 105 S. Ct. 1938 (1985) ................................ 40

*Women Prisoners of the D.C. Dept. Corrections et al. v. Dist. Of Columbia*, 93 F.3d 910 (D.C. Cir. 1996) ................................ 26

*X-Men Security, Inc. v. Pataki*, 196 F.3d 56 (2d Cir. 1999) ................................ 24, 36

*Zweibon v. Mitchell*, 720 F.2d 162 (D.C. Cir. 1983) ................................ 33

## FEDERAL STATUTES

5 U.S.C. § 421(c) ................................ 18

5 U.S.C. § 552a(a)(4) ................................ 11, 15

5 U.S.C. § 552a(b) ................................ 11, 15

5 U.S.C. § 552a(g)(5) ................................ 15

50 U.S.C. § 403(g) ................................ 28

28 U.S.C. §§ 1346(b)(1) ................................ 5

50 U.S.C. § 421 ................................ 15, 16, 18

5 U.S.C. § 552a ................................ 11, 15

28 U.S.C. § 2679 ................................ 1, 5, 37

## Introduction

Pursuant to Federal Rule of Civil Procedure 12 (b)(6), Defendant Karl C. Rove respectfully moves to dismiss Plaintiffs' Amended Complaint. Although Plaintiffs have a great deal to say – a grab bag of speculation, innuendo, and newspaper clippings – they do not manage to state a valid claim for relief. Even indulging, for the moment, the truth of what Plaintiffs allege, the Amended Complaint, therefore, should be dismissed.

More striking than the purported facts Plaintiffs allege in the Amended Complaint are the allegations that are missing: The Wilsons do not allege that Mr. Rove circulated false information about Ms. Wilson or that he was even aware of her alleged covert employment. The Wilsons do not --and cannot-- allege that Ms. Wilson was demoted or fired from the CIA. The Wilsons do not--and cannot--allege that Mr. Wilson's free speech was chilled. As we explain in detail below, the absence of these allegations is fatal to Plaintiffs' claims.

First, the Privacy Act, the Intelligence Identity Protection Act, as well as the non-justiciable and highly sensitive nature of the intelligence issues involved in this case, all constitute special factors precluding recognition of Plaintiffs' novel *Bivens* claims (Causes of Action I - IV). Second, all of Plaintiffs' purported First and Fifth Amendment claims are fatally flawed. Third, even if Plaintiffs' constitutional claims had merit, Mr. Rove, a Senior Advisor to the President of the United States, is entitled to qualified immunity. Fourth, Plaintiffs' *Bivens* claims are time-barred. Finally, pursuant to the Westfall Act, 28 U.S.C. § 2679, the Government has certified that Mr. Rove's alleged actions occurred within the scope of his official employment and, accordingly, it has moved this Court to substitute the United States as the defendant to Plaintiffs' only non-constitutional cause of action (Cause of Action V) and has separately moved to dismiss that claim. For these reasons, this Court should dismiss Plaintiffs' *Bivens* claims (Causes of Action I - IV) and substitute the United States as the defendant to the fifth cause of action and grant the Government's motion to dismiss.

### Statement of Facts

Plaintiffs Valerie Plame Wilson ("Ms. Wilson") is married to Joseph C. Wilson IV ("Mr. Wilson"), a retired diplomat. Am. Compl. ¶¶ 7-8. Ms. Wilson contends that she was employed with the CIA in a capacity that was covert until July 14, 2003 and continued to work for the CIA until January 2006. *Id.* In this lawsuit, the Wilsons allege constitutional and common law torts against Richard B. Cheney, Vice President of the United States; Karl C. Rove, Senior Advisor to the President; Richard L. Armitage, former Deputy Secretary of State; I. Lewis Libby. Jr., former Assistant to the President of the United States and Chief of Staff to the Vice President, and nine unidentified John Does. *Id.* at ¶¶ 9-13, 46-69. According to the facts described in the Amended Complaint -- which Mr. Rove disputes, but must accept as true for purposes of this motion -- Plaintiffs have suffered harms from a conspiracy among Vice President Cheney, Mr. Libby, and Mr. Rove to wrongfully disclose Ms. Wilson's covert federal employment. *Id.* ¶¶ at 1-3, 35.

Disclosure of Ms. Wilson's covert CIA position occurred in the course of highly charged public debate over remarks President George W. Bush made in his 2003 State of the Union address. *Id.* ¶¶ 14, 19. In President Bush's 2003 State of the Union address, delivered on January 28, 2003, he stated that ""[t]he British government has learned that Saddam Hussein recently sought significant quantities of uranium from Africa." *Id.* ¶ 19(a). Several months after President Bush's speech, in May 2003, Nicholas Kristof authored a *New York Times* column questioning the accuracy of, and basis for, the President's statement about Saddam Hussein's alleged attempt to obtain uranium from Niger. *Id.* at ¶ 19(b). Mr. Kristof reported that an unnamed former ambassador (now known to be Mr. Wilson), had been sent to Niger in January 2002 at the request of the Vice President to investigate allegations that Iraq had sought to buy uranium from Niger. Mr. Kristof wrote that, after the former ambassador returned from his fact-finding trip, he informed the CIA and State Department that the allegations were wrong and had been based upon forged documents. *Id.*

The Amended Complaint alleges that after publication of Mr. Kristof's article, Mr. Libby and officials (not including Mr. Rove) sought information about the fact-finding trip. *Id.* at ¶ 19 (c)-(e), (h). Internal discussions between Defendant Libby and administration officials (other than Mr. Rove) allegedly revealed that Mr. Wilson's wife worked at the CIA, and that she was apparently involved in planning his trip to Niger. *Id.* 19(e). Ms. Wilson was believed to have had the capacity to recommend her husband for such an assignment because of her CIA affiliation. *Id.* ¶ 28. The Amended Complaint contends that various administration officials (not including Mr. Rove) began to discuss the possibility of revealing the circumstances of Mr. Wilson's trip in order to rebut Mr. Wilson's demonstrably false allegations that Vice President Cheney had sent Mr. Wilson to Africa. *Id.* at ¶ 19(l).

Between June and July 2003, additional articles appeared in national publications discussing the former ambassador's trip to Niger and highlighting his contention that administration officials knew that the allegation that Iraq attempted to by uranium in Niger was false. *Id.* at ¶¶ 19(i), (k). Public debate about the controversy continued over the summer, culminating in Mr. Wilson's own July 6, 2003 article published in the *New York Times* entitled "What I Didn't Find in Africa." *Id.* 19(b)-(n). That same day, Mr. Wilson repeated his allegations on the national television show, "Meet the Press." *Id.* at 19(n).

Plaintiffs claim that, after Mr. Wilson's public allegations of wrongdoing, the Vice President and Mr. Libby "focused" on responding to Mr. Wilson's allegations. *Id.* ¶ 19(o). According to Plaintiffs, rather than respond to the merits of Mr. Wilson's allegations, Mr. Libby, Mr. Rove, and John Does 1-9 (but not Mr. Armitage) conspired to "discredit, punish and seek revenge" against the Wilsons. *Id.* at ¶ 24. Plaintiffs contend that the agreement to retaliate against the Wilsons primarily consisted of a plan to publicly reveal Ms. Wilson's classified employment status. *Id.*

According to the Amended Complaint, prior to the first publication of Ms. Wilson's employment, Mr. Rove's conduct was limited to discussing Ms. Wilson's employment with reporter Matt Cooper of *Time* magazine, who did not himself initially publish the information. *Id.* at ¶¶ 25-29. Specifically, on July 12, 2003, Mr. Rove received a phone call from Mr. Cooper. In that conversation, Mr. Rove allegedly told Mr. Cooper that Ms. Wilson worked "at the agency," "worked on WMD," and was responsible for sending Mr. Wilson to Niger. *Id* at ¶ 28. Mr. Cooper has a distinct memory that Mr. Rove stated "I've already said too much," which Mr. Cooper has acknowledged "could have meant he was late for a meeting or something else."[1] *Id* at ¶ 29.

In fact, according to Plaintiffs, Mr. Armitage – who, curiously, is not alleged to have been a participant in the "malicious" plan to retaliate against the Wilsons – was the person who furnished the information to newspaper columnist Robert Novak, who first published the information on July 14, 2003. *Id.* at ¶ 14. Plaintiffs allege that Mr. Armitage had learned about Ms. Wilson's covert status from a State Department memorandum, and, entirely independent of the alleged conspiracy to punish Mr. Wilson, informed reporter Bob Woodward and Mr. Novak of Ms. Wilson's employment status. *Id.* at ¶¶ 24, 37, 39, 46-54.

Ms. Wilson remained an employee of the CIA until January 2006. *Id.* at ¶ 7. Plaintiffs filed this lawsuit on July 13, 2006.

### Summary of Argument

Plaintiffs ask this Court to extend the judicially created constitutional tort remedy first established in *Bivens v. Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999 (1971) and hold federal officials personally liable for harms Plaintiffs purportedly suffered as a result

---

[1] "A War on Wilson? Inside the Bush Administration's Feud with the Diplomat Who Poured Cold Water on the Iraq-Uranium Connection," *Time Magazine*, July 17, 2003. Attached as Exhibit A. "[W]here a document is referred to in the complaint and is central to plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment." *Vanover v. Hantman*, 77 F.Supp.2d 91, 98 (D.D.C. 1999) (citation omitted).

of public disclosure of truthful information about Ms. Wilson's federal employment status.[2] The Court must refuse Plaintiffs' request and dismiss Causes of Action I - IV of the Amended Complaint for four reasons: (1) there are "special factors counseling hesitation" that preclude the *Bivens* constitutional tort remedy sought through these claims; (2) Plaintiffs fail, in any event, to state any recognizable claim for violation of a Constitutional right; (3) even if a *Bivens* remedy were recognized, and even if Counts I - IV were held to state a claim for violation of the Constitution, Defendant Rove is entitled to qualified immunity from suit; and (4) Plaintiffs' *Bivens* claims are untimely.

As to the first ground for dismissal, in the three decades since the Supreme Court fashioned the constitutional tort remedy against federal officials, it has repeatedly admonished that this judicially created remedy should not be extended to circumstances where there are "special factors counseling hesitation" and has subsequently identified many such circumstances. *See Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 68-70 (2001). Existence of a legislative scheme addressing the subject matter of the claim – even if that scheme provides no remedy for a plaintiff's alleged harm -- constitutes a well-established "special factor" precluding recognition of *Bivens* claims. Additionally, courts have consistently refused to find a *Bivens* remedy in situations where adjudicating a claim would intrude on sensitive functions of the executive or legislative branches.

Three "special factors" strongly counsel foreclosure of a *Bivens* remedies here, where all the claims revolve around the purportedly wrongful public disclosure of federal employment

---

[2] The Amended Complaint also includes a common law tort claim for invasion of privacy (Cause of Action V). Pursuant to under 28 U.S.C. § 2679(d)(1), the United States has certified that Defendants Rove, Cheney, Libby and Armitage are sued for acts taken within the scope of federal office or employment and has moved the court to substitute the United States as the proper defendant for that claim. *See Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 420 (1995). Additionally, the United States has filed a Motion to Dismiss that claim because Plaintiffs have failed to comply with the applicable requirements under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2671-80, that govern tort actions against the United States. Defendant Rove joins in the arguments proffered by the United States in both motions.

information.  First, the Privacy Act is a comprehensive statutory scheme that addresses harms arising from such alleged misconduct.   The existence of this scheme has expressly been found, in similar circumstances, to preclude a Bivens action.  *See Chung v. Department of Justice*, 333 F.3d 273, 274 (D.C. Cir. 2003); *Hatfill v. Ashcroft*, 404 F. Supp. 2d 104 (D.D.C. 2005).  Second, the Intelligence Identities Protection Act also counsels preclusion of a *Bivens* remedy, because Congress has obviously considered and legislatively addressed the federal government's treatment of improper exposure of covert identities.  Finally, the highly sensitive nature of the issues central to this case – control of covert CIA employment status information – counsels against judicial intrusion into unique or sensitive functions of the legislative or executive branches of government.

The Court should also dismiss Counts I - IV because all of Plaintiffs' purported constitutional claims are fatally flawed.  First, Mr. Wilson's First Amendment claim fails to plead a requisite element: Plaintiffs do not allege that Mr. Wilson's First Amendment rights were chilled as a result of Vice President Cheney, Mr. Libby or Mr. Rove's allegedly retaliatory actions.  Second, both Plaintiffs' Equal Protection claims fail because the alleged retaliation against them does not constitute a violation of equal protection rights, and they have not raised justiciable claims that they have been treated differently from others similarly situated.  Ms. Wilson's third cause of action fails because covert employment status is not personal information in which she has a constitutional privacy right.  Similarly, Ms. Wilson's fourth cause of action fails because she has not alleged that she lost her job and, without alleging discharge or demotion or broad preclusion from employment, she cannot state a constitutional property rights claim in her reputation.   Moreover, a pervasive causation deficiency regarding the claims against Mr. Rove dooms the Amended Complaint: Mr. Rove cannot be deemed to have caused Plaintiffs' alleged harms since he is not alleged to have provided information about Ms. Wilson's employment to the journalist who first published, and thus made public, the information.

Even if Plaintiffs had presented viable constitutional claims, as a Senior Advisor to the President, Mr. Rove is entitled to qualified immunity. Federal officials are immune from suit except to the extent that their particular conduct violates a clearly established constitutional right. *See Harlow v Fitzgerald*, 457 U.S. 800, 818 (1982). A clearly established right is a right so thoroughly developed and consistently recognized within a jurisdiction as to be indisputable. As enumerated *infra*, Plaintiffs have not alleged a cognizable First or Fifth Amendment violation, let alone a "clearly established" violation.

Finally, Plaintiffs' *Bivens* claims are time-barred. Under the governing authority in this Circuit, *Bivens* actions adopt the statute of limitations of the most clearly analogous state law cause of action. In this case, Plaintiffs have identified the analogous cause of action, Public Disclosure of Private Facts, which the courts have consistently held to be subject to the District of Columbia's one-year statue of limitations. Thus, Plaintiffs' *Bivens* claims are untimely. For all of these reasons, the Court should dismiss Plaintiffs' Causes of Action I – IV.

## Argument

In ruling on a motion to dismiss, the Court must, of course, view all allegations in the complaint in the light most favorable to the plaintiffs and must grant the plaintiffs the benefit of all reasonable inferences that can be inferred from those facts. *Conley v Gibson*, 355 U.S. 41, 45-46 (1957); *Barr v Clinton*, 370 F.3d 1196, 1199 (D.C.Cir.2004) (citing *Kowal v MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C.Cir.1994)). The Court may consider the facts alleged in the complaint, documents attached as exhibits, and matters about which the Court may take judicial notice. *EEOC v St. Francis Xavier Parochial Sch.*, 117 F.3d 621,624-625 (D.C. Cir. 1997). However, the Court need not accept inferences or conclusory allegations that are unsupported by the facts set forth in the complaint. *Kowal*, 16 F.3d at 1276.

In short, we must engage in what Dr. Johnson has described as "the willing suspension of

disbelief" and, for these purposes alone, accept Plaintiffs' account as true. Plaintiffs' Amended
Complaint must nevertheless be dismissed for failure to state a claim upon which relief could be
granted.

I.    **"Special Factors" Strongly Counsel Against Recognition of Plaintiffs' Proposed *Bivens*
      Remedies**

    A.    **The Remedial Schemes That Congress Has Devised To Protect Employee
      Privacy, And The Conspicuous Absence From Such Schemes Of Any Right
      Of Personal Privacy In The Fact Of Federal Employment, Counsel Against
      Creating A Constitutional Right Of Action In This Case**

        1.    **Where Congress Has Created A Remedial Scheme In An Area,
      Including When Congress Has Refused To Create A Remedy, The
      Supreme Court Has Held That *Bivens* Remedies Should Not Be
      Created**

Plaintiffs' Causes of Action I - IV seek damages from Defendants pursuant to the
constitutional tort remedy first recognized in *Bivens v. Unknown Named Agents of Federal Bureau of
Narcotics*, 403 U.S. 388, 91 S.Ct. 1999 (1971). Based upon an implied cause of action in the
Constitution, the Supreme Court held that the plaintiff in *Bivens* could seek money damages for
injuries suffered as a result of an alleged Fourth Amendment violation by federal agents. The *Bivens*
Court specifically conditioned its recognition of this judicially-created remedy upon the absence of
any "special factors counseling hesitation in the absence of affirmative action by Congress," or an
"explicit congressional declaration that persons injured by [the constitutional violations] may not
recover money damages from the agents, but must instead be remitted to another remedy, equally
effective in the view of Congress." *Id.* at 396-97. Since *Bivens*, the Court has extended recognition
of the remedy only twice: In *Davis v. Passman*, 442 U.S. 228 (1979), the Court determined that a
congressional employee could maintain a *Bivens* suits under the Fifth Amendment arising from
employment termination (*see id.* at 235), and in *Carlson v. Green*, 446 U.S. 14 (1980), the Court
recognized a *Bivens* action for alleged Eighth Amendment violations (*see id.* at 14). In all three cases,

the Court noted the absence of "special factors counseling hesitation" against judicial creation of a remedy that Congress had not recognized.

The courts' reticence is no accident.  To the contrary, in subsequent decades, the Court has "ha[s] responded cautiously to suggestions that *Bivens* remedies be extended into new contexts," *Schweiker v. Chilicky*, 498 U.S. 412, 422 (1988), and, when presented with opportunities to expand its scope, has "consistently refused to extend *Bivens* liability to any new context or new category of defendants." *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001).  Instead, the courts have fleshed out the concept of "special factors" and refused to extend *Bivens* in circumstances virtually identical to those presented here.[3]

Of singular importance, the Supreme Court has found "special factors" to be present not only in circumstances where Congress has provided an alternative damage remedy, but also in circumstances where it could be inferred that Congress has decided *not* to make such a remedy available.  Thus, in *Schweiker*, the Court refused to allow a *Bivens* action for plaintiffs' alleged Fifth

---

[3] Many courts have held that various legislative schemes, including the Privacy Act, preclude Bivens remedies. *See, e.g., Mittleman v. U.S. Treasury*, 773 F.Supp. 442, 451, 453-54 (D.D.C.1991) (["P]ursuant to the *Bush* mandate that courts should refrain from implying a *Bivens* remedy when 'special factors' counseling hesitation, such as Congressionally-provided remedies for constitutional violations, are present, the Court concludes that plaintiff's constitutional claims are barred [by the Privacy Act]); *Alexander v. Federal Bureau of Investigation*, 971 F.Supp. 603, 610 (D.D.C.1997) (citing *Blazy* and *Mittleman* for their holdings that the Privacy Act a special factor counseling hesitation and refusing a *Bivens* remedy); *Khalfani v. Sec'y, Dep't of Veterans Affairs*, No. 94-CV-5720 (JG), 1999 WL 138247 (E.D.N.Y. Mar.10, 1999); *Mangino v. Dep't of Army*, 1994 WL 477260 (D.Kan. Aug.24, 1994).  *See also, Spagnola v. Mathis*, 859 F.2d 223, 228-29 (D.C.Cir.1988) (per curiam)(en banc) (identifying the comprehensive review system established by the CSRA, Congress's "advertent" omission of damages relief for certain CSRA claims, and the absence of any clear expression of congressional intent to preserve *Bivens* remedies, as "special factors" precluding the creation of a *Bivens* damages action for constitutional challenges to federal personnel actions); *Pinar v. Dole*, 747 F.2d 899, 910-12 (4th Cir.1984) (noting that Congress intended CSRA remedies to be exclusive and rejecting federal employee's *Bivens* challenge to personnel actions taken against him); *Dotson v. Griesa*, 398 F.3d 156 (2d Cir. 2005) (Civil Service Reform act is a detailed and comprehensive scheme the forecloses Bivens remedies; *Thomas v. Principi*, 394 F.3d 970 (C.A.D.C. 2005) (Veterans' Affairs comprehensive benefit review system forecloses Bivens actions); *Durand v. U.S. Customs*, 163 Fed.Appx. 542 (9th Cir 2006) (Federal Tort Claims Act provided special factor counseling against Bivens claims against customs officials).

Amendment due process violations arising from the wrongful termination of Social Security benefits. Although monetary damages were not available to plaintiffs under the Social Security Disability Benefits Reform Act's review and benefit-restoration procedures, the Court rejected plaintiffs' *Bivens* claims, stating that "[w]hen the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, [the Supreme Court has] not created additional *Bivens* remedies." *Id.* at 423. The Court interpreted Congress' refusal to provide for monetary damages within Social Security's remedial scheme as a reason to deny, not allow a *Bivens* remedy. According to the Court, Congress had fixed the balance between individual rights and government efficiency, and the Court refused to alter that equation by creating an additional judicial remedy. *See id.*

The *Schweiker* Court's holdings regarding the preclusive effect of legislative remedial schemes built upon *Bush v. Lucas,* 462 U.S. 367, 368 (1983), in which the Court unanimously refused to recognize a *Bivens* remedy for a NASA employee's First Amendment claim arising from an alleged retaliatory demotion. Explaining that the legislatively created Civil Service Reform Act's "elaborate remedial system" addressing alleged violations of federal employees' rights (including violations of their First Amendment rights) constituted a special factor counseling hesitation, the *Bush* Court refused to supplement those remedies by implying a *Bivens* remedy. *Id.* at 388-89. In light of careful Congressional assessment balancing the rights and interests of the federal government and its employees, the Court declined to insert itself into a policy determination regarding the availability of damages claims for "a federal employee... from a supervisor who has improperly disciplined him from exercising his First Amendment rights." *Id.* at 390.

2.    **The Comprehensive Remedial Scheme Of The Privacy Act Is A "Special Factor" That Counsels Against Extending *Bivens* To Allow A First Or Fifth Amendment Claim Based On Alleged Disclosures of Federal Employment**

The Privacy Act, 5 U.S.C. § 552a, constitutes a "special factor" precluding recognition of *Bivens* remedies for the Wilsons' First and Fifth Amendment claims based upon the alleged wrongful public disclosure of information.  "The Privacy Act of 1974 regulates the collection, maintenance, use and dissemination of information concerning individuals." *Downie v. City of Middleburg Heights*, 301 F.3d 688, 696 (6th Cir. 2002) (quoting *Cardamone v. Cohen*, 241 F.3d 520, 524 (6th Cir. 2001)). "The Act attempts to strike a balance between the government's need to collect and maintain information and the privacy interests of the persons to whom such information pertains." *Cardamone*, 241 F.3d at 524; see also *Blazy v. Tenet*, 193 F.3d 90, 96 (D.C. Cir 1999).[4]

Alleged wrongful public disclosure of information by federal officials regarding Ms. Wilson's federal employment status underlies all of Plaintiffs' constitutional Causes of Action (I - IV).  The Wilsons assert First and Fifth Amendment constitutional violations resulting from "the intentional and malicious exposure by senior officials of the federal government of… Valerie Plame Wilson['s CIA employment status].  *See* Am. Compl. ¶¶ 1, 40-45.  Plaintiffs claim that they have suffered "gross invasions of privacy" as a result of the exposure of Ms. Wilson's employment status. Am. Compl. ¶ 41.

---

[4]    The Act states that, subject to certain exceptions, "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains…." 5 U.S.C. § 552a(b). For purposes of the Act, the term "record" includes "any item, collection, or grouping of information about an individual that is maintained by an agency." 5 U.S.C. § 552a(a)(4), and to "maintain" a record means "to maintain, collect, use or disseminate." *Id.* at § 552a(a)(3).

Applying the principles articulated in *Bush* and *Schweiker*, various courts in this circuit and elsewhere have held that the Privacy Act is a comprehensive scheme governing disclosure of information that constitutes a "special factor" foreclosing recognition of a *Bivens* remedy for alleged constitutional harms such as those asserted by the Wilsons. *See Hatfill v Ashcroft*, 404 F. Supp. 2d 104 (D.D.C. 2005); *Chung v United States Dep't of Justice*, No. Civ.A. 00-912, 2001 WL 34360430 (D.D.C. Sept.20, 2001) (Hogan, J.), aff'd in part, rev'd in part and remanded, 333 F.3d 273 (D.C. Cir. 2003) (affirming dismissal of *Bivens* claims). *See also, Griffin v Ashcroft*, No. 02-5399, 2003 WL 22097940 (D.C. Circuit Sept. 3, 2003) (per curiam).

Recently, in *Hatfill v Ashcroft*, this court held that the Privacy Act was a "special factor" barring recognition of a *Bivens* remedy for plaintiff's Fifth Amendment due process claims arising from allegedly improper statements by federal officials.[5] *Hatfill*, 404 F. Supp. 2d at 116.    Plaintiff, Dr. Steven Hatfill, asserted that in connection with the government's investigation of deadly anthrax letters mailed in 2001, the Attorney General and various DOJ and FBI officials, improperly made public statements and leaked information to the media implicating Dr. Hatfill in the attacks. *Id* at 106-108.    Dr. Hatfill claimed that the Attorney General's statements, as well as FBI agents' statements to Dr. Hatfill's prospective employer "deprived him of his employment and of the opportunity to gain any meaningful employment in [his field]." *Id* at 115. The Court assumed that Dr. Hatfill stated a viable Fifth Amendment due process claim for deprivation of liberty due to government stigmatization that "broadly precludes individuals or corporations from a chosen trade or business." *Id* at 116 (citing *Trifax Corp. v District of Columbia*, 314 F.3d 641, 644 (D.C. Cir 2003)).[6]

---

[5] The *Hatfill* Court did not reach a decision whether a *Bivens* remedy for plaintiff's alleged First Amendment violation was also precluded by the Privacy Act since it determined that the plaintiff had failed to adequately state a First Amendment claim. *Hatfill*, 404 F.Supp. 2d at 117.

[6] The *Hatfill* Court held that Dr. Hatfill failed to state a Fifth Amendment due process property claim because he failed to state facts that could sustain the requisite "'reputation-plus' action, which requires the making of defamatory governmental statements 'in the course of the termination of employment.'" *Hatfill*,

However, the Court determined that the Privacy Act barred recognition of Dr. Hatfill's *Bivens* claims because the Act addresses the "kinds of harms Dr. Hatfill allege[d]" and therefore, "qualifies . . .as a special factor counseling hesitation against the applicability of *Bivens*." *Id.*

Neither the allegation nor the result in *Hatfill* is unique. The district court in *Hatfill* relied in substantial measure upon decisions by the district court and the Court of Appeals for this circuit in *Chung v. Department of Justice*. *Id.* at 114. Like Plaintiffs in this case, Chung sought to assert *Bivens* claims based upon the allegedly wrongful disclosure of his status as a covert government agent. The plaintiff, Johnny Chung, pled guilty to making illegal campaign contributions; as part of his plea agreement, he agreed to serve as an undercover informant for the government. *Chung* at *1. However, the *New York Times* published a story revealing Chung's cooperation with the government, and "Chung learned from a *Los Angeles Times* reporter that high-ranking DOJ officials in Washington, D.C. had leaked the information ... about his cooperation that was published... ." *Id.* Mr. Chung filed a civil complaint asserting (1) violation of the Privacy Act by DOJ; (2) violation of his First Amendment rights to free speech by unknown DOJ officials, and (3) violation of "his Fifth Amendment rights to be secure in his person" by those same officials. *Id.* at 2 (citation omitted). The second and third claims were brought pursuant to *Bivens*. *Id.* at *6.

The district court concluded that Chung's *Bivens* claims were foreclosed by the comprehensive scheme of the Privacy Act. Specifically, the court determined that all of Mr. Chung's harms "stem from the alleged leaks," and concluded that "the Privacy Act comprehensively covers such claims and accordingly has not inadvertently omitted damages remedies, and ... Congress has not plainly expressed an intention to preserve *Bivens* remedies." *Id.* at *12 (citations omitted).

---

404 F.Supp. 2d at 116. The Court determined that because Dr. Hatfill failed to allege that the statements made about him were false when made, there was no defamation allegation. *Id.* As discussed in Section II (D) *supra*, Ms. Wilson's Fifth Amendment due process property claim is fatally flawed for the same reason.

Therefore, the Court refused to recognize a *Bivens* action for Mr. Chung's constitutional claims.[7] *Id.* The D.C. Circuit summarily affirmed the District Court's dismissal of Chung's *Bivens* claims. *Chung v. United States Dep't of Justice*, 333 F.3d 273 (D.C. Cir. 2003).

The Sixth Circuit has also held that "because the Privacy Act is a comprehensive legislative scheme that provides a meaningful remedy... to address claims regarding the creation, maintenance, and dissemination of false records by federal agency employees," it would not recognize a *Bivens* remedy "directly under the First Amendment of the Constitution." *Downie*, 301 F.3d at 696. In *Downie*, an undercover informant alleged that federal officials engaged in a retaliatory campaign to discredit him by causing entry of false records into police files. *See id.* at 689-91. Like Dr. Hatfill, the plaintiff in *Downie* claimed that federal agents' improper dissemination of information precluded him from obtaining employment in his chosen field and sought damages under *Bivens*. The Sixth Circuit noted that the relevant inquiry is "whether Congress has enacted a comprehensive administrative scheme governing the area involved, which indicates that Congress' failure to provide a damages remedy for constitutional violations was deliberate rather than inadvertent." *Id.* at 695 (internal citations omitted). However, it concluded that the Privacy Act did, in fact, provide a "meaningful remedy" for the kind of wrong arising from information management that plaintiff alleged, and it refused to imply a *Bivens* remedy.[8]

---

[7] It is important to note that the finding of *Bivens* preclusion was not based upon the viability of the Privacy Act claim. In fact, the *Chung* district court dismissed the Privacy Act claims as untimely even as it held that the Privacy Act precluded *Bivens* claims. Although the Circuit court reversed the finding of untimeliness, the initial holding of untimeliness did not disturb the finding of *Bivens* preclusion. The *Schweiker* decision clearly stated that "the absence of statutory relief for a constitutional violation does not by any means necessarily imply" that courts should create a *Bivens* remedy. *Corr. Servs. Corp. v. Malesko*, 524 U.S. 61, 69, 122 S.Ct. 515, 520 (2001) (*quoting Schweiker* 487 U.S. at 421-422). The Wilson's proposed *Bivens* claims are not precluded because they have viable Privacy Act causes of action. Rather, their claims are precluded by Congressional refusal to create a privacy action for an employee whose employment is revealed.

[8] *See also, Jones v. TVA*, 948 F.2d 258, 262 (6th Cir. 1991).

The fact that Congress has not fashioned a private right of action for the specific wrongful disclosures alleged here is no reason for this Court to part company with the courts in *Hatfill* and *Chung*. Plaintiffs' allegations of "intentional and malicious exposure" of Ms. Wilson's employment status are precisely the type of alleged wrongful disclosures that the Congress could have addressed within the Privacy Act's broad remedial scheme. As the law of this Circuit and others makes abundantly clear, the Act reflects Congress' legislative response to any potential constitutional harms arising from the conduct Plaintiffs identify, and therefore constitutes a "special factor" precluding recognition of Plaintiffs' *Bivens* claims.[9] This Court, therefore, should not allow Plaintiffs' *Bivens* actions based upon the public revelation of Ms. Wilson's employment.

**B.**   **The Intelligence Identities Protection Act, Which Imposes Criminal Penalties For Disclosing Covert Identities, Underlines The Congressional Practice Of Protecting The CIA's Powers Of Institutional Secrecy Without Creating Any Personal Privacy Right And Constitutes A "Special Factor" That Counsels Against Extending *Bivens* to Allow Plaintiffs' First or Fifth Amendment Claims Based on Alleged Disclosure of Ms. Wilson's Employment Status**

Congress has protected the CIA's powers of institutional secrecy surrounding agent identities without creating any private right of action for agents whose identity is revealed. The Intelligence Identities Protection Act ("IIPA"), 50 U.S.C. § 421, is another legislative scheme foreclosing recognition of a *Bivens* remedy for Plaintiffs' First and Fifth Amendment constitutional claims arising from purportedly wrongful disclosure of Ms. Wilson's covert employment status. The IIPA imposes criminal penalties for improper disclosure of the identities of undercover intelligence

---

[9] The Amended Complaint was filed on July 13, 2006 and does not contain a Privacy Act claim. The statute of limitations for Privacy Act claims is two years. 5 U.S.C. § 552a(g)(5). Accepting the date of publication of Mr. Novak's article as the date on which Plaintiffs knew of the alleged wrongful disclosure, Plaintiffs were time-barred from seeking relief under the Act as of July 13, 2005. It should be noted, however, that Plaintiffs' inability to obtain relief under the Act is *not* the operative question for a *Bivens* "special factor" analysis. Rather, the operative question is whether Congress has contemplated whether potential constitutional harms arising from certain behavior should be remedied at all.

officers, agents, informants and sources.[10]  Intentional wrongful disclosure of "any information identifying [a] covert agent" is a federal offense that carries penalties of up to five years imprisonment, as well as possible fines.  *See* 50 U.S.C. § 421 (a)-(d).

Congress has obviously considered and, through enactment of IIPA, legislatively addressed the government's legitimate interest in protecting the identity of covert employees.  Thus, the existence of the Act provides another "special factor" counseling against recognition of a *Bivens* remedy.[11]  The fact that Congress did not include within IIPA a private right of action for individuals whose identity may be wrongfully disclosed should not be construed as an invitation to

---

[10] The IIPA provides:

§ 421. Protection of identities of certain United States undercover intelligence officers, agents, informants, and sources

(a) Disclosure of information by persons having or having had access to classified information that identifies covert agent

Whoever, having or having had authorized access to classified information that identifies a covert agent, intentionally discloses any information identifying such covert agent to any individual not authorized to receive classified information, knowing that the information disclosed so identifies such covert agent and that the United States is taking affirmative measures to conceal such covert agent's intelligence relationship to the United States, shall be fined under Title 18 or imprisoned not more than ten years, or both.

(b) Disclosure of information by persons who learn identity of covert agents as result of having access to classified information

Whoever, as a result of having authorized access to classified information, learns the identity of a covert agent and intentionally discloses any information identifying such covert agent to any individual not authorized to receive classified information, knowing that the information disclosed so identifies such covert agent and that the United States is taking affirmative measures to conceal such covert agent's intelligence relationship to the United States, shall be fined under Title 18 or imprisoned not more than five years, or both.

(c) Disclosure of information by persons in course of pattern of activities intended to identify and expose covert agents

Whoever, in the course of a pattern of activities intended to identify and expose covert agents and with reason to believe that such activities would impair or impede the foreign intelligence activities of the United States, discloses any information that identifies an individual as a covert agent to any individual not authorized to receive classified information, knowing that the information disclosed so identifies such individual and that the United States is taking affirmative measures to conceal such individual's classified intelligence relationship to the United States, shall be fined under Title 18 or imprisoned not more than three years, or both.

(d) Imposition of consecutive sentences

A term of imprisonment imposed under this section shall be consecutive to any other sentence of imprisonment.

[11] The IIPA's lack of a remedy for an exposed agent also reflects the fact that an agent does not possess a personal "right" to his/her covert status information.  As discussed in Section II(C), the Wilsons' claims also fail because Ms. Wilson has no personal right to the fact of covert status.

fashion a *Bivens* remedy in its place. On the contrary, as the Supreme Court has made clear, courts must defer to "indications that congressional inaction has not been inadvertent."" *Schweiker*, 487 U.S. at 423. *See also, Spagnola v. Mathis*, 859 F.2d 223, 228-229 (D.C. Cir. 1988) (per curiam)(en banc) (identifying the comprehensive review system established by the CSRA, Congress's "advertent" omission of damages relief for certain CSRA claims, and the absence of any clear expression of congressional intent to preserve *Bivens* remedies, as "special factors" precluding the creation of a *Bivens* damages action for constitutional challenges to federal personnel actions).

### C.    The Highly Sensitive Nature of the Intelligence Information At Issue Is A "Special Factor" That Counsels Against Allowing The Proposed *Bivens* Action

#### 1.    This Court Should Be Reluctant To Allow New Remedies For The Release Of Information In A Sensitive Area

This case involves an area in which the Court should be reluctant to fashion new remedies. In addition to the fact that a legislative scheme (the IIPA) has been specifically created to address improper exposure of intelligence officers' identities, the highly sensitive nature of that information constitutes another "special factor" counseling judicial abstention in this case. Control of classified information and related matters of national intelligence and security undergird the Wilsons' allegations. Thus, extremely sensitive security and policy issues provide additional "special factors" precluding recognition of their *Bivens* claims.

Several courts have refused to recognize *Bivens* liability where imposing such liability would raise separation of powers concerns by threatening intrusion into unique or sensitive functions of the legislative or executive branches of government. *See United States v. Stanley*, 483 U.S. 669, 683 (1987) (refusing to create a *Bivens* remedy for military personnel because "congressionally uninvited intrusion into military affairs by the judiciary is inappropriate."); *Beattie v. Boeing Co.*, 43 F.3d 559, 563 (10th Cir. 1994) (rejecting a *Bivens* claim and noting that "predominant issue of national security clearances amounts to such a special factor counseling against recognition of a *Bivens* claim in this

case"); *Arar v. Ashcroft*, 414 F. Supp. 2d 250, 281 (E.D.N.Y 2006) (rejecting *Bivens* claims based on presence of special factor involving "crucial national security and foreign policy considerations...[which] are most appropriately reserved to the Executive and Legislative branches of government"). Matters related to national security, such as control of classified information, are clearly "of a kind for which the Judiciary has neither aptitude, facilities, nor responsibility" and "belong in the domain of political power not subject to judicial intrusion." *Chicago & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 111 (1948).

Creating a private right of action in these circumstances would be inimical to the wide discretion exercised by the Executive Branch to decide when to protect, as well as when to disclose, confidential information. The legislative scheme designed to protect covert information also can be read to afford the national security establishment discretion to decide when it should be disclosed. For example, the IIPA, limits its reach to situations in which "the United States is taking affirmative measures to conceal such individual's classified intelligence relationship to the United States." 50 U.S.C. § 421(c). Similarly, the Freedom of Information Act ("FOIA") affords the Executive the discretion, but not the obligation, to withhold agent information. *Assassination Archives & Res. Ctr. V. Central Intelligence Agency*, 334 F.3d 55, 58 (D.C. Cir. 2003) (citing Supreme Court precedent for the "weight that [courts] give the Agency's judgment as to the effect of disclosure" and quoting the D.C. Circuit's holding in *Fitzgibbon v. CIA*, 911 F.2d 755, 766 (D.C. Cir. 1990), that "[t]he assessment of harm to intelligence sources, methods and operations is entrusted to the Director of the Central Intelligence, not to the Courts."). Recognizing a private right of action in these circumstances would upend this careful balance and require the courts to resolve these difficult questions based upon the private agendas of individual employees, rather than the considered discretion of the Executive Branch. Nothing in the Constitution or the comprehensive legislative schemes of Congress supports such a novel result.

2.    **The Determination Of Ms. Wilson's Alleged Covert Status, And The Degree Of Sensitivity Surrounding That Information, Will Be Non-Justiciable**

Plaintiffs' claims cannot be decided without implicating sensitive policy determinations of a kind clearly requiring non-judicial discretion.   The well-established political question doctrine establishes that federal courts lack jurisdiction to address issues that are committed to a coordinate branch of government; where deciding the case would call for policy determinations requiring non-judicial discretion; or where undertaking independent resolution would express lack of the respect due the coordinate branches of government. *Baker v. Carr*, 369 U.S. 186, 217 (1962).  Control of classified information underlies all national intelligence and security matters -- which fall under the purview of the Executive and Legislative branches – and is clearly non-justiciable. *See Chicago & S. Air Lines Inc.* As the court in *Arar* recently recognized when it refused to create a *Bivens* remedy for alleged violations of an alien's due process rights:

> [T]he task of balancing individual rights against national-security concerns is one that courts should not undertake without the guidance or the authority of the coordinate branches, in whom the Constitution imposes responsibility for our foreign affairs and national security.   Those branches have the responsibility to determine whether judicial oversight is appropriate. Without explicit legislation, judges should be hesitant to fill an arena that, until now, has been left untouched-perhaps deliberately-by the Legislative and Executive branches.

*Arar* at 283.

Additionally, the *Totten* doctrine, which establishes the non-justicability of espionage contracts, counsels that this case involving control of covert status information is not amenable to judicial review. *Totten* held that the secrecy required by secret informant agreements "preclude[s] any action for their enforcement." *Totten v. United States*, 92 U.S. 105, 107 (1875).  The Court stated, "[p]ublic policy forbids the maintenance of any suit[,] the trial of which would inevitably lead to the disclosure of matters which the law itself regards as confidential, and respecting which it will not allow the confidence to be violated." *Id.; see also, Guong v. United States*, 860 F.2d 1063, 1065