# PART 2

# Memorandum of Points and Authorities

(Fed.Cir.1988) ("[I]t cannot be doubted that *Totten* stands for the proposition that no action can be brought to enforce an alleged contract with the government when, at the time of its creation, the contract was secret or covert."); *Kielczynski v. United States C.I.A.*, 128 F. Supp. 2d 151, 162 (E.D.N.Y. 2001) (dismissing CIA informant's claims for damages arising from terminated contract, in part, because the secrecy required by informant agreements precludes review by the courts) (citing *Totten*).

Although courts have since required that the government assert a privilege with regard to the *Totten* doctrine, Courts will dismiss claims in which it perceives "a lack of judicially discoverable and manageable standards for resolving" or "the need for an initial policy determination of a kind clearly for nonjudicial discretion" or in which the court cannot "undertak[e] independent resolution without expressing lack of respect due coordinate branches of government" thereby rendering the case unworkable from the outset. *Schneider, et al. v. Kissinger, et al.*, 310 F. Supp. 2d 251, 258 (D.D.C. 2004) (*citing Baker, supra*). The task of gathering information regarding Ms. Wilson's alleged covert work and ascertaining the degree of sensitivity attendant to that work will require an intrusion in to the CIA's secrecy rights. The complicated, highly sensitive policy considerations inherent in control of classified information, national intelligence and security are replete with "special factors" strongly counseling hesitation against judicial involvement. For these reasons, the Court should be reluctant to allow *Bivens* claims on the facts of this case.

## II.    Plaintiffs Fail to State Cognizable Constitutional Claims

Plaintiffs ask this court to create *Bivens* remedies for purported violations of their First and Fifth Amendment rights arising from the allegedly wrongful public disclosure of Ms. Wilson's covert employment status. The court should reject Plaintiffs' request not only because of the preclusive effect of the "special factors" enumerated above, but also because all of Plaintiffs' constitutional claims are fatally flawed.

First, Mr. Wilson's First Amendment claim fails to plead a requisite element: Plaintiffs do not allege that Mr. Wilson's First Amendment rights were chilled as a result of Vice President Cheney, Mr. Libby and Mr. Rove's allegedly retaliatory actions. Second, both Plaintiffs' Equal Protection claims fail because the alleged retaliation against them does not constitute a violation of equal protection rights, and they have not raised justiciable claims that they have been treated differently from others who are similarly situated. Ms. Wilson's third cause of action fails because covert employment status is not personal information in which she has a constitutional privacy right. Similarly, Ms. Wilson's fourth cause of action fails because she has not alleged that she lost her job and, without alleging discharge or demotion or broad preclusion from employment, she cannot claim harm to a constitutional property right in her reputation.

Moreover, even if the court were to overlook the legal flaws in Plaintiff's constitutional claims, the claims against Mr. Rove are also doomed by their failure to allege facts establishing causation. "[A]t least with respect to certain types of claims, proof of an improper motive is not sufficient to establish a constitutional violation – there must also be evidence of *causation*." *Crawford-El*, 523 U.S. at 593 (emphasis added); *see also Hartman v. Moore*, 126 S. Ct. 1695, 1703-04 (2006). According to Plaintiffs, the harms they have allegedly suffered arose from the public disclosure of Ms. Wilson's covert employment status. Am. Compl. ¶¶ 2-3, 40-45. According to the Amended Complaint, Mr. Rove had a conversation with Matt Cooper of *Time* magazine, who did not first publish, and thus render public, the fact of Ms. Wilson's covert CIA employment. *Id.* at ¶¶ 14, 25-25. Indeed, Plaintiffs identify Mr. Armitage as the preson who revealed Ms. Wilson's status to Mr. Novak. *Id.* ¶ at 39. Thus, Mr. Rove cannot logically be held to have caused Plaintiffs' alleged damages.

**A.    Mr. Wilson Has Not Properly Alleged A Violation of His First Amendment Right to Freedom of Speech**

According to Plaintiffs, Mr. Wilson's "public statements regarding assertions by the President... that he used to justify the war in Iraq" prompted Defendants' retaliatory "punishment" of the Wilsons by revelation of Ms. Wilson's covert employment status. *See, e.g.,* Am. Compl. ¶ 2. Accepting Plaintiffs' account as true, the Amended Complaint nevertheless fails to state a valid First Amendment claim because Plaintiffs do not assert that Defendants' alleged actions chilled the exercise of Mr. Wilson's First Amendment rights – a requisite element of a First Amendment retaliation claim. Thus, Mr. Wilson's First Amendment claim is fatally flawed.

The right to free speech includes both the affirmative right to speak and the right to be free from retaliation by government officials. *Hatfill v. Ashcroft,* 404 F. Supp. 2d 104, 117 (D.D.C. 2005) (citing *Crawford-El v. Britton,* 523 U.S. 574, 589 n.10 (1998) (citation omitted)). It is well-established that a constitutional claim based on the right to speak freely without fear of government retaliation contains three elements: "[A] plaintiff must prove that '(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment rights."[12] *Id.* (citing *Curley v. Village of Suffern,* 268 F.3d 65, 73 (2d Cir. 2001); *see also, Suarez Corp. Indus. v. McGraw,* 202 F.3d 676, 686 (4th Cir. 2000) (internal citations and quotations omitted).

Mr. Wilson's First Amendment claim fails because he does not allege that Defendants' alleged actions chilled his First Amendment rights, a requisite element of a valid First Amendment claim. Although Federal Rule of Civil Procedure 8 permits plaintiffs much flexibility in framing their complaint, they may not rest on broad allegations or legal conclusions as a substitute for well-

---

[12] In *Hatfill,* the court denied plaintiff's First Amendment claim after finding that although Dr. Hatfill alleged that his speech was chilled, he *"failed to show that his First Amendment rights were actually chilled."* *Hatfill,* 404 F.Supp. 2d at 118 (emphasis added).

pled factual assertions. *See Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). Review of the Amended Complaint reveals an utter absence of any allegation that Mr. Wilson's speech was chilled by Defendants' actions. *See* Am. Compl. ¶¶ 25-35. Plaintiffs assert that Defendants, including Mr. Rove, disclosed Ms. Wilson's classified CIA identity and "secretly spread rumors about [her] alleged role in the Niger mission." Am. Compl. ¶¶ 19(n), 35. Plaintiffs claim the following harms resulting from Defendants' purportedly unconstitutional actions: invasion of their privacy; fear for their family's safety; impairment of Ms. Wilson's ability to perform her CIA job; impairment of Mr. and Ms. Wilson's "professional opportunities" and "[deprivation]" of their First and Fifth Amendment rights. Am. Compl. ¶¶ 40-45. Conspicuously absent, however, is any claim that the Defendants' actions had any chilling effect on Mr. Wilson's speech.

Simply put, "proof of improper motive" may be a necessary component of a First Amendment claim, but it is not alone sufficient to state a claim for relief, particularly since ill motive is easy to allege, but virtually impossible to disprove. *Crawford-El* at 594. The gist of a First Amendment claim is the risk that "retaliatory actions may tend to chill individuals' exercise of constitutional rights." *ACLU v. Wicomico County, Md.*, 999 F.2d 780, 785 (4th Cir. 1993). Without a credible claim that his First Amendment rights have at least been chilled, Mr. Wilson does not assert a valid claim for relief.[13]

Mr. Wilson's First Amendment claim against Mr. Rove also fails because, as stated *infra*, Plaintiffs fail to allege that conduct by Mr. Rove was the cause of any damages. Plaintiffs allege that

---

[13] As the courts have made clear, once a plaintiff has asserted that his free speech rights have been chilled, the question of whether the facts state a claim for relief is an objective one, in which the court is required to measure the risk of "impact against an objectively reasonable plaintiff." *Baltimore Sun Co. v. Erlich*, 437 F.3d 410, 415 (4th Cir. 2006). In considering whether a reasonable person in Mr. Wilson's circumstance would be chilled by the alleged conduct, the Court may consider, among other factors, the fact that Mr. Wilson not only continued to speak after the alleged retaliation, but that his alleged victimization by Defendants furnished him a unique measure of visibility and access to the media. *Id.* at 419. The Court may take judicial notice of the fact that in the nine months following the alleged retaliation, Mr. Wilson was ubiquitous. Any suggestion that Mr. Wilson – or a reasonable person in his circumstances – was or would be chilled is fatuous.

their harms stem from the public disclosure of Ms. Wilson's covert status in Robert Novak's July 14, 2003 column. Am. Compl. ¶ 14. Plaintiffs identify Mr. Armitage – who is not alleged to have been part of the scheme to damage the Wilsons –- as the source of that information. *Id.* at ¶ 39. Thus, Mr. Rove's speech cannot be deemed to have caused Plaintiffs' harms.

**B.      Because The Plaintiffs' Second Cause Of Action Does Not Allege An Equal Protection Violation And Is Not Justiciable, It Should Be Dismissed**

Plaintiffs also fail to state a viable claim that Mr. Rove denied their constitutional right to equal protection. Plaintiffs' Amended Complaint focuses upon the Defendants' alleged retaliation against them, which does not constitute a violation of equal protection rights. Additionally, Plaintiffs have not presented a justiciable claim that CIA agents and spouses similar to them have not been similarly treated. Plaintiffs' second cause of action, therefore, should be dismissed.

**1.      The Plaintiffs' Claims Of Retaliatory Official Speech Have Not Alleged Independent Violations Of Equal Protection Interests**

The Constitution's guarantee of equal protection does not reach the conduct that is the basis for the Wilsons' complaint. In dismissing an equal protection claim by a farmers' cooperative, this court recently reiterated the principle that, "[t]he Fifth Amendment does not confer a general right to be free from retaliation." *Southern Growers, Inc. et al. v. Veneman*, 2006 WL 2244628 at *1-2 (D.D.C. 2006) (Slip Copy) (citing *Watkins v. Bowden*, 105 F.3d 1344, 1354 (11th Cir. 1997) *and Grossbaum v. Indianapolis-Marion County Bldg. Auth.*, 100 F.3d 1287, 1296 n. 8 (7th Cir 1996). Similarly, with regard to harmful official speech, the Second Circuit has held that "there simply is no equal protection right not to be singled out for criticism." *X-Men Security, Inc. v. Pataki*, 196 F.3d 56, 72 (2d Cir. 1999). Official speech, even when alleged to be retaliatory, does not offend the equal protection clause of the Constitution.

Simply stated, Plaintiffs claim of retaliation must rise or fall – and, in this case, it must fall – on its merits as a claim arising under the First Amendment. As the Court of Appeals for the

Eleventh Circuit made clear, "the right to be free from retaliation is clearly established as a first amendment right [and under statutory theories]; but no clearly established right exists under the equal protection clause to be free from retaliation." *Ratliff v DeKalb County, Ga.,* 62 F.3d 338, 340-341 (11th Cir. 1995) (reversing a denial of qualified immunity because of the absence of a viable equal protection claim independent of other claims). *See, e.g., Grossbaum,* 100 F.3d at 1296 (noting 7th Circuit precedent that dismissed equal protection claim that was a mere "rewording" of a First Amendment claim) (citing *Thompson v City of Starkville, Miss.,* 901 F.2d 456, 468 (5th Cir. 1990)). Plaintiffs cannot simply repackage facts supporting other causes of action as a claim that their right to equal protection has been infringed.

Neither Plaintiff has alleged anything more than retaliatory official speech. Plaintiffs do not identify any right that was allowed to others but denied to them. Their complaint raises claims for the alleged violation of Mr. Wilson's First Amendment rights and Ms. Wilson's rights to privacy and property. While these other causes of action suffer from their own shortcomings, they simply cannot be served as leftovers under the equal protection clause.

## 2. Any Attempt To Compare Plaintiffs' Experience To Those Of Other Couples With One Covert CIA Spouse Would Be Uniquely Non-Justiciable

A properly plead equal protection claim in this context would not be justiciable. Courts will not undertake cases that would be rendered non-justiciable by a conflict with the needs and prerogatives of another branch of government. We have already cited the *Totten* doctrine, which establishes the non-justiciability of espionage contracts. *See also Guong,* 860 F.2d at 1065; *Kielczynski,* 128 F. Supp. 2d at 162 (dismissing CIA informant's claims for damages arising from terminated contract, in part, because the secrecy required by informant agreements precludes review by the courts) (citing *Totten*). Although state secrecy privilege is for the government to assert, Courts will dismiss claims in which it perceives "a lack of judicially discoverable and manageable standards for resolving" or "the need for an initial policy determination of a kind clearly for nonjudicial

discretion" or in which the court cannot "undertak[e] independent resolution without expressing lack of respect due coordinate branches of government" thereby rendering the case unworkable from the outset. *Schneider, et al. v. Kissinger, et al.,* 310 F. Supp. 2d 251, 258 (D.D.C. 2004) *(citing Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691 (1962)). "[T]he real prospect that the parties would not be able to fully gather the data necessary to adjudicate [a] claim on the merits also points to a finding of non-justiciability." *Briton et al. v. Palestinian Interim Self-Government Authority, et al.,* 310 F. Supp. 2d 172 (D.D.C. 2004) *(quoting Linder v. Portocarrero,* 747 F. Supp. 1452, 1457 (S.D. Fl. 1990) *aff'd.* 963 F.2d 332 (11th Cir. 1992). Where a claim cannot be adjudicated without impinging upon the decisions and secrecy determinations of another branch of government, the claim should be dismissed.

Resolving the allegation that the Wilsons were treated differently than other CIA employees or spouses would require the review of information that the CIA is legally allowed to keep secret; accordingly, the Wilson's equal protection cause of action is uniquely non-justiciable. Assessing an alleged violation of equal protection requires a comparison of the plaintiff's treatment to others similarly situated. *See, e.g., Women Prisoners of the District of Columbia Dept. of Corrections et al., v. District of Columbia,* 93 F.3d 910, 924 (D.C. Cir. 1996) (noting that demonstrating violation of equal protection requires showing both unequal treatment as well as that those unequally treated were similarly situated); *Brandon v. Dist. Of Columbia Bd. of Parole,* 823 F.2d 644 (D.C. Cir. 1987). Adjudication of a claim that the Wilsons were treated differently than other couples with a covert CIA employee could not be accomplished without revealing the identities of other covert agents. Because even a properly pleaded equal protection theory in this context would be non-justiciable, Plaintiffs' second cause of action should be dismissed.

C.     **Covert Federal Employment Status Is Not Personal Information To Which Ms. Wilson Has A Right, Thus Her Third Cause Of Action For Fifth Amendment Right To Privacy Should Be Dismissed**

1.     **D.C. Circuit Has Not Recognized A Constitutional Cause Of Action Arising From The Release Of True Information**

Ms. Wilson's Fifth Amendment right to privacy claim fails because covert CIA employment status is not personal information in which she has a constitutional property interest. As an initial matter, there is grave doubt whether the constitutional right to privacy even encompasses an interest in the nondisclosure of personal information. The Supreme Court has never resolved this issue. *See Whalen v. Roe*, 429 U.S. 589, 599, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1977) (any government duty to avoid disclosure of personal information only "*arguably* has its roots in the Constitution....We...need not, and do not, decide any question which might be presented by the unwarranted disclosure of accumulated private data"); *see also, Nixon v. Administrator of General Services*, 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977) ("We *may* agree... that, at least when Government intervention is at stake, public officials... are not wholly without constitutionally protected privacy rights in matters of personal life unrelated to any acts done by them in their public capacity"). While other circuits have taken differing views, [14] the Court of Appeals for this Circuit has refused to recognize a right to informational privacy and expressed serious skepticism as to whether there is a constitutional right to privacy in the nondisclosure of personal information. *American Federation of Government Employees v. Dep't of Housing and Urban Development*, 118 F.3d 786, 788, 791 (D.C. Cir. 1997) (rejecting HUD employees' claims that HUD forms violated their constitutional rights by requiring disclosure of private facts such as illegal drug use and financial history).

---

[14] DC Circuit reached its conclusion despite cases in other circuits recognizing such a right. *See, e.g., In re Crawford*, 194 F.3d 954, 958-959 (9th Cir. 1999); *Kallstrom v. Columbus*, 136 F.3d 1055, 1061-62 (6th Cir. 1998); *Eagle v. Morgan*, 88 F.3d 620, 625 (8th Cir. 1996); *Sheets v. Salt Lake County*, 45 F.3d 1383, 1387 (10th Cir. 1995).

2.    **Ms. Wilson Does Not Have A Constitutional Claim Based Upon The Alleged Revelation Of The Nature Of Her Employment For The Nation**

Even assuming the existence of some type of constitutional right to the nondisclosure of personal information, Ms. Wilson's claim fails in any event because covert federal employment status is not personal information in which she can assert a constitutional right. *Blazy v. Tenet*, 979 F. Supp. 10, 27 (D.D.C 1997). In *Blazy*, the court rejected plaintiff's assertion that he had a right to information (without redaction) in his CIA personnel file. The Court determined that the plaintiff did not have any right to the status of his employment since access to that information is expressly precluded in the Privacy Act, the Freedom of Information Act, and the Central Intelligence Agency Act. *Id.* The *Blazy* court explained that National Security Act of 1947 charges the Director of the CIA with "protect[ing] intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 403-3(c)(6). In furtherance of that responsibility, Section 6 of the Central Intelligence Agency Act of 1949 exempts the CIA from provisions of any law "which require[s] publication or disclosure of the organization, functions, names, official titles, salaries or numbers of personnel employed by the Agency." 50 U.S.C. § 403(g). Therefore, under exemptions to the FOIA and the Privacy Act, the plaintiff was not entitled to such information or information that would lead to its disclosure. *Id.* (citing *Central Intelligence Agency v. Sims*, 471 U.S. 159, 167, 105 S.Ct. 1881, 1886-87, 85 L.Ed.2d 173 (1985); *Minier v. Central Intelligence Agency*, 88 F.3d 796, 801-02 (9th Cir.1996); *Pfeiffer v. Central Intelligence Agency*, 721 F.Supp. 337, 341-42 (D.D.C.1989); *Iglesias v. Central Intelligence Agency*, 525 F.Supp. 547, 554 (D.D.C. 1981). The Supreme Court has explained "Congress vested in the Director of Central Intelligence very broad authority to protect all sources of intelligence information from disclosure... [and] entrusted this Agency with sweeping power to protect its 'intelligence sources and methods.'" *CIA v. Sims*, 471 US 159, 169 (1985). As we discussed above, the powers of institutional secrecy vested in the CIA have not created privacy actions for the agents

themselves.[15]

In light of the uncertainty that a constitutional right to private information even exists and the well-recognized power delegated to the CIA to control information relating to its "intelligence sources and methods," this court should reject Ms. Wilson's attempt to base a Fifth Amendment constitutional claim on a purported right arising from the status of her employment with the CIA.

**D.    Because Ms. Wilson Has Not Alleged That She Was Dismissed From Her Job, Let Alone Precluded From Employment, She Has Not Alleged Any Fifth Amendment Property Right Violation**

Ms. Wilson also complains of harm to reputation without alleging that she was dismissed from her job, let alone precluded from employment.  Under well established principles governing Fifth Amendment Due Process property right, these allegations do not state a claim for relief.

**1.    Alleging Unfavorable Factual Revelations, In The Absence Of Loss Of Government Employment, Or Preclusion From Other Employment, Does Not State A Due Process Property Right Violation**

The D.C. Circuit has permitted Due Process property claims in only two very narrow circumstances: first, where defamatory speech was accompanied by the discharge or demotion of a government employee; or, second, where the allegedly wrongful statements, accompanied by "tangible change in status," have precluded a plaintiff from pursuit of a profession.  *O'Donnell v. Barry*, 148 F.3d 1126, 1139-42 (D.C. Cir. 1998).  Because Ms. Wilson's allegations do not satisfy either theory, she has failed to state a claim for violation of Due Process property rights.

---

[15] Indeed, as we noted in section II(B) *supra,* in addition to providing proof that Congress has considered this issue, the discretion vested in the CIA is inimical to the suggestion that the agent has a personal privacy interest.  It is not hard to imagine a scenario in which it might suit the interests of national security to reveal an agent's identity.  The legal structures allowing the CIA and national security authorities discretion to make such decisions would be hampered if agents were given a privacy interest in the fact that they have been employed on behalf of the nation.

2.    **Any Plaintiff Who Has Not Alleged Defamation Or Loss Of Government Employment Has Not Alleged A "Reputation Plus" Violation Of Her Due Process Property Rights**

"Defamation, by itself, is a tort actionable under the laws of most States, but not a constitutional deprivation." *Siegert v. Gilley*, 500 U.S. 226, 233, 111 S. Ct. 1789, 1794 (1991).[16] More than thirty years ago, the Supreme Court held that harm to reputation, without an accompanying change in legal status, such as dismissal from employment, does not violate Due Process. *Paul v. Davis*, 424 U.S. 693, 96 S. Ct. 1155 (1976). In *Davis*, the Supreme Court held that a man whose picture had been circulated by the local police on a list of shoplifters did not state a Due Process claim. The Court reasoned that harm to reputation did not deny a constitutional right because any attendant harms "are sanctions applied by public disapproval, not by law." 424 U.S. at 704. The Court held that a Constitutional violation required the use of authority to alter a legal status. 424 U.S. at 704-711. Damaging statements not accompanied by "discharge from government employment or at least a demotion in rank and pay" cannot state a claim under the "reputation plus" theory of Due Process property violation. *O'Donnell*, 148 F.3d at 1140; *see also Doe v. United States Dept. of Justice*, 753 F.2d 1092, 1109 (D.C. Cir. 1985).

Even if loss of government employment proves to be a distant consequence of an official's embarrassing speech, there is still no constitutional violation. For example, in *Siegert, supra*, the Supreme Court held that a government employee whose new job was ended by the negative statements of his former supervisor could not state a constitutional claim because "[t]he alleged defamation was not uttered incident to the termination of Siegert's [Government] employment."

---

[16] We note also that Ms. Wilson has not alleged that the statements in question were false, which is a traditional requirement of defamation. Although the Public Disclosure of Private Facts tort does not require falsity, it is questionable whether actions under that theory can state a claim for "defamation plus" Due Process violations. At least one D.C. district court ruling has held that true statements cannot form the basis for a "defamation plus" Due Process violation. *See Hatfill*, 404 F.Supp.2d at 116 (noting that a claim based upon true Government statements alleging that the plaintiff was a "person of interest" in an investigation, because of their truth, could not form the basis for a "defamation plus" Due Process violation.

500 U.S. at 234, 111 S. Ct. at 1794. Similarly, in *O'Donnell*, the Court held that the fact that alleged discharge was not "accompanied" by alleged discharge negated a reputation plus claim. 148 F.3d at 1140.

3.    **Any Plaintiff Who Has Not Alleged Stigma Precluding Pursuit Of Her Career Has Not Alleged A "Stigma Or Disability" Violation Of Her Due Process Property Rights**

In the alternative, Plaintiffs not discharged from government employment may establish a violation of a Due Process right to property only if they can demonstrate that the allegedly wrongful conduct imposed a "stigma or disability" that "foreclosed [them from taking] advantage of other employment opportunities." *O'Donnell*, 148 F.3d at 1140 (*quoting Bd. Of Regents v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701 (1972)). Whether the exclusion from other opportunities is "formal[ ] or automatic[ ]" or is accomplished through a "broad effect," it must have precluded pursuit of other employment opportunities. *O'Donnell*, 148 U.S. at 1141 (denying a claim by a police officer who had been able to find other employment after his reputation-harming transfer) (*citing Kartseva v. Dept. of State*, 37 F.3d 1524 (D.C. Cir. 1994)). To rise to the level of a constitutional violation, a stigma or disability must "seriously affect if not destroy a plaintiff's ability to pursue his chosen profession [and] substantially reduce the value of his human capital" and have been accompanied by "some tangible change in [official] status." *Id.* (citing *Taylor v. Resolution Trust Corp.*, 56 F.3d 1497, 1506 (D.C. Cir. 1995)). To meet this standard, an alleged preclusion must have been "either sufficiently formal or sufficiently broad." *Trifax Corp. v. District of Columbia et al.*, 314 F.3d 641, 644 (D.C. Cir. 2003).

4.    **Ms. Wilson, Because She Has Not Alleged That She Suffered Any Contemporaneous Loss Of CIA Employment Or That She Has Been Pre-Empted From Other Related Employment, Has Not Stated A Due Process Property Rights Violation**

Ms. Wilson has not alleged any facts that would support a violation. Ms. Wilson has not alleged that Mr. Rove ordered her dismissal. Indeed, Plaintiffs have not alleged that the CIA

dismissed or demoted Ms. Wilson. On the contrary, the Amended Complaint acknowledges that Ms. Wilson's employment with the CIA continued until January 2006, more than two years after the allegedly wrongful disclosures. Am. Compl. ¶ 7. She does not, in short, even allege a due process violation based upon defamatory speech that results in discharge or demotion. Similarly, although Ms. Wilson contends generally that she was "impaired in her ability to carry out her duties at the CIA." Am. Compl. ¶ 43, and, following her retirement from the CIA, "impaired in pursuing professional opportunities," *Id.* ¶ 44, these fuzzy allegations of "impairment" do not demonstrate, as she must for this claim to proceed, that Mr. Rove's conduct resulted in a "tangible change" in her employment status that "significantly affect[ed] or destroy[ed]" her ability to find comparable employment. Accordingly, Ms. Wilson's Fourth Cause of Action should be dismissed.

## III.    Mr. Rove Is Entitled to Qualified Immunity

The Supreme Court has consistently affirmed that government officials enjoy qualified immunity from suit unless their actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Behrens v. Pelletier*, 516 U.S. 299, 305 (1996). As the Court emphasized in *Anderson v. Creighton*, 483 U.S. 635 (1987): "[P]ermitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *Id.* at 638 (1987); *see also*, *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982). Accordingly, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established legal rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Farmer v. Moritsugu*, 163 F.3d 610, 613 (D.C. Cir. 1998). This affirmative defense serves the public interest because "where an official's duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken 'with independence and without fear of

consequences.'" *Harlow*, 457 U.S. at 819 (quoting *Pierson v. Ray*, 386 U.S. 547, 554 (1967)).

A two-step analysis governs determinations into whether a particular officer enjoys qualified immunity. First, one must inquire whether the facts, viewed in the light most favorable to the plaintiff, demonstrate a constitutional violation by the government official. *See Saucier v. Katz*, 533 U.S. 194, 199 (2001). If a plaintiff overcomes this threshold burden, the qualified immunity inquiry proceeds to a determination of whether the particular right in question was "clearly established." As the Court of Appeals for this Circuit has emphasized, "[c]learly established" means "settled, indisputable law" involving "basic, unquestioned... rights." *Zweibon v. Mitchell*, 720 F.2d 162, 172-73 (D.C. Cir. 1983). Moreover, it is not enough that "the relevant 'legal rule' or 'right' is 'clearly established'" at a high level of generality. Rather, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640 (emphasis added); *id.* at 638 ("Our cases... generally provid[e] government officials, with a qualified immunity.., as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated."); *see also Saucier v. Katz*, 533 U.S. 194, 202 (2001) ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." (citation omitted)).

Accordingly, where a claim of constitutional right depends on application of a well-established general rule to particular facts, officials are immune unless in the light of pre-existing law the unlawfulness of their conduct would have been apparent to all but the "plainly incompetent." *Malley v. Briggs*, 475 U.S. 335. 341 (1986). *See Crawford-El v. Britton*, 523 U.S. 574, 592-93 (1998) ("Even when the general rule has long been clearly established [for instance, the First Amendment bars retaliation for protected speech], the substantive legal doctrine on which the plaintiff relies may facilitate" dismissal because "there may be doubt as to the illegality of the defendant's particular

conduct").   A case directly "on all fours" is not required, *see Hope v. Pelzer*, 536 U.S. 730, 739 (2002); but deciding whether a right was "clearly established" cannot be approached from a general perspective, but rather from "a more particularized" perspective. *Anderson*, 483 U.S. at 640; *see also Saucier*, 533 U.S. at 202.[17]

Because qualified immunity "is an immunity from suit rather than a mere defense to liability," the Supreme Court "repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Saucier v. Katz*, 533 U.S. 194, 200-201 (2001) (internal quotation marks omitted). Where, as here, the allegations of the complaint are insufficient to overcome qualified immunity, the defendant is "entitled to dismissal prior to discovery." *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987).

A.    **Because The Plaintiffs Have Not Alleged Deprivation Of Actual Constitutional Rights They Have Not Met The Threshold Requirement To Overcome The Qualified Immunity Defense**

Officials who have not violated any constitutional right are immune from suit.  If the alleged facts, viewed in the light most favorable to the plaintiff, fail to demonstrate a constitutional violation by the government official, the suit may not proceed. *See Saucier v. Katz*, 533 U.S. 194, 199 (2001). As we have explained above in Section II (A)-(D) *infra*, all of Plaintiffs' alleged constitutional claims are fatally defective.   In the absence of validly stated constitutional claims, Mr. Rove is immune from suit for actions allegedly taken in the scope of his employment.

---

[17] In addition to focusing closely on the specific conduct alleged, qualified immunity analysis requires an individualized determination of the personal culpability of each defendant.  An individualized analysis is necessary because government officials may be held personally liable in constitutional tort actions only based upon their personal actions and not on any type of vicarious liability theory. *See e.g. Risley v. Hawk*, 108 F.3d 1396, 1396-97 (D.C. Cir. 1997). They may not be held liable based upon the position or office they occupy in the government. *Id.*; *see also Meyer v. Reno*, 911 F. Supp. 11, 15 (D.D.C. 1996).  To state a cognizable constitutional tort claim against an official, the complaint must describe the official's personal involvement in and responsibility for the clearly established unconstitutional conduct. *Cf. Anderson*, 483 U.S. at 640 ("[t]he contours of the right must be sufficiently clear that a reasonable official would understand that *what he is doing* violates that right" (emphasis added)).

Thus, the Court need not undertake the second prong of the qualified immunity analysis. Nevertheless, the analysis of Plaintiffs' claims under the second prong of qualified immunity reinforces the obvious conclusion that Mr. Rove is entitled to qualified immunity, and, therefore, the Amended Complaint against him must be dismissed.

**B.    Mr. Rove's Alleged Actions Would Not Have Violated Any Clearly Established Constitutional Right Of Which A Reasonable Official Would Be Aware**

According to Plaintiffs, Mr. Rove is alleged to have engaged in a "deep background" conversation with a *Time Magazine* reporter in which he conveyed concededly truthful information about Plaintiffs' role in a matter in which Mr. Wilson had already spoken sharply and publicly. While Plaintiffs contend that Mr. Rove intended to discredit Mr. Wilson – conduct that, if true, is protected by the First Amendment, not foreclosed by it -- Plaintiffs do not suggest that Mr. Rove was aware of Ms. Wilson's covert status or of the alleged harms that might flow from public disclosure of her status. Mr. Rove is not alleged to have made any untrue or threatening statements regarding Plaintiffs, and he took no actions to negatively affect Ms. Wilson's job. According to Plaintiffs, Mr. Armitage, not Mr. Rove, conveyed the information about Ms. Wilson that Robert Novak subsequently published.

No case has suggested that a senior public official violates "clearly established" constitutional rights by defending government policy and responding directly to its critics. As the Government's filings in this case attest, a fundamental part of Mr. Rove's senior leadership position involves responding to press reports regarding government business and providing the Government's perspective on matters of public controversy. *See* Memorandum of Points and Authorities in Support of United States Motion to Dismiss. Such dialogue comprises the essence of the action by Rove that Plaintiffs allege. As the D.C. Circuit has aptly noted, "if the First Amendment were thought to be violated any time a private citizen's speech or writings were

criticized by a government official, those officials might be virtually immobilized. *Penthouse Int'l Ltd. v. Meese*, 939 F.2d 1011, 1016 (D.C. Cir. 1991) (*citing Block v. Meese*, 793 F.2d 1303, 1312-1314 (D.C.Cir.1986)).  Moreover, government officials have the right not only to respond to, but also to proffer, criticism.  "As part of the duties of their office, these officials surely must be expected to be free to speak out to criticize practices, even in a condemnatory fashion, that they might not have the statutory or even constitutional authority to regulate." *Id.* at 1015.

Thus, in light of abundant First Amendment law, even if Mr. Rove's alleged remarks were made to disparage Ms. Wilson, Mr. Rove would not have understood that his alleged conversations with Mr. Cooper violated a "clearly established" constitutional right.  Even if such rights are now found to exist, Mr. Rove cannot be said to have "fair warning" that his conduct was prohibited. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) ("[T]he salient question is whether the state of the law... gave fair warning" that defendant's alleged behavior was unconstitutional.)

Regarding Plaintiffs' purported equal protection violations, critical official speech, even if retaliatory, cannot state an equal protection claim since "there simply is no equal protection right not to be singled out for criticism." *X-Men Security, Inc. v. Pataki*, 196 F.3d 56, 72 (2d Cir. 1999).  Thus, Mr. Rove's speech, even if retaliatory, could not offend "clearly established" equal protection rights.  Similarly, regarding Ms. Wilson's purported right to privacy claim, Mr. Rove's speech cannot be construed to infringe on any "clearly established" right, since the Supreme Court has never recognized the existence of the informational privacy right on which Ms. Wilson's claim relies. *See Whalen v. Roe*, 429 U.S. 589 (1977); *Nixon v. Administrator of General Servs.*, 433 U.S. 425 (1977).  As previously discussed, the D.C. Circuit has not recognized such a constitutional right and has explicitly stated that such a purported constitutional right is "not well-established," *American Federation of Government Employees*, 118 F.3d at 192 – precisely the opposite of what must be demonstrated to overcome a claim of qualified immunity.  Finally, even accepting the disputed

36

notion that Ms. Wilson had a property right in her employment, Mr. Rove could not reasonably expect that his truthful speech would violate such right, since he is not alleged to have taken any steps to discharge or demote her or to so stigmatize her so as to alter her legal status or broadly exclude her counterintelligence work (indeed, she does not allege that she was fired or demoted and remained employed at the CIA for an additional two and a half years). *See Trifax Corp. v. District of Columbia*, 314 F.3d 641, 644 (D.C. Cir. 2003); *see also Kartseva v. Department of State*, 37 F.3d 1529, 1530 (D.C. Cir. 1994).

## IV. Because Plaintiffs Filed This Action Almost Three Years After The Alleged Actions, The Plaintiffs State Law Claim And The Analogous *Bivens* Claims Are All Untimely

Plaintiffs have alleged causes of actions rooted in the alleged disclosure of allegedly private facts resulting in stigma and embarrassment. The state law tort for the public disclosure of private facts is subject to a one-year limitations period prescribed by D.C. Code § 12-301(4). The state law action is therefore untimely.[18] Because *Bivens* actions carry the same limitations period as the most closely analogous state law claim, the plaintiffs' *Bivens* actions are also subject to the same one year limitations period. Because publication of Ms. Wilson's CIA employment occurred on July 14, 2003, Am. Compl. ¶ 14, and Plaintiffs filed their initial complaint on July 13, 2006, their entire action, accordingly, is time-barred.

### A. Plaintiffs' State Law Action For Public Disclosure Of Private Facts Is Untimely

Plaintiffs' state law action for public disclosure of private facts is untimely. Although the common law tort for public disclosure of private facts is not specifically mentioned in the District of

---

[18] The Government has certified that, if Plaintiffs' allegations were true, Mr. Rove and the other defendants would have been acting within the scope of their employment. For this reason, the Government has filed a motion, pursuant to the "Westfall Act," 28 U.S.C. § 2679, to substitute itself in place of Mr. Rove as the defendant to the Fifth Cause of Action. We support this motion. Should this court reject the presumed validity of the Attorney General's scope of employment certification and deny the Government's motion to dismiss, we raise the untimeliness of the Fifth Cause of Action as an affirmative defense.

Columbia's one year limitation statute for libel and slander, this district has held that torts alleging invasion of privacy in general, and the public disclosure of private facts in particular, are forms of defamation that should be subject to the limitations that D.C. Code 12-301(4) prescribes for defamation actions.[19] *See Nix v. Hoke*, 139 F.Supp.2d 125, 134 n. 9 (D.D.C. 2001) (wiretapping privacy invasion akin to defamation and therefore subject to the one year statute of limitation); *Grunseth v. Marriott Corp.*, 872 F.Supp. 1069 (D.D.C. 1995), *aff'd. other grounds* 79 F.3d 169 (D.C. Cir. 1996) (action arising from publication of hotel records was "essentially a type of defamation" action and consequently subject to the one-year limitations period); *Doe v. Southeastern University*, 732 F.Supp 7, 8 (D.D.C. 1990) (holding, in an action arising from a university's revelation of a student's HIV infection, that "[i]nvasion of privacy is essentially a defamation type action" and accordingly subject to the one year limitations period). Plaintiffs' fifth cause of action is therefore subject to the one-year limitations period mandated by D.C. Code § 12-301(4).

Plaintiffs allege that the various defendants revealed Ms. Wilson's CIA involvement more than one year prior to the filing of this action. They allege that the defendants made the revelation to various reporters prior to July 14, 2003. Am. Compl. ¶¶ 14, 19(m), 19(p). The disclosures were published on July 14, 2003. *Id* ¶ 14. Plaintiffs do not allege that there were any subsequent revelations.[20] The plaintiffs filed their original complaint in this matter on July 13, 2006. Because

---

[19] This district's classification of public disclosure of private facts as a form of defamation derives from the fact that this tort requires that the alleged revelation be "highly offensive to a reasonable person of ordinary sensibilities." *Nix*, 139 F.Supp.2d at 134. The originators of the cause of action for public disclosure of private facts envisioned it as "an extension of defamation, except that the [alleged tortuous] publication was truthful." John A. Juarata, Jr., "The Tort That Refuses To Go Away: The Subtle Re-Emergence of Public Disclosure of Private Facts," 36 San Diego Law Review 489, 494 (1999) (citing articles by Brandeis and Prosser).

[20] Nor can Plaintiffs make any such allegation with regard to Ms. Wilson's CIA involvement. A key threshold requirement of the public disclosure of private facts tort is that the alleged disclosure have actually been of a private fact. *Nix*, 139 F.Supp.2d at 134 n. 8. Once Ms. Wilson's CIA involvement was revealed in a column on July 14, 2003, in the front section of major national publications, no subsequent revelation could have met that core requirement.

their action was filed more than one year after the publication of the allegedly private facts, their fifth cause of action is time-barred.

**B.    The District Of Columbia Circuit Limits *Bivens* Actions Using The Limitations Period Of The Most Clearly Analogous State Action**

Plaintiff's *Bivens* actions are also barred by the same one-year limitations period for defamation actions. Unlike causes of action arising under a statute, *Bivens* claims look to state law for the limitations period of the "analogous" state action. *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 742 (D.C. Cir. 1995); *see also, McClam v. Barry*, 697 F.2d 366 (D.C. Cir. 1983); *Hobson v. Wilson*, 737 F.2d at 32 (D.C. Cir. 1984); *Doe v. Dept. of Justice*, 753 F.2d 1092 (D.C. Cir. 1985) (citing *Burnett v. Grattan*, 468 U.S. 42, 104 S. Ct. 2924, 2929 (1984)). In *McClam*, Judge Bork, writing for the D.C. Circuit, applied the one-year statute of limitations to a *Bivens* claim arising from assault, which, pursuant to D.C. Code § 12-301(4), carried a one-year limitations period. The Court rejected the argument that Constitutional claims were inherently different from underlying state actions and, therefore, should not be subject to the same statute of limitations. Judge Bork reasoned:

> At the outset it is important to note that we need not reject appellant's contentions that constitutional claims differ from closely analogous common-law claims in the interests they protect, in their elements and origins and in their importance. For some claims, and in some respects, those contentions are undoubtedly true. Appellant has failed, however, to establish that they entail rejection of the local limitations period for the common-law cause of action.

697 F.2d at 373, *overruled on other grounds Brown v. United States*, 742 F.2d 1498 (D.C. Cir. 1984). In identifying the most clearly analogous cause of action, the Court held that lower courts must "select the [underlying] claim most clearly comparable to the federal claim with respect to fact finding accuracy and settled expectations. The comparison of any two claims will generally focus on the facts that must be litigated in trying them." *Id* at 374. Judge Bork, further on, stated that, if a *Bivens* claim and a state cause of action:

are so alike that "plaintiffs can be expected to plead the common law claim as a pendent claim in constitutional suits," then the same judgment about repose applies to both claims. For such pairs of claims, the facts to be proved are largely the same, and principally for that reason but also because the two claims grow out of the same incident and seek to vindicate the same interests, settled expectations must be judged the same.

*Id.* at 375 (citations omitted). Years later, in *Doe, supra,* the D.C. Circuit affirmed the district court's application of the one-year limitations period for defamation to a *Bivens* action by a plaintiff alleging that her reputation had been harmed by her dismissal upon charges of unprofessional conduct and dishonesty.[21] Although the plaintiff's case alleged that she was unfairly dismissed, the D.C. Circuit

_____

[21] With regard to § 1983 claims, the Supreme Court has held that the most analogous cause of action for statute of limitations purposes is personal injury. *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938 (1985); *Owens v. Okure,* 488 U.S. 235, 109 S.Ct. 573 (1989) (clarifying that, among applicable personal injury actions, the catchall limitation for personal injury should apply to § 1983 claims). No circuit has held that *Wilson* compels the adoption of the personal injury limitations period for *Bivens* actions. *See Gibson v. United States,* 781 F.2d 1334, 1341-42 n.4 (9th Cir. 1986) (explicitly acknowledging that *Wilson* was not automatically controlling for *Bivens* limitations purposes). However, before and after the *Wilson* decision, various circuits have applied personal injury limitations periods to *Bivens* claims. *See King v. One Unknown Federal Corrections Officer,* 201 F.3d 910 (7th Cir. 2000); *Pena v. United States,* 157 F.3d 984, 987 (5th Cir. 1998); *Pitts v. United States,* 109 F.3d 832, 834 (1st Cir. 1997); *Kelly v. Serna,* 87 F.3d 1235, 1238 (11th Cir. 1996); *Sanchez v. United States,* 49 F.3d 1329, 1330 (8th Cir. 1995); *Industrial Constructors v. Bureau of Reclamation,* 15 F.3d 963, 968 (10th Cir. 1994); *VanStrum v. Lawn,* 940 F.2d 406, 408-409 (9th Cir. 1991); *Napier v. Thirty or More Unidentified Federal Agents,* 855 F.2d 1080, 1087-88 n. 3 (3d Cir. 1988); *Chin v. Bowen,* 833 F.2d 21, 23-24 (2d Cir. 1987); *McSurely v. Hutchinson,* 823 F.2d 1002 (6th Cir. 1987); *McCausland v. Mason City Board of Education,* 649 F.2d 278 (4th Cir. 1981). Nevertheless, the precedent of this circuit has not adopted such reasoning for *Bivens* claims. In fact, in the wake of *Wilson,* the D.C. Circuit noted that, in *McClam,* it had acknowledged the difference between § 1983 claims and the torts enumerated in D.C. Code § 12-301(4) to which the D.C. Circuit was holding certain *Bivens* actions to be analogous. *Banks v. Chesapeake and Potomac Tel. Co.,* 802 F.2d 1416, 1429 (D.C. Cir. 1986) (citing *McClam,* 697 F.2d at 372, and applying a three year limitations period to § 1981 claims). Indeed, the Supreme Court based its *Wilson* holding upon the legislative history of § 1983. 471 U.S. 277-279, 105 S.Ct. 1938 at 1947-49.

Moreover, there is no justification for adopting personal injury limitations to *Bivens* actions that are clearly based upon defamation. The D.C. Circuit held in *McClam* that constitutional actions, although distinct from their underlying causes of action, should be subject to the same limitations period as the underlying action. 697 F.2d at 373. Furthermore, the D.C. Circuit precedent cited herein demonstrates that there is nothing unfair in the adoption of one year statute of limitations. In fact, other circuits, have been willing to apply personal injury limitations periods of one year. *See Pitts,* 109 F.3d at 834. Finally, the District of Columbia does not have concerns with uniformity that would not have been apparent when the *McClam* decision was issued. One D.C. district court decision has applied the three year limitations period in cases with varied claims involving discharge from employment. *Pope v. Bond,* 641 F.Supp. 489, 495 (D.D.C. 1986). Another case, *Lederman v. United States et al.,* 131 F.Supp.2d 46, 51-52 (D.D.C. 2001), *rev'd on other grounds* 291 F.3d 36, applied the District's catch-all SOL because the district court perceived the need to apply a "general" statute of limitations. However, the *Lederman* court did not argue that personal injury should be regarded as

noted that "damage to reputation is central to the plaintiff's claim," and that the "gist" of Does'

claim was that the plaintiffs "destroyed her reputation as a sober and serious person." The Court

held that the *Bivens* action accommodated for the "practicalities of litigating and substantive policies

underlying" the common law defamation action and, accordingly, would be governed by the same

limitations period. 753 F.2d at 1114-15 (citing *Burnett*, 104 S. Ct. at 2929; *Church of Scientology v. Foley*,

640 F.2d 1335 (D.C. Cir. 1981); *McClam, supra*).

C.    **The Plaintiffs' *Bivens* Claims Are Most Clearly Analogous To Public Disclosure Of Private Facts And Are Time-Barred As Well**

While the task of identifying the most closely analogous state cause of action might, in some

cases, be the subject of debate, the facts of this case leave no room for doubt. Plaintiffs have already

identified the most clearly analogous state action in the form of their only non-constitutional count,

Public Disclosure of Private Facts, and pled it as Count V of their Amended Complaint. All of

Plaintiffs' claims arise from the defendants' alleged public disclosure of supposedly private facts.

Specifically, all of the alleged wrongs of this action would have resulted from the defendants' alleged

disclosure of Ms. Wilson's CIA employment.[22] Just as the D.C. Circuit in *Doe* looked to the "gist" of

the plaintiffs' claims for harm to reputation to derive the *Bivens* action limitations period, the entirety

of this complaint concerns the revelation of allegedly private facts. Because of the common factual

basis of the Constitutional allegations and the single state law claim, Plaintiffs' *Bivens* claims are

subject to a one-year limitations period, and, therefore, time-barred.

---

the most analogous cause of action for *Bivens* claims, as *Wilson*, and *Okure* held for § 1983 actions. The D.C. Circuit's *McClam* reasoning controls. The law of this circuit continues to justify applying the defamation limitations period to *Bivens* claims that are all based upon alleged harm to reputation.

[22] Plaintiffs do allege that the defendants "spread rumors" about them. Am. Compl. ¶ 35. However, Ms. Wilson's CIA employment is the only statement regarding the plaintiffs that is actually alleged. In any case, if the Defendants had spread false rumors, such unalleged actions would also be covered by the D.C. Code § 12-301(4) one-year limitations period.

## Conclusion

The all of the reasons set forth above, Defendant Karl C. Rove respectfully requests that this Court dismiss Plaintiffs' Causes of Action I – IV for failure to state a claim upon which relief can be granted and, in addition, grant the motion of the United States to substitute itself for Mr. Rove with regard to the state law fifth cause of action and to dismiss that count.

Respectfully submitted,

/s/ Robert D. Luskin
Robert D. Luskin D.C. Bar # 293621
James D. Colt D.C. Bar # 478122
Heather M. McPhee D.C. Bar # 479267
PATTON BOGGS LLP
2550 M St. N.W.
Washington, DC 20037
(202) 457-6000
*Attorneys for Defendant Karl C. Rove*

42

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2006, a copy of Defendant Karl C. Rove's Motion to Dismiss Plaintiffs Amended Complaint and Memorandum of Point and Authorities in Support was filed electronically.   Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ Robert D. Luskin