FRIENDS OF THE PANAMINT VALLEY, *et al.*,
Plaintiffs,
v.
Dirk Kempthorne, *et al.*,
Defendants,
and
National Parks Conservation Association, *et al.*
Proposed Defendant-Intervenors

Civ. No. 1:06CV1560 (JBD)

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Friends of the Panamint Valley, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | Civ. No. 1:06cv1560 (JDB) |
| ) | |
| v. ) | |
| ) | |
| Dirk Kempthorne, *et al.*, ) | |
| ) | |
| Defendants, and. ) | |
| ) | |
| National Parks Conservation Association, *et al.*, ) | |
| ) | |
| Proposed Defendant-Intervenors ) | |
| ) | |

## DECLARATION OF DANIEL R. PATTERSON

City of Tucson      )
                    )
State of Arizona    )

I, Daniel R. Patterson, declare as follows,

    1.    I am a member of the Center for Biological Diversity ("Center") and I was a staff Ecologist with the Center from 1998 to 2006, most recently as the Deserts Program Director. I am currently a consulting ecologist and Planning Commissioner in Tucson, Arizona. Prior to my position with the Center, I worked in the California desert on Endangered Species Act compliance and endangered species conservation and recovery with the U.S. Dept. of Interior – Bureau of Land Management ("BLM") as a Natural Resources Specialist, under a cooperative agreement. I have two degrees from the College of Natural Resources at Michigan State

1

University. I make this Declaration on the basis of personal knowledge, and I am competent to testify to the matter stated herein. This Declaration is submitted in support of the National Parks Conservation Association *et al.*'s Motion to Intervene in the above captioned matter.

## Center for Biological Diversity

2.  Through my position as a member and former staff Ecologist with the Center, I am familiar with both the historical and current activities of the Center and with the Center's previous litigation regarding Surprise Canyon.

3.  The Center has over 25,000 members in California and nationwide and is dedicated to the preservation and recovery of endangered species and their habitats across the western United States. The Center utilizes science, public participation, legal and administrative processes, to help ensure that public land agencies follow conservation laws, including the Endangered Species Act ("ESA").

4.  The Center has had a long-standing interest in protecting public lands in the California deserts. Due to long-standing government negligence and harm to natural resources, in March, 2000, the Center, along with PEER and the Sierra Club, had to file suit against BLM seeking to protect these fragile desert environments and the species that depend on them.

5.  I served as the Center's representative on all matters related to that litigation against BLM. I was present at settlement meetings and in negotiations with BLM and intervenors from many off-road groups (including the Blue Ribbon Coalition, San Diego Off-Road Coalition, Desert Vipers, California Association of 4-Wheel Drive Clubs, and the High Desert Multiple Use Association) concerning the stipulated settlement and consent decree. My observation from these meetings led me to believe that BLM and the Department of Interior did

not then, and had not historically, represented the Center's interests. Interior prefers to manage for multiple uses everywhere, including considering off-roading in Surprise Canyon, which is at severe odds with conservation of wildlife, recreational experiences, Death Valley National Park, and protecting water quality. Specifically, BLM has even resisted following State of California regulations prohibiting off-road vehicles in rare desert streams – California has already lost about 90% of its desert streams. Interior is conflicted at Surprise Canyon. Conservationists had to take Interior to court to win protection for Surprise Canyon; BLM would not follow the law to protect the area on its own.

6. As part of the settlement, BLM agreed to prepare an evaluation report of the Surprise Canyon Area of Critical Environmental Concern ("ACEC"), to review implementation of the ACEC management plan, describe current and on-going conflicts between biological resources and the then-allowed uses of Surprise Canyon and to propose corrective action by BLM. In addition, BLM agreed to institute an emergency closure of Surprise Canyon to motorized vehicles until BLM complied with the National Environmental Policy Act ("NEPA"). Under the terms of the consent decree, BLM's NEPA review is required to evaluate a full range of options for management of human access to Surprise Canyon and to evaluate the nature or conditions under which such access, if any, will be allowed in future.

7. In order to implement the closure, BLM published a notice in the Federal Register on May 29, 2001, 66 Federal Register 29163-29164, Closure Order for Motorized Vehicle Use, Surprise Canyon Area of Critical Environmental Concern BLM Route P71, Panamint Mountains, Inyo County, CA.

8. As the first step in preparing the NEPA review, in May, 2002, BLM issued a Notice of Preparation for an Environmental Impact Statement for Surprise Canyon. The Center, submitted extensive comments on that Notice on October 2, 2002 that were focused on the outstanding and unique biological resources of the area. Our comments sought to permanently bar motor vehicle use from Surprise Canyon. BLM, NPS, and cooperators are working on a joint EIS that will decide future uses of Surprise Canyon.

9. Since 2000, the Center has continued to advocate for protection of Surprise Canyon including outreach to the public through media stories, our website at www.biologicaldiversity.org, and by participating in trips to Surprise Canyon. As Ecologist and Deserts Director at the Center, I also participated in several meetings with BLM employees and officers during which I strongly advocated for the Center's position that Surprise Canyon should stay closed to motor vehicles to protect the riparian values, water quality, and both listed and sensitive species that depend of Surprise Canyon Creek – a rare perennial desert creek.

### My Involvement and Injury

10. I have organized and participated in at least 6 trips to Surprise Canyon since 1999, including a recent trip in 2005. I took some of these trips for the Center, leading hikes and tours for media and public officials. Some of these trips I took with my family for quiet recreation and public lands enjoyment. These hikes include bird watching, photography, solitude, camping, and ecological monitoring. I am familiar with the entire Surprise Canyon and Panamint Range area.

11. I have looked for, observed, and photographed many of the rare and endangered plants and animals of Surprise Canyon and I intend to return to the area many times in the future. I have watched with awe the incredible natural restoration of the creek and the Canyon since the

4

closure has been in place and I take some personal pride in knowing that my work, and that of other Center staff and members, helped to protect this rare desert stream. As a member of the Center, a father, and an ecologist, I am dedicated to working to ensure that Surprise Canyon will be preserved for generations to come. I plan to return to Surprise Canyon within the next year and hope to bring my daughter to Surprise Canyon to share with her the truly unique environment of this area.

12. I use and enjoy the natural resources on many BLM and NPS lands for recreational, scientific, spiritual, educational, aesthetic, artistic, and professional purposes and have used and enjoyed for these same purposes, the lands within Surprise Canyon and Death Valley National Monument that are at issue in this case. I have seen the destruction caused by off-road vehicles in Surprise Canyon creek and the permanent scars that were left on the landscape including holes drilled in the rocks along the creek for bolts used to winch vehicles up steep water falls.

13. As a desert ecologist who is intimately familiar with Surprise Canyon, it is my opinion that allowing any motorized vehicle driving in Surprise Canyon—which equates with allowing motor vehicles to drive in the creek and to destroy the creek bed, the banks, and riparian vegetation – would cause stream destruction, setting the natural restoration in Surprise Canyon back by decades. Due to the extremely rugged and steep terrain within the Canyon, only highly- and expensively-modified vehicles used by so-called "extreme four wheelers" can attempt to traverse the "route" up (or down) the Canyon – street legal vehicles and even stock 4x4 trucks could not even attempt the nearly impossible route. Of the extreme off-roaders who would try to drive up the canyon in the past, only about 50% historically made it. The rest of the

5

modified jeeps flipped over, spilling gasoline, oil, and antifreeze in to the water. In addition, allowing motorized vehicle driving and winching in the Canyon would harm both the Inyo California Towhee—a species protected under the ESA—and other rare and sensitive species such as the Panamint alligator lizard that depend on the habitat in Surprise Canyon and the waters of Surprise Canyon creek. Most of Surprise Canyon is now full of trees, due to the years of protection from off-roading. These cottonwood and willow trees are critical habitat for wildlife, but would have to be cut down by drivers to pass. This would severely harm my professional, recreational, scientific and aesthetic interests, as well as those of other Center staff and members, in Surprise Canyon and the listed, rare, and sensitive species that live there.

14. With easier access available to Panamint City by several routes on foot, there is no compelling reason to put the ecological recovery of Surprise Canyon and the species that depend on it at risk of great harm. Off-roaders may claim vehicles are needed for handicapped access, but this is false. No one can stay in the vehicles while winching up waterfalls, meaning handicapped people would still have to get out and climb. The off-roaders here want excess, not access. The NEPA process that has been instituted by BLM must be completed before any decision can be made on future motor vehicle use in Surprise Canyon.

15. It is critical that the Center be permitted to intervene in this lawsuit to defend their previous efforts to protect Surprise Canyon, and the species that depend on it, and to ensure that the Consent Decree is adequately defended. If the current litigation is successful in gaining motor vehicle driving through Surprise Canyon and Surprise Canyon creek, the ecosystem of Surprise Canyon, and my and the Center's interests will be irrevocably harmed.

Pursuant to 28 U.S.C. Sec. 1746, I DECLARE, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge and belief.

Executed this Nov 2, 2006 in Tucson, Arizona

Daniel R. Patterson