IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VALERIE PLAME WILSON, *et al.*,   )<br>                                                              )<br>              Plaintiffs,             )<br>v.                                                        )<br>                                                              )  Civil Action No. 06-1258 (JDB)<br>I. LEWIS (a/k/a "SCOOTER") LIBBY   )<br>JR., *et al.*,                                     )<br>                                                              )<br>              Defendants.          )<br>_____)| |

*AMICUS CURIAE* BRIEF OF JUDICIAL WATCH, INC.
IN SUPPORT OF NEITHER PARTY

     Judicial Watch, Inc. ("Judicial Watch"), by counsel, respectfully submits this *amicus curie* brief, not in support of any of the parties to this action, but to address important issues of laws raised by Defendant Vice President Richard B. Cheney ("the Vice President"). Judicial Watch states as follows:

INTEREST OF THE PROPOSED AMICUS

     As set forth in Judicial Watch's motion seeking leave to file this proposed *amicus curiae* brief, Judicial Watch is a not-for-profit organization that seeks to promote accountability, transparency and integrity in government and fidelity to the rule of law. In furtherance of these goals, Judicial Watch regularly monitors on-going litigation, files *amicus curiae* briefs, and pursues public interest litigation of its own, among other activities. Judicial Watch seeks to participate as *amicus curiae* in this matter for two separate, but interrelated reasons. First, Judicial Watch is particularly concerned about the Vice President's assertion of absolute immunity. Second, the absolute immunity advocated by the Vice President is based largely on an

overly broad interpretation of *Cheney v. U.S. District Court*, 542 U.S. 367 (2004), a case in which Judicial Watch was a party. This gives Judicial Watch a unique perspective on the U.S. Supreme Court's ruling in *Cheney* – a perspective that no other party in this case has.

## SUMMARY OF THE ARGUMENT

The Vice President seeks to establish a never before recognized absolute immunity for the Vice President based on an overly broad interpretation of the U.S. Supreme Court's ruling in *Cheney* and a misplaced reading of the U.S. Supreme Court's ruling in *Nixon v. Fitzgerald*, 457 U.S. 731 (1982). In his brief, the Vice President contends that the Amended Complaint should be dismissed in its entirety because "the Vice President of the United States is absolutely immune from civil suit when acting in his official capacity." Defendant Vice President of the United States Richard B. Cheney's Motion to Dismiss Plaintiff's Amended Complaint ("Mot. to Dismiss") at 18. This sweeping assertion is based on two primary points: (1) the U.S. Supreme Court's decision in *Fitzgerald* regarding the absolute immunity of the President; and (2) the U.S. Supreme Court's ruling in *Cheney*. *Id.* These two points, argues the Vice President, "compel the conclusion that the Vice President is absolutely immune from civil suit for his official acts." *Id.* This is not, however, the case, as the Vice President has misapplied the holding of *Fitzgerald* and overstates the holding of *Cheney*.

In addition to being contrary to precedent, the Vice President's assertion of absolute immunity strikes out on an unnecessarily dangerous path that threatens a long held principle of judicial restraint. In particular, by seeking an unnecessarily sweeping and absolute immunity, the Vice President's request runs contrary the longstanding principle of deciding constitutional

questions only as a last resort and in the least expansive way possible. *See*, *e.g.*, *Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 347 (1936).

## ARGUMENT

I. **U.S. Supreme Court Precedent Does Not Support the Vice President's Assertion of Absolute Immunity.**

Contrary to the Vice President's contentions, the U.S. Supreme Court did not recognize a blanket, absolute immunity for the President in *Fitzgerald*. Rather, the Court held that, under a certain set of circumstances, the President is entitled to absolute immunity. *Fitzgerald*, 457 U.S. at 754. Specifically, the Court held that in "private suits for damages based on a President's official acts," exercising judicial jurisdiction over the President is not warranted. *Id.* However, this did not result in a blanket grant of absolute immunity from the exercise of all judicial jurisdiction over the President. In fact, the Court clearly confirmed that there were circumstances under which the exercise of judicial jurisdiction over the President was warranted. *Id.* at 753-54 (serving broad public interests in maintaining the proper separation of powers and vindication of the public interest in an ongoing criminal prosecution are two such exercises). Therefore, if the President can be subject to judicial jurisdiction in certain circumstances, then certainly the Vice President is subject to judicial jurisdiction in certain circumstances as well.

Also contrary to the Vice President's contentions, the Court's application of *Fitzgerald* in *Cheney* does not compel the conclusion that the Vice President is absolutely immune from civil suit for his official actions. Mot. to Dismiss at 18. First, the *Cheney* holding applied to a narrow set of circumstances and did not result in a broad finding of absolute immunity. The specific question before the Court in *Cheney* pertained to discovery orders and whether the Vice President

could obtain mandamus relief from those orders. Nowhere in *Cheney* did the Supreme Court state that the Vice President is entitled to absolute immunity. In fact, the phrase "absolute immunity" does not appear in the Court's opinion. Rather, the Court held that the separation of powers analysis in *Fitzgerald* should "inform the court of appeals' evaluation of a mandamus petition involving the President or the Vice President." *Cheney*, 542 U.S. at 382. This narrow holding is far too thin a reed to support extending the absolute presidential immunity of *Fitzgerald* to the Vice President.

Second, like the lawsuit in *Fitzgerald*, the causes of action in *Cheney* were based on acts performed in an official capacity. In *Cheney*, those acts were in relation to meetings of the National Energy Policy Development Group, which the Vice President had been asked by the President to chair. *Cheney*, 542 U.S. at 372. The Court in *Cheney* expressed concerned with the Executive's ability to perform its constitutional duties and any interference that might result from the exercise of judicial jurisdiction over it. *Cheney*, 542 U.S. at 382 ("Accepted mandamus standards are broad enough to allow a court of appeals to prevent a lower court from interfering with a coequal branch's ability to discharge its constitutional responsibilities."); *see also Fitzgerald*, 457 U.S. at 754 (applying the immunity to "merely private suit[s] for damages based on ... official acts).

In this case, the Vice President is being sued in his individual capacity, not in his official capacity. Amended Complaint at ¶ 11. This distinction is not insignificant. In both *Fitzgerald* and *Cheney*, the Supreme Court's deference to the Executive was based to a large degree on protecting the Executive from interference and distractions in the "performance of its constitutional duties." *Fitzgerald*, 457 U.S. at 753, n.32; *Cheney*, 542 U.S. at 382. Logically,

this concern is at least somewhat less significant where a suit is brought against the President or a lessor Executive Branch official in his or her individual capacity. *See*, *e.g.*, *Clinton v. Jones*, 520 U.S. 681 (1997). Suits brought against Executive Branch officials in their individual capacities limit, at least to some degree, the "danger of intrusion on the authority and functions of the Executive Branch." *Fitzgerald*, 457 U.S. at 754; *Clinton*, 520 U.S. at 702-03.

In this regard, in seeking to extend the absolute presidential immunity of *Fitzgerald* to the Vice President, the Vice President argues that an important consideration is the "close link – both in the public eye and in the operation of the respective office – between the President and the Vice President." Mot. to Dismiss at 20. Even if the link between the two offices is a close one, it does not justify extending absolute immunity to the Vice President.

Importantly, the Vice President himself has a relatively limited constitutional role. Unlike the plethora of powers and duties vested in the President, the Vice President has only one constitutional duty: "the Vice President of the United States shall be President of the Senate, but shall have no vote, unless they be equally divided." U.S. CONST. Art. I, § 3.[1] This can hardly be considered such a "close link" with the powers and duties vested in the President that the absolute immunity afforded to the President should be extended to the Vice President as well. While the Vice President may take on duties and responsibilities beyond those set forth in the Constitution in order to assist the President in the exercise of the President's constitutional

---

[1] The Vice President also argues that U.S. CONST. amend. XXV justifies absolute immunity for the Office of the Vice President. Mot. to Dismiss at 20. However, in the event that U.S. CONST. amend. XXV became necessary, the Vice President would no longer be acting in his role as Vice President, but instead in the role of President, affording him all of the powers and duties of that office. Triggering U.S. CONST. amend. XXV does not grant absolute immunity to the Vice President. Rather, it makes the issue moot.

powers and duties, having a "distinctive and highly visible position" closely linked to the President should not entitle the Vice President to absolute immunity. In fact, the Supreme Court previously denied presidential aides and cabinet secretaries this same type of "derivative" absolute presidential immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 811 n.17 (1982) ("Suits against other officials -- including Presidential aides -- generally do not invoke separation-of-powers considerations to the same extent as suits against the President himself"); *Butz v. Economou*, 438 U.S. 478 (1978). In *Cheney*, the Court only commented on the visibility of the Office of the Vice President as a factor to be considered in determining whether to grant or deny mandamus relief, not whether the Vice President should be afforded derivative absolute presidential immunity or absolute immunity in his own right. *Cheney*, 542 U.S. at 386. *Cheney* thus does not support granting any form of absolute immunity to the Vice President, and the holdings of *Harlow* and *Butz* control instead.

**II.     Judicial Restraint Does Not Support the Vice President's Request For Absolute Immunity.**

It is a fundamental principle of judicial restraint that courts should not decide a question of constitutional law when alternate grounds exist to adjudicate an issue. *See Ashwander*, 297 U.S. 288, 347 (1936); *see also Massachusetts v. Westcott*, 431 U.S. 322, 323 (1977). Longstanding principles of judicial restraint also require that courts "not formulate a rule of constitutional law broader than is required by the precise facts to which it is applied." *Ashwander*, 297 U.S. at 347. The Vice President's request for absolute immunity seeks to turn these fundamental principles on their head in order to expand on a very unique immunity previously afforded to the President only.

Absolute immunity, as held by the U.S. Supreme Court in *Fitzgerald*, and applied to the President, is "incident of the President's unique office," and "rooted in the constitutional tradition of the separation of powers." *Fitzgerald*, 457 at 749. It was the President's constitutional grant of authority that provided the Court with the foundation for absolute immunity. *Id.*; *see also* U.S. CONST., Article II, § 1. Later, in *Cheney*, the Court looked to *Fitzgerald*'s constitutional, separation of powers analysis in reviewing the denial of a petition for writ of mandamus that sought to challenge a district court's order authorizing discovery of the Vice President. *Cheney*, 542 U.S. at 381-82. In his motion to dismiss, the Vice President himself acknowledges the constitutional foundation of his claim of absolute immunity from suit. The Vice President argues that, "the *Cheney* Court's separation-of-powers analysis and the Vice President's unique constitutional status together justify a finding of absolute immunity from suit in the present case." Mot. to Dismiss at 20. Clearly, the Vice President's request implicates important, constitutional concerns.

However, one of the most basic principles of constitutional law is the doctrine of constitutional avoidance. It is beyond peradventure that longstanding precedent requires consideration of constitutional issues only as a last resort. *Ashwander*, 297 U.S. at 345-48. By way of example, in *Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445-46 (1988), the Supreme Court held that judicial restraint required a determination of statutory claims prior to addressing constitutional claims. The Court reasoned that delaying consideration of constitutional issues, or refraining from considering them entirely, was essential to determine "whether a decision on that question may entitle claimants to relief beyond that to which they are

entitled on their statutory claims; in such a case, if no additional relief is warranted, a constitutional decision is unnecessary and therefore inappropriate." *Id.*

In this case, the Vice President has put forth various non-constitutional grounds for disposition of the Plaintiffs' claims. If he is correct on any one of those grounds, and Judicial Watch takes no position as to the merits of any of the Vice President's non-constitutional arguments, then he may be entitled to the dismissal of the Plaintiffs' claims against him. Premature consideration of the Vice President's assertion of absolute immunity would, however, run contrary to the doctrine of constitutional avoidance. To be consistent with the doctrine of constitutional avoidance, as well as with fundamental principles of judicial restraint, this Court should only consider the Vice President's absolute immunity arguments if it rejects all of the other grounds asserted by the Vice President for the dismissal of the Plaintiffs' claims.

It also is well established that judicial restraint is to be exercised in adjudicating common law questions, among which questions of immunity should be included. In *Dretke v. Haley*, 541 U.S. 386, 394 (2004), the Supreme Court held that as stewards of "judge-made rules," courts must "exercise restraint, adding to or expanding them only when necessary." As a part of that stewardship, the Supreme Court has held that courts should refrain from unnecessarily expansive holdings and instead use the "best and narrowest grounds available." *See Air Courier Conference v. American Postal Workers Union*, 498 U.S. 517, 531 (1991) (concurring opinion, Stevens, J., with whom Marshall, J. and Blackmun, J. concur). In *Air Courier*, the U.S. Supreme Court held that "faithful adherence to the doctrine of judicial restraint provides a fully adequate justification for deciding this case on the best and narrowest ground available." *See also Barnes v. Gorman*, 536 U.S. 181, 191-92 (2002) (concurring opinion, Stevens, J., with whom Ginsburg,

J. and Breyer, J. concur). As a steward of common law, this Court should exercise judicial restraint and decline the Vice President's invitation to unnecessarily expand the absolute immunity set forth in *Fitzgerald*.

## CONCLUSION

For the foregoing reasons, Judicial Watch respectfully requests that the Court exercise judicial restraint and refrain from considering the Vice President's absolute immunity argument.

Dated: January 19, 2007                                   Respectfully submitted,

/s/ Paul J. Orfanedes
D.C. Bar No. 429716
/s/ Meredith L. Di Liberto
D.C. Bar No. 487733
JUDICIAL WATCH, INC.
501 School Street, S.W.
Suite 500
Washington, D.C. 20024
(202) 646-5172

*Counsel for Amicus Curiae*