# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| VALERIE PLAME WILSON and | ) | |
| JOSEPH C. WILSON IV | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 06-1258 (JDB) |
| | ) | |
| v. | ) | |
| | ) | |
| I. LEWIS (a/k/a "SCOOTER") LIBBY JR., | ) | |
| KARL C. ROVE, RICHARD B. CHENEY, | ) | |
| RICHARD L. ARMITAGE and JOHN DOES | ) | |
| NOS. 1-9, | ) | |
| Defendants. | ) | |

## DEFENDANT KARL C. ROVE'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Robert D. Luskin
Heather M. McPhee
James D. Colt
PATTON BOGGS LLP
2550 M St. N.W.
Washington, DC 20037
(202) 457-6000
*Attorneys for Defendant Karl C. Rove*

## TABLE OF CONTENTS

Table of Contents ........................................................................................................... i

Introduction ................................................................................................................... 1

Argument ....................................................................................................................... 1

   **I.** **"SPECIAL FACTORS" STRONGLY COUNSEL AGAINST RECOGNITION OF PLAINTIFFS' PROPOSED *BIVENS* REMEDIES** .............................................. 1

     A. Congress Has Legislated Criminally, Civilly and Administratively Regarding the Release of Employee Information But Has Chosen Not To Create A Personal Privacy Right For The Revelation Of Federal Employment ...................................................... 1

     B. The Sensitivity Of The National Security Employment Area Is A "Special Factor" That Counsels Against Allowing The Proposed *Bivens* Action ..................................... 5

  **II.** **PLAINTIFFS FAIL TO STATE COGNIZABLE CONSTITUTIONAL CLAIMS** ...... 6

     A. Mr. Wilson Has Not Properly Alleged A Violation of His First Amendment Right to Freedom of Speech ......................................................... 6

     B. Plaintiffs Have Not Stated An Equal Protection Allegation Upon Which Relief Could Be Granted Because They Have Not Alleged That They Have Been Treated Differently Than Others Similarly Situated And Because Proving The Treatment Of Others Similarly Situated Would Not Be Justiciable ..................................... 8

     C. Plaintiffs Have Not Disproven Mr. Rove's Argument That They Have No Personal Privacy Interest In Ms. Wilson's Government Work And Have Not Stated A Claim For A Due Process Violation ......................................................... 10

     D. Because Plaintiffs Admit That Ms. Wilson Was Not Demoted Or Discharged, They Have Not Alleged Any Property Right Violation ......................................... 12

 **III.** **MR. ROVE IS ENTITLED TO QUALIFIED IMMUNITY** ................................... 13

     A. Because Plaintiffs Have Not Alleged Valid, Let Alone Clearly Established, Constitutional Claims, Mr. Rove Is Entitled to Qualified Immunity .................... 13

 **IV.** **PLAINTIFFS HAVE NOT ADVANCED ANY REASON THAT COULD JUSTIFY OVERLOOKING THE UNTIMELINESS OF THEIR COMPLAINT** ................. 14

     A. Plaintiffs Have Not Shown Any Reason To Excuse Their Untimely Filing ............ 14

     B. Plaintiffs Admit That Prevailing Law Of The Circuit Applies The Limitations Period Of The Most Closely Analogous Cause Of Action To *Bivens* Claims, Which Is Subject To A One-Year Limitations Period In This Case ....................................... 17

Conclusion ..................................................................................................................... 18

i

## INTRODUCTION

Plaintiffs' Opposition to Defendants' and the United States' Motions to Dismiss ("Opposition" or "Opp.") does nothing to salvage the evident flaws in the Amended Complaint. As we set forth in our Motion to Dismiss ("Open. Br."), Plaintiffs' various claims are untimely and fail to state any valid claim for relief. For the reasons set forth below and in our Motion to Dismiss, the Amended Complaint should be dismissed with prejudice.

## ARGUMENT

**I.     "SPECIAL FACTORS" STRONGLY COUNSEL AGAINST RECOGNIZING PLAINTIFFS' PROPOSED *BIVENS* REMEDIES**

> **A.     Congress Has Legislated Criminally, Civilly And Administratively Regarding The Release Of Employee Information But Has Chosen Not To Create A Personal Privacy Right For The Revelation Of Federal Employment**

Since it first recognized a constitutional tort remedy in *Bivens v. Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999 (1971), the Supreme Court has "consistently refused to extend *Bivens* liability to any new context or new category of defendants." *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001). In the ensuing three decades, the Court has found "special factors" counseling against the recognition of proposed *Bivens* remedies present not only where Congress has furnished an alternative damage remedy, but also where it could be inferred Congress decided *not* to make such a remedy available. *See, e.g., Schweiker v. Chilicky*, 498 U.S. 412, 423 (1988)(refusing to allow *Bivens* action because the Social Security Disability Benefits Reform Act reflected Congress' judgment that monetary damages were not appropriate for constitutional violations that may occur in program administration). Guided by decisions of the Supreme Court in *Bush v. Lucas,* 462 U.S. 367 (1983) and *Schweiker*, the lower courts have consistently found that the existence of a legislative scheme addressing the subject matter of the claim – regardless of whether it affords a remedy for the alleged injury -- is a "special factor" precluding recognition of *Bivens* claims. *See* Open. Br. at 8-10. As we set forth in our opening brief, Congress has comprehensively

addressed the "context" of Plaintiffs' claims through both the Privacy Act, which generally governs the disclosure of personal information by agencies of the United States, and the Intelligence Identities Protection Act, which establishes a criminal penalty for the unauthorized disclosure of the identity of a covert agent. In these circumstances, it is hard to imagine a stronger case for judicial restraint or a more compelling case for refusing to extend *Bivens*.

Plaintiffs' efforts ignore both the general admonitions of the Supreme Court and the specific holdings of this Court in closely analogous circumstances. As an initial matter, Plaintiffs suggest that recognition of their claims would not constitute a "new context" for *Bivens* remedies at all, because courts have previously recognized *Bivens* remedies for First and Fifth Amendment violations. Opp. at 51. It is hard to see what would be left of the Supreme Court's consistent holdings over the last three decades, however, if this proposition is swallowed whole. Under Plaintiffs' reasoning, because the courts have already recognized *Bivens* actions for violations of the First, Fourth, and Fifth Amendments (Opp. at 51, *citing Davis v. Passman*, 442 U.S. 228 (1979); *Haynesworth v. Miller*, 820 F.2d 1245 (D.C. Cir. 1987); *Dellums v. Powell*, 566 F.2d 167 (D.C.Cir. 1977)), there could be no such thing as a new *Bivens* claim and none that could be rejected. The law, of course, is otherwise. As the Supreme Court has made clear, the question is not whether courts have *ever* recognized *Bivens* remedies for First or Fifth Amendment violations. Rather, the Supreme Court has precluded recognition of *Bivens* remedies in new contexts "[w]hen the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration . . . ." *Schweiker,* 487 U.S. at 423.

In the alternative, Plaintiffs suggest that this Court must find a *Bivens* remedy wherever Congress has failed to create a statutory private right of action. Unfortunately for Plaintiffs, that argument also misconstrues governing law. As this Court emphasized in both *Hatfill* and *Chung* "the

absence of statutory relief for a constitutional violation does not by any means necessarily imply" that courts should create a *Bivens* remedy.  *Hatfill v. Ashcroft,* 404 F. Supp. 2d 104 at 111 (D.D.C. 2005); *Chung v. United States Dep't of Justice*, No. Civ.A. 00-912, 2001 WL 34360430 at *9, *both citing Schweiker,* 487 U.S. at 421-422.  Here, all of the Wilsons' proposed *Bivens* claims arise from allegedly wrongful public disclosure of information regarding Ms. Wilson's government employment status. Amend. Compl. ¶¶ 2, 14; Opp. at 2-12, 51-55.  Congress has enacted civil, criminal and administrative schemes regarding the release of government employment information without providing a private remedy for employees whose work for the government is revealed.  As the Court in *Chung* explained, because the Privacy Act "comprehensively covers such claims [for alleged wrongful disclosure of information regarding covert status] and accordingly has not inadvertently omitted damages remedies....Congress has not plainly expressed an intention to preserve *Bivens* remedies."  *Chung* at *12 (citations omitted).

Plaintiffs' efforts to distinguish *Hatfill* and *Chung* are unavailing.  Contrary to Plaintiffs' misleading suggestion, Opp. at 54, neither the holding in *Hatfill* nor *Chung* depended upon finding that the plaintiffs in those cases could pursue their claims under the Privacy Act.[1]  To the contrary, in *Hatfill,* the plaintiff alleged that the Attorney General's and FBI agents' statements "deprived him of his employment and of the opportunity to gain any meaningful employment in [his field]." The court held that the Privacy Act addresses "the kinds of harms Dr. Hatfill allege[d]" and therefore,

---

[1]  Plaintiffs assert that the Privacy Act is "irrelevant" because they claim that the White House Office is not an agency and "therefore not subject to the Privacy Act."  Opp. at 52.  Although the Act's preclusive effect on Plaintiffs' *Bivens* claims does not depend upon whether it provides a remedy for Plaintiffs, it should be noted that the Privacy Act's applicable definition is:

> (1) "agency" as defined in section 551(l) of this title includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency....

5 U.S.C. § 552(f).

"qualifies . . .as a special factor counseling hesitation against the applicability of *Bivens*." *Hatfill,* 404 F. Supp. 2d at 116. The court's holding was not predicated on finding that Dr. Hatfill had a viable claim under the Act, but rather that the Act reflects legislative consideration of the subject matter of Mr. Hatfill's complaint and thus precludes recognition of a *Bivens* remedy. Similarly, the *Chung* court's holding did not depend upon finding that the plaintiff had a viable claim under the Act. In fact, the *Chung* district court dismissed the Privacy Act claims as untimely even as it held that the Act precluded *Bivens* claims. *Chung* at *12. Although the Court of Appeals reversed the finding of untimeliness, the initial holding of untimeliness did not disturb the finding of *Bivens* preclusion.[2]

Like the Privacy Act, the IIPA and civil service administrative structures confirm that Congress has addressed the release of employee information without creating a personal privacy right in the revelation of that information. Plaintiffs correctly observe that the IIPA "provides no individual relief whatsoever" (Opp. at 55), but again fail to recognize the implication for *Bivens* "special factors" analysis: Congressional treatment of the government's legitimate interest in protecting the identity of covert employees renders the IIPA another "special factor" counseling against recognition of Plaintiff's proposed *Bivens* remedies. As the Supreme Court has made clear, courts must defer to "indications that congressional inaction has not been inadvertent." *Schweiker*, 487 U.S. at 423. The absence of a personal privacy civil remedy in light of the wide range of Congressional civil, criminal and administrative action in this area strongly counsels against allowing Plaintiffs' new proposed *Bivens* actions to proceed.

---

[2] The Wilsons' failure to seek relief under the Privacy Act does not arise from legally relevant factual differences, but rather from the fact that they are time-barred, unlike the *Hatfill* and *Chung* plaintiffs. *See* Open. Br. at 15, n.9; 5 U.S.C. § 552a(g)(5).

**B.    The Sensitivity Of The National Security Employment Area Is A "Special Factor" That Counsels Against Allowing The Proposed *Bivens* Action**

Sensitive security and policy issues underlying this case furnish an additional "special factor" counseling against recognition of Plaintiffs' *Bivens* claims.  Matters related to national security, such as control of classified information, are clearly "of a kind for which the Judiciary has neither aptitude, facilities, nor responsibility" and "belong in the domain of political power not subject to judicial intrusion."  *Chicago & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 111 (1948).  Congress has given national security agencies a power of institutional secrecy with regard to agent identities without creating a right of personal privacy in that same information, and judicial recognition of a *Bivens* remedy in these circumstances would be inimical to the wide discretion afforded the Executive Branch to decide when to protect -- as well as when to disclose -- confidential information.  As the D.C. Circuit has stated, "[t]he assessment of harm to intelligence sources, methods and operations [has not been] entrusted…to the courts."  *Fitzgibbon v. CIA*, 911 F.2d 755, 766 (D.C. Cir. 1990).

Plaintiffs acknowledge that the government, not Mrs. Wilson, possesses the interest in controlling information about covert federal employment status.  Opp. at 48-49.  But they insist, nevertheless, that Mr. Rove's failure to invoke the state secrets doctrine prevents this Court from taking these concerns into account in deciding whether to extend *Bivens* to this context.  Their argument misses the point.  The state secrets doctrine, as well as the extensive legislative structure that addresses the right to control classified information (and which does not create any private rights in that information), counsel that courts should be wary of involvement in cases involving control of classified information, national intelligence and security.  *See e.g., Schneider, et al. v. Kissinger, et al.*, 310 F. Supp. 2d 251, 258 (D.D.C. 2004)(noting that courts dismiss claims when they "cannot undertak[e] independent resolution without expressing lack of respect due coordinate branches of government")(internal citations omitted); Open. Br. at 19-20.

5

Plaintiffs fail to address any of the numerous cases where courts have refused to recognize *Bivens* liability where imposing such liability would raise separation of powers concerns by threatening intrusion into unique or sensitive functions of the legislative or executive branches of government.[3]

Finally, Plaintiffs have not shown how the opacity of the national security area could be managed to make a workable case. As previously noted, courts will dismiss claims in which it perceives "a lack of judicially discoverable and manageable standards for resolving" that render the case unworkable from the outset. Open. Br. at 19-20 (*citing Schneider, et al. v. Kissinger, et al.*, 310 F. Supp. 2d 251, 258 (D.D.C. 2004) (*citing Baker, supra*).

## II.    PLAINTIFFS FAIL TO STATE COGNIZABLE CONSTITUTIONAL CLAIMS

### A.    Mr. Wilson Has Not Properly Alleged A Violation Of His First Amendment Right To Freedom Of Speech

The fatal flaws in Mr. Wilson's First Amendment claim are not superficial pleading oversights. A valid First Amendment claim requires a would-be plaintiff to demonstrate that "defendants' actions effectively chilled the exercise of [the plaintiff's] First Amendment rights." *See Hatfill v. Ashcroft*, 404 F. Supp. 2d 104, 117 (D.D.C. 2005); *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000). Mr. Wilson's First Amendment claim fails because he does not allege that his speech was chilled and because he cannot allege any nexus between Mr. Rove's alleged conduct and any violation of his First Amendment rights. *See* Open. Br. at 22-23.

---

[3] *See United States v. Stanley*, 483 U.S. 669, 683 (1987) (refusing to create a *Bivens* remedy for military personnel because "congressionally uninvited intrusion into military affairs by the judiciary is inappropriate."); *Beattie v. Boeing Co.*, 43 F.3d 559, 563 (10th Cir. 1994) (rejecting a *Bivens* claim and noting that "predominant issue of national security clearances amounts to such a special factor counseling against recognition of a *Bivens* claim in this case"); *Arar v. Ashcroft*, 414 F. Supp. 2d 250, 281 (E.D.N.Y 2006) (rejecting *Bivens* claims based on presence of special factor involving "crucial national security and foreign policy considerations…[which] are most appropriately reserved to the Executive and Legislative branches of government").

The crux of a First Amendment claim is the risk that "retaliatory actions may tend to chill individuals' exercise of constitutional rights." *ACLU v. Wicomico County, Md.,* 999 F.2d 780, 785 (4th Cir. 1993).    Plaintiffs admit that in order "to assert a chilling effect, a plaintiff need claim…something more than *de minimis* harm."  Opp. at 14 (*citing Bart v. Telford,* 677 F.2d 622 (7th Cir 1982)).   Absent from the Amended Complaint, however, is any allegation that the Defendants' actions had *any* chilling effect on Mr. Wilson's speech.   Plaintiffs claim that they have been placed in fear and that Mrs. Wilson was "impaired in" (though not dismissed from) her job (Amend. Compl ¶ 43; Opp at 11).   Conspicuously absent is any suggestion that Mr. Wilson's speech was chilled.  *See* Amend. Compl.; Opp. at 11-12.

In addition to the complete absence of any allegation of chilling, the facts and theory of Plaintiffs' case do not suggest any nexus between Mr. Rove's alleged conduct and the supposed harms they suffered (which do not include chilling of Mr. Wilson's speech).   All of Plaintiffs' purported harms allegedly arise from the public disclosure of Ms. Wilson's covert employment status.  Am. Compl. ¶¶ 2-3, 40-45; Opp. at 4-11.  According Plaintiffs, however, Mr. Rove's alleged retaliatory speech did not result in the public disclosure of Mrs. Wilson's status.  *Id.* at ¶¶ 14, 25-25. As the Supreme Court put it:   "[A]t least with respect to certain types of claims, proof of an improper motive is not sufficient to establish a constitutional violation – there must also be evidence of causation."  *Crawford-El,* 523 U.S. at 593 (emphasis added); *see also, Hartman v. Moore,* 126 S. Ct. 1695, 1703-04 (2006).  In this case, Plaintiffs have not alleged any facts from which causation could be inferred.

Plaintiffs incorrectly claim that we have suggested that Mr. Wilson must have been silenced for a First Amendment claim to lie.  Opp. at 14.  Not so.  As the Court of Appeals for this Circuit has made clear, once a plaintiff has properly alleged that the defendant's actions chilled his speech, the test is an objective one, which asks a court to determine, as a matter of law, whether defendant's

actions were "likely to deter a person of ordinary firmness." *Toolasprashad v. Bureau of Prisons*, 286 F.3d 576 (D.C. Cir. 2002); *Baltimore Sun Co. v. Erlich*, 437 F.3d 410, 415 (4th Cir. 2006).   In considering whether a reasonable person in Mr. Wilson's circumstance would be chilled by the alleged conduct, the Court may consider, among other factors, the fact that Mr. Wilson not only continued to speak after the alleged retaliation, but that his alleged victimization by Defendants furnished him a unique measure of visibility and access to the media.  *Id.* at 419.

> **B.    Plaintiffs Have Not Stated An Equal Protection Allegation Upon Which Relief Could Be Granted Because They Have Not Alleged That They Have Been Treated Differently Than Others Similarly Situated And Because Proving The Treatment Of Others Similarly Situated Would Not Be Justiciable**

The Constitution's guarantee of equal protection does not include a right to be free from retaliation or a right not to be singled out for criticism.  *Ratliff v. DeKalb County, Ga.,* 62 F.3d 338, 340-341 (11th Cir. 1995); *Grossbaum v. Indianapolis-Marion County Bldg. Auth.,* 100 F.3d 1287, 1296 n. 8 (7th Cir 1996); *Thompson v. City of Starkville, Miss.,* 901 F.2d 456, 468 (5th Cir. 1990); *see* Open. Br. at 24 -25.  Repackaging a putative First Amendment claim as an equal protection claim fails.  *See, e.g., Grossbaum,* 100 F.3d at 1296 (citing 7th Circuit precedent dismissing equal protection claim that was a mere "rewording" of a First Amendment claim).  Plaintiffs allege no conduct by Mr. Rove other than alleged retaliatory speech by a public official.  Amend. Compl ¶¶ 14, 25-30; Opp. at 2-11. Official speech, even when alleged to be retaliatory, does not offend the equal protection clause of the Constitution.  *X-Men Security, Inc. v. Pataki*, 196 F.3d 56, 72 (2d Cir. 1999).

The cases that Plaintiffs cite underscore what is missing from their claim.  All of the cases involved alleged government actions, not speech.  Opp. at 17-19 (*Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) (alleged retaliation through the imposition of an easement requirement); *Scarbrough v. Morgan County Bd. of Educ.*, No. 04-6302, 2006 U.S. App. LEXIS 28941 (6th Cir. Nov. 22, 2006) (plaintiff denied a Director of Schools position); *DeMuria v. Hawkes*, 328 F.3d 704 (2d. Cir. 2003) (plaintiff facing termination of garbage removal, water supply termination and excavation of their

8

backyard).  Plaintiffs' claim of retaliation through official speech simply cannot support an equal protection claim, and the second cause of action should be dismissed.  Open. Br. at 24-25.

An equal protection claim also requires an allegation that the plaintiff had been treated differently from those similarly situated.  Open. Br. at 25.  Plaintiffs admit that an equal protection claimant must allege different treatment from others similarly situated.  Opp. at 17-18 (*citing Olech* plaintiff's allegation of "different treatment from others similarly situated," the *Scarbrough* plaintiff's claim that he had been "treated differently than the job recipient," and the *DeMuria* plaintiff's being forced to live under a "different standard of police protection than any other resident").  Although Plaintiffs place great weight on the cases recognizing a "class of one," Opp. at 17-19, whether a would-be plaintiff is a "class of one" or a member of a class of many, he or she must nevertheless allege disparate treatment.  Plaintiffs have not, and that failure is fatal to an equal protection claim.

Finally, even if Plaintiffs had made such an allegation of unequal treatment, the claim would not be justiciable.  Open. Br. at 25-26.  As previously discussed, courts will not allow claims to proceed if a determination on the merits would prove unworkable or would conflict with other branches of Government.  *Id.* at 26 (*citing Briton, et al. v. Palestinian Interim Self-Government Authority*, 310 F. Supp. 2d 172 (D.D.C. 2004)).  Determining whether the Wilsons were treated differently from other, similarly situated covert CIA operatives, and whether there even *are* similarly situated CIA operatives, would require the review of information that the CIA is legally allowed to keep secret or would require the revelation of the identities of other covert agents.  Thus, even if the Wilsons had stated a claim for an equal protection violation, their cause of action would not be justiciable and should not be allowed to proceed.

**C.**    **Plaintiffs Have Not Disproven Mr. Rove's Argument That They Have No Personal Privacy Interest In Ms. Wilson's Government Work And Have Not Stated A Claim For A Due Process Privacy Violation**

As Plaintiffs acknowledge, the D.C. Circuit has never recognized a constitutional cause of action arising from the release of accurate information, and it has expressed grave doubts about whether there is a constitutional right to informational privacy.  *American Federation of Government Employees v. Dep't of Housing and Urban Development,* 118 F.3d 786, 788, 791 (D.C. Cir. 1997); Opp. at 22.  Even assuming, *arguendo,* the existence of some type of constitutional right to the nondisclosure of personal information, Ms. Wilson's claim would still fall short, because covert federal employment status is not personal information in which she can assert a constitutional right.  *Blazy v. Tenet*, 979 F. Supp. 10, 27 (D.D.C 1997).  Congress has vested the nation's intelligence services with powers of institutional secrecy with regard to agent identities, but it has not created a right of personal privacy for employees with regard to their government work.  *Id.*.

Moreover, Plaintiffs' admission that the D.C. Circuit has not recognized an information-based privacy right, Opp. at 22, establishes that Mr. Rove is entitled to qualified immunity.  In light of what may charitably be described as the unsettled state of the law in this regard, Plaintiffs cannot allege, much less establish, that Mr. Rove's conduct violated "settled, indisputable law" involving "basic, unquestioned . . . rights." *See Zweibon v. Mitchell*, 720 F.2d 162, 172-73 (D.C. Cir. 1983). Plaintiffs imply that *Butera v. District of Columbia*, 235 F.3d 637 (D.C. Cir. 2001), which established the "state endangerment" theory in this jurisdiction, made the law clear.  However, in *Briscoe v. Potter*, 355 F. Supp. 2d 30, 55-57 (D.D.C. 2004), upon which Plaintiffs rely, (Opp. at 25), the court held that "decisions in this circuit have come to different conclusions concerning the extent to which government officials can be held constitutionally liable under the State Endangerment theory for injuries sustained by government employees."  Because of that "lack of clarity," the court dismissed the complaint upon grounds of qualified immunity.

Apparently eschewing their own due process argument that Mrs. Wilson had an informational right of privacy in her employment information, Plaintiffs embrace instead a substantive due process "state endangerment" theory, which they have not pled and cannot prove. Opp. at 22-28. The D.C. Circuit has recognized the "state endangerment" theory of recovery. *Butera*, 235 F.3d at 651. However, the D.C. cases upon which Plaintiffs rely concern alleged failure to protect and do not concern alleged revelation of non-personal information and amorphous, hypothetical harms. *Id.* (Butera relatives suing for alleged failure to protect an informant killed after entering a drug supply house); *Fraternal Order of Police v. Williams*, 263 F. Supp. 2d 45 (D.D.C. 2003) (police officers suing because of alleged endangerment to prison guards as a result of prison overcrowding); *Briscoe,* 355 F. Supp. 2d 30 (postal workers suing for alleged failure to protect from anthrax danger).

The non-D.C. Circuit case upon which Plaintiffs rely, *Kallstrom v. City of Columbus,* 136 F.3d 1055, 1063 (6th Cir. 1998), concerned the release of undisputedly private information (home addresses, phone numbers, driver's licenses of officers and names and addresses of loved ones) to a gang whose members were facing criminal charges. Leaving aside the difference between the precedent of the Sixth Circuit and this jurisdiction, the explicit danger in *Kallstrom* from a specific source arising from release of undisputedly private information stands in stark contrast to hypothetical, unspecified danger that a federal employee might face because his government work has been revealed.

Quite simply, on the facts they have alleged, Plaintiffs may not maintain either the cause of action they have actually pled or the theory they have recently embraced.

**D.    Because Plaintiffs Admit That Ms. Wilson Was Not Demoted Or Discharged, They Have Not Alleged Any Property Right Violation**

Plaintiffs cannot state a due process property claim absent a change in legal status or loss of employment resulting from alleged defamation or wrongful statements.[4]  *Siegert v. Gilley*, 500 U.S. 226, 233 (1991); *Paul v. Davis*, 424 U.S. 693 (1976); *O'Donnell v. Barry*, 148 F.3d 1126, 1139-42 (D.C. Cir. 1998); *Trifax Corp. v. District of Columbia*, 314 F.3d 641, 644 (D.C. Cir. 2003).  Ms. Wilson was not demoted or discharged; indeed, Plaintiffs assert that she continued in her job for two years after the alleged revelation of her employment.  Opp. at 30.  Ms. Wilson's vague allegation of reputational harm does not state a property rights claim under a "reputation plus" theory or describe a "stigma" precluding her employment.  *See, e.g., Paul*, 424 U.S. at 704-711; *O'Donnell*, 148 F.3d at 1139-42.

Plaintiffs' argument that Ms. Wilson had "a reasonable expectation of continued employment relative to the actions of others outside of the CIA" ignores the fact that Ms. Wilson's employment continued for two years after the allegedly wrongful disclosure of her status, and Plaintiffs do not allege that her voluntary retirement was the result of Mr. Rove's conduct.  Open. Br. at 32 (*citing* Am. Compl. ¶ 7).  The most that Plaintiffs can allege (rather than a job loss or change in legal status) is that "Ms. Wilson could no longer function as a secret operative . . .  [a] career which she thoroughly enjoyed and planned to pursue for years to come was taken away."  Opp. at 30.  As discussed *supra*, Ms. Wilson never had a right in her covert employment status, regardless of her alleged enjoyment of that aspect of the job.  Because Plaintiffs do not allege termination, demotion or a change in Ms. Wilson's legal status, they have not alleged a valid property rights violation, and that claim should be dismissed.

---

[4]  Plaintiffs do not allege that Mr. Rove's alleged statements were false, a traditional requirement of defamation.

### III.    MR. ROVE IS ENTITLED TO QUALIFIED IMMUNITY

#### A.    Because Plaintiffs Have Not Alleged Valid, Let Alone Clearly Established, Constitutional Claims, Mr. Rove Is Entitled To Qualified Immunity

Plaintiffs have not stated valid constitutional claims.  Open. Br. at 20-32; *supra* 6-13.  Thus, under the first prong of qualified immunity analysis, which asks whether a plaintiff's allegations demonstrate a constitutional violation, Mr. Rove is therefore entitled to qualified immunity.  *Saucier v. Katz*, 533 U.S. 194, 199 (2001).  In order to overcome a claim of qualified immunity, however, a plaintiff must show not only that his or her claims are valid, but that the defendant's conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Behrens v. Pelletier*, 516 U.S. 299, 305 (1996).  Plaintiffs' causes of action, which propose giving federal employees a personal privacy action in their employment status, do not seek vindication for alleged violations of "clearly established" constitutional rights.  *See* Open. Br. at 35-37.  Even giving Plaintiffs the benefit of every doubt, Mr. Rove is entitled to qualified immunity.

To be sure, the doctrine of qualified immunity does not require that the courts have previously decided a case on identical facts, *see Hope v. Pelzer*, 536 U.S. 730, 739 (2002).  However, deciding whether a right was "clearly established" cannot be approached from a general perspective, but rather from "a more particularized" perspective. *Anderson,* 483 U.S. at 640; *see also Saucier*, 533 U.S. at 202.  The "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson,* 483 U.S. at 640 (emphasis added). Nothing in the sparse allegations against Mr. Rove in Plaintiffs' Amended Complaint describes conduct that violated a "clearly established" constitutional right.  Plaintiffs do not allege that Mr. Rove was aware of Ms. Wilson's covert status or of the alleged harms that might flow from public disclosure of her status.  Mr. Rove is not alleged to have made any untrue or threatening statements regarding Plaintiffs, and he took no actions to negatively affect Ms. Wilson's job.  Amend. Compl.; Opp. at 2-11.  We are aware of no court – and Plaintiffs have not identified one – that has found a

13

constitutional violation in even roughly analogous circumstances.  In the absence of such findings, Mr. Rove cannot be said to have had "fair warning" that his alleged conduct violated Plaintiffs' rights.  *Hope*, 536 U.S. at 739 ("[T]he salient question is whether the state of the law…gave fair warning" that defendant's alleged behavior was unconstitutional).

Plaintiffs' sense of outrage is no substitute for the requirement of "fair warning."  A Motion to Dismiss is no place to call into question either Plaintiffs' motives or their account of the facts. But neither is their sense of victimization, however forcefully it is expressed, a substitute for the "fair warning" that the courts require before a public official may be held personally liable for his official acts *See, e.g., Id.; Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established legal rights of which a reasonable person would have known").

## IV.    Plaintiffs Have Not Advanced Any Reason That Could Justify Overlooking The Untimeliness Of Their Complaint

### A.    Plaintiffs Have Not Shown Any Reason To Excuse Their Untimely Filing

Plaintiffs acknowledge that D.C. Code § 12-301(4) required them to bring a Public Disclosure claim within one year of the alleged wrong.  Opp. at 42.  They ask to be excused from this requirement, however, because of the "discovery rule" or "equitable tolling" or "equitable estoppel."  Opp. at 42-47.[5]  They allege no facts, however, that would entitle them to the benefit of any of these doctrines.

---

[5]  Plaintiffs' Amended Complaint did not plead any reason to excuse their delay in filing.  Numerous courts have held that plaintiffs who seek to excuse late filing must plead the reasons for their untimeliness within the complaint.  *Fox v. Ethicon Endo-Surgery, Inc.*, 110 P.3d 914, 920-21 (Cal. 2005) ("[A] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence.") (citations omitted); *Nunez v. Caldarola*, 56 S.W.2d 812, 814 (Tex. App. 2001) (stating that plaintiff may toll statute of limitations if plaintiff "affirmatively pleads" the discovery rule); *Cumis Ins. Soc'y, Inc. v. Citibank, N.A.*, 921 F. Supp. 1100, 1111 (S.D.N.Y. 1996) (dismissing claim as time barred and

The Supreme Court has held that, "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: 1) that he has been pursuing his rights diligently, and 2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) (denying a request for equitable tolling because "petitioner's lack of diligence precludes equity's operation"); *see also Felter et al. v. Kempthorne*, -- F.3d --, 2007 WL 120302 (D.C. Cir. 2007); *Felter et al. v. Norton et al.*, 412 F. Supp. 2d 118 (D.D.C. 2006). For this reason, the D.C. Circuit has remarked that "federal courts have typically extended equitable relief only sparingly." *Colbert v. Potter*, 471 F.3d 158, 167 (D.C. Cir. 2006). Even the *Hobson* court, upon which Plaintiffs rely, noted the long-standing rule that the late-filing plaintiff who seeks to excuse dilatoriness for lack of knowledge must not have lacked knowledge through "any fault or want of diligence or care on his part." *Hobson v. Wilson,* 737 F.2d 1, 33 (D.C. Cir. 1984).

Plaintiffs fall very far short of meeting this demanding standard. Plaintiffs do not allege that they took any action to discover the information needed to bring their complaint. Nor do they allege that the Defendants took any action to prevent them from making inquiries necessary to make a timely complaint. Rather, their claim to equitable relief from limitations requires this Court to ignore what Plaintiffs do allege. The very heart of their complaint is that Mr. Rove and others publicly disclosed private facts about Mrs. Wilson's employment. Amend. Compl. ¶¶ 2, 14. The specific conduct that Mr. Rove was alleged to have engaged in involves a discussion about Mrs. Wilson after her public disclosure, about which it appears, from the Amended Complaint, that Plaintiffs were contemporaneously aware. Moreover, the Court is free to take judicial notice of the fact that, within months of the alleged wrongful conduct, Mr. Wilson publicly remarked "wouldn't it be fun to see Karl Rove frog-marched out of the White House in handcuffs? And I measure my

---

explaining that "[i]t is the plaintiff's burden to plead facts sufficient to toll the statute of limitations by means of the discovery rule"); *Ogle v. Hotto*, 652 N.E.2d 815, 820-21 (Ill. App. Ct. 1195) ("What is required is for the pleader to allege what fact or facts support the late discovery of the injury.").

words."[6]  To suggest under these circumstances that Plaintiffs are entitled to equitable relief from the statutory requirements governing their claim is absurd.

Notwithstanding Mr. Wilson's own contemporaneous, inflammatory remarks, Plaintiffs assert that they did not learn of Mr. Rove's involvement until Mr. Libby was indicted in October, 2005.  Their claim is demonstrably false.  The particular allegations against Mr. Rove in the Amended Complaint are nowhere to be found in the indictment, which does not mention Mr. Rove by name.[7]  While the Court is necessarily constrained in what it may consider at this stage of the proceedings, it need not set out on a fool's errand.

The cases upon which Plaintiffs primarily rely, *Hobson supra*, and *Fitzgerald v. Seamans*, 384 F.Supp. 688 (D.D.C. 1974), confirm that Plaintiffs had ample knowledge to file their complaint and no excuses for their untimeliness.  In *Fitzgerald*, which Plaintiffs allege is "remarkably similar" to this case (Opp. at 44), the Court noted that the plaintiff "not only knew the essential facts relating to his cause of action well before the statute of limitations ran on his claim, but also publicly alleged many of the same evidentiary details which he reasserts in this lawsuit." 384 F.Supp. at 694.  For this reason, the *Fitzgerald* court held that "it cannot be said that the essential issues were unknown to plaintiff before the statute of limitations ran out. . . . That not all the supporting evidence relating to the role and identity of every single conspirator was available to him then – just as this evidence remained unavailable to him when he filed the present complaint naming several 'John Doe' defendants – will not toll the statute of limitations. . . ." *Id.* at 696.  By contrast, the D.C. Circuit's

---

[6]  Joseph Wilson, <u>The Politics of Truth</u> at 372 (1st Carroll & Graf Trade Paperback Edition 2005) (2004). Pursuant to Federal Rule of Evidence ("FRE") 201(b) and (c), this Court may, if it chooses, take judicial notice of facts that are "not subject to reasonable dispute" because they are "generally known within the territorial jurisdiction of the trial court" or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Pursuant to FRE 201(f), the Court may take judicial notice "at any stage of the proceeding."

[7]  In fact, Plaintiffs add Mr. Rove's name to a quotation from the indictment, (Amend. Compl ¶ 19(u)), reflecting clearly their access to sources of information entirely independent from the indictment itself.

holding in *Hobson* turns on facts entirely inapposite to the circumstances here. The plaintiffs in *Hobson* were altogether unaware of the misconduct against them at the time defendants acted. Here, the very point of Plaintiffs' claims is that they were the victim of the public disclosure of information concerning Ms. Wilson, a harm that, by definition, can only be inflicted if it is public.

**B.    Plaintiffs Admit That Prevailing Law Of The Circuit Applies The Limitations Period Of The Most Closely Analogous Cause Of Action To *Bivens* Claims, Which Is Subject To A One-Year Limitations Period In This Case**

In this Circuit, the limitations period *Bivens* actions is determined by reference to the most closely analogous state tort. *McClam v. Barry*, 697 F.2d 366 (D.C. Cir. 1983); *Hobson*, 737 F.2d at 32; *Doe v. Dept. of Justice*, 753 F.2d 1092 (D.C. Cir. 1985) (citing *Burnett v. Grattan*, 468 U.S. 42, 104 S. Ct. 2924, 2929 (1984)). All of Plaintiffs' constitutional claims derive from the alleged disclosure of allegedly private facts. Because actions arising from the disclosure of allegedly private facts must be brought within one year, Plaintiffs' complaint almost three years later is untimely.

Plaintiffs admit that their Third Cause of Action is "arguably analogous" to the Public Disclosure of Private Facts for limitations purposes, Opp. at 39. It is an admission that does not win any prizes for candor, since Plaintiffs, in fact, plead the Public Disclosure of Private Facts as a state law tort. In this Circuit, that acknowledgement is dispositive. As the Courts have made clear, *McClam v. Barry*, 697 F.2d 366 (D.C. Cir. 1983); *Doe v. United States Dept. of Justice*, 753 F.2d 1092 (D.C. Cir. 1985), the test is not how a Plaintiff characterizes his own claim, but the "gist" of the action. All of Plaintiffs' causes of action, however they are re-heated and served, derive from the alleged release of allegedly private information. Plaintiffs seek damages for an alleged First Amendment violation that was supposedly accomplished through the public disclosure of private facts. They also seek damages for alleged Fifth Amendment Equal Protection, Privacy, and Property rights violations that were supposedly accomplished through the public disclosure of private facts. All of these causes of action derive from the same facts. And as Judge Bork made clear in *McClam*,

17

when "the facts [underlying two claims] are largely the same, and principally for that reason but also because the two claims grow out of the same incident and seek to vindicate the same interests, settled expectations [for limitations purposes] must be judged the same."  697 F.2d at 375.

## <u>CONCLUSION</u>

For the reasons enumerated above and in Defendant Karl C. Rove's Motion to Dismiss, Mr. Rove respectfully requests that this Court dismiss Plaintiffs' Causes of Action I – IV for failure to state a claim upon which relief can be granted and, in addition, grant the motion of the United States to substitute itself for Mr. Rove with regard to the state law fifth cause of action and to dismiss that count.

Respectfully submitted,

/s/ Robert D. Luskin
Robert D. Luskin D.C. Bar # 293621
Heather M. McPhee D.C. Bar #479267
James D. Colt D.C. Bar # 478122
PATTON BOGGS LLP
2550 M St. N.W.
Washington, DC 20037
(202) 457-6000
*Attorneys for Defendant Karl C. Rove*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 15, 2007, a copy of Defendant Karl C. Rove's Reply to Plaintiffs' Opposition to Defendants' Motion to Dismiss was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Robert D. Luskin