UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VALERIE PLAME WILSON, and<br>JOSEPH C. WILSON, IV,<br><br>        Plaintiffs,<br><br>v.<br><br>I. LEWIS LIBBY, *et al.*,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)   Civ. A. No. 06-1258 (JDB)<br>)<br>)<br>)<br>)<br>)<br>) |

**REPLY MEMORANDUM IN SUPPORT OF
THE UNITED STATES' MOTION TO DISMISS**

PETER D. KEISLER
Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

JEFFREY S. BUCHOLTZ
Principal Deputy Assistant Attorney General

C. FREDERICK BECKNER III
Deputy Assistant Attorney General

TIMOTHY P. GARREN
Director, Torts Branch

RICHARD MONTAGUE
Senior Trial Attorney

GLENN S. GREENE, #450348
Trial Attorney, Department of Justice
Torts Branch, Civil Division
P.O. Box 7146
Washington, D.C. 20044
Tel: (202) 616-4158
Fax: (202) 616-4314
Attorneys for the United States of America

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.  Plaintiffs Are Not Entitled to Discovery Into
        The Individual Defendants' Subjective Motivations. . . . . . . . . . . . . . . . . . . . . . . . 2

    B.  Plaintiffs Have Identified No Other Issues
        Warranting Discovery Or An Evidentiary Hearing. . . . . . . . . . . . . . . . . . . . . . . . 8

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

# TABLE OF AUTHORITIES[*]

## CASES

*Aversa v. United States*,
 99 F.3d 1200 (1st Cir. 1996) .............................................. 5

\* *Bancoult v. McNamara*,
 370 F. Supp.2d 1 (D.D.C. 2004), *aff'd on other grounds*, 445 F.3d 427
 (D.C. Cir. 2006) *cert denied*, 75 U.S.L.W. 3366 (2007) .......................... 7

\* *Council on American Islamic Relations v. Ballenger*,
 444 F.3d 659 (D.C. Cir. 2006) ...................................... passim

*Haddon v. United States*,
 68 F.2d 1420 (C.A.D.C. 1995) ............................................ 3

*Harbury v. Hayden*,
 444 F. Supp.2d 19 (D.D.C. 2006) ....................................... 6, 9

\* *Johnson v. Weinberg*,
 434 A.2d 404 (D.C. 1981) ............................................. 2, 4

*Lyon v. Carey*,
 533 F.2d 649 (D.C. Cir. 1976) ............................................ 2

*Operation Rescue National v. United States*,
 975 F. Supp. 92 (D. Mass. 1997), *aff'd on other grounds*, 147 F.3d 68 (1st
 Cir. 1998) ............................................................ 6

\* *Osborn v. Haley*,
 No. 05-593, 2007 WL 135830 (U.S. Jan. 22, 2006) ...................... 1, 8, 9

*Ramey v. Bowsher*,
 915 F.2d 731 (D.C. Cir. 1990) ............................................ 6

\* *Rasul v. Rumsfeld*,
 414 F. Supp.2d 26 (D.D.C. 2006) *appeal docketed,* 06-5209 (D.C. Cir.
 Jul. 31, 2006) ......................................................... 7

---

[*] Authorities on which we principally rely are marked with an asterisk.

*Rodriguez v. Sarabyn*,
129 F.3d 760 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

* *Schneider v. Kissinger*,
310 F. Supp.2d 251 (D.D.C. 2004)*, aff'd on other grounds*, 412 F.3d 190
(D.C. Cir. 2005), *cert. denied*, 126 S. Ct. 1768 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . 7

* *Stokes v. Cross*,
327 F.3d 1210 (D.C. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

* *Weinberg v. Johnson*,
518 A.2d 985 (D.C. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5

*Williams v. Cloverland Farms Dairy, Inc.*,
78 F. Supp.2d 479 (D. Md. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**RULES**

Federal Rule of Civil Procedure 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**MISCELLANEOUS**

Restatement (Second) of Agency § 228(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## INTRODUCTION

Plaintiffs acknowledge in their opposition memorandum that the Westfall Act certification submitted with the United States' Motion to Dismiss constitutes "*prima facie* evidence" that each of the individual federal defendants – Vice President Cheney, Richard Armitage, Karl Rove and I. Lewis Libby – was acting within the scope of his federal employment as to the alleged conduct giving rise to plaintiffs' invasion of privacy claim and that the requirements of the Westfall Act are satisfied.  *See* Opposition at 31-32; *see also Council on American Islamic Relations v. Ballenger*, 444 F.3d 659, 662 (D.C. Cir. 2006) (per curiam). Although a Westfall Act scope certification is not conclusive and may be challenged in court in appropriate circumstances, there is no automatic right to discovery or an evidentiary hearing.  To the contrary, the burden is on plaintiffs to show a legitimate need for discovery by alleging facts "that, if true, would demonstrate that [defendants acted] outside the scope of ... [their] employment." *Stokes v. Cross*, 327 F.3d 1210, 1214-16 (D.C. Cir. 2003).  Vigorous enforcement of that requirement is central to the purposes of the Westfall Act because the Act is intended not merely to provide an immunity from liability but to protect federal employees from the burdens and distractions of the litigation process, including discovery.  That point was emphatically reiterated by the Supreme Court in its recent opinion in *Osborn v. Haley*, No. 05-593, 2007 WL 135830, at *8-9 (U.S. Jan. 22, 2006), holding that the rejection of a Westfall Act certification prior to trial (like an interlocutory denial of qualified immunity) is a "final decision" for appeal purposes because immediate review is necessary to vindicate the protection from unnecessary proceedings that the Act affords to federal employees.

Although plaintiffs claim entitlement to discovery and an evidentiary hearing on their scope challenge in this case, they have not satisfied their obligation to demonstrate a legitimate

need for additional proceedings.  They have alleged no facts in their Amended Complaint that present a legitimate scope question under applicable D.C. *respondeat superior* law.  Nor have they identified any proposed discovery in their opposition memorandum that is even remotely warranted based on their allegations.  Accordingly, this Court should dismiss plaintiffs' invasion of privacy claim with respect to all of the individual defendants.

## DISCUSSION

### A.  Plaintiffs Are Not Entitled to Discovery Into The Individual Defendants' Subjective Motivations.

Plaintiffs' argument that they are entitled to discovery and an evidentiary hearing on the scope question boils down to their assertion that the individual defendants were acting out of "personal" motives in allegedly revealing Plame's reported employment with the CIA and that their conduct did not serve the interests of the United States.  *See* Opposition at 33-35.  That argument both mischaracterizes the allegations in their Amended Complaint and misapplies D.C. law governing scope of employment analysis.

In assessing whether conduct was within the scope of employment under D.C. *respondeat superior* law, courts focus on "the underlying dispute or controversy" in which the employee was engaged at the time of the conduct, not on the allegedly tortious *means* by which the employee acted.  *See Ballenger*, 444 F.3d at 664 (holding that allegedly defamatory statement made to the press was within the scope of employment because the "proper inquiry ... focuses on the underlying dispute or controversy, not on the nature of the tort"); *Lyon v. Carey*, 533 F.2d 649 (D.C. Cir. 1976) (upholding a finding that employee who stabbed and sexually assaulted customer acted within scope); *Johnson v. Weinberg*, 434 A.2d 404, 409 (D.C. 1981) (reversing

decision that laundry employee was outside of scope when he shot customer during dispute over missing shirts, because "[t]he assault arose out of ... and was triggered by a dispute over the conduct of the employer's business"). If any part of the employee's alleged motive was to serve the employer, that is sufficient for scope purposes even if the employee's predominant motive may have been to serve some personal interest. *See Weinberg v. Johnson*, 518 A.2d 985, 988 (D.C. 1986) (Rogers, J.) ("The employer does not avoid liability for the employee's intentional torts ... if the tort is committed *partially* because of a personal motive, such as revenge, as long as the employee [is] actuated, *at least in part*, by a desire to serve his principal's interest.") (emphasis added) (internal citations omitted); *Haddon v. United States*, 68 F.2d 1420, 1425 (D.C. Cir. 1996) (an employee's conduct is outside scope when "*completely unrelated* to his official responsibilities") (emphasis added); Restatement (Second) of Agency § 236, comment b (conduct is within scope if actuated by a purpose to serve the employer "to any appreciable extent"). Moreover, when an employee acts in the course of performing job duties, it is "presumed" that the employee was motivated by a desire to serve the employer. *Weinberg*, 518 A.2d at 989.

As plaintiffs recognize (Opposition at 32), the scope inquiry is an objective one and is "based on all the facts and circumstances" surrounding the alleged conduct. *Ballenger*, 444 F.3d at 663. And even conduct that itself is not the kind of conduct an employee is employed to perform is nonetheless within scope if that conduct "aris[es] out of a dispute that was originally undertaken on the employer's behalf." *Id*. at 664 (quotation omitted); *see also Weinberg*, 518 A.2d at 991 ("when an intentional tort is 'the outgrowth of a job-related controversy,' the intent or purpose criterion is satisfied") (quoting *Johnson*, 434 A.2d at 408). Applying these principles,

3

there is no question that the individual defendants' alleged actions in this case fell within the scope of their federal employment under D.C. law.

As to defendant Armitage, although plaintiffs inexplicably charge in their opposition memorandum that he participated in "a concerted effort to punish Mr. Wilson," *see* Opposition at 10, their Amended Complaint is devoid of such allegations. It states only that other defendants – "Defendants Cheney, Rove, Libby and John Does 1-10" – "reached an agreement to discredit, punish and seek revenge against the Plaintiffs...." *See* Am. Compl. ¶ 24 (and specific allegations concerning Armitage at ¶¶ 36-39). There is no suggestion that Armitage ever conspired with other defendants or acted out of any personal motive, and plaintiffs conspicuously omitted him as a defendant on their First and Fifth Amendment "retaliation" claims. *See id*. ¶¶ 46-54. Accordingly, plaintiffs have alleged nothing rebutting the presumption under D.C. law that when Armitage allegedly disclosed Plame's reported CIA employment to columnist Robert Novak at a meeting in his office at the State Department on July 8, 2003, *id.* ¶ 39 – the disclosure that directly resulted in the first publication – he was acting within the scope of his federal employment.

Plaintiffs likewise fail to shoulder their burden of alleging facts that would objectively demonstrate that Vice President Cheney, Rove and Libby acted outside the scope of their offices. Plaintiffs' theory that those defendants revealed Plame's identity in order to "discredit, punish and seek revenge against the plaintiffs," *id.* ¶ 10, constitutes, at most, an allegation of mixed personal and employment-related motives, which is insufficient to overcome the *prima facie* effect of the scope certification under D.C. law. The "underlying dispute or controversy," *Ballenger*, 444 F.3d at 664, addressed in the Amended Complaint is that Wilson was engaged in a highly public campaign challenging government policy and even the veracity of the President on a matter of

great national importance, *see id*. ¶¶ 3, 19(a)-(b), (n), 24, and defendants allegedly mounted "a deliberate campaign to discredit and punish Mr. Wilson for his constitutionally protected public statements," Opposition at 36. When senior federal officials like the individual defendants in this case attempt to defend government policy in the press against criticisms, their conduct is plainly employment-related under the required objective analysis, and plaintiffs have alleged no facts that could support the conclusion that such conduct was motivated exclusively by personal, non-employment-based, concerns. *See Ballenger*, 444 F.3d at 665 (stating that "the circumstances of the conversation belie [the] suggestion" that the alleged defamatory statement was "purely private"); *Weinberg*, 518 A.2d at 992 (stating that "the intent criterion focuses on the underlying dispute or controversy, not on the nature of the tort").

At bottom, plaintiffs' conclusory assertions of "personal" motives amount to nothing more than a challenge to the *means* allegedly used by defendants to respond to Wilson's criticisms of government policy. Specifically, plaintiffs contend that "the unauthorized disclosure of classified information," Opposition at 33, could never be within scope because such conduct is unlawful and endangers the nation's security, *see id*. at 33-36. But D.C. scope law does not turn on whether alleged conduct was unlawful or unwise. Rather, even conduct that contravenes a master's instructions, that employs unlawful means, and that ends up injuring rather than advancing the master's interests is within scope if, viewed objectively, it was intended at least in measurable part to serve the master. *See, e.g., Aversa v. United States*, 99 F.3d 1200, 1212 (1st Cir. 1996) (holding that defamatory statements made by federal prosecutor to the press were within scope under New Hampshire law even though there were "policies and regulations against the kinds of statements that were made" and the statements "furthered no legitimate law enforcement objective and

5

actually misinformed the public"); *Harbury*, 444 F. Supp.2d at 35-36 (holding that CIA agents were within scope despite allegations that they condoned torture and killing of Guatemalan rebels); W.P. Keeton, et al., Prosser & Keeton on the Law of Torts, § 70 at 503 (1984) (where "the forbidden conduct is merely the servant's own way of accomplishing an authorized purpose, the master cannot escape responsibility no matter how specific, detailed and emphatic his orders may have been to the contrary").[1]

Plaintiffs' own characterization of defendants' conduct as done "solely for political gain," Opposition at 36, confirms that the alleged conduct was aimed at least in part to undermine Wilson's public criticisms of government policy, rather than being exclusively motivated by "personal" considerations. *See, e.g., Operation Rescue National v. United States*, 975 F. Supp. 92, 108 (D. Mass. 1997) (holding that a Senator's allegedly defamatory statement was within scope under Massachusetts law even if made for personal political gain, because "[i]t is natural for public officials to believe that their own success, and that of their political parties, is inextricably linked with the public interest"), *aff'd on other grounds*, 147 F.3d 68 (1st Cir. 1998). Indeed, plaintiffs come close to conceding that their challenge is merely to the tactics allegedly used by defendants when they contrast those alleged means – "an anonymous whispering campaign" – with a response "on the merits" to Wilson's criticisms, which plaintiffs do not suggest would have been outside of scope. Opposition at 37. No discovery could alter the basic fact that defending

---

[1] *Cf. Ramey v. Bowsher*, 915 F.2d 731, 734 (D.C. Cir. 1990) (per curiam) ("If the scope of an official's authority or line of duty were viewed as coextensive with the official's lawful conduct, then immunity would be available only where it is not needed; in effect, the immunity doctrine would be completely abrogate[d].") (quotation omitted and alteration in original); *Rodriguez v. Sarabyn*, 129 F.3d 760, 771 (5th Cir. 1997) ("Torts rarely serve the *legitimate* purposes of any employer. However, ... acts contrary to the employer's express wishes can be imputed to the employer....") (emphasis in original).

government policy against public criticism was within the scope of defendants' employment as senior policy-making officials.

To hold otherwise in these circumstances would effectively treat subjective motivation as an issue of fact warranting discovery in nearly every Westfall Act case. Policy-making officials would be routinely subjected to the burdens and distractions of pre-trial proceedings based merely on conclusory assertions of "personal" motivation even in regard to conduct facially aimed at governmental purposes. Such an approach has been consistently rejected in this District. *See, e.g., Rasul v. Rumsfeld*, 414 F. Supp.2d 26, 38 n.13 (D.D.C. 2006) (rejecting discovery and sustaining a Westfall Act certification that the Secretary of Defense and high-ranking miliary officers acted within the scope of their federal employment in allegedly subjecting detainees at Guantanamo Bay to torture and prolonged arbitrary detention even though such practices were contrary to the stated position of the President), *appeals docketed*, Nos. 06-5209 & 06-5222 (D.C. Cir. Jul. 31, 2006); *Bancoult v. McNamara*, 370 F. Supp.2d 1, 7-9 (D.D.C. 2004) (sustaining Westfall Act certification without discovery that the Secretary of Defense and other high-level officials acted within the scope of their federal duties in allegedly engaging in genocide and racial discrimination in removing indigenous peoples from the Chagos Islands to make way for military facilities), *aff'd on other grounds*, 445 F.3d 427, 438 (D.C. Cir. 2006) (not reaching Westfall Act certification directly, but holding for purposes of political question doctrine that defendants were within scope), *cert. denied*, 75 U.S.L.W. 3366 (2007); *Schneider v. Kissinger*, 310 F. Supp.2d 251, 264 (D.D.C. 2004) (rejecting discovery and sustaining a Westfall Act certification that the National Security Advisor acted within the scope of his federal employment when he allegedly conspired with Chilean nationals to kidnap and murder the leader of the Chilean Army)*, aff'd on*

*other grounds*, 412 F.3d 190 (D.C. Cir. 2005), *cert. denied*, 126 S. Ct. 1768 (2006). And plaintiffs' proposed approach is plainly contrary to the Supreme Court's analysis in *Osborn v. Haley*, 2007 WL 135830, *8-9, 15, 17, recognizing that the Westfall Act is intended to provide broad immunity against pre-trial proceedings.

### B. Plaintiffs Have Identified No Other Issues Warranting Discovery Or An Evidentiary Hearing.

Apart from plaintiffs' desire to probe the individual defendants' subjective motivations, they claim a need for discovery to determine whether defendants' alleged conduct occurred within "the authorized time and space limits of the defendants' jobs" and whether it occurred in "Washington, Virginia, or Maryland." Opposition at 37. There is no basis for any such discovery. Conduct is within the scope of employment if it is undertaken "substantially" within authorized time and space limits. *See* Restatement (Second) of Agency § 228(1)(b). As previously mentioned, the Westfall Act scope certification had *prima facie* effect, and it shifted the burden to plaintiffs to present facts to defeat that certification. Plaintiffs have alleged no facts sustaining their burden in regard to any work time or space limitation that might apply in this case. To the contrary, plaintiffs specifically allege that the disclosure that is the source of their alleged injuries – Armitage's disclosure to Novak – occurred at a meeting in Armitage's office at the State Department. Am. Compl. ¶ 39. As to the other defendants, plaintiffs do not offer a plausible theory as to how their alleged conduct could have occurred "far beyond" authorized work time and space limits. Restatement (Second) of Agency § 228(2). Plaintiffs' suggestion that these highest-level, policy-making officials are authorized to do their jobs only within as-yet-undiscovered time and space limits is meritless. The Vice President does not turn into a private

citizen on Sundays. *Cf.* Opposition at 36-37 (suggesting that the Vice President was outside of scope when allegedly engaging in actionable conduct on a Sunday).

Plaintiffs' professed need for discovery to determine whether defendants' alleged disclosures occurred in D.C., Virginia, or Maryland is equally insubstantial. First, having based their invasion of privacy claim specifically and solely on D.C. law, *see* Am. Compl. ¶ 4; *see also* Opposition at 30-31, plaintiffs should not be heard to demand (*id.* at 37) discovery concerning "which state law applies." More importantly, plaintiffs do not suggest, let alone demonstrate, that it would make any difference to the scope determination if the conduct occurred in Virginia or Maryland rather than in D.C. To the contrary, the scope law of all three jurisdictions is broad and is based generally on the Restatement (Second) of Agency. *See, e.g., Ballenger*, 444 F.3d at 664-65 (applying Restatement principles under D.C. law); *Williams v. Cloverland Farms Dairy, Inc.*, 78 F. Supp.2d 479, 485 n.4 (D. Md. 1999) (stating that "[t]he Restatement defines 'scope of employment' much along the lines of the Maryland caselaw . . . ."); *Harbury*, 444 F. Supp.2d at 31 (noting that "[b]oth jurisdictions [D.C. and Virginia] look to the Restatement (Second) of Agency as the proper framework" for determining scope). There is no justification in these circumstances to subject the individual defendants to the discovery burdens that the Westfall Act was enacted to eliminate. *See Osborn*, 2007 WL 135830, *8-9, 15, 17.[2]

---

[2] If the Westfall Act certifications are upheld, plaintiffs do not dispute that the resulting Federal Tort Claims Act claim must be dismissed under Rule 12(b)(1) for failure to exhaust required administrative remedies.

## CONCLUSION

For the foregoing reasons, as well as the reasons set forth in our opening memorandum, the United States' Motion to Dismiss should be granted.

Dated: February 15, 2007

        Respectfully submitted,

        PETER D. KEISLER
        Assistant Attorney General

        JEFFREY A. TAYLOR
        United States Attorney

        JEFFREY S. BUCHOLTZ
        Principal Deputy Assistant Attorney General

        C. FREDERICK BECKNER III
        Deputy Assistant Attorney General

        TIMOTHY P. GARREN
        Director, Torts Branch

        /s/_____
        RICHARD MONTAGUE
        Senior Trial Attorney
        Torts Branch, Civil Division
        GLENN S. GREENE, #450348
        Trial Attorney
        Torts Branch, Civil Division
        P.O. Box 7146
        Washington, D.C. 20044
        Phone (202) 616-4158
        Fax (202) 616-4314

        Attorneys for the United States of America