# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ) |  |  |
| VALERIE PLAME WILSON and ) |  |  |
| JOSEPH C. WILSON IV, ) |  |  |
| ) |  |  |
| Plaintiffs, ) |  |  |
| ) |  |  |
| v. ) | Civil Action No. 06-1258 (JDB) |  |
| ) |  |  |
| I. LEWIS LIBBY JR., KARL C. ROVE, ) |  |  |
| RICHARD B. CHENEY, RICHARD ) |  |  |
| L. ARMITAGE and JOHN DOES ) |  |  |
| NOS. 1-9, ) |  |  |
| ) |  |  |
| Defendants. ) |  |  |
| ) |  |  |

## DEFENDANT RICHARD L. ARMITAGE'S REPLY MEMORANDUM
## IN SUPPORT OF
## HIS MOTION TO DISMISS

William H. Taft (DC Bar No. 055087)
Michael L. Waldman (DC Bar No. 414646)
Eugene N. Hansen (DC Bar No. 483638)
FRIED, FRANK, HARRIS, SHRIVER
  & JACOBSON LLP
1001 Pennsylvania Avenue, NW
Washington, DC  20004-2505
Telephone:  (202) 639-7000
Facsimile:  (202) 639-7008

Attorneys for Defendant
Richard L. Armitage

February 15, 2007

## TABLE OF CONTENTS

**PAGE**

**INTRODUCTION**.................................................................................................................1

**ARGUMENT** ......................................................................................................................4

      I.      Numerous "Special Factors" Compel Dismissal of the Alleged
             Constitutional Violations Against Mr. Armitage (Counts III and IV)....................4

            A.      The Privacy Act Is A "Special Factor" Precluding
                    Creation of A *Bivens* Cause of Action Against Mr. Armitage ...................4

            B.      The Intelligence Identities Protection Act, Civil Service Reform
                    Act And Other Federal Employee Grievance Procedures, And
                    National Security Concerns Are "Special Factors" Precluding
                    Creation Of A *Bivens* Cause Of Action Against Mr. Armitage..................7

      II.     The Constitutional Claims (Counts III and IV) Should Be Dismissed
             Because Mr. Armitage Has Qualified Immunity .....................................................10

            A.      Ms. Wilson Does Not Allege A Violation of Any Clearly
                    Established "Right to Privacy" (Count III)................................................10

             B.      Ms. Wilson Does Not Allege A Violation of Any Clearly
                      Established "Right to Property" (Count IV) ...............................................12

      III.    Under The Westfall Act, Mr. Armitage Is Not Subject To State
             Tort Liability (County V)........................................................................................13

      IV.    All Of The Allegations Against Mr. Armitage Are Time-Barred
             Under The Applicable Statutes Of Limitations .....................................................15

**CONCLUSION** ...............................................................................................................18

# TABLE OF AUTHORITIES

## CASES

*American Fed'n of Gov't Employees, AFL-CIO v. HUD*,
    118 F.3d 786 (D.C. Cir. 1997). ...............................................................................2, 10, 11

*Arar v. Ashcroft*,
    414 F. Supp. 2d 250(E.D.N.Y. 2006) ...................................................................................9

*Beattie v. Boeing, Co.*,
    43 F.3d 559 (10th Cir. 1994) ...............................................................................................9

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
    403 U.S. 388 (1971)................................................................................................... *passim*

*Blankenship v. McDonald*,
    176 F.3d 1192 (9th Cir. 1999) .............................................................................................6

*Bright v. Westmoreland County*,
    443 F.3d 276 (3d Cir. 2006)...............................................................................................11

*Briscoe v. Potter*,
    355 F. Supp. 2d 30 (D.D.C. 2004) ....................................................................................11

*Bush v. Lucas*,
    462 U.S. 367 (1983)............................................................................................................4

*Butera v. District of Columbia*,
    235 F. 3d 637 (D.C. Cir. 2001) ...............................................................................2, 10, 11

*Cada v. Baxter Healthcare Corp.*,
    920 F.2d 446 (7th Cir. 1990) ......................................................................................16, 17

*Chung v. Department of Justice*,
    333 F.3d 273 (D.C. Cir. 2003), *aff'g*,
    No. 00-CV-1912, 2001 WL 34360430 (D.D.C. Sept. 20, 2001) ............................1, 5, 6, 7

*CIA v. Sims*,
    471 U.S. 159 (1985)............................................................................................................9

*Council on Am. Islamic Relations v. Ballenger*,
    444 F.3d 659 (D.C. Cir. 2006) ..........................................................................................14

*Department of Navy v. Egan*,
    484 U.S. 518 (1988)..................................................................................................2, 3, 12

*Doe v. Cheney,*
    885 F.2d 898 (D.C. Cir. 1989) .........................................................................................12

*Doe v. Gates*,
    981 F.2d 1316 (D.C. Cir. 1993) .......................................................................................12

*Downie v. City of Middleburg Heights,*
    301 F. 3d 688 (6th Cir. 2002) ......................................................................................1, 6

*East v. Graphic Arts Indus. Joint Pension Trust,*
    718 A.2d 153 (D.C. 1998) ..........................................................................................16, 17

*Fraternal Order of Police v. Williams,*
    375 F.3d 1141 (D.C. Cir. 2004) ......................................................................................11

*Greene v. Nguyen,*
    No. 05-0407, 2005 WL 3275897 (D.D.C. Sept. 7, 2005)............................................3, 15

*Hall v. Clinton,*
    235 F. 3d 202 (4th Cir. 2000) ...........................................................................................8

*Hall v. Ford,*
    856 F.2d 255 (D.C. Cir. 1988) ........................................................................................13

*Harlow v. Fitzgerald*,
    457 U.S. 800 (1982).........................................................................................................10

*Hatfill v. Ashcroft,*
    404 F. Supp. 2d 104 (D.D.C. 2005) .......................................................................1, 5, 6, 7

*Healy v. United States,*
    435 F.Supp. 2d 157 (D.D.C. 2006) .................................................................................14

*Johnson v. Marcheta Investors Ltd. P'Ship,*
    711 A.2d 109 (D.C. 1998) ...............................................................................................17

*Johnson v. Weinberg,*
    434 A.2d 404 (D.C. 1981) .............................................................................................3, 15

*Leavell v. Kieffer,* 189 F.3d 492 (7th Cir. 1999).........................................................................16

*Lyon v. Carey,*
    533 F. 2d 649 (D.C. Cir.) 1976 .....................................................................................3, 15

*Mittleman v. U.S. Treasury,*
    773 F. Supp. 442 (D.D.C. 1991) .......................................................................................8

*Moore v. Guthrie,*
    438 F.3d 1036 (10th Cir. 2006) ......................................................................................11

*Schweiker v. Chilicky,*
     487 U.S. 412 (1988)..........................................................................................1, 4, 6

*Spagnola v. Mathis*,
     859 F.2d 223 (D.C. Cir. 1988) ...........................................................................4, 6, 7, 8

*Sprint Communications Co., L.P. v. FCC,*
     76 F.3d 1221 (D.C. Cir. 1996) ...................................................................................16

*Stevens v. Dep't of Health and Human Services,*
     901 F.2d 1571 (11th Cir. 1990) ....................................................................................8

*Stokes v. Cross,,*
     327 F.3d 1210 (D.C. Cir. 2003) ..................................................................................14

*Tenet v. Doe,*
     544 U.S. 1 (2005) ........................................................................................................9

*Totten v. United States,*
     92 U.S. 105 (1876).......................................................................................................9

*United States v. Stanley,*
     483 U.S. 669 (1987)..................................................................................................1, 6

*Wilson v. Garcia,*
     471 U.S. 261 (1985)...................................................................................................16

*Zimbelman v. Savage,*
     228 F.3d 367 (4th Cir. 2000) .......................................................................................6

*Zweibon v. Mitchell,*
     720 F.2d 162 (D.C. Cir. 1983) ...................................................................................10

**STATUTES**

Civil Service Reform Act of 1978 .........................................................................................7, 8

Federal Employees Liability Reform and Tort Compensation
     Act of 1988 ("Westfall Act") ......................................................................................3

Intelligence Identities Protection Act of 1982 ......................................................................2, 4, 7

Privacy Act of 1974
     5 U.S.C. § 552a......................................................................................................1, 2, 4, 6

Racketeering Influenced Corrupt Organization Act of 1970
     18 U.S.C. §§ 1963, 1964.............................................................................................8

**MISCELLANEOUS**

Restatement (Second) Agency § 228 (1958) .................................................................14

## INTRODUCTION

Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendants' and the United States' Motions to Dismiss ("Opposition Brief" or "Opp.") confirms that the constitutional and state tort causes of action against Defendant Richard L. Armitage do not survive minimal legal scrutiny.

1.     With respect to the threshold issue in this case, whether the court can imply any constitutional claim under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), in the instant circumstances, Plaintiffs principally contend that they "should" be able to assert such claims because otherwise they will have no remedy against Defendants.  They ignore settled authority, including cases in the United States Supreme Court and this circuit, squarely rejecting this argument.  For example, in *Schweiker v. Chilicky*, 487 U.S. 412, 421-22 (1988), the Supreme Court explained that "[t]he absence of statutory relief for a constitutional violation . . . does not by any means necessarily imply that courts should award money damages against the officers responsible for the violation."[1]

2.     Plaintiffs also have no answer to the decisions in this and other jurisdictions repeatedly finding the Privacy Act to be a "special factor" warranting dismissal of *Bivens* claims in closely comparable cases.  *See Chung v. Department of Justice*, 333 F.3d 273 (D.C. Cir. 2003), *aff'g in pertinent part,* No. 00-CV-1912, 2001 WL 34360430 (D.D.C. 2001); *Hatfill v. Ashcroft*, 404 F. Supp. 2d 104 (D.D.C. 2005); *see also Downie v. City of Middleburg Heights*, 301 F.3d 688, 696 (6th Cir. 2002).  Plaintiffs contend that the Privacy Act should not preclude their *Bivens* causes of action because the Privacy Act is a "highly technical statute."  Opp., p. 53.

---

[1]     *See infra,* p. 6 (citing numerous cases holding that "it is irrelevant to a 'special factors' analysis whether the laws currently on the books afford [plaintiff] an 'adequate' federal remedy for his injuries," *United States v. Stanley*, 483 U.S. 669, 683 (1987)).

Yet in the very next paragraph Plaintiffs acknowledge that "several courts, including the D.C. Circuit, have described the Privacy Act as 'comprehensive' in the context of considering a *Bivens* claim." *Id.*  While Plaintiffs may not be satisfied with Congress' handiwork, the Privacy Act is a "special factor" compelling dismissal of the *Bivens* claims.  The Intelligence Identities Protection Act of 1982, along with Civil Service Reform Act and other CIA and federal employee grievance procedures, also address disclosure of Ms. Wilson's CIA employment status and any related adverse impact and preclude implying *Bivens* claims against Mr. Armitage (Counts III and IV).

3.    With respect to Ms. Wilson's "right to privacy" constitutional claim (Count III), Plaintiffs make no effort to escape *American Federation  of Government Employees, AFL-CIO v. HUD*, 118 F.3d 786, 791 (D.C. Cir. 1997), where the D.C. Circuit expressed "grave doubts" as to whether any constitutional right to "informational privacy" exists.  In light of the D.C. Circuit's "grave doubts," Plaintiffs cannot show the "clearly established" constitutional right necessary to overcome Mr. Armitage's qualified immunity.  While Plaintiffs point to *Butera v. District of Columbia*, 235 F.3d 637 (D.C. Cir. 2001), *Butera* nowhere discusses the issue of "informational privacy" and therefore does nothing to create a "clearly established" constitutional right to privacy in this Circuit.

4.    With respect to Ms. Wilson's "right to property" constitutional claim (Count IV), Ms. Wilson asserts a supposed right to indefinite employment as a "covert" CIA agent.  Yet, Plaintiffs concede that the CIA Director had the power to terminate Ms. Wilson's employment at any time without cause.  Plaintiffs similarly do not challenge or distinguish those cases holding that persons terminable at will have no property interest in continued employment.  Ms. Wilson also offers no legal support for her assertion that she has a constitutional property right in a particular narrow job type (i.e, "covert CIA agent"), and "[i]t should be obvious that no one has a

'right' to a security clearance." *Department of Navy v. Egan*, 484 U.S. 518, 528 (1988).  Thus, Plaintiffs plainly fail to allege a "clearly established" constitutional right to property.

5.    With respect to Plaintiffs' District of Columbia tort claim (Count V), Plaintiffs argue that the Defendants were not acting within the scope of their employment and therefore the Westfall Act does not apply.  In doing so, Plaintiffs entirely ignore the D.C. case law adopting an "expansive definition of conduct that falls within the scope of employment." *Greene v. Nguyen*, No. Civ. 05-0407, 2005 WL 3275897, at *5 (D.D.C. Sept. 7, 2005); *see also Lyon v. Carey*, 533 F.2d 649, 652 (D.C. Cir. 1976) (mattress deliveryman may have acted within scope of employment in assaulting and raping a customer following a delivery dispute).[2]  They must concede that speaking with reporters was part of Mr. Armitage's duties as Deputy Secretary of State.  Plaintiffs also attempt to create a disputed issue of fact regarding whether the alleged conduct occurred within the workplace during working hours.  But this gambit manifestly fails as it relates to Mr. Armitage because Plaintiffs concede in their Amended Complaint that then Deputy Secretary of State Armitage spoke to Mr. Novak and Mr. Woodward at his State Department office during business hours.

\*      \*      \*

This case never should have been brought against Mr. Armitage.  Book deals and politics prompted this litigation, not legally redressable injuries.  The Court should dismiss all claims against Mr. Armitage with prejudice.

---

[2]    *See also Johnson v. Weinberg*, 434 A.2d 404, 409 (D.C. 1981) (laundromat employee may have acted within scope of employment when he shot customer during dispute over the customer's missing laundry).

**ARGUMENT**

I.    **NUMEROUS "SPECIAL FACTORS" COMPEL DISMISSAL OF THE ALLEGED CONSTITUTIONAL VIOLATIONS AGAINST MR. ARMITAGE (COUNTS III AND IV)**

The Supreme Court repeatedly has made clear that the presence of "special factors counseling hesitation" preclude the creation of any *Bivens* remedy. *See, e.g., Schweiker v. Chilicky*, 487 U.S. 412 (1988); *Bush v. Lucas*, 462 U.S. 367 (1983). Such special factors include congressional action touching on the subject matter of a plaintiff's lawsuit. Where Congress has explicitly considered an issue and developed a remedial scheme, the courts should refrain from fashioning their own remedy.[3]  The threshold question, then, is whether this Court may recognize a *Bivens* cause of action on the facts alleged here. It may not. Congress has addressed the very conduct relating to disclosure of information and employment status alleged by Plaintiffs -- the Privacy Act of 1974, the Intelligence Identities Protection Act of 1982 ("IIPA"), the remedial processes available at the CIA for employee grievances, and national security concerns, all are "special factors" that argue convincingly against creating a judicial remedy for the supposed constitutional violations alleged against Mr. Armitage.

A.    **The Privacy Act Is A "Special Factor" Precluding Creation Of A *Bivens* Cause Of Action Against Mr. Armitage**

As demonstrated in Mr. Armitage's opening brief, the Privacy Act of 1974 addresses the disclosure of information about individuals by government officials and thus constitutes a special

---

[3]    *See, e.g., Bush v. Lucas*,  462 U.S. at 368-72 (dismissing alleged constitutional cause of action because plaintiff's claims arose out of an employment relationship governed by "comprehensive procedural and substantive provisions" and "it would be inappropriate for [the court] to supplement that regulatory scheme with a new judicial remedy"); *Chilicky*, 487 U.S. at 427 (same; "Congress is in a better position to decide whether or not the public interest would be served by creating [a damages remedy]."); *Spagnola v. Mathis*, 859 F.2d 223, 288 (D.C. Cir. 1988) (same; "it is not for the judiciary to question whether Congress' response [was] the best response") (internal quotation marks and citation omitted).

factor precluding creation of a *Bivens* remedy for the alleged disclosure of Ms. Wilson's employment with the CIA. The D.C. Circuit and district court decisions in *Chung v. Department of Justice*, 333 F.3d 273 (D.C. Cir. 2003), *aff'g in pertinent part,* No. 00-CV-1912, 2001 WL 34360430 (D.D.C. 2001), and *Hatfill v. Ashcroft*, 404 F. Supp. 2d 104 (D.D.C. 2005), are precisely on point. In each case, as here, the plaintiffs alleged that government officials leaked private or confidential information about an individual to the press. In both cases, the court determined that the public revelation of formerly private or confidential information was a matter addressed by Congress in the Privacy Act. And in each case, the court held that any actions brought under *Bivens* alleging violations of constitutional rights were precluded. *See* Armitage Br., pp. 10-12.

Plaintiffs tellingly do not even attempt to distinguish *Chung* and *Hatfill* except by observing that in each case the plaintiff had pleaded a Privacy Act claim. Opp. Br., p. 54. But Plaintiffs plainly should not benefit from their artful (or perhaps inartful) pleading in not alleging a Privacy Act claim.[4]

Plaintiffs argue that the Privacy Act is a "highly technical statute" and therefore cannot be considered a special factor counseling against the creation of a *Bivens* remedy. Opp., pp. 53-55. Plaintiffs fail to explain how the Privacy Act is "technical" or how a "technical" statute indicates the absence of special factors. The assertion is particularly puzzling in light of Plaintiffs' admission that "several courts, including the D.C. Circuit," describe the Privacy Act as "comprehensive" in the context of a special factors analysis. *Id.*, p. 53. More significantly,

---

[4]     Plaintiffs also appear to argue that discovery may be required to determine if the Privacy Act applies because, according to Plaintiffs, there is "no factual predicate" for presuming that the disclosures are traceable to information within agency records. Opp., p. 54. Plaintiffs here overlook their own allegations: the Amended Complaint specifically alleges that Mr. Armitage learned of Ms. Wilson's covert employment status by reading a State Department memorandum. Am. Compl. ¶¶ 36-38.

the *Chung* and *Hatfill* courts considered the Privacy Act sufficiently comprehensive to be a special factor precluding implying a constitutional remedy under a *Bivens* theory.

Regardless, even were Plaintiffs correct that they "have no possible claims under the Privacy Act," the absence of a viable claim in no way supports the creation of a *Bivens* remedy. In this respect, the Supreme Court has explained that "[t]he absence of statutory relief for a constitutional violation . . . does not by any means necessarily imply that courts should award money damages against the officers responsible for the violation." *Chilicky*, 487 U.S. at 421-22; *see also United States v. Stanley*, 483 U.S. 669, 683 (1987) ("[I]t is irrelevant to a 'special factors' analysis whether the laws currently on the books afford [plaintiff] an 'adequate' federal remedy for his injuries."); *Spagnola v. Mathis*, 859 F.2d 223, 229 (D.C. Cir. 1988) ("[I]t is quite clear that if Congress has not inadvertently omitted damages against officials in the statute at issue, then courts must abstain from supplementing Congress' otherwise comprehensive statutory relief scheme with *Bivens* remedies."); *Blankenship v. McDonald*, 176 F.3d 1192, 1195 (9th Cir. 1999) (refusing to create *Bivens* remedy even though the plaintiff "[had] no administrative or judicial remedies under the [Civil Service Reform Act]"); *Zimbelman v. Savage*, 228 F.3d 367, 371 (4th Cir. 2000) ("It is not relevant that plaintiffs believe the procedures governing their employment relationship were insufficient."); *Downie v. City of Middleburg Heights*, 301 F.3d 688, 694-95 (6th Cir. 2002) (relevant inquiry is "whether Congress has enacted a comprehensive administrative scheme governing the area involved, which indicates that Congress' failure to provide a damages remedy for constitutional violations was deliberate rather than inadvertent").[5]

---

[5]    Plaintiffs also argue in passing that "the Privacy Act is irrelevant in this case because the White House Office, which includes the Office of the Vice President, is not an agency and therefore not subject to the Privacy Act." Opp., p. 52. However, this contention is plainly inapplicable to Mr. Armitage -- he

**Footnote continued**

Consistent with the closely analogous decisions of *Chung* and *Hatfill*, the Court should recognize the Privacy Act as a special factor precluding creation of any *Bivens* remedy against Mr. Armitage.

**B.    The Intelligence Identities Protection Act, Civil Service Reform Act And Other Federal Employee Grievance Procedures, And National Security Concerns Are "Special Factors" Precluding Creation Of A *Bivens* Cause Of Action Against Mr. Armitage**

Plaintiffs agree that the Intelligence Identities Protection Act addresses the precise conduct at issue in this case:  the alleged "outing" of a covert agent.  Opp., pp. 55-56.  Plaintiffs nonetheless assert that the Intelligence Identities Protection Act lacks relevance as a special factor counseling against the creation of a *Bivens* remedy because the statute sets forth criminal sanctions but no civil remedy.  *Id.*, p. 56.

As the cases cited in the prior section demonstrate, however, the absence of any specific, statutory remedy is irrelevant to the special factors analysis.  *See supra*, p. 6.  Rather, the key point is that Congress has carefully considered the issue of disclosure of a CIA agent's identity and enacted what it believed to be appropriate legislation.  The lack of a civil remedy may reflect Congress' judgment that the confidentiality of a CIA agent's identity furthers institutional and national security objectives and not the individual agent's personal interests.  In any event, for whatever the reason, Congress deliberated on the issue and declined to create a civil remedy for disclosing information about a covert CIA agent.  The courts should not second-guess Congress' judgment; instead, this Court should recognize the Intelligence Identities Protection Act as a special factor counseling against the creation of a *Bivens* remedy.  *Cf. Spagnola*, 859 F.2d at 229

---

**Footnote continued from previous page**

served as Deputy Secretary of the Department of State at all relevant times, not in the White House Office.  Am. Compl. ¶ 12.

("[I]t is quite clear that if Congress has not inadvertently omitted damages against officials in the statute at issue, then courts must abstain from supplementing Congress' otherwise comprehensive statutory relief scheme with *Bivens* remedies.").[6]

Plaintiffs also contend that the various civil and administrative remedies available to aggrieved federal employees do not constitute a special factor counseling against the creation of a *Bivens* remedy. Opp., pp. 56-57. Plaintiffs maintain that their case involves "rogue actions" by persons outside the CIA chain of command and, therefore, supposedly outside the ambit of the Civil Service Reform Act ("CSRA") or pertinent regulations.

However, contrary to Plaintiffs' contentions, the proper inquiry is whether "the wrongful acts . . . taken against her arose out of [Ms. Wilson's] federal employment relationship." *Hall v. Clinton*, 235 F.3d 202, 205 (4th Cir. 2000) (precluding *Bivens* claim of co-workers notwithstanding absence of remedy under CSRA); *see also, e.g., Stephens v. Dep't of Health and Human Services*, 901 F.2d 1571, 1577 (11th Cir. 1990) ("[T]he comprehensive statutory scheme established by Congress relating to federal employment (CSRA) precludes the maintenance of job-related *Bivens* actions by federal employees."); *Mittleman v. U.S. Treasury*, 773 F. Supp. 442, 453 (D.D.C. 1991) ("Recent decisions have made clear that 'the preclusive effect of *Bush* extends even to those claimants within the system for whom the CSRA provides no remedy whatsoever.'") (quoting *Spagnola*, 859 F.2d at 228). Because this case concerns an "aggrieved" federal employee -- and Congress extensively has considered and legislated regarding the procedures available to aggrieved federal employees -- this Court should not create a new

---

[6]   Congress certainly understood that it simultaneously could provide both criminal sanctions and civil remedies. *See, e.g.,* Racketeering Influenced Corrupt Organizations Act of 1970 at 18 U.S.C. § 1963 (providing criminal penalties), 18 U.S.C. § 1964 (providing civil remedies).

constitutional remedy for Ms. Wilson and thereby interfere with the comprehensive administrative system created by Congress.

Finally, Plaintiffs appear to concede that national security concerns constitute yet another special factor precluding the recognition of Ms. Wilson's constitutional tort claims. In this respect, Plaintiffs do not even attempt to distinguish the authority holding that a *Bivens* remedy should not be created where the case touches upon the intelligence-gathering actions of the government. *See* Armitage Br., pp. 16-17; *Beattie v. Boeing Co.*, 43 F.3d 559, 563 (10th Cir. 1994) ("the predominant issue of national security clearances amounts to such a special factor counseling against recognition of a *Bivens* claim in this case"); *Arar v. Ashcroft*, 414 F. Supp. 2d 250, 283 (E.D.N.Y. 2006) (refusing to recognize *Bivens* action for Syrian national who alleged that he was unlawfully removed from the United States to Syria).

Plaintiffs instead argue only that the case concerns nothing "sensitive" and, regardless, any sensitive issues could be considered by the Court in camera. Opp., pp. 49-50. Plaintiffs are flat wrong in presupposing that this case concerns nothing "sensitive." The triable issues include whether Ms. Wilson ever was a "covert" agent, including who knew of her "covert" status, and when she became and ceased being "covert." Moreover, the suggestion that these issues could be considered in camera makes no sense since the jury certainly would need to consider and decide these issues. Consequently, cases raising national security concerns may not be brought in the first instance. *See Tenet v. Doe*, 544 U.S. 1, 8 (2005) ("Public policy forbids the maintenance of *any suit* in a court of justice, the trial of which would inevitably lead to the disclosure of matters which the law itself regards as confidential.") (quoting and reaffirming holding of *Totten v. United States*, 92 U.S. 105, 107 (1876)) (emphasis in original); *CIA v. Sims*, 471 U.S. 159, 175 (1985) ("Even a small chance that some court will order disclosure of a

source's identity could well impair intelligence gathering and cause sources to 'close up like a clam.'").

## II. THE CONSTITUTIONAL CLAIMS (COUNTS III AND IV) SHOULD BE DISMISSED BECAUSE MR. ARMITAGE HAS QUALIFIED IMMUNITY

Alternatively, the Court must dismiss the constitutional claims against Mr. Armitage because, taking the allegations in the Amended Complaint as true, Mr. Armitage violated no "clearly established" constitutional right of Ms. Wilson.[7]  He therefore is entitled to qualified immunity from suit.

### A. Ms. Wilson Does Not Allege A Violation of Any Clearly Established "Right to Privacy" (Count III)

The beginning and end of this Court's analysis regarding any "clearly established" right to privacy should be the D.C. Circuit's decision in *American Federation of Government Employees, AFL-CIO v. HUD*, 118 F.3d 786 (D.C. Cir. 1997).  The court there took pains to emphasize its "*grave doubts* as to the existence of a constitutional right of privacy in the nondisclosure of personal information." *Id.* (emphasis added).  The "grave doubts" expressed by the D.C. Circuit demonstrate that the right to privacy in personal information is anything but "unquestioned" and "settled, indisputable law." *Zweibon v. Mitchell*, 720 F.2d 162, 172-73 (D.C. Cir. 1983) (setting forth standards of "clearly established" law).  Ms. Wilson's alleged "right" to maintain the privacy of her employment status is not clearly established, and Count III of the Amended Complaint must be dismissed on qualified immunity grounds.

---

[7]    "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights . . . ." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also* Armitage Br. 17-18 (and cases cited therein).

Plaintiffs have no answer to *American Federation of Government Employees*. Instead, they rely on *Butera v. District of Columbia*, 235 F.3d 637 (D.C. Cir. 2003). Two points render *Butera* wholly inapposite here. First, *Butera* in no way concerns the supposed right to "informational privacy" alleged by Ms. Wilson. The Metropolitan police did not "leak" that Mr. Butera was assisting them in their investigation; rather, the police failed to provide sufficient protection. Further, the court expressly disavowed that it was addressing the right to privacy. *Id*. at 647 (describing right to privacy as "overly broad where a qualified immunity defense is asserted"). There is no discussion of the *American Federation of Government Employees*, and nothing in the *Butera* opinion changes the D.C. Circuit's "grave doubts" about any constitutional right to informational privacy.

Second, *Butera*'s "state endangerment" theory is contingent upon third parties actually harming the plaintiff. *Id*. (describing the right at issue as "protection . . . from danger that [the State] created or enhanced that *resulted in harm by third parties*") (emphasis added). The D.C. Circuit later confirmed in *Fraternal Order of Police v. Williams*, 375 F.3d 1141, 1146 n.4 (D.C. Cir. 2004), that *Butera* is restricted to "third-party violence . . . *that ultimately results in the individual's harm*." (emphasis in original). Other circuits likewise have limited the constitutional right to actual harm.[8] This theory does not extend to the possibility of future harm, or a plaintiffs' speculative concerns about increased risk of future harm. Because Ms.

---

[8]     *See, e.g., Bright v. Westmoreland County*, 443 F.3d 276, 281 (3d Cir. 2006) (stating that the first element of the state-created danger theory is that "the harm ultimately caused was foreseeable and fairly direct"); *Moore v. Guthrie*, 438 F.3d 1036, 1042 (10th Cir. 2006) ("The danger creation doctrine makes a state official liable for the private violence of third parties if that official created the danger that caused the harm and the official's conduct was conscience shocking.").

Wilson has not suffered violence at the hands of third parties, it follows that she cannot state a claim pursuant to a *Butera* theory.[9]

Plaintiffs have not alleged a "clearly established" right to privacy based on disclosure of their government employment status. Accordingly, Count III of their Complaint against Mr. Armitage must be dismissed.

### B.    Ms. Wilson Does Not Allege A Violation of Any Clearly Established "Right to Property" (Count IV)

Plaintiffs maintain that Ms. Wilson has a constitutional "right to property" in serving indefinitely as a covert CIA agent (Count IV).  Plaintiffs assert that this property right was violated because "[o]nce the defendants revealed [Ms. Wilson's] status, she no longer could operate as a secret operative." Opp., p. 28.

But Ms. Wilson manifestly has no constitutional right to a classified employment status. *See Department of Navy v. Egan*, 484 U.S. 518, 528 (1988) ("It should be obvious that no one has a 'right' to a security clearance."); *Doe v. Cheney*, 885 F.2d 898 (D.C. Cir. 1989) (NSA employee has no due process interest when deprived of access to classified information and

---

[9]    Moreover, any claim based on *Butera* would fail under a qualified immunity analysis because the law is not clearly established.  The court's opinion in *Briscoe v. Potter*, 355 F. Supp. 2d 30 (D.D.C. 2004), is instructive.  The court there observed:  "in the context of government employment, decisions in this circuit have come to different conclusions concerning the extent to which government officials can be held constitutionally liable under the State Endangerment theory for injuries sustained by government employees."  *Id.* at 48.

Further, any such claim must fail with respect to Mr. Armitage because Mr. Armitage's alleged conduct does not "shock the contemporary conscience."  Plaintiffs contend that this case presents conduct that "shocks the conscience" because Defendants "acted not on the spur of the moment but after careful reflection and planning and as part of an overall conspiracy to retaliate against Mr. Wilson for the exercise of his First Amendment rights."  Opp., p. 24.  However, the Amended Complaint fails to allege that Mr. Armitage participated in the alleged White House scheme to retaliate against Mr. Wilson.  Thus, by way of example, the Amended Complaint does not allege any First Amendment retaliation claim against Mr. Armitage (Count I).  In fact, the Amended Complaint is wholly silent with respect to Mr. Armitage's involvement in any conspiracy.

discharged). In fact, Ms. Wilson has no constitutional right to a CIA job, let alone a right to work undercover for the CIA. *See* Armitage Br., pp. 21-23; 50 U.S.C. § 403-4a(e)(1) (providing that the Director of the CIA may, *in his or her discretion*, terminate any Agency employee); *Doe v. Gates*, 981 F.2d 1316, 1320-21 (D.C. Cir. 1993) (emphasizing the "extraordinary deference" due to the Director in personnel decisions and holding that such deference precluded any property interest in continued employment with the CIA).[10]

Plaintiffs concede that the CIA Director could have terminated Ms. Wilson's employment at any time and without cause, Opp., p. 29, and they do not dispute that "[t]hose who are terminable at will have no property interest" in continued employment. *Hall v. Ford*, 856 F.2d 255, 265 (D.C. Cir. 1988); Armitage Br., p. 23. Yet Plaintiffs nonetheless argue -- without citation to any authority -- that Ms. Wilson had "a reasonable expectation of continued employment relative to the actions of others outside of the CIA." Opp., p. 29. This assertion makes no sense.

Subject to "termination at will," Ms. Wilson plainly had no property right in her classified status and therefore cannot claim that there has been a violation of any clearly established constitutional right. Accordingly, Mr. Armitage is immune from suit, and Count IV must be dismissed.

## III. UNDER THE WESTFALL ACT, MR. ARMITAGE IS NOT SUBJECT TO STATE TORT LIABILITY (COUNT V)

In an effort to avoid dismissal under the Westfall Act of their District of Columbia tort, "public disclosure of private facts," Plaintiffs contend that the Defendants were not acting within

---

[10] Moreover, in her Opposition, Ms. Wilson once again is careful *not* to allege that she was terminated from her employment from the CIA. In fact, she left voluntarily to pursue a lucrative book deal and other celebrity projects.

the scope of their employment. However, the United States has submitted a scope-of-employment certification, and the burden is on Plaintiffs to come forward with "specific facts rebutting the certification."[11] They fail to do so here.

Plaintiffs assert that "revealing the identity of a secret operative . . . was not and never could be in service of the master, here the United States." Opp., p. 33. However, the relevant alleged conduct is speaking to journalists, not "revealing the identity of a secret operative" as Plaintiffs mistakenly argue. *See Council on Am. Islamic Relations v. Ballenger*, 444 F.3d 659, 664 (D.C. Cir. 2006) ("The appropriate question, then, is whether that telephone conversation -- not the allegedly defamatory sentence -- was the kind of conduct [defendant Congressman] was employed to perform."). Plaintiffs fail to allege, and certainly do not suggest in their Opposition Brief, that speaking to journalists is outside the scope of Mr. Armitage's employment. As Deputy Secretary of State, Mr. Armitage was responsible for communicating United States foreign policy to the public, including by speaking to journalists. *Cf.* Armitage Br., p. 28 (noting that Mr. Armitage provided interviews or public remarks on more than 150 separate occasions for the year 2004 alone).

Plaintiffs' attempts to manufacture a disputed issue of fact also fail as to Mr. Armitage. For example, an element in establishing scope of employment is whether the conduct "occurs substantially within the authorized time and space limits." Restatement (Second) Agency § 228. Plaintiffs contend that discovery is required to determine if the Vice President, Mr. Rove and Mr.

---

[11]    "A plaintiff challenging the government's scope-of-employment certification bears the burden of coming forward with specific facts rebutting the certification." *Ballenger*, 444 F.3d at 662 (quoting *Stokes v. Cross*, 327 F.3d 1210, 1214 (D.C. Cir. 2003)); *Healy v. United States*, 435 F. Supp. 2d 157, 162 (D.D.C. 2006) (explaining that court should dismiss complaint "where a plaintiff fails to allege any facts that, if taken as true, would demonstrate that the defendant was acting outside the scope of his employment").

Libby spoke to reporters after hours and at what locations.  Opp., p. 36 ("With respect to Defendants Cheney, Libby and Rove this is very much in dispute.").  Plaintiffs, however, make no such argument as to Mr. Armitage.  In fact, all agree that Mr. Armitage's alleged conversations with Messrs. Novak and Woodward took place at Mr. Armitage's office at the State Department during business hours.  Am. Compl. ¶¶ 37, 39; Armitage Br., p. 29.

The District of Columbia courts have adopted an "expansive definition of conduct that falls within the scope of employment."  *Greene v. Nguyen*, No. Civ. 05-0407, 2005 WL 3275897, at *5 (D.D.C. Sept. 7, 2005).  By way of example, the Court of Appeals has held that a mattress deliveryman may have acted within scope of employment in assaulting and raping a customer following a delivery dispute.  *Lyon v. Carey*, 533 F.2d 649, 652 (D.C. Cir. 1976); *see also Johnson v. Weinberg*, 434 A.2d 404, 409 (D.C. 1981) (laundromat employee may have acted within scope of employment when he shot customer during dispute over the customer's missing laundry).  Here, Mr. Armitage had no personal monetary or other incentive in talking to the reporters.  Mr. Armitage was talking to two noted journalists who were influential in shaping public opinion about events relating to the President's State of the Union address and American decision-making relating to the origins of the ongoing war in Iraq.  Given the D.C. courts' expansive view of the scope of employment, the idea that Mr. Armitage was acting outside the scope of his employment is ludicrous on its face.

## IV.    ALL OF THE ALLEGATIONS AGAINST MR. ARMITAGE ARE TIME-BARRED UNDER THE APPLICABLE STATUTES OF LIMITATIONS

The applicable statute of limitations provides yet another ground for dismissal of all claims.  *See* Armitage Br., pp. 30-31; Cheney Br., pp. 6-8; Rove Br., pp. 37-41; Libby Br., pp. 15-19.  Plaintiffs' attempts to invoke the discovery rule and tolling principles do not salvage the tardy claims.

The so-called discovery rule does not render Plaintiffs' claims timely. The discovery rule concerns the timing of accrual of a claim. *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990). Here, Plaintiffs apparently maintain that their claims did not accrue until Mr. Libby's indictment in October 2005. With respect to the constitutional claims, federal law governs. *See Leavell v. Kieffer*, 189 F.3d 492, 495 (7th Cir. 1999) ("Federal law defines the accrual of a *Bivens* claim."). The federal "discovery rule" provides that a claim accrues at the time of injury or "when the plaintiff discovers, or with due diligence should have discovered, the injury that is the basis of the action." *Sprint Communications Co., L.P. v. FCC*, 76 F.3d 1221, 1226 (D.C. Cir. 1996) (citation and quotation marks omitted); *Cada*, 920 F.2d at 450. Plaintiffs suffered their alleged injury, and therefore their claims accrued, on July 14, 2003, when the Novak article was published. Plaintiffs untimely brought these *Bivens* claims on July 13, 2006 – two years *after* the expiration of the applicable one-year statute of limitations. *See* Armitage Br., pp. 30-31.

Similarly, the District of Columbia "discovery rule" does not delay accrual of the tort claim of public disclosure of private facts beyond July 14, 2003. District of Columbia law applies the discovery rule only where "the *fact* of an injury is not readily apparent." *East v. Graphic Arts Indus. Joint Pension Trust*, 718 A.2d 153, 157 (D.C. 1998). Plaintiffs' alleged injuries in this case certainly were "readily apparent" on July 14, 2003.

Nor do tolling principles render Plaintiffs' claims timely. District of Columbia law applies. *See Wilson v. Garcia*, 471 U.S. 261, 269 (1985) (providing that "questions of tolling and application are to be governed by state law" where federal law borrows state-law limitations period) (punctuation omitted). The District of Columbia recognizes the so-called "lulling doctrine" or equitable estoppel. *See East*, 718 A.2d at 156-57. However, the lulling doctrine

applies only where the defendant takes some affirmative action in an effort to "lull" the plaintiff into inaction. *Id*. The Amended Complaint alleges no such affirmative action by Mr. Armitage.

Finally, equitable tolling does not salvage Plaintiffs' otherwise time-barred claims. First, the District of Columbia has not recognized the doctrine of equitable tolling. *See generally East*, 718 A.2d 153; *Johnson v. Marcheta Investors Ltd. P'Ship*, 711 A.2d 109, 111 n.2 (D.C. 1998) (". . . District of Columbia law does not recognize the concept of equitable tolling."). Second, Plaintiffs' constitutional claims would be untimely brought even if equitable tolling were available.[12] Plaintiffs admit learning the information necessary to file their complaint on October 28, 2005 -- the date of Mr. Libby's indictment. Opp., p. 46 (admitting that claims "are derived almost exclusively from that indictment"). Yet Plaintiffs waited nearly nine months from the time of Mr. Libby's indictment to the filing of this suit. This nearly nine-month delay is dispositive. *See East*, 718 A.2d at 161 (equitable tolling would not render timely a claim brought nine months after the plaintiff learned of facts and law supporting claim assuming, *arguendo*, that District of Columbia recognized equitable tolling);[13] *Cada,* 920 F.2d at 453 (holding that equitable tolling would not render timely a claim brought eight months after plaintiff learned of all information necessary to bring suit).

---

[12] Equitable tolling "permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." *Cada*, 920 F.2d at 451.

[13] "Plaintiff is required to bring suit within a reasonable time after she obtains, or by due diligence could obtain, the information necessary to pursue the claim; unless the plaintiff does so, she cannot avoid the bar of limitations." *East,* 718 A.2d at 161.

## CONCLUSION

For all the above reasons and those set forth in Mr. Armitage's initial pleadings, the Court should dismiss Plaintiffs' claims against Mr. Armitage *with prejudice*.

Dated: February 15, 2007                    Respectfully submitted,


                                            */s/ Michael L. Waldman*
                                            William H. Taft (DC Bar No. 055087)
                                            Michael L. Waldman (DC Bar No. 414646)
                                            Eugene N. Hansen (DC Bar No. 483638)
                                            FRIED, FRANK, HARRIS, SHRIVER
                                               & JACOBSON LLP
                                            1001 Pennsylvania Avenue, NW
                                            Washington, DC  20004-2505
                                            Telephone:  (202) 639-7000
                                            Facsimile:  (202) 639-7008

                                            Attorneys for Defendant Richard L. Armitage