UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
VALERIE PLAME WILSON, and          )
JOSEPH C. WILSON, IV,              )
                                   )
                    Plaintiffs,    )
                                   )
        v.                         )     Civ. A. No. 06-1258 (JDB)
                                   )
I. LEWIS LIBBY, *et al.*,          )
                                   )
                                   )
                    Defendants.    )
_____)

**UNITED STATES' REPLY IN SUPPORT OF
STATEMENT OF INTEREST**

PETER D. KEISLER
*Assistant Attorney General*

JEFFREY A. TAYLOR
*United States Attorney*

JEFFREY S. BUCHOLTZ
*Principal Deputy Assistant Attorney General*

C. FREDERICK BECKNER III
*Deputy Assistant Attorney General*

TIMOTHY P. GARREN
*Director, Torts Branch*

RICHARD MONTAGUE
*Senior Trial Attorney*

GLENN S. GREENE, #450348
*Trial Attorney, Department of Justice*
*Torts Branch, Civil Division*
*P.O. Box 7146*
*Washington, D.C. 20044*
*Tel: (202) 616-4158*
*Fax: (202) 616-4314*
*Attorneys for the United States of America*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.  "Special Factors" Foreclose A *Bivens* Remedy In The Context At Issue  . . . . . . . . . 1

    B.  Absolute Immunity Of The Vice President  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    C.  Qualified Immunity Bars Suit on Plaintiffs' *Bivens* Claims. . . . . . . . . . . . . . . . . . . 12

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

# TABLE OF AUTHORITIES[*]

## CASES

*3883 Connecticut LLC v. District of Columbia,*
  336 F.3d 1068 (D.C. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Alexandar v. Sandoval,*
  532 U.S. 275 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*American Federation of Government Employees, AFL-CIO v. Department of Housing*
  *& Urban Development,*
  118 F.3d 786 (D.C. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Anderson v. Creighton,*
  483 U.S. 635 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Arizonans for Official English v. Arizona,*
  520 U.S. 43 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Briscoe v. Potter,*
  355 F. Supp.2d 30 (D.D.C. 2004), *aff'd,* 171 Fed.Appx. 850 (D.C.
  Cir. 2005), *cert. denied*, 126 S. Ct. 2021 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18, 19

* *Bush v. Lucas,*
  462 U.S. 367 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 6, 8

* *Butera v. District of Columbia,*
  235 F.3d 637 (D.C. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18, 19

*Chappell v. Wallace,*
  462 U.S. 296 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

* *Cheney v. United States District Court for the District of Columbia,*
  542 U.S. 367 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

* *Chung v. Department of Justice,*
  333 F.3d 273 (D.C. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Chung v. United States,*
  2001 WL 34360430 (D.D.C. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

---

[*] Authorities on which we principally rely are marked with an asterisk.

*Collins v. City of Harker Heights, Tex.*,
　　503 U.S. 115 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Colson v. Grohman*,
　　174 F.3d 498 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

\* *Correctional Servs. Corp. v. Malesko*,
　　534 U.S. 61 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 7, 12

*Crawford-El v. Britton*,
　　523 U.S. 574 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15

*Davis v. Passman*,
　　442 U.S. 228 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Davis v. Scherer*,
　　468 U.S. 183 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Doe v. Gates*,
　　981 F.2d 1316 (D.C. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

\* *Downie v. City of Middleburg Heights*,
　　301 F.3d 688 (6th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 6

*Fraternal Order of Police v. Williams*,
　　263 F. Supp.2d 45 (D.D.C. 2003), *aff'd*, 375 F.3d 1141 (D.C. Cir.
　　2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18, 19

*Garrow v. Graham*,
　　856 F.2d 203 (D.C. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Government of Guam v. American President Lines*,
　　28 F.3d 142 (D.C. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Griffin v. Ashcroft*,
　　No. 02-5399, 2003 WL 22097940 (D.C. Cir. Sept. 3, 2003) . . . . . . . . . . . . . . . . . . . 3

*Hall v. Ford*,
　　856 F.2d 255 (D.C. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Hatfill v. Ashcroft*,
　　404 F. Supp.2d 104 (D.D.C. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 13

*Haynesworth v. Miller,*
   820 F.2d 1245 (D.C. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Henke v. U.S. Department of Commerce,*
   83 F.3d 1453 (D.C. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Jones v. Executive Office of President,*
   167 F. Supp.2d 10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Kallstrom v. City of Columbus,*
   136 F.3d 1055 (6th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Nebraska Beef, Ltd. v. Greening,*
   398 F.3d 1080 (8th Cir.), *cert. denied,* 126 S. Ct. 1908 (2006) . . . . . . . . . . . . . . . . . . . . . 1

* *Nixon v. Fitzgerald,*
   457 U.S. 731 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

* *Penthouse Int'l Ltd. v. Meese,*
   939 F.2d 1011 (D.C. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Rasul v. Rumsfeld,*
   414 F.Supp.2d 26 (D.D.C. 2006), *appeal docketed,* 06-5209 (D.C. Cir.
   Jul. 31, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*Rasul v. Rumsfeld,*
   433 F. Supp.2d 58 (D.D.C. 2006), *appeal docketed,* 06-5222 (D.C. Cir. Jul.
   31, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Ratliff v. DeKalb County,*
   62 F.3d 338 (11th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Rodriguez v. United States,*
   480 U.S. 522 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

* *Schweiker v. Chilicky,*
   487 U.S. 412 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

* *Spagnola v. Mathis,*
   859 F.2d 223 (D.C. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

v

*Suarez Corp. Indus. v. McGraw*,
    202 F.3d 676 (4th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Thompson v. City of Starkville*,
    901 F.2d 456 (5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Toolasprahad v. Bureau of Prisons*,
    286 F.3d 576 (D.C. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Turner v. Safley*,
    482 U.S. 78 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Libby*,
    Cr. No. 05-394 (RBW) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Village of Willowbrook v. Olech*,
    528 U.S. 562 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Vukadinovich v. Bartels*,
    835 F.2d 1387 (7th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Wilson v. Layne*,
    526 U.S. 603 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*X-Men Sec., Inc. v. Pataki*,
    196 F.3d 56 (2nd Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 16

## CONSTITUTION

Art. I, § 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Art. II, § 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Art. II, § 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Art. II, § 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Amend. XXV, § 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## STATUTES

National Security Act of 1947, 50 U.S.C. §§ 403-4a(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## INTRODUCTION

Plaintiffs' Amended Complaint fails to state cognizable constitutional tort claims, the Vice President is entitled to absolute immunity from suit, and all the individual federal defendants are entitled, at a minimum, to qualified immunity. The Vice President and defendants Armitage, Rove and Libby (collectively the "individual federal defendants") have moved to dismiss on these and other grounds, and plaintiffs have filed an Opposition. For the reasons set forth in the United States' Statement of Interest and below, the claims against the individual federal defendants should be dismissed.

## DISCUSSION

### A.  "Special Factors" Foreclose A *Bivens* Remedy In The Context At Issue.

The Supreme Court's decisions over the past three decades have "consistently refused to extend *Bivens* liability to any new context or new category of defendants," *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001), and establish a "presumption against judicial recognition of direct actions for violations of the Constitution by federal officials or employees," *Nebraska Beef, Ltd. v. Greening*, 398 F.3d 1080, 1084 (8th Cir.), *cert. denied*, 126 S. Ct. 1908 (2006) (citation and quotations omitted). Neither the allegations in plaintiffs' Amended Complaint nor the arguments in their Opposition overcome that presumption. Because plaintiffs have not discharged *their* burden of showing why a *Bivens* remedy is warranted in this context, their constitutional tort claims should be dismissed.

**1.**  In denying that they seek "new" *Bivens* remedies, plaintiffs posit the wrong inquiry. *See* Opposition at 51. The question is not whether courts have created *Bivens* remedies under the constitutional amendments on which plaintiffs rely. *See id.* (arguing that *Bivens* remedies already exist for First and Fifth Amendment claims). Rather, the question under the special factors

doctrine is whether the judge-made *Bivens* remedy is properly extended to the "context" at issue. *See, e.g., Schweiker v. Chilicky*, 487 U.S. 412, 421 (1988) ("Our more recent decisions have responded cautiously to suggestions that *Bivens* remedies be extended into new *contexts*.") (emphasis added); *see also Malesko*, 534 U.S. at 68 (noting that the Court had "consistently refused to extend *Bivens* liability to any new context or new category of defendants"). Plaintiffs' observation that *Davis v. Passman*, 442 U.S. 228 (1979), authorized a *Bivens* action for an alleged Fifth Amendment due process violation, *see* Opposition at 51, sheds no light, therefore, because the Supreme Court in other contexts has declined to extend the *Bivens* remedy despite an alleged Fifth Amendment violation, *see, e.g., Chilicky*, 487 U.S. at 419, 424-29; *Chappell v. Wallace*, 462 U.S. 296, 304 (1983). Similarly, that the D.C. Circuit authorized a *Bivens* cause of action for a First Amendment violation in one context, *see* Opposition at 51 (*citing Haynesworth v. Miller*, 820 F.2d 1245, 1255 (D.C. Cir. 1987)), says nothing about the availability of a *Bivens* action in others, *cf. Spagnola v. Mathis*, 859 F.2d 223, 227-30 (D.C. Cir. 1988) (en banc) (per curiam) (declining to extend *Bivens* in the context of personnel actions taken to retaliate for exercise of First Amendment rights); *Bush v. Lucas*, 462 U.S. 367, 381-90 (1982) (same).

Plaintiffs cite no precedent, and offer no justification, for extending the judge-made *Bivens* remedy to a context like that presented in this case. Accordingly, they have not overcome the presumption against extending *Bivens* "to any new context or category of defendants." *Malesko*, 534 U.S. at 68. No case holds that a *Bivens* remedy is the appropriate judicial response to a government official's alleged improper disclosure of information concerning an individual. To the contrary, the case law uniformly rejects the extension of the *Bivens* remedy to alleged First and Fifth Amendment violations in circumstances such as these. *See Chung v. Department*

2

*of Justice*, 333 F.3d 273, 274 (D.C. Cir. 2003); *Griffin v. Ashcroft*, No. 02-5399, 2003 WL 22097940 at *2 (D.C. Cir. Sept. 3, 2003) (per curiam); *Downie v. City of Middleburg Heights*, 301 F.3d 688, 696 (6th Cir. 2002); *Hatfill v. Ashcroft*, 404 F. Supp.2d 104, 115-17 (D.D.C. 2005); *see also* U.S. Statement of Interest at 12 n.3 (collecting additional cases).

**2.**  Plaintiffs argue that the cases unanimously rejecting *Bivens* claims in the context of alleged improper government disclosures of information are distinguishable because "the Privacy Act was available and provided a possible remedy for the plaintiff."  Opposition at 53.  That argument is flawed for numerous reasons.  First, even if past precedents were meaningfully distinguishable – which they are not – that alone would not overcome the presumption against extending *Bivens* to this new context.  A plaintiff's desire that the court "'fashion a remedy for every wrong that can be proved in a case,'" is not a rule of decision, let alone a justification for extending *Bivens*.  *See Chilicky*, 487 U.S. at 427-28 (quoting *Bush*, 462 U.S. at 373).  Second, Congress' structuring of the Privacy Act *is* a special factor foreclosing the creation of a *Bivens* remedy here, even though the Privacy Act does not remedy disclosures by officials employed in the Offices of the President and the Vice President and, indeed, even to the extent it provides no remedy here at all.

As plaintiffs concede, "several courts, including the D.C. Circuit, have described the Privacy Act as 'comprehensive' in the context of considering a *Bivens* claim." Opposition at 53. Nevertheless, according to plaintiffs, "these rulings have arisen in clearly distinguishable cases." *Id*.  The only basis on which plaintiffs "distinguish" these cases – *i.e.*, *Chung*, 333 F.3d at 274; *Downie*, 301 F.3d at 688; and *Hatfill*, 404 F. Supp.2d at 104 – is that the Privacy Act provided

those plaintiffs "a possible remedy." Opposition at 53.[1] That is not the test. As the D.C. Circuit explained in *Spagnola*, "the *Chilicky* Court made clear that it is the comprehensiveness of the statutory scheme involved, not the 'adequacy' of specific remedies extended thereunder, that counsels judicial abstention." 859 F.2d at 227. In other words, the question does "not concern the merits of the particular remedy that [i]s sought," but rather "the question of who should decide whether such a remedy should be provided" – Congress or the courts. *Bush*, 462 U.S. at 380; *see also Chilicky*, 487 U.S. at 426-27; *Spagnola*, 859 F.2d at 226. Hence, "the concept of 'special factors counseling hesitation in the absence of affirmative action by Congress' has proved to include an appropriate judicial deference to indications that congressional inaction has not been inadvertent." *Chilicky*, 487 U.S. at 423. Once it is established that a statutory scheme is comprehensive, therefore, the only remaining questions are whether Congress inadvertently failed to provide damages remedies for constitutional violations or whether Congress plainly intended to preserve *Bivens* remedies:

> As we read *Chilicky* and *Bush* together, then, courts must withhold their power to fashion damages remedies when Congress has put in place a comprehensive system to administer public rights, has "not inadvertently" omitted damages remedies for certain claimants, and has not plainly expressed an intention that the courts preserve *Bivens* remedies.

*Spagnola*, 859 F.2d at 228.

---

[1] Plaintiffs' use of the term "possible remedy" implicitly acknowledges that in the many cases determining that the Privacy Act is a special factor precluding a *Bivens* remedy for the disclosure of information from government files, there was no related finding that the plaintiff was actually entitled to recover under the Privacy Act. That implicit concession is well taken. In those cases, the courts merely reasoned that the Privacy Act broadly covered the *kind* of injury the plaintiffs had alleged.

Under this test, "special factors" plainly foreclose extension of *Bivens* to the context of this case. The Privacy Act repeatedly has been acknowledged as Congress' comprehensive response to improper government disclosures of information concerning individuals. *See, e.g., Downie*, 301 F.3d at 688; *Hatfill*, 404 F. Supp.2d at 104; *see also* Opposition at 53. Further, Congress' determination not to provide damages remedies for disclosures by officials working in the Offices of the President and the Vice President was anything but "inadvertent," and Congress has not plainly expressed an intention that courts allow *Bivens* remedies instead. The courts have recognized that the exclusion of the Offices of the President and the Vice President by Congress from the Privacy Act was based upon separation of powers concerns. *See generally* U.S. Statement of Interest at 13 n.4, 15 (citing cases). By no means, then, can it be said that Congress' failure to create a damages remedy in this context was merely "inadvertent" or that Congress plainly intended to preserve *Bivens* remedies extending beyond the lines that Congress drew in fashioning the statutory remedies.

Plaintiffs' contrary argument improperly conflates the question of whether a statutory scheme is comprehensive with the adequacy of the remedies it provides to a particular plaintiff. Statutes that do not provide a remedy, so plaintiffs argue, are not comprehensive, and courts may supplement their protections with *Bivens* remedies. *See* Opposition at 53. That reasoning was rejected both by the Supreme Court in *Chilicky* and by the D.C. Circuit in *Spagnola*. "[T]he *Chilicky* Court made clear that it is the comprehensiveness of the statutory scheme involved, not the 'adequacy' of specific remedies extended thereunder, that counsels judicial abstention." *Spagnola*, 859 F.2d at 227. Thus, whether a statute is comprehensive within the meaning of the "special factors" doctrine does not depend on Congress' inclusion of a remedy for every alleged

5

wrong.  Indeed, the D.C. Circuit noted in *Spagnola* that the *Chilicky* Court "included a citation implicitly suggesting that the preclusive effect of *Bush* extends even to those claimants within the system for whom the [Civil Service Reform Act] provides 'no remedy whatsoever.'"  *Id*. at 228 (quoting *Chilicky*, 487 U.S. at 423 (quoting *Bush*, 462 U.S. at 385 n.28)).  The very point of the "special factors" principle is that where Congress has addressed a subject in a comprehensive way, courts defer to the remedial choices Congress made and do not supplement them with *Bivens* remedies – deference to Congress is the touchstone of the analysis.  *See Chilicky*, 487 U.S. at 426-27; *Bush*, 462 U.S. at 390; *Spagnola*, 859 F.2d at 226.  Here, the determination not to extend the Privacy Act to the Offices of the President and the Vice President was a deliberate choice by Congress, grounded in separation of powers concerns, and was anything but "inadvertent."  To extend *Bivens* to a context in which Congress chose to withhold statutory remedies in part on such fundamental grounds as separation of powers, would stand on its head the principle of "appropriate judicial deference to indications that congressional inaction has not been inadvertent."  *Chilicky*, 487 U.S. at 423.

In sum, the Privacy Act is a comprehensive statutory scheme, and Congress' decision not to provide a Privacy Act remedy for disclosures of information by officials in the Offices of the President and the Vice President is a component of the scheme. There is no plain congressional expression of an intent to preserve *Bivens* remedies for such disclosures.  *See Chung v. United States*, 2001 WL 34360430, *11 (D.D.C. 2001), *aff'd in relevant part*, 333 F.3d 273, 274 (D.C. Cir. 2003).  Accordingly, "special factors counseling hesitation" foreclose extension of the damages remedy plaintiffs seek here.  *See Spagnola*, 859 F.2d at 228.

**3.**  As we have demonstrated, special factors foreclose the extension of *Bivens* to the context of this case, even assuming, as plaintiffs insist, that the Privacy Act provides them "no remedy whatsoever."  *Chilicky*, 487 U.S. at 428 (citation and quotation omitted).  It is thus unnecessary to decide whether plaintiffs are correct that they "have no possible claims under the Privacy Act."  Opposition at 53.  We note, however, that although the Act does not apply to the Offices of the President and the Vice President, the Amended Complaint alleges that plaintiffs' claimed injuries are traceable to disclosures of information apparently located within records of the Central Intelligence Agency ("CIA") and perhaps the State Department.  *See* Am. Compl. ¶¶ 37-39.

Plaintiffs do not dispute that their alleged injuries occurred as a result of disclosures of information located within the records of agencies covered by the Privacy Act.  Instead, plaintiffs say that they have no Privacy Act claim because "[c]ourts have interpreted [the Act] as requiring that an agency's actual practice be to retrieve the information by name or other personal identifier," and that "it is not enough that the information is merely capable of being retrieved in that fashion."  Opposition at 52-53 (citing *Henke v. U.S. Department of Commerce*, 83 F.3d 1453, 1460 n.12 (D.C. Cir. 1996)).  In plaintiffs' view, the fact that their case may fall between the cracks of the Privacy Act means that courts should award a *Bivens* remedy to accommodate them, but that is precisely backwards.  In our system of government, it is Congress' role to determine what remedies should exist in what circumstances.  *See Alexandar v. Sandoval*, 532 U.S. 275, 286 (2001) ("Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress."); *see also Malesko*, 534 U.S. at 68.  Where Congress pays careful attention to the subject and draws lines that leave a plaintiff without a remedy in a

particular circumstance, that is a reason for the courts to defer to Congress' policy judgment. It is not an invitation for courts to create a cause of action that goes farther than Congress went. *See Chilicky,* 487 U.S. at 425-27 (where Congress has "balanc[ed] governmental efficiency and the rights of individuals," the courts must not create "new substantive legal liability") (quoting *Bush,* 462 U.S. at 389-90); *see also Rodriguez v. United States,* 480 U.S. 522, 526 (1987) ("Deciding what competing values will or will not be sacrificed to the achievement of a particular objective is the very essence of legislative choice-and it frustrates rather than effectuates legislative intent simplistically to assume that *whatever* furthers the statute's primary objective must be the law.") (emphasis in original). Here, Congress has enacted a comprehensive remedial scheme that at least "technically accommodate[s]" plaintiffs' allegations of improper disclosures, *Spagnola,* 859 F.2d at 229, so there is no justification for the judicial creation of a *Bivens* remedy whether or not plaintiffs could obtain a remedy under that statutory scheme.

## B. Absolute Immunity Of The Vice President.

The Supreme Court's decisions in *Cheney v. United States District Court for the District of Columbia,* 542 U.S. 367 (2004), and *Nixon v. Fitzgerald,* 457 U.S. 731 (1982), and well-established common law immunity principles compel the conclusion that the Vice President is absolutely immune from civil suit for damages for conduct within his office. *See* U.S. Statement of Interest at 16-22. Plaintiffs' contrary argument rests on two main points: First, "[n]o case ever has accorded the Vice President absolute immunity," Opposition at 57; and second, while the President enjoys such absolute immunity, in plaintiffs' view, there is a "clear basis for distinguishing the Vice President," *id.* at 58. Neither point is persuasive.

8

**1.** Plaintiffs' first point – no prior case has afforded absolute immunity to the Vice President – carries negligible weight. It is equally plain that no case ever has rejected absolute immunity for the Vice President, much less imposed damages liability against the Vice President for conduct within the "outer perimeter" of his duties. *See Fitzgerald*, 457 U.S. at 756. The absence of a historical record of suits such as plaintiffs' likewise cuts in favor of absolute immunity, for it shows that plaintiffs are seeking to impose unprecedented liability that goes well beyond what would have been recognized at common law.

Plaintiffs' second point is at odds with the Supreme Court's decision in *Cheney*, which, remarkably, plaintiffs do not discuss or even cite. Plaintiffs acknowledge that "[b]ecause of the singular importance of the President's duties, diversion of his energies by concern with private lawsuits would raise unique risks to the effective functioning of government," *Fitzgerald*, 457 U.S. at 751, but they retort that "[t]he same hardly could be said of the Vice President," Opposition at 58. Plaintiffs miss the point. Although obviously there are distinctions between the Offices of the President and the Vice President, plaintiffs simply ignore *Cheney*'s recognition that they are comparable in at least one critical respect – as lightning rods for civil damages suits. Quoting approvingly from *Fitzgerald*, the Court in *Cheney* made this point crystal clear: "'In view of the visibility of' the Offices of the President and the Vice President and 'the effect of their actions on countless people,' they are 'easily identifiable target[s] for suits for civil damages.'" 542 U.S. at 387 (quoting *Fitzgerald*, 457 U.S. at 751) (alteration in original).

Plaintiffs' "textual" comparison of the Offices of President and Vice President, *see* Opposition at 58-59, wholly ignores *Cheney*'s teaching and the real-world insight that it embodies. As *Cheney* recognizes, the Vice President does indeed perform functions warranting

9

protection from civil litigation comparable to that of the President.  Indeed, contrary to plaintiffs' attempts to denigrate the importance of the Office of the Vice President, that office has unique and important functions.[2]  Thus, as we have demonstrated, the Supreme Court's linking of the Offices of the President and the Vice President and its reliance on *Fitzgerald* in this respect has a sound constitutional foundation and provides compelling evidence that the President and Vice President should be treated the same for purposes of civil damages suits.  *See* U.S. Statement of Interest at 19.  As with the President, moreover, there remain significant alternative checks upon potential abuse of office by the Vice President that lessen the need for private damages suits against him.  *See Fitzgerald*, 457 U.S. at 757.

In short, Plaintiffs do not contest that the Vice President's alleged actions fall within at least the "outer perimeter" of his duties.  *See generally* U.S. Statement of Interest at 20-22. Accordingly, the claims against the Vice President should be dismissed on the ground that he enjoys absolute immunity.

---

[2] Under the Constitution, the Vice President is assigned responsibilities that are not assigned to any other constitutional officer and plays an important role in our system of government.  The Constitution specifies that the Vice President shall replace the President upon his removal from office, death, resignation, or inability to serve, Art. II, § 2, and it authorizes the Vice President and a majority of the heads of the executive departments to determine that the President is unable to discharge his office, Amend. XXV, § 4.  It further provides that the Vice President "shall be President of the Senate," with the controlling vote when the Senate is "equally divided."  Art. I, § 3.  Like the President, the Vice President must be elected every four years, Art. II, § 1, and he is subject to impeachment in the same manner as the President, Art. II, § 4.  Finally, the Vice President is the only governmental official other than the President who is elected by the entire country, and as such, the Vice President is identified and associated with the policies of the Administration in a way that is different from any official other than the President himself.

**2.** *Amicus curiae* Judicial Watch – but not plaintiffs – contends that *Fitzgerald* and *Cheney* are distinguishable as "official-capacity" suits, and also that the Court should reject the absolute immunity defense on grounds of "constitutional avoidance" and "judicial restraint." *See* Brief for Judicial Watch as *Amicus Curiae* at 3; 7-9. Judicial Watch misunderstands the distinction between official- and individual-capacity suits and that the latter may implicate official conduct no less than the former. *Cf. Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 n.24 (1997) ("State officers are subject to § 1983 liability for damages in their personal capacities, however, even when the conduct in question relates to their official duties.") (citing *Hafer v. Melo*, 502 U.S. 21, 25-31 (1991)). Contrary to *amicus*' assertion, moreover, *Fitzgerald* plainly involved an individual-capacity suit like this one. *See, e.g.*, 457 U.S. at 757 (explaining that "[c]ognizance of this personal vulnerability frequently could distract a President from his public duties"). *Cheney*, it is true, was an official-capacity suit for non-monetary relief. But *Cheney*'s comparison of the President and the Vice President as "'easily identifiable target[s] for suits for civil damages,'" *Cheney*, 542 U.S. at 387 (quoting *Fitzgerald*, 457 U.S. at 751) (alteration in original), and its approving quotation of *Fitzgerald* on exactly that point, provide compelling support for affording the Vice President a comparable defense to individual-capacity damages claims.

The principle of "judicial restraint" invoked by *amicus* counsels in favor of recognition of absolute immunity for the Vice President and dismissal of the Amended Complaint. Plaintiffs invoke a judicially-implied *Bivens* cause of action that raises substantial separation of powers issues, especially when the suit would hold the Vice President personally liable for money damages. In contrast, the immunity defense rests on principles applied in past cases involving

judicially-implied causes of action against other officials, including judges and prosecutors. *See Fitzgerald*, 457 U.S. at 747-48; *see also* U.S. Statement of Interest at 20 n.7. And while principles of judicial restraint assuredly apply in the formulation of common law rules, *see* Brief for Judicial Watch as *Amicus Curiae* at 8, Judicial Watch fails to explain why sustaining an absolute immunity defense to an implied cause of action is any less "restrained" than the alternative of subjecting the Vice President to liability under the court-made *Bivens* doctrine, *see generally Malesko*, 534 U.S. at 75 (Scalia, J., joined by Thomas, J., concurring). "Judicial restraint" is not a catch-phrase for choosing a preferred outcome; it is a reflection of the deference that courts afford the legislature and executive under our system of separated powers. *See, e.g., Turner v. Safley*, 482 U.S. 78, 85 (1987) (observing that "separation of powers concerns counsel a policy of judicial restraint"). Indeed, as *Cheney* shows, the same separation of powers considerations that counsel "judicial deference and restraint," *Nixon*, 457 U.S. at 753, when the President is sued for civil damages warrant comparable judicial treatment of an implied damages cause of action against the Vice President. *See Cheney*, 542 U.S. at 387.[3]

### C. Qualified Immunity Bars Suit on Plaintiffs' *Bivens* Claims.

Plaintiffs cannot make out a claim for the violation of clearly established constitutional rights merely by alleging injury resulting from the individual federal defendants' alleged disclosures to the press. U.S. Statement of Interest at 24-25. Plaintiffs repeatedly emphasize that

---

[3] To the extent that Judicial Watch notes that courts should avoid deciding unnecessary constitutional questions and that the Court need not reach the issue of whether the Constitution or common law principles require absolute immunity for the Vice President because the Amended Complaint can be dismissed under the "special factors" doctrine, *see* Brief for Judicial Watch as *Amicus Curiae* at 8, we agree that such a course of action would constitute an appropriate exercise of judicial restraint.

theirs' is a retaliation claim, one "easy to allege and hard to disprove." *Crawford-El v. Britton*,

523 U.S. 574, 584-85 (1998). However, whether a constitutional claim adequately is alleged

requires an examination of various factors, including "the status of the speaker, the status of the

retaliator, the relationship between the speaker and the retaliator, and the nature of the retaliatory

acts." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000). Plaintiffs ignore that

the disclosures to the media that they allege do not on their face make out a First or Fifth

Amendment claim under the alleged circumstances. *See* U.S. Statement of Interest at 24-32.

**1.** The public has a vital interest in the ability of government officials to speak out on

matters of controversy, "even in a condemnatory fashion [regarding practices] they might not

have the statutory or constitutional authority to regulate." *Penthouse Int'l Ltd. v. Meese*, 939

F.2d 1011, 1015-16 (D.C. Cir. 1991); *see also X-Men Sec., Inc. v. Pataki*, 196 F.3d 56, 69 (2d

Cir. 1999). Absent threats or coercion, such "official speech" does not violate the First

Amendment rights of citizens, even if it is itself unprotected by the First Amendment. *See*

*Suarez*, 202 F.3d at 687 (collecting cases). Examples include defamatory statements by a

government official, *see, e.g., id.* at 688-89, and false accusations of a crime, *e.g., Colson v.*

*Grohman*, 174 F.3d 498, 511-12 (5th Cir. 1999). To state a claim of actionable retaliation,

plaintiffs would have to show that "the nature of the [alleged] *retaliatory acts*," *Suarez*, 202 F.3d

at 686 (emphasis added), was such as would chill a person of ordinary firmness from speaking

out, *see Toolasprahad v. Bureau of Prisons*, 286 F.3d 576, 586 (D.C. Cir. 2002).[4] Plaintiffs'

---

[4] In addition to the deficiencies in the Amended Complaint identified below and in the U.S. Statement of Interest, the Amended Complaint also fails to satisfy the requirement of demonstrating that the alleged retaliation effectively "chilled" the exercise of a First Amendment right. The Amended Complaint alleges no facts that would demonstrate that Wilson felt

(continued...)

13

Opposition pre-supposes actionable – but unalleged – retaliatory acts, ignoring the precedents cited in the U.S. Statement of Interest demonstrating that a First Amendment retaliation claim cannot proceed where the retaliation comes in the form of mere speech not accompanied by threat or coercion.[5]

Moreover, although plaintiffs allege that Plame's reported covert CIA employment was revealed in order to retaliate against her husband, nowhere does the Amended Complaint allege that the individual defendants had actual knowledge of her reported status as a covert agent. Instead, the Amended Complaint repeatedly alleges only that defendants learned things like "Wilson's wife worked at the CIA and that State Department personnel were saying that Wilson's wife was involved in the planning of his trip."  Am. Compl. ¶ 19(e); *see also id.* ¶ 19 (f); *id.* ¶ 19(h); *id.* ¶ 19(j); *id.* ¶ 19(l); *id.* ¶ 19(m).[6]  Given the factual allegations actually made in this case and the government's own interest in officials' ability to respond in the media to critics of government policy, *see Penthouse*, 939 F.2d at 1016, there simply is no basis for classifying

---

[4](...continued)
compelled to limit his criticisms of the Administration as a result of the alleged retaliation.  The court in *Hatfill v. Ashcroft*, 404 F.Supp.2d 104, 118 (D.D.C. 2005), dismissed plaintiff's First Amendment retaliation claim for precisely this failure.

[5] Thus, even if this Court were to conclude that a plaintiff could assert a valid constitutional claim for retaliation involving speech by a federal employee unaccompanied by threat or coercion, such a claim was not "clearly established" at the time of the alleged acts in this case, and the individual federal defendants would still enjoy qualified immunity.  *Harlow*, 457 U.S. at 818 (an official "[cannot] reasonably be expected to anticipate subsequent legal developments, nor ... fairly be said to 'know' that the law forb[ids] conduct not previously identified as unlawful").

[6]  Plaintiffs attribute these allegations to the criminal charges against Libby in *United States v. Libby*, Cr. No. 05-394 (RBW) (D.D.C.).  *See* Am. Compl. ¶¶ 18, 19.  However, Libby was not charged with disclosing Plame's reported CIA employment.

the individual defendants' alleged conduct as "retaliatory acts" under the First Amendment, *see id.* at 1016-17.

Finally, even if plaintiffs' allegations met the legal requirements for showing official conduct sufficient to chill the exercise of First Amendment rights, their claim would fail on a different ground. "[A]t least with respect to certain types of claims, proof of an improper motive is not sufficient to establish a constitutional violation – there must also be evidence of *causation*." *Crawford-El*, 523 U.S. at 593 (emphasis added). As explained in the U.S. Statement of Interest (at 26-27), the Amended Complaint alleges that the information regarding Plame's reported CIA status was published by columnist Robert Novak, who learned it from Armitage, Am. Compl. ¶¶ 14, 39, but Armitage is *not* alleged to have violated the First Amendment, *id.* ¶¶ 41-44. Hence the alleged actions of the Vice President, Libby and Rove cannot fairly be held to have caused the alleged injuries described in the Amended Complaint – a point that is not contested by plaintiffs in their Opposition.[7]

---

[7] To the extent that plaintiffs believe they are saved by the Amended Complaint's bare allegation that the individual federal defendants conspired to harm them, that is incorrect. *See* U.S. Statement of Interest at 27 n.11. In their Opposition, plaintiffs seek to go beyond their Amended Complaint and suggest that Armitage "participated" in a "concerted effort" to retaliate against plaintiffs. *See* Opposition at 10. But even if these assertions were actually reflected in the Amended Complaint, they would not be sufficient to establish causation; it is the specific factual allegations – not *ipse dixit* assertions of the existence of a conspiracy – that must be evaluated in order to assess whether official conduct violated a constitutional right. *See* U.S. Statement of Interest at 27 n.11 (collecting cases). Although Armitage is alleged to have disclosed to reporters the fact of Plame's reported CIA employment, he is not alleged to have violated the First Amendment (in either the Amended Complaint or in plaintiffs' Opposition). Nor do plaintiffs allege in their Amended Complaint or Opposition any facts demonstrating that Armitage acted at the direction of or in cooperation with the Vice President, Rove or Libby. Thus, on this record, the facts show that plaintiffs' alleged injuries flow from the independent disclosure by Armitage, who is not alleged to have violated the First Amendment and who did not participate in any "scheme" to retaliate against plaintiffs.

**2.**  Plaintiffs' Fifth Amendment claim is in substance plaintiffs' First Amendment claim with a different label and, as such, it should be dismissed, for courts have uniformly rejected constitutional claims based on the broad language of the Fifth Amendment when the underlying conduct is clearly encompassed and addressed by the more specific requirements of the First Amendment.  *See, e.g.*, *Ratliff v. DeKalb County*, 62 F.3d 338, 340-41 (11th Cir. 1995); *Thompson v. City of Starkville*, 901 F.2d 456 (5th Cir. 1990); *Vukadinovich v. Bartels*, 835 F.2d 1387, 1391-92 (7th Cir. 1988).  Plaintiffs do not address these precedents in their Opposition.

But even if plaintiffs could get a second bite at the apple by alleging retaliation under the Equal Protection Clause, they fail to state a violation of the Fifth Amendment.  To make out an equal protection claim, plaintiffs would have to show, at a minimum, "(1) disparate treatment of similarly situated parties (2) on no rational basis."  *3883 Connecticut LLC v. District of Columbia*, 336 F.3d 1068, 1075 (D.C. Cir. 2003) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000)).  Here again, plaintiffs rely on their retaliation theory – "Mrs. Wilson was treated differently from all others similarly situated and there was no legitimate basis for this difference; it was just retaliation for Mr. Wilson's speech."  Opposition at 17.  Accordingly, for the same reason the First Amendment retaliation claim fails, the equal protection claim fails: "[T]here simply is no equal protection right not to be singled out for criticism."  *X-Men*, 196 F.3d at 72.

**3.**  As we have demonstrated, *see* U.S. Statement of Interest at 23-30, plaintiffs' claim for alleged violation of what they style the "Fifth Amendment right to privacy," *see* Am. Compl. ¶¶ 59-64, fails.  As plaintiffs are forced to concede, the D.C. Circuit has never recognized such a right.  *See* Opposition at 21-22 (citing *American Federation of Government Employees, AFL-*

16

*CIO v. Department of Housing & Urban Development*, 118 F.3d 786 (D.C. Cir. 1997)).

Regardless of what the law might be in other circuits, *see* Opposition at 21, because of the D.C.

Circuit's "grave doubts as to the existence of a constitutional right of privacy in the

nondisclosure of personal information," 118 F.3d at 791, plaintiffs quite plainly have not alleged

the violation of any clearly established right, *see Wilson v. Layne*, 526 U.S. 603, 617 (1999).

Apparently recognizing the obvious impediment to their Fifth Amendment privacy claim,

plaintiffs change tack and urge that they have stated a claim under the so-called "state

endangerment" theory. *See* Opposition at 22 (citing *Butera v. District of Columbia*, 235 F.3d

637, 649 (D.C. Cir. 2001)). As an initial matter, plaintiffs' Amended Complaint nowhere

mentions this new and distinct state-created danger claim. *See* Am. Compl. ¶¶ 56-58. As a

vehicle to assert new legal theories, an opposition to a motion to dismiss is no substitute for an

amended complaint. *See Government of Guam v. American President Lines*, 28 F.3d 142, 150

(D.C. Cir. 1994). In any event, the novel "state-created danger" claim proposed in plaintiffs'

Opposition is meritless.

In all but one of the state-created danger cases plaintiffs rely on, Opposition at 25, the

plaintiff alleged an actual physical injury. *See Butera*, 235 F.3d at 642-43 (plaintiff's decedent

killed while working as an undercover police operative); *Briscoe v. Potter*, 355 F. Supp.2d 30, 43

(D.D.C. 2004) (postal employees alleged illnesses after exposure to anthrax spores in a

contaminated mail facility), *aff'd,* 171 Fed.Appx. 850 (D.C. Cir. 2005), *cert. denied*, 126 S. Ct.

2021 (2006); *Fraternal Order of Police v. Williams*, 263 F. Supp.2d 45, 47 (D.D.C. 2003)

(alleging that prison overcrowding had led to 15 assaults between April 2002 and August 2002

and injuries such as "a broken hand, temporary sight loss in one eye, a broken nose and 36

17

stitches to one officer's face"), *aff'd*, 375 F.3d 1141 (D.C. Cir. 2004).[8] Here, by contrast, plaintiffs seek to recover based solely on fear of conjectured, *future* harm, a claim unprecedented in this circuit. *Butera* makes clear that the theory does not go so far. *See* 235 F.3d at 651 ("[A]n individual can assert a substantive due process right to protection by the District of Columbia from third-party violence when District of Columbia officials affirmatively act to increase or create the danger that *ultimately results in the individual's harm*.") (emphasis added).

Indeed, to allow such claims would dramatically expand the scope of this doctrine, for it is easy for a plaintiff to allege, and virtually impossible to refute, that the plaintiff has a subjective fear of future injury. Likewise, in a damages action, there is no way to quantify an award until an actual injury has been suffered. Upholding plaintiffs' theory would thus be contrary to the Supreme Court's admonitions to tread with great care in the substantive due process area. *See, e.g.*, *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 127 (1992) ("As a general matter, the Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decision making in this unchartered area are scarce and open-ended. The doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field.") (citation omitted).

---

[8] Plaintiffs' case citations are misleading for other reasons as well. Plaintiffs assert that *Briscoe* establishes that the contours of the state endangerment theory were "clear" after the D.C. Circuit's *Butera* decision in 2001. In fact, the court in *Briscoe* dismissed the Fifth Amendment claims at issue there on qualified immunity grounds, finding that "there continues to be 'little consistency in courts' explanations of the types of actions that would amount to constitutional liability' under this theory." 355 F.Supp.2d at 48 (quoting *Butera*, 235 F.3d at 653). Likewise, in *Fraternal Order of Police*, 263 F. Supp.2d at 47-48, the court *rejected* a state-created danger claim where a labor union and employees sued to force a change in staffing patterns in the D.C. jail on the basis of potential death or injury.

Plaintiffs' citation to *Kallstrom v. City of Columbus*, 136 F.3d 1055 (6th Cir. 1998), is unavailing. As the discussion above illustrates, neither *Kallstrom* nor plaintiffs' fear of future injury theory is the law of this Circuit. Although, as plaintiffs point out, *Kallstrom* was cited in *Butera*, it was relied upon (along with numerous other cases) only for two unremarkable propositions: First, "[n]o constitutional liability exists where the State actors had no hand in creating [the] danger" at issue, 235 F.3d at 650 (citations and internal quotations omitted); and second, "[t]he circuit courts have adopted the State endangerment concept in a range of fact patterns concerning alleged misconduct by State officials ...." *id.* at 649-50 (citations omitted). Nothing in *Butera* suggests that this Circuit subscribes to the application of the danger-creation theory suggested by the Sixth Circuit. To the contrary, in the subsequent *Fraternal Order of Police* decision, the D.C. Circuit specifically noted, with emphasis, that "[i]n *Butera,* we stated only that an *individual* can assert [a state-created danger claim when officials] affirmatively act to increase or create the danger *that ultimately results in the individuals' harm.*" 375 F.3d at 1146 n.4 (quoting *Butera*, 235 F.3d at 651, and citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)).

For these reasons, plaintiffs' allegations do not make out a due process state-created danger claim. And even if that were not so, the individual defendants would have qualified immunity. In *Butera*, the D.C. Circuit noted that "[w]hile courts of appeals had adopted the State endangerment concept without prompting Supreme Court review, there was little consistency in courts' explanations of the types of actions that would amount to constitutional liability," 235 F.3d at 653 (footnote omitted), and that the various circuits' tests for endangerment "are inconsistent in their elaborations of the concept," *id.* at 654. Accordingly, the *Butera* Court held

19

the defendants in that case to be entitled to qualified immunity. *Id.*; *see also Briscoe*, 355 F.Supp. 2d at 40 (dismissing complaint, *inter alia*, based on qualified immunity). Here, too, regardless of whether plaintiffs' danger-creation theory is deemed to be sound, the "contours of the right" were not clearly established in the circumstances at the time of the defendants' alleged conduct, and the individual defendants therefore have qualified immunity. *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Plaintiffs assert that "because the unlawful disclosures at issue here were made more than two decades after the passage of the IIPA [Intelligence Identities Protection Act], a statute that criminalizes the unauthorized disclosure of intelligence sources," Opposition at 26, "a reasonable person should have understood the unlawfulness of disclosing Mrs. Wilson's status as a covert CIA operative," *id*. at 27 (citation omitted); *see also id.* at 59-60. Plaintiffs misunderstand the qualified immunity defense. The Supreme Court has made clear that  the qualified immunity analysis looks only to the clarity of the constitutional right on which the plaintiff bases his damages claims, not to other sources of law. *See Davis v. Scherer*, 468 U.S. 183, 193-97 (1984) ("Officials sued for constitutional violations do not lose their qualified immunity because their conduct violates some statutory command or administrative provision.... Rather, these officials become liable for damages only to the extent that there is a clear violation of the [law] that gives rise to the cause of action for damages."). Accordingly, even assuming that the alleged disclosures at issue here violated the IIPA and that the IIPA violation would have been clear to a reasonable official, it would not follow that defendants' qualified immunity defense would be overcome. Rather, as *Davis* makes clear, qualified immunity could be lost only if the

20

constitutional rights that plaintiffs assert had been clearly established in the circumstances at the time of defendants' alleged conduct.[9]

   **4.** As we demonstrated, *see* U.S. Statement of Interest at 31-32, Plame's Fifth Amendment claim based on her alleged loss of employment fails because she had no property interest in her reported CIA job, *see Doe v. Gates*, 981 F.2d 1316, 1320 (D.C. Cir. 1993). In response, plaintiffs ignore the dispositive *Doe* decision, arguing essentially that Plame had an "expectation" that she would not be fired except by action of the Director of the CIA. *See* Opposition at 21. Because Plame did not expect to lose her job as the result of actions by other government officials, so the argument goes, she had a property interest warranting due process protection. *See id.* at 21-22.

   Plaintiffs cite no authority for this theory, and it is wholly unsound. As *Doe* makes clear, Plame cannot bootstrap an alleged job in which she has no property interest at all into one in which she does merely by claiming a subjective expectation as to how she might lose that job. *Doe*, 981 F.2d at 1320 ("The rules and understandings on which an employee bases his Fifth Amendment claims, however, must create an 'objectively reasonable expectation' of continued employment."); *see also Hall v. Ford*, 856 F.2d 255, 265 (D.C. Cir. 1988) ("Those who are terminable at will have no property interest because there is no objective basis for believing that

---

[9] Plaintiffs also cite *Rasul v. Rumsfeld*, 433 F. Supp.2d 58, 71 (D.D.C. 2006), *appeal docketed*, 06-5222 (D.C. Cir. Jul. 31, 2006), as clearly establishing that their constitutional rights were violated, but that case is inapposite precisely because it involved an alleged violation of a statute (the Religious Freedom Restoration Act) that is not at issue here. Indeed, the court in *Rasul* dismissed the plaintiffs' Fifth Amendment claims on qualified immunity grounds because the asserted Fifth Amendment rights, in context, were not "clearly established." *Rasul v. Rumsfeld*, 414 F.Supp.2d 26, 41-45 (D.D.C. 2006), *appeal docketed,* 06-5209 (D.C. Cir. Jul. 31, 2006).

they will continue to be employed indefinitely."). In assessing a claimed property interest in employment, the relevant question is not *who* may cause the employee's termination, but whether she may be terminated only for cause. *Cf. Garrow v. Graham*, 856 F.2d 203, 206 (D.C. Cir. 1988) ("Our attention has yet to be called to any case where a court has held that a government employee has a protected property interest in employment where language qualifying discharge for 'cause' or for comparable reasons, is not present."). Plame makes no claim that her reported CIA job fell into the only-for-cause category, and hence she had no due process-protected property interest in it. Indeed, no employee of the CIA could have a proprietary interest in his or her CIA employment, given that the Director of the CIA can terminate any employee whenever the Director deems it "necessary or advisable in the interests of the United States." *See* Section 104A(e) of the National Security Act of 1947, 50 U.S.C. §§ 403-4a(e); *see also Doe*, 981 F.2d at 1320 (construing this language as foreclosing any claim that a "property entitlement exists"). In any event, given the novelty of plaintiffs' theory and the dearth of supporting case law, it is plain that qualified immunity bars personal liability on such a claim.

**CONCLUSION**

For the foregoing reasons, as well as the reasons set forth in the U.S. Statement of

Interest, the Court is respectfully urged to dismiss this action.

Dated: February 15, 2007

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

JEFFREY S. BUCHOLTZ
Principal Deputy Assistant Attorney General

C. FREDERICK BECKNER III
Deputy Assistant Attorney General

TIMOTHY P. GARREN
Director, Torts Branch


/s/
RICHARD MONTAGUE
Senior Trial Attorney
Torts Branch, Civil Division
GLENN S. GREENE, #450348
Trial Attorney
Torts Branch, Civil Division
P.O. Box 7146
Washington, D.C. 20044
Phone (202) 616-4158
Fax (202) 616-4314

Attorneys for the United States of America

23