# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| VALERIE PLAME WILSON and JOSEPH C. WILSON, IV, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civ. A. No. 06-1258 (JDB) |
| I. LEWIS LIBBY, JR. *et al.*, | ) ) ) | Next Scheduled Event: Oral Hearing, May 23, 2007 |
| Defendants. | ) ) | |

## DEFENDANT VICE PRESIDENT OF THE UNITED STATES RICHARD B. CHENEY'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

Terrence O'Donnell (D.C. Bar # 26849)
Emmet T. Flood (D.C. Bar # 448110)
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Phone: (202) 434-5000
Fax: (202) 434-5029
todonnell@wc.com
eflood@wc.com

*Attorneys for Vice President of the United States Richard B. Cheney in his individual capacity*

Dated: February 15, 2007

# TABLE OF CONTENTS

I.     Plaintiffs' Claims Must Be Dismissed Because They are Time-Barred........................... 3

     A.     All of Plaintiffs' Claims are Subject to a One-Year Statute of Limitations. .................................................................................................... 3

     B.     No Equitable Doctrines Apply to Toll the Statute of Limitations. ........................ 5

II.     The Vice President Is Absolutely Immune From Civil Suits Seeking Damages................ 7

III.     Plaintiffs' Claims Are Barred by the *Totten* Doctrine and Raise Non-Justiciable Political Questions ............................................................................. 9

IV.     Qualified Immunity Shields the Vice President from All Claims. .................................. 11

     A.     Plaintiffs Cannot State Claims under the First Amendment Because They Cannot—And Did Not—Allege Any Chill. ................................................. 12

     B.     Plaintiffs Do Not State a Claim of a Clearly Established Right Under the Equal Protection Clause. .............................................................................. 13

     C.     Plaintiffs Do Not State a Claim of a Clearly Established Right to Informational Privacy. ................................................................................. 14

     D.     Plaintiffs Do Not State a Claim of a Clearly Established Right Under the Fifth Amendment's Protections from Deprivation of Property Without Due Process............................................................................................ 16

     E.     Plaintiffs' Claim for Public Disclosure of Private Facts Must be Dismissed Under the Westfall Act ........................................................................ 17

V.     Special Factors Counsel Hesitation in Recognizing the *Bivens* Claims Plaintiffs Assert................................................................................................ 18

     A.     The Privacy Act Counsels Hesitation ................................................................. 18

     B.     Other Factors Counsel Hesitation in Recognizing the New *Bivens* Remedies Sought Here.......................................................................................... 20

## TABLE OF AUTHORITIES

### FEDERAL CASES

*American Federation of Government Employees v. Dep't of Housing
and Urban Development*, 118 F.3d 786 (D.C. Cir. 1997) ............................................. 14

*\*Baker v. Carr*, 369 U.S. 186, 211 (1962).................................................................... 11

*Barr v. Executive Office of President*, No. 99-CV-1695,
2000 WL 34024418, \*2 (D.D.C. August 9, 2000).................................................... 20

*Briscoe v. Potter*, 355 F. Supp. 2d 30, 43 (D.D.C. 2004) ............................................ 16

*Butera v. District of Columbia*, 235 F.3d 637, 649 (D.C. Cir. 2001) ........................... 16

*\*Cheney v. U.S. Dist. Court*, 542 U.S. 367 (2004) ................................................ 7, 8, 9

*\*Chung v. U.S. Dep't of Justice*, 333 F.2d 273, 274 (D.C. Cir. 2003)........................... 18

*Clinton v. Jones*, 520 U.S. 681 (1997)........................................................................... 8

*Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d. Cir. 2001)...................................... 12

*Davis v. Scherer*, 468 U.S. 183, 194 (1984) ............................................................... 12

*Doe v. Gates*, 981 F.2d 1316, 1320 (D.C. Cir. 1993) .................................................. 16

*Harlow v. Fitzgerald*, 457 U.S. 800, 811 n.17 (1982) ............................................ 8, 11

*\*Hatfill v. Ashcroft*, 404 F. Supp. 2d 104, 108 (D.D.C. 2005) ............................... 12, 18

*Haynesworth v. Miller*, 820 F. 2d 1245, 1254 (D.C. Cir. 1987)..................................... 2

*Herbage v. Meese*, 747 F.Supp. 60, 65 (D.D.C. 1990) .................................................. 2

*Hobson v. Wilson*, 737 F.2d 1 (D.C. Cir. 1984)............................................................. 6

*Jones v. Executive Office of President*, 167 F. Supp. 2d 10, 15 (D.D.C. 2001) ........... 20

*Kallstrom v. City of Columbus*, 136 F. 3d 1055 (6th Cir. 1998).................................... 16

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................................... 13

*Martin v. Malhoyt*, 830 F.2d 237, 257 (D.C. Cir. 1987)................................................. 2

*\*McClam v. Barry*, 697 F.2d 366 (D.C. Cir. 1983) ..................................................... 3, 4

*Meyer v. Reno*, 911 F.Supp. 11, 15 (D.D.C. 1996) .......................................................2

*Nixon v. Fitzgerald*, 457 U.S. 731 (1982) ................................................................... 7

*Owens v. Okure*, 488 U.S. 235 (1989) ....................................................................... 4

*Penthouse Int'l. Ltd. v. Meese*, 939 F.2d 1011, 1015 (D.C. Cir. 1991) ........................................ 13

*Ratliff v. Dekalb County*, 62 F.3d 338, 340-41 (11th Cir. 1995) .................................................. 13

*Schneider v. Kissinger*, 412 F.3d 190, 194 (D.C. Cir. 2005) ....................................................... 11

*Schwarz v. U.S. Dept. of Treasury*, 131 F.Supp.2d 142, 147-148 (D.D.C. 2000),
    *aff'd* 2001 WL 674636 (D.C. Cir. 2001)………………………………………………..19

*Schweiker v. Chilicky*, 487 U.S. 412, 423 (1988) ....................................................... 18

*Spagnola v. Mathis*, 859 F.2d 223 (D.C. Cir. 1988) ........................................... 18, 19, 20

*Tenet v. Doe*, 544 U.S. 1, 10-11 (2005) ................................................................. 10

*Thompson v. City of Starkville*, 901 F.2d 465 (5th Cir. 1990) ..................................................... 13

*Tripp v. Executive Office of President*, 200 F.R.D. 140, 144 (D.D.C. 2001)……………………...20

*Totten v. United States*, 92 U.S. at 26 (1876)……………….…………………………………9, 10, 20

*United States v. Nixon*, 418 U.S. 683, 715 (1974) ....................................................... 8

*United States v. Reynolds*, 345 U.S. 1, 11 n.26 (1953) ................................................. 10, 12

*Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) ............................................ 13, 14

*Vukadinovich v. Bartels*, 853 F.2d 1387 (7th Cir. 1988) ....................................................... 13

## STATE CASES

*Diamond v. Davis*, 680 A.2d 364, 381 (D.C. 1996) ..................................................... 5, 6

## UNITED STATES CONSTITUTION

U.S. Const. art. I, § 3...……………………………………………………………………...8

U.S. Const. art. II, § 1…………………………………………………………………………8

U.S. Const. amend. XXV……………………………………………………………………8

## FEDERAL STATUTES

3 U.S.C. § 106(a) (2000)..................................................................................................... 9

## STATE STATUTES

D.C. Code § 12-301(4)........................................................................................................ 3

**Introduction**

Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendants' and the United States' Motions to Dismiss (hereinafter "Opp.") is a prolonged exercise in avoidance. Although their <u>allegations</u> directly (and wrongly) accuse the Vice President of the United States of abusing his office, their <u>arguments</u> are unsupported by the few facts alleged. Plaintiffs (1) fail to address (or even mention) leading cases directly applicable to the motions before the court; (2) "refute" straw-man parodies, rather than the actual arguments made in support of the motions to dismiss; and (3) falsely re-characterize the allegations of their own complaint.

Plaintiffs offer only four allegations against the Vice President:

(1) that "[o]n or about June 12, 2003, Libby was advised by the Vice President of the United States that Wilson's wife worked at the Central Intelligence Agency in the Counterproliferation Division," Am. Compl. ¶ 19(h);

(2) that the Vice President annotated a copy of Mr. Wilson's July 6, 2003, *New York Times* Op-Ed piece, *id.* ¶ 19(o);

(3) that "[o]n or before July 8, 2003, Vice President Cheney advised Libby that the President of the United States specifically had authorized Libby to disclose to *New York Times* reporter Judith Miller certain information from an October 2002 National Intelligence Estimate concerning Iraq and weapons of mass destruction in order to rebut Mr. Wilson," *id.* ¶ 19(q); and

(4) that "[u]pon information and belief, Defendants Cheney, Rove, Libby, and John Does 1-10 reached an agreement to discredit, punish, and seek revenge against the Plaintiffs that included, among other things, disclosing to members of the press Valerie Plame Wilson's classified CIA employment." *Id.* ¶ 24.

In evaluating whether each of Plaintiffs' five counts state a claim against the Vice President, this Court must consider whether <u>the four facts Plaintiffs allege</u> are sufficient to state a claim against the Vice President. The first three allegations—which amount to the Vice President discussing a national security matter with his Chief of Staff and jotting notes on an op-ed—do not state claims sufficient to survive a motion to dismiss.

1

Plaintiffs' fourth allegation is made "on information and belief" and it hypothesizes "an agreement to discredit, punish, and seek revenge against the Plaintiffs." Am. Compl. ¶ 24. The Amended Complaint contains no factual allegations concerning the Vice President's words or conduct relating to such an agreement. Nor does it contain any factual allegations relating to <u>any</u> action to "discredit, punish [or] seek revenge."[1] Plaintiffs should not be permitted to pursue a conspiracy claim when no conspiracy cause of action has been alleged merely by alleging an "agreement" asserted on the basis of "information and belief." Courts do not permit these kinds of "sweeping and unwarranted averments of fact." *Herbage v. Meese*, 747 F. Supp. 60, 65 (D.D.C. 1990) (dismissing a *Bivens* conspiracy suit against DOJ officials and explaining that "[s]omething stated as fact does not make it fact. 'A plaintiff's bare conclusions of law, or sweeping and unwarranted averments of fact, will not be deemed admitted' for purposes of a motion to dismiss . . . .'") (*quoting Haynesworth v. Miller*, 820 F.2d 1245, 1254 (D.C. Cir. 1987)). *See also Martin v. Malhoyt,* 830 F.2d 237, 257 (D.C. Cir. 1987) ("[C]onclusory allegations of unconstitutional or otherwise illegal conduct will not withstand a public official's dispositive pretrial motion.").

For example, in *Meyer v. Reno*, 911 F.Supp. 11 (D.D.C. 1996), a prisoner alleged a conspiracy of government officials, but the court dismissed the claim, finding that "plaintiff fails to assert any factual basis to support the conclusion that a conspiracy existed." *Id.* at 15. Further, the litigant was *pro se*, and yet the court still refused to permit him to proceed on unsubstantiated allegations of a conspiracy. Here, Plaintiffs are represented by counsel and yet do not allege any greater specificity than the *pro se* litigant in *Meyer*. They merely pepper their Amended Complaint with the factually unsupported allegation of an "agreement" in which the

---

[1] Unlike in their original complaint, <u>Plaintiffs' amended complaint does not plead a count for conspiracy</u>.

Vice President allegedly participated. Neither these Plaintiffs nor any plaintiffs should be permitted to pursue civil actions against the Vice President of the United States on such insubstantial allegations. It is clear that had Plaintiffs actually pled a count for conspiracy, this Court would be required to dismiss it. Plaintiffs should not be permitted to evade the pleading requirements by smuggling in a conspiracy count in the form of an alleged but unsubstantiated "agreement."

Because this Court cannot properly credit Plaintiffs' sweeping unwarranted averment of fact as to the existence of this "agreement," Defendant Vice President Cheney urges this court to evaluate each of the five counts against him in light of the three remaining facts which have been pled in support of those counts.

## I.    Plaintiffs' Claims Must Be Dismissed Because They Are Time-Barred.

### A.    All of Plaintiffs' Claims Are Subject to a One-Year Statute of Limitations.

Remarkably, Plaintiffs' discussion of the applicable statute of limitations does not address—or even cite—the D.C. Circuit's dispositive holding in *McClam v. Barry*, 697 F.2d 366 (D.C. Cir. 1983). *McClam* instructs that where a mixture of state and federal causes of action are pled, the state law statute of limitation applies as long as "the facts to be proved are largely the same" and the "claims grow out of the same incident and seek to vindicate the same interests." *Id.* at 375. Here, a one-year statute of limitations governs the state law count for public disclosure of private facts, *see* D.C. Code § 12-301(4), and Plaintiffs' five counts all share a common factual nucleus. The entire thrust of Plaintiffs' claim against the Vice President is that he allegedly discussed Mrs. Wilson's CIA status with his Chief of Staff and made a notation about her on his copy of Mr. Wilson's *New York Times* op-ed. He is not alleged to have shared

or discussed this information with <u>anyone else</u> in the media or otherwise.[2]  Because the evident

intention of the Amended Complaint is to accuse the Vice President of some (never identified)

factual involvement in the disclosure of Mrs. Wilson's name to Robert Novak, Plaintiffs' claims

are governed by the one-year statute of limitations applicable to the public disclosure of private

facts claim.

Plaintiffs <u>implicitly</u> concede that *McClam* applies when they acknowledge that

two of their counts are governed by a one-year statute of limitations.  Opp. at 39.  The D.C.

common law tort of public disclosure of private facts (Count V) is clearly subject to the one-year

statute of limitations, and Plaintiffs admit that their claim for violation of the right to privacy

(Count IV) "would arguably be subject to a one-year statute of limitations" because it is

analogous to the state law count.  Opp. at 39.  This is a tacit recognition of the rationale of

*McClam*, a rationale which plainly requires that the remaining three counts also be governed by a

one-year statute of limitations.

Nonetheless, Plaintiffs claim that the remaining three counts are instead subject to

D.C.'s residual three-year limitations period.  For that proposition they rely on *Owens v. Okure*,

488 U.S. 235 (1989), in which the Supreme Court held that where multiple <u>§ 1983</u> claims are

presented with varying statutes of limitations, they should all be governed by a state's residual

statute of limitations.  Yet Plaintiffs themselves admit that "<u>the D.C. Circuit does not appear to</u>

<u>have expressly incorporated the *Owens* approach for *Bivens* claims with multiple statutes of</u>

<u>limitations</u>."  Opp. at 41 (emphasis added).  Otherwise stated, Plaintiffs ask this Court to overrule

the undisturbed holding of *McClam* and create a new legal standard in this area.  This Court

_____

[2] Again, Plaintiffs sprinkle their complaint with passing references to a conspiracy of which the
Vice President was alleged to be a part.  However, for the reasons set forth above and in
Defendant Vice President Cheney's Motion to Dismiss, Plaintiffs have not properly pled an
agreement or conspiracy.

should instead follow the binding precedent of the D.C. Circuit and find that all of Plaintiffs'

claims are governed by a one-year statute of limitations.

### B.    No Equitable Doctrines Apply to Toll the Statute of Limitations.

Perhaps because they recognize that the one-year statute of limitation bars all of

their claims, Plaintiffs attempt to revive them by arguing that the statute should be tolled by

equitable doctrines.  Specifically, they assert that the statute was tolled until Defendant Libby

was indicted on October 28, 2005.  Opp. at 45.  In support of this argument, Plaintiffs invoke the

discovery rule, the doctrine of equitable estoppel, and the doctrines of equitable tolling and

fraudulent concealment.  No matter how many statute of limitations doctrines Plaintiffs incant,

no tolling applies here.  The D.C. courts have held that:

> [T]he standard is in fact the same in all cases to which the discovery rule applies,
> regardless of the presence or absence of fraud, or the characterization of that
> fraud.  In every case, the plaintiff has a duty to investigate matters affecting her
> affairs with reasonable diligence under all of the circumstances. Once the plaintiff
> actually knows, or with the exercise of reasonable diligence would have known,
> of some injury, its cause-in-fact, and some evidence of wrongdoing, then she is
> bound to file her cause of action within the applicable limitations period,
> measured from the date of her acquisition of the actual or imputed knowledge.

*Diamond v. Davis*, 680 A.2d 364, 381 (D.C. 1996) (emphasis added).

Plaintiffs' Amended Complaint acknowledges that they had awareness of their

"injury" and its "cause-in-fact" well before Libby's indictment.  As Plaintiffs plead, Novak's

article in July 2003 referred to "two senior administration officials" who had told him that Mrs.

Wilson suggested sending her husband to Iraq.  Opp. at 45.  And Plaintiffs admit that on October

12, 2003, the *Washington Post* reported that "two top White House officials disclosed Plame's

identity to at least six Washington journalists."  Opp. at 46 (*quoting* Walter Pincus and Mike

Allen, *Probe Focuses on Month Before Leak to Reporters*, Washington Post, Oct. 12, 2003).

Had Plaintiffs filed this action upon acquisition of knowledge that "two top White House

officials" had disclosed Mrs. Wilson's identity to a half-dozen journalists, they could have begun to seek discovery to determine the identity of the official in question at that time. Plaintiffs are clearly familiar with the possibility of an action naming "John Doe" defendants, as both their original and Amended Complaints name several such anonymous persons as defendants.

Indeed, in the very case Plaintiffs cite in support of tolling the statute, *Hobson v. Wilson*, 737 F.2d 1 (D.C. Cir. 1984), the Court made clear that "[w]e by no means imply that a plaintiff may postpone suit until he knows every defendant by name and title." *Id.* at 36. Although Plaintiffs appear to claim they are entitled to just that, the law makes clear that as soon as Plaintiffs had notice of their injury and its cause, they had "a duty to investigate matters affecting [their] affairs with reasonable diligence under all of the circumstances." *Diamond*, 680 A.2d at 381. Plaintiffs here have not even pled that they made <u>any efforts whatsoever</u> to discover the Defendants' identities. Plaintiffs were "bound to file [their] cause of action within the applicable limitations period." *Id.* Having instead waited three years to do so, their claims are time-barred.

In any event, Plaintiffs do not allege (because they cannot allege) that the Vice President himself participated in anything resembling fraudulent concealment. In support of their assertion that there was fraudulent concealment, Plaintiffs claim—in their Opposition, though not in their complaint—that the defendants "made clear to each of the journalists with whom they spoke that the information they were disclosing was not to be attributed publicly to them." Opp. at 47. However, Plaintiffs do not allege that the Vice President ever spoke to any journalists at all; they cannot toll the statute against the Vice President where they do not allege any facts against him that would justify tolling.

Because Plaintiffs' claims are all governed by a one-year statute of limitation, which is not subject to tolling against the Vice President, their claims against him must be dismissed as time-barred.

## II.    The Vice President Is Absolutely Immune from Civil Suits Seeking Damages.

Plaintiffs contend that the Vice President should not be given absolute immunity from civil suit because (1) certain factors distinguish the Vice President from the President (to whom such immunity is given) and (2) the Vice President occupies an essentially "insignificant" office. Plaintiffs fail to respond to the arguments advanced in the Motion to Dismiss. Most notably, Plaintiffs do not address – or even cite – the leading case on Vice Presidential immunity, *Cheney v. U.S. Dist. Court*, 542 U.S. 367 (2004).

Rather than address *Cheney*, Plaintiffs rely on *Nixon v. Fitzgerald*, 457 U.S. 731 (1982), to support their assertion that the Vice President is too different from the President to be protected by absolute immunity. In particular, Plaintiffs point to the *Fitzgerald* Court's observations that the President's constitutional position is unique, *id.* at 749, 750; that a lawsuit would divert his energies and thus risk the effective functioning of government, *id.* at 751, and that he "must make the most sensitive and far-reaching decisions entrusted to any official under our constitutional system." *Id.* at 752. These points, Plaintiffs maintain, distinguish the Vice President from the President, defeating the Vice President's immunity claims.

However, in the *Cheney* case the Supreme Court itself canvassed nearly these very same points – and concluded that the Vice President was immune from the civil discovery sought there. *Cheney*, 542 U.S. at 382 ("These separation-of-powers considerations should inform a court of appeals' evaluation of a mandamus petition involving the President or the Vice President.") (emphasis added). Specifically, the *Cheney* court pointed to the fact that the President's office occupies a "unique position in the constitutional scheme," *id.* (*quoting*

7

*Fitzgerald*, 457 U.S. at 749); that courts must "give recognition to the paramount necessity of protecting the Executive Branch from vexatious litigation that might distract it from the energetic performance of its constitutional duties," *id.*; and that the "President's communications and activities encompass a vastly wider range of sensitive material than would be true of any 'ordinary individual,'" *id.* at 381 (*quoting United States v. Nixon*, 418 U.S. 683, 715 (1974)). These "separation-of-powers considerations" that the Supreme Court in *Cheney* identified as applicable to the President and Vice President alike generally do not apply to other officials who have not been held to have absolute immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 811 n.17 (1982) ("Suits against other officials – including Presidential aides – generally do not invoke separation-of-powers considerations to the same extent as suits against the President himself."). Thus, far from distinguishing the Vice President from the President, the factors cited by the Plaintiffs apply to the Vice President and are grounds for absolute immunity.[3]

Plaintiffs (and the *amicus* filing) also attempt to belittle the importance of the Vice President's constitutional office. Plaintiffs argue that the Constitution only gives the Vice President limited responsibilities: presiding over the Senate and (when necessary) casting the tie-breaking vote in the Senate, U.S. Const. art. I, § 3, or succeeding or taking over as acting President in the event of the President's death or incapacity. U.S. Const. art II, § 1 & amend. XXV. These powers are in themselves both important and unique. Because the Constitution makes the Vice President the immediate successor to the President in the event of emergency, it

---

[3] The Vice President claims no more immunity than was accorded the President in *Fitzgerald*. Such immunity applies to civil suits brought for actions taken in the Vice President's official capacity. The complaint maintains that the suit is against the Vice President "in his <u>individual</u> capacity only." Am. Compl. ¶ 11 (emphasis added). However, the only concrete factual allegations with respect to the Vice President concern actions squarely within the performance of official duties. *Cf. Clinton v. Jones*, 520 U.S. 681 (1997) (holding that the President was not immune from a civil suit based on actions alleged to have taken place <u>prior</u> *to* his taking office).

would be particularly vexatious to impose upon the Vice President the burden of having to defend civil lawsuits premised on conduct undertaken in the exercise of the Vice Presidential Office. Plaintiffs also quote John Adams's lament that he held "the most insignificant office." Opp. at 59. But Adams, of course, held office prior to enactment of the Twelfth Amendment, when the Vice President was the electoral runner-up (and likely adversary) to the President, not, as today, when the Vice President is the President's running-mate, united in the public's eye with the President. This close link between the offices is not only a matter of public perception, making both offices "easily identifiable target[s] for suits for civil damages," *Cheney*, 542 U.S. at 386 (*quoting Fitzgerald*, 457 U.S. at 751), but also a functional and operational reality recognized by statute. *See* 3 U.S.C. § 106(a) (2000) (authorizing the use of funding "[i]n order to enable the Vice President to provide assistance to the President in connection with the performance of functions specially assigned to the Vice President by the President in the discharge of executive duties and responsibilities"). Thus, just as with respect to the President, absolute immunity for civil suits based on official conduct would afford the protection needed to ensure the effective functioning of the unique office of the Vice President in the constitutional scheme.

### III.   Plaintiffs' Claims Are Barred by the *Totten* Doctrine and Raise Non-Justiciable Political Questions.

Plaintiffs cannot quarrel with the *Totten* principle – that public policy forbids the "maintenance of any suit . . . the trial of which would lead to the disclosure of matters which the law regards as confidential." *Totten v. United States*, 92 U.S. at 26 (1876). Instead, they seek to evade it, by mischaracterizing the Vice President's motion as seeking "dismiss[al] under the state secrets doctrine," Opp. at 48. They argue that the motion cannot be entertained because "only

the United States government may invoke the state secrets doctrine and here it has not done so."
*Id.* This is the flimsiest of straw-man arguments.

First, the Vice President's memorandum neither asserted the state secrets doctrine
nor sought to invoke the apparatus necessary to establish the factual basis. *See* Defendant Vice
President of the United States Richard B. Cheney's Motion to Dismiss Plaintiffs' Amended
Complaint at 14-17.   Rather, the Vice President's memorandum argued that *Totten* barred
consideration of the case from its very threshold:  the case cannot be heard (1) because Plaintiffs
clearly allege that Mrs. Wilson was a "secret" or "covert" or "classified" agent and (2) because
they intend to make an issue of the content of Mrs. Wilson's own allegedly confidential service
as a government agent. *See* Am. Compl. ¶ 43 ("Mrs. Wilson was impaired in her ability to carry
out her duties at the CIA").  The *Totten* case bars this kind of proceeding outright.  It affords an
"absolute protection" against litigation "in the distinct class of cases that depend upon
clandestine spy relationships."  *Tenet v. Doe*, 544 U.S. 1, 10-11 (2005).

Second, and contrary to Plaintiffs' opposition, the *Totten* doctrine is legally
distinct from the state secrets doctrine.  Less than two years ago, the Supreme Court
unanimously rejected Plaintiffs' position, stating that "[t]here is . . . no basis for [the] view that
the *Totten* bar has been reduced to an example of the state secrets privilege."  *Id.* at 10.  The
question in the present case is not whether *evidence* pertaining to a specific state secret should be
admitted, but rather whether "the very subject matter of the action " should give rise to a
dismissal on the pleadings.  *United States v. Reynolds*, 345 U.S. 1, 11 n.26 (1953).  Plaintiffs'
own characterization of their case as one about a "covert" agent "impaired in her abilities to
carry out her duties," *see* Am. Compl. ¶¶ 42-43, makes plain that dismissal is required under
*Totten.*

Plaintiffs correctly note that not every case that "touch[es] foreign relations lies beyond judicial cognizance," Opp. 50 (*quoting Baker v. Carr*, 369 U.S. 186, 211 (1962)), and they argue that their complaint creates no political question because it "involves no foreign policy decisions." Opp. at 50. Plaintiffs do not even respond to those features of the Amended Complaint that implicate the political question doctrine. They do not disagree that the allegations of conduct by the Vice President involve foreign policy and national security, subjects the Constitution has "textually committed to the political branches of government." *Schneider v. Kissinger*, 412 F.3d 190, 194 (D.C. Cir. 2005), *cert. denied*, 126 S.Ct. 1768 (2006). They do not deny that their suit "would compel the court, at a minimum, to determine whether actions or omissions by [the Vice President] in the area of . . . national security were 'wrongful' under tort law." *Id.* at 196-97 (*quoting Schneider v. Kissinger*, 310 F. Supp. 251, 262 (D.D.C. 2004)). They do not disagree (because the allegations against the Vice President are not remotely wrongful in themselves) that this Court is being asked to conduct a fishing expedition into the inner workings of the Office of the Vice President, a course that by its very nature "express[es] a lack of respect to coordinate branches of government," 412 F. 3d at 198. In short, Plaintiffs have altogether failed to resolve the political-question problem implicated by their Amended Complaint.

## IV.    Qualified Immunity Shields the Vice President from All Claims.

Plaintiffs appear to believe that the mere allegation of wrong-doing is sufficient to puncture the shield of qualified immunity, but they either misunderstand or choose to ignore the law concerning qualified immunity. That doctrine protects officials from suit as long as their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Indeed, qualified immunity is not even defeated by a showing that the defendant violated the

law.  *See Davis v. Scherer,* 468 U.S. 183, 194 (1984) ("Officials sued for constitutional

violations do not lose their qualified immunity merely because their conduct violates some

statutory or administrative provision.").  Rather, Plaintiffs must allege the violation of <u>clearly</u>

<u>established constitutional rights</u>.  They have not done so here.

### A.    Plaintiffs Cannot State Claims Under the First Amendment Because They Cannot—and Did Not—Allege Any Chill.

Confronted with their failure to plead that Mr. Wilson's speech was chilled in any

way, Plaintiffs argue that Mr. Wilson can state a claim for First Amendment retaliation simply

because other people, people of only "ordinary firmness," would have been chilled in their

speech.  Yet they do not even address this Court's rationale in *Hatfill v. Ashcroft*, 404 F. Supp.

2d 104 (D.D.C. 2005), which precludes their argument.  *Hatfill* made clear that "[t]o prevail on a

First Amendment retaliation claim, a plaintiff must prove that (1) he has an interest protected by

the First Amendment; (2) defendants' actions were motivated or substantially caused by his

exercise of that right; and (3) <u>defendants' actions effectively chilled the exercise of his First</u>

<u>Amendment right</u>."  *Id*. at 118 (*quoting Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d. Cir.

2001).   In reaching its conclusion that a motion to dismiss was appropriately granted where no

chill was alleged, the *Hatfill* court held that:

> Dr. Hatfill has continued to fully exercise his First Amendment right to
> comment on the investigation and seek redress for alleged wrongs that
> have purportedly been committed in the course of the investigation.  And
> where a party can show no change in his behavior, he has quite plainly
> shown no chilling of his First Amendment right to free speech . . . .
> Accordingly, Dr. Hatfill, having failed to show that his First Amendment
> rights were *actually chilled*, has not stated a claim for which relief can be
> granted with respect to his First Amendment claim.

*Id*. at 118-19 (citations omitted).  Nor is the analysis altered by Plaintiffs' citation of cases

holding that something barely more than *de minimis* harm is sufficient.  Here, Plaintiff Mr.

Wilson has pled <u>no harm at all</u> to his First Amendment right to speech.  In the absence of <u>any</u> chill to his speech, he does not state a claim of a clearly established right.

Moreover, the requirement of chill is not only an element of Mr. Wilson's cause of action.  It also flows from the doctrine of standing itself.  <u>Plaintiffs must plead chill because, in its absence, they have pled no injury.</u>   Unless there was a "concrete and particularized" injury to Wilson in the form of chill to his speech, he lacks constitutional standing.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).  Having pled no injury in the form of chill, Plaintiffs simply do not state violations of clearly established rights.

**B.      Plaintiffs Do Not State a Claim of a Clearly Established Right Under the Equal Protection Clause.**

Plaintiffs' equal protection claim is just a dressed-up First Amendment claim.  Even if this Court were to credit Plaintiffs' fact-deficient allegations of an "agreement" among the Defendants, Plaintiffs in this case are alleging that the Defendants agreed to single them out for criticism.  Defendants all argued this in their Motions to Dismiss, but Plaintiffs did not even respond to the numerous cited decisions rejecting equal protection claims that collapse into a First Amendment claim.  *See, e.g., Ratliff v. DeKalb County*, 62 F.3d 338, 340-41 (11th Cir. 1995); *Vukadinovich v. Bartels*, 853 F.2d 1387 (7th Cir. 1988); *Thompson v. City of Starkville*, 901 F.2d 465 (5th Cir. 1990).  Nor do Plaintiffs address the ample authority establishing that the Constitution is not violated when the Government merely speaks out against or criticizes individuals.  *See, e.g., Penthouse Int'l., Ltd. v. Meese*, 939 F.2d 1011, 1015 (D.C. Cir. 1991) ("As part of the duties of their office, these officials surely must be expected to be free to speak out to criticize practices, even in a condemnatory fashion.").

Rather than addressing these cases, Plaintiffs rely exclusively on the Supreme Court case *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000), to resuscitate their equal

protection claim. In *Olech*, the Court held that the petitioner could state a claim as a "class of one" for an equal protection violation where the Village in which she lived intentionally demanded a 33-foot easement from her when it required only fifteen feet from other similarly situated property owners. But *Olech* is simply not on point here, where Plaintiffs have alleged a deprivation of equal protection in the form of criticism. Moreover, no factual allegations support assertions of such a claim against the Vice President. No clearly established authority permits them to base an equal protection claim on the allegations that the Vice President told his Chief of Staff that Mrs. Wilson worked for the CIA and jotted down notes on a newspaper op-ed piece. As against the Vice President, they simply have not stated the violation of a clearly established right under the Equal Protection clause.

### C.   Plaintiffs Do Not State a Claim of a Clearly Established Right to Informational Privacy.

Plaintiffs themselves concede in their Opposition that "the Supreme Court has not defined the precise contours of the right to privacy." Opp. at 20. They also make note of the fact – as though it were a curiosity or diversion – that "Defendants rely heavily on the D.C. Circuit's decision in *American Federation of Government Employees v. Dep't of Housing and Urban Development*, 118 F.3d 786 (D.C. Cir. 1997). But in that case, the court expressly declined to rule on whether there is a constitutional right to informational privacy protected by the due process clause. *Id.* at 791-792." Opp. at 21-22 (emphasis added). And that is precisely the point. Government officials can only be held liable for constitutional torts where the right they are alleged to have violated is "clearly established," and Plaintiffs explicitly acknowledge that the D.C. Circuit has "expressly declined to rule on whether there is a constitutional right to informational privacy." Opp. at 22. Plaintiffs have conceded that there is no clearly established

right to privacy in the D.C. Circuit, and have therefore conceded that Vice President Cheney is entitled to qualified immunity on this claim.

Faced with their own inescapable concession, Plaintiffs resort to a strange argument. They seem to say that, even though it is not even clear that there is any right to informational privacy at all, there is a clearly established right to informational privacy "where the defendants' disclosure of personal information places an individual in danger." Opp. at 22. In the absence of a clear holding establishing any right to privacy at all, there can be no clearly established subset of that non-right.

Plaintiffs nonetheless attempt to shoehorn into their informational privacy count a theory of recovery called the "state endangerment" doctrine. Their effort is doomed to failure. First, the "state endangerment" theory was not pled in their Complaint. Second, the D.C. Circuit has never established that that doctrine has any relation to a right to privacy; nor do the D.C. Circuit cases Plaintiffs cite have any connection to the right to informational privacy. D.C. courts have applied the state-endangerment doctrine to the case of a police informant who was beaten to death as part of a sting operation conducted by the D.C. police, *see Butera v. District of Columbia*, 235 F.3d 637, 649 (D.C. Cir. 2001),[4] and to consider compensation to the families of postal workers who died from inhaling anthrax after their supervisors lied to them about the contamination in the facility and threatened to fire them if they did not activate the contaminated machine, *see Briscoe v. Potter*, 355 F. Supp. 2d 30, 43 (D.D.C. 2004). But those cases hold that the state endangerment doctrine is one in which "an individual can assert a substantive due process right to protection . . . from third-party violence when . . . officials affirmatively act to

---

[4] Although it found the state endangerment doctrine applied, the *Butera* Court nonetheless dismissed the claim on grounds of qualified immunity because the right to be free from state endangerment was not clearly established under the law of the D.C. Circuit at the time of the incident. *Butera*, 235 F.3d at 654.

increase or create the danger that ultimately results in the individual's harm." *Butera*, 235 F. 3d at 651. Plaintiffs have not, however, asserted the existence of any third-party violence here. At most, they have pled that they fear for their safety. Am. Compl. ¶ 42, Opp. at 26 . But *Butera* and *Briscoe* concerned <u>violence</u>, not fear, and Plaintiffs' Complaint neither alleges state-endangerment nor sets forth allegations sufficient to invoke that theory.

The only case that Plaintiffs cite that could provide some connection between the state endangerment doctrine and this case is *Kallstrom v. City of Columbus*, 136 F.3d 1055 (6th Cir. 1998). In that case, the Sixth Circuit did hold that a right to informational privacy protected undercover officers from having their identities shared with counsel for accused criminals. However, *Kallstrom*'s holding is not the law of this Circuit. Again, as Plaintiffs themselves acknowledge, the D.C. Circuit has "expressly declined to rule on whether there is a constitutional right to informational privacy protected by the due process clause." Opp. at 22. In the absence of such a holding, Plaintiffs have not pled the violation of a clearly established right, and the Vice President is therefore entitled to qualified immunity.

**D.    Plaintiffs Do Not State a Claim of a Clearly Established Right Under the Fifth Amendment's Protections from Deprivation of Property Without Due Process.**

Plaintiffs' Opposition attempts to clarify their conceptually-muddled complaint: the Opposition appears to say that Count IV asserts a violation only of Mrs. Wilson's property interest, and not a liberty interest in future employment. Specifically, Mrs. Wilson argues that although she had no property right as against the CIA itself, she nevertheless possessed a property right in her status as against Defendants. Plaintiffs' argument is badly mistaken. She acknowledges that the Director of the CIA had full authority to <u>terminate</u> her employment at any time without process "whenever he shall deem such termination necessary or advisable in the interests of the United States," *see* Opp. at 29 (*quoting Doe v. Gates*, 981 F.2d 1316, 1320 (D.C.

Cir. 1993), but she appears to claim that the fact that third parties were allegedly the source of the disclosure somehow vests her with a property right she cannot assert against her employer (because it does not exist). *See* Opp. at 29 (arguing that the fact that the CIA Director could fire her at any time "[did] not mean she did not have a reasonable expectation of continued employment <u>relative to the actions of others</u> outside of the CIA") (emphasis added). Plaintiffs have no legal support for the type of "springing" property interest they assert, and the Court is left to guess at the meaning of a right to "employment relative to the actions of others." Again, Mrs. Wilson does not allege that she was fired or terminated—indeed, she pled that her employment with the CIA continued for two years after the publication of Novak's column. Am. Compl. ¶ 7. All that she alleges is that her employment status was made public. Her argument can therefore only be that she had a property right in the <u>secrecy</u> of her employment status with respect to those outside the CIA. But if Plaintiff had no <u>property</u> interest in the job at all (as the Opposition acknowledges), one wonders what property interest could have been impaired by the alleged disclosure that she held that job.

Further, it is difficult to understand how the Vice President could have deprived her of this property interest simply by disclosing to his own Chief of Staff that she worked at the CIA. Plaintiff does not allege that the Vice President ever shared her status with any member of the media or anyone outside the White House, and therefore does not state a claim for breach of a clearly established right against him.

### E. Plaintiffs' Claim for Public Disclosure of Private Facts Must Be Dismissed Under the Westfall Act.

For the reasons set forth in the Government's Reply Memorandum in Support of the United States' Motion to Dismiss, Plaintiffs' claim for public disclosure of private facts must be dismissed under the Westfall Act.

V.    **Special Factors Counsel Hesitation in Recognizing the *Bivens* Claims Plaintiffs Assert.**

Defying 25 years of *Bivens* jurisprudence, Plaintiffs sweepingly state that "[t]here are no factors that counsel against recognizing Plaintiffs' constitutional claims under *Bivens*," Opp. at 51. That contention is demonstrably erroneous.

A.    **The Privacy Act Counsels Hesitation.**

Plaintiffs mistakenly assert that "[s]ince the [Privacy] Act does not apply [to the Vice President], it obviously cannot be a basis for denying a *Bivens* cause of action." Opp. at 52. If this is obvious, it has so far escaped the attention of the Supreme Court and various courts of appeals. Numerous decisions make clear that where Congress has devised a comprehensive remedial scheme addressing rights of the type asserted by a plaintiff, the mere fact that such comprehensive scheme does not provide specific relief to an individual plaintiff does not support the extension of a *Bivens* remedy to such a plaintiff. Where "the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, [the Supreme Court has] not created additional *Bivens* remedies." *Schweiker v. Chilicky*, 487 U.S. 412, 423 (1988). Further, as the D.C. Circuit held in *Spagnola v. Mathis,* 859 F.2d 223 (D.C. Cir. 1988):

> After *Chilicky*, it is quite clear that if the Congress has "not <u>inadvertently</u>" omitted damages against officials in the statute at issue, <u>then courts must abstain from supplementing Congress' otherwise comprehensive statutory relief scheme</u> with *Bivens* remedies—unless, of course, Congress has clearly expressed a preference that the judiciary preserve *Bivens* remedies.

*Id*. at 228 (emphases added).

Two recent D.C. Circuit cases put beyond any doubt that the Privacy Act is a comprehensive remedial scheme for the kinds of harm Plaintiffs allege. In *Chung v. DOJ*, 333 F.3d 273 (D.D.C. 2003), a Taiwanese businessman sued the DOJ for disclosing his cooperation

with a federal investigation into campaign donations.  The Privacy Act did not provide for

liability against the DOJ officers, but the D.C. Circuit affirmed the District Court's conclusion

that the claims were "encompassed within the remedial scheme of the Privacy Act."  *Id.* at 274.

And in *Hatfill v. Ashcroft*, 404 F. Supp. 2d 104, 108 (D.D.C. 2005), the District Court held that

although the Privacy Act did not allow plaintiff to bring suit against the FBI officers who

publicly named him as a "person of interest" in the anthrax investigations, the court found that

the Privacy Act was nonetheless a "comprehensive legislative scheme that provides a meaningful

remedy" and thus counseled hesitation in recognizing *Bivens* remedies.  *Id.* at 116.

   There can be no doubt that the Privacy Act has repeatedly been held to be a

comprehensive remedial scheme with respect to the kinds of harm Plaintiffs allege.  Nor are

Plaintiffs entitled to a judicially-created *Bivens* remedy merely because the Office of the

President and Office of the Vice President are not agencies within the scope of the Privacy Act.

*See* Opp. at 52.  As the court explained in *Schwarz v. U.S. Dept. of Treasury*, 131 F.Supp.2d 142,

147-148 (D.D.C. 2000), *aff'd*, 2001 WL 674636 (D.C. Cir. 2001), "[o]ffices within the White

House whose functions are limited to advising and assisting the President do not come within the

definition of an 'agency' within the meaning of FOIA or the Privacy Act.  This includes the

Office of the President (and by analogy the Office of the Vice President) and undoubtedly the

President and Vice President themselves."  However, the exclusion of the Offices of the

President and Vice President from the Privacy Act would only warrant the creation of a *Bivens*

remedy if Congress had "inadvertently" declined to include them in its comprehensive remedial.

*Spagnola*, 859 F.2d at 228.  Here, Congress's failure to include the Offices of the President and

Vice President was not inadvertent, but <u>purposeful</u>.  Courts have noted that Congress specifically

declined to include the Office of the President and the Office of the Vice President because of

separation-of-powers considerations. *See Tripp v. Executive Office of President*, 200 F.R.D. 140, 144 (D.D.C. 2001) ("Congress's exercise of this type of control over the President . . . [under the Privacy Act would create] separation of powers and other constitutional concerns."); *Jones v. Executive Office of the President*, 167 F. Supp. 2d 10, 15 (D.D.C. 2001) ("[T]o subject the White House Office to the terms of the Privacy Act 'raises constitutional concerns, including separation of powers and Article II confidentiality . . . .'") (*quoting Barr v. Executive Office of President*, No. 99-CV-1695, 2000 WL 34024118, at *2 (D.D.C. Aug. 9, 2000)). Congress's decision specifically to exclude the Offices of the President and Vice President from the Privacy Act's comprehensive remedial scheme precludes this Court from creating a *Bivens* remedy against the Vice President here. This Court "must abstain from supplementing Congress' otherwise comprehensive statutory relief scheme." *Spagnola*, 859 F. 2d. at 229.

**B.    Other Factors Counsel Hesitation in Recognizing the New *Bivens* Remedies Sought Here.**

As set forth at pages 29-31 of the Vice President's Motion to Dismiss, the Intelligence Identities Protection Act, the presence of non-justiciable political questions, and the concern addressed by the *Totten* doctrine are additional factors counseling hesitation.

## CONCLUSION

For the reasons set forth above, as well as for the reasons stated in the Vice President's opening memorandum, Plaintiffs' Amended Complaint should be dismissed in its entirety.

Respectfully submitted,

/s/  Terrence O'Donnell

Terrence O'Donnell (D.C. Bar # 26849)
Emmet T. Flood (D.C. Bar # 448110)

Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Phone:  (202) 434-5000
Fax:  (202) 434-5029
todonnell@wc.com
eflood@wc.com

*Attorneys for Vice President of the United States
Richard B. Cheney in his individual capacity*

Dated: February 15, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of February, 2007, a copy of the foregoing Defendant Vice President of the United States Richard B. Cheney's Reply in Support of Motion to Dismiss Plaintiffs' Amended Complaint was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ Emmet T. Flood
Emmet T. Flood (D.C. Bar # 448110)