**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| VALERIE PLAME WILSON and JOSEPH C. WILSON IV, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 06-CV-1258 |
| I. LEWIS (a/k/a/ "SCOOTER") LIBBY, JR., KARL C. ROVE, RICHARD B. CHENEY and JOHN DOES NO. 1-10, | ) ) ) ) | |
| Defendants. | ) ) ) | |

**DEFENDANT I. LEWIS LIBBY'S REPLY IN SUPPORT
OF HIS MOTION TO DISMISS THE COMPLAINT**

Theodore V. Wells, Jr. (DC Bar 468934)
James L. Brochin (DC Bar 455456)
PAUL, WEISS, RIFKIND, WHARTON
 & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
(212) 373-3089 (telephone)
(212) 373-2217 (facsimile)

William H. Jeffress, Jr. (D.C. Bar 041152)
Alex J. Bourelly (D.C. Bar 441422)
BAKER BOTTS, LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C.  20004-2400
(202) 639-7700 (telephone)
(202) 639-7890 (facsimile)

# TABLE OF CONTENTS

I.    Plaintiffs Have No Cause of Action Under *Bivens* ........................................................... 2

      A.    Further Expansion of *Bivens* is Unwarranted ........................................................... 2

      B.    Special Factors Counsel Hesitation in the Creation of *Bivens* Remedies Here ........ 3

II.    Plaintiffs Have Not Pleaded Violations of Constitutional Rights, Much Less the
      "Clearly Established" Rights Necessary to Overcome Qualified Immunity ..................... 7

      A.    Count I Does Not State a Viable Claim for Violation of the First Amendment ........ 7

      B.    Plaintiffs' Equal Protection Claim is an Invalid Restatement of Their First
            Amendment Retaliation Claim ............................................................................... 12

      C.    Count III Does Not State a Viable Claim for Violation of Plaintiffs' Right to
            Privacy ................................................................................................................... 14

      D.    Count IV Fails Because Plaintiffs Have Not Alleged Deprivation of a
            Recognized Property Right .................................................................................... 20

III.   Plaintiffs' Claims Are Barred by the Statute of Limitations............................................ 21

      A.    Plaintiffs' Claims Are All Subject to a One-Year Limitations Period.................... 21

      B.    There is No Basis for Tolling the Limitations Period............................................. 22

IV.   Libby Must Be Dismissed from Count V ....................................................................... 24

CONCLUSION ........................................................................................................................ 25

# TABLE OF AUTHORITIES

## CASES

*Am. Fed'n of Gov't Employees v. HUD*, 118 F.3d 786 (D.C. Cir. 1997) ............................ 14, 16

*Anderson v. Creighton*, 483 U.S. 635 (1987) .................................................... 11, 12

*Baltimore Sun Co. v. Ehrlich*, 437 F.3d 410 (4th Cir. 2006) ...........................................10

*Barry v. City of New York*, 712 F.2d 1554 (2d Cir. 1983) ............................................ 15

*Beattie v. Boeing Co.*, 43 F.3d 559 (10th Cir. 1994) ................................................... 4

*Bivens* v. *Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971)................................ 1, 3

*Black v. Stephens*, 662 F.2d 181 (3d. Cir. 1981) .......................................................18

*Blankenship v. Manchin*, 471 F.3d 523 (4th Cir. 2006)................................................10

*Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972) ...................................... 20

*Boyd v. Ill. State Police*, 384 F.3d 888 (7th Cir. 2004)............................................... 13

*Bush v. Lucas*, 462 U.S. 367 (1983) ......................................................... 2, 3, 4, 6

*Butera v. Dist. of Columbia*, 235 F.3d 637 (D.C. Cir. 2001)....................... 11, 12, 17, 18, 19, 20

*Cain v. Tigard-Tualatin Sch. District*, 262 F.Supp.2d 1120 (D.Or. 2003) ..............................7, 8

*Chappell v. Wallace*, 462 U.S. 296 (1983) ......................................................... 2, 3

*Chung v. U.S. Dep't of Justice,* 333 F.3d 273 (D.C. Cir. 2003) ...................................... 7

*Cobb v. Pozzi*, 363 F.3d 89 (2d Cir 2003). .......................................................... 14

*Collins v. Harker Heights*, 503 U.S. 115 (1992) .................................................... 16

*Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001)................................................... 2

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998)...................................... 17, 18, 19

*Curley v. Village of Suffern*, 268 F.3d 65 (2d. Cir. 2001)............................................9, 11

*Dangler ex rel. Dangler v. Yorktown Central Schools*, 771 F.Supp. 625 (S.D.N.Y. 1991) ............8

*Davis v. Passman*, 442 U.S. 228 (1979) ..............................................................2

*Dellums v. Powell*, 566 F.2d 167 (D.C. Cir. 1977).....................................................................2

*DeMuria v. Hawkes*, 328 F.3d 704 (2d Cir. 2003) ................................................................ 13

*Dep't of the Navy v. Egan*, 484 U.S. 518 (1988) .....................................................................21

*Diamond v. Davis*, 680 A.2d 364 (D.C. Ct. App. 1996)..................................................23, 24

*Doe v. Gates*, 981 F.2d 1316 (D.C. Cir. 1993) ...................................................................... 21

*Dotson v. Griesa*, 398 F.3d 156 (2d Cir. 2005) .........................................................................6

*Downie v. City of Middleburg Heights*, 301 F.3d 688 (6th Cir. 2002) ...................................7

*Estate of Phillips v. Dist. of Columbia*, 455 F.3d 397 (D.C. Cir. 2006) .......................16, 19

*FDIC v. Meyer*, 510 U.S. 471 (1994) ..................................................................................2, 3

*Fitzgerald v. Seamans*, 553 F.2d 220 (D.C. Cir. 1977) ........................................................ 24

*Fraternal Order of Police v. Williams*, 375 F.3d 1141 (D.C. Cir. 2004) ......................18, 19

*Gill v. Pidlypchak*, 389 F.3d 379 (2d Cir. 2004)................................................................... 10

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) .......................................................................... 10

*Hatfill v. Ashcroft*, 404 F. Supp. 2d 104 (D.D.C. 2005) ................................... 5, 8, 9, 10

*Haynesworth v. Miller*, 820 F.2d 1245 (D.C. Cir. 1987) ........................................................2

*Hobson v. Wilson*, 737 F.2d 1 (D.C. Cir. 1984)..................................................................... 24

*Holly v. Scott*, 434 F.2d 287 (4th Cir. 2006)............................................................................3

*Hunter v. Bryant*, 502 U.S. 224 (1991)................................................................................. 11

*In re Crawford*, 194 F.3d 954 (9th Cir. 1999) ...................................................................... 15

*J.P. v. DeSanti*, 653 F.2d 1080 (6th Cir. 1981).................................................................15, 16

*Kallstrom v. City of Columbus*, 136 F.3d 1055 (6th Cir. 1998)............................................19

*Kounitz v. Slaaten*, 901 F.Supp. 650 (S.D.N.Y. 1995) ......................................................8, 9

*Laird v. Tatum*, 408 U.S. 1 (1972)........................................................................................10

*Malley v. Briggs*, 475 U.S. 335 (1986) ............................................................................ 11, 20

*McClam v. Barry*, 697 F.2d 366 (D.C. Cir. 1983) ....................................................21, 22, 23

*Norris v. Dist. of Columbia*, 737 F.2d 1148 (D.C. Cir. 1984) .................................................... 18

*Owens v. Okure*, 488 U.S. 235 (1989) ........................................................................................ 22

*Pittsley v. Warish*, 927 F.2d 3 (1st Cir. 1991).............................................................................. 18

*Plante v. Gonzalez*, 575 F.2d 1119 (5th Cir. 1978) ..................................................................... 15

*R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427 (6th Cir. 2005) ...................................... 13

*Ratliff v. DeKalb County*, 62 F.3d 338 (11th Cir. 1995)............................................................... 14

*Saucier v. Katz*, 533 U.S. 194 (2001) .......................................................................................... 12

*Scarbrough v. Morgan County Bd. of Educ.*, 470 F.3d 250 (6th Cir. 2006) ................................ 13

*\*Schweiker v. Chilicky*, 487 U.S. 412 (1988) ................................................................... 2, 3, 4, 6

*\*Seigert v. Gilley*, 895 F.2d 797 (D.C. Cir. 1990) .......................................................11, 12, 20, 21

*Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004)............................................................................. 3

*So. Growers, Inc. v. Veneman*, 2006 WL 2244628 (D.D.C. Aug. 4, 2006)................................. 13

*Spagnola v. Mathis*, 859 F.2d 223 (D.C. Cir. 1988) ...................................................................... 6

*Suarez Corp. Indus. v. McGraw*, 202 F.3d 676 (4th Cir. 2000) .................................................... 9

*Tenet v. Doe*, 544 U.S. 1 (2005) ..................................................................................................... 4

*Toolaprashad v. Bureau of Prisons*, 286 F.3d 576 (D.C. Cir. 2002)........................................ 9, 10

*Totten v. United States*, 92 U.S. 105 (1876) .................................................................................. 4

*United States v. Stanley*, 483 U.S. 669 (1987).............................................................................. 2

*United States v. Westinghouse Electric Corp.*, 638 F.2d 570 (3d Cir. 1980) .............................. 15

*Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) ................................................................. 12

*Vukadinovich v. Bartels* 853 F.2d 1387 (7th Cir. 1988) .............................................................. 14

*Walls v. City of Petersburg*, 895 F.2d 188 (4th Cir. 1990)...................................................... 15, 16

*Williams v. Dep't of Veteran Affairs*, 879 F. Supp. 578 (E.D. Va. 1995).................................... 6

*Willowbrook v. Olech*, 528 U.S. 562 (2000).................................................................................. 12

*Wilson v. Garcia*, 471 U.S. 261 (1985) ........................................................................................ 22

iv

*Wilson v. Layne*, 526 U.S. 603 (1999) ....................................................................... 16

*Zweibon v. Mitchell*, 720 F.2d 162 (D.C. Cir. 1983) ................................................ 10

**STATUTES**

D.C. Code § 12-301 .......................................................................................................22

Privacy Act, 5 U.S.C. § 552a .....................................................................................5, 7

Civil Service Reform Act, 5 U.S.C. § 7513, *et seq*.....................................................5

Westfall Act, 28 U.S.C. § 2679 ....................................................................................25

The Intelligence Identities Protection Act of 1982, 50 U.S.C. §§ 421 *et seq*. .........................5, 12

**MISCELLANEOUS**

R. Jeffrey Smith, *Armitage Believes He Was Novak's Source on Plame*,
Wash. Post, Sept. 8, 2006, at A3 ...................................................................................19

Plaintiffs do not dispute that, given "what is now known" about Robert Novak's public disclosure "of Valerie Plame Wilson's employment at the CIA, the allegation that Libby" is responsible for it "is preposterous." Libby Mem. 1. There is no dispute that Novak learned of Mrs. Wilson's CIA employment from another source—not from Libby. Nor can there be any dispute that, once Novak published the story, Mrs. Wilson's CIA employment was public and nothing Libby had done or could do would alter that fact. For that reason alone, the suit against Libby is baseless. To hold Libby liable, plaintiffs will have to prove that Libby *caused* their alleged injuries. But the critical element of causation is clearly lacking: Novak published Mrs. Wilson's CIA employment status—allegedly producing plaintiffs' injuries—without information from Libby.[1]

In any event, the Amended Complaint must be dismissed for failure to state a claim. Although plaintiffs purport to proceed under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), for four of the five counts in the complaint, that implied cause of action has not been extended for 25 years and cannot be extended to this new context. Plaintiffs' constitutional claims fail to establish a violation of their constitutional rights, much less the violation of clearly established law necessary to overcome qualified immunity. And, although plaintiffs struggle mightily to excuse their delay in bringing this action, their untimely claims are clearly barred by the statute of limitations.

---

[1] Perhaps for that reason, plaintiffs litter their brief with language suggesting that the defendants were engaged in a conspiracy. *See, e.g.*, Pl. Opp. 24 (defendants "acted . . . as part of an overall conspiracy to retaliate"); 30 ("defendants . . . collectively publicized that Valerie Wilson was a secret operative"); 31 n. 3 ("concerted effort to reveal publicly Mrs. Wilson's status"); 45 ("conspiracy"). But plaintiffs dropped their civil conspiracy claim in their Amended Complaint, contrast Complaint ¶¶ 59-63 with Amended Complaint, when it became clear that Ambassador Armitage was the source for Novak's newspaper column. And plaintiffs in any event do not suggest that Libby counseled, directed, or ordered Ambassador Armitage to reveal Mrs. Wilson's status. As a result, there can be no claim that Libby caused the revelation.

1

I.    **Plaintiffs Have No Cause of Action Under *Bivens***

A.    **Further Expansion of *Bivens* is Unwarranted**

Plaintiffs do not deny that, for more than a quarter of a century, the Supreme Court "has 'consistently refused to extend *Bivens* liability to any new context or categories of defendants.'" Libby Mem. 6 (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001)).  The Supreme Court has declined to extend *Bivens* to First Amendment violations in the federal employment context, *Bush v. Lucas*, 462 U.S. 367 (1983); to claims against superior officers who injure enlisted personnel, *Chappell v. Wallace*, 462 U.S. 296 (1983); to military personnel if "the injury arises out of activity 'incident to service,'" *United States v. Stanley*, 483 U.S. 669, 681 (1987); to due process violations in the Social Security context, *Schweiker v. Chilicky*, 487 U.S. 412, 426-27 (1988); to suits against instrumentalities created by federal law, *FDIC v. Meyer*, 510 U.S. 471, 484-86 (1994); and to suits against corporations, *Malesko*, 534 U.S. at 68.

Plaintiffs do not attempt to justify extending *Bivens* to this new context.  Rather, they argue that no extension is necessary because "[i]t is already clearly established that *Bivens* remedies exist for violation[s]" of the First and Fifth Amendments.  Pl. Opp. 51.  The Supreme Court, however, does not extend *Bivens* constitutional amendment by constitutional amendment. Instead, it considers whether to extend *Bivens* to each "new context" and each new "categor[y] of defendants"—and has refused every proposed extension for 25 years.  *Malesko*, 534 U.S. at 68; Libby Mem. 6-7.  Thus, plaintiffs err in implying that *Davis v. Passman*, 442 U.S. 228 (1979), *Haynesworth v. Miller*, 820 F.2d 1245 (D.C. Cir. 1987), and *Dellums v. Powell*, 566 F.2d 167 (D.C. Cir. 1977), recognize *Bivens* remedies for all claims that "arise under the First and Fifth Amendments."  Pl. Opp. 51.  The Supreme Court declined to extend *Bivens* to the First Amend-ment claims in *Bush*, 462 U.S. at 372-73, 386, 388, despite *assuming* that the plaintiff's rights had been violated.  The Supreme Court declined to extend *Bivens* to encompass the Fifth

Amendment procedural due process claims asserted in *Schweiker*, 487 U.S. at 429, and *Meyer*, 510 U.S. at 474, despite having extended *Bivens* to another category of due process claims in *Davis*. And it likewise rejected extending *Bivens* to encompass the Fifth Amendment equal protection claims asserted in *Chappell*, 462 U.S. at 297.

Here, plaintiffs do not seek the application of *Bivens* to a well-established context. They seek to extend it to a wholly new one: claims by former CIA employees and their spouses that the employees' alleged status as a covert operative—*i.e.*, the alleged fact that she was a spy—was wrongfully disclosed. Given the Supreme Court's refusal to extend *Bivens* to any new contexts or classes of defendants for 25 years, the notion that a judicially created cause of action should be extended here borders on the absurd. Indeed, as discussed below, "special factors" do not merely "counsel" against that extension. They all but preclude it.

**B.    Special Factors Counsel Hesitation in the Creation of *Bivens* Remedies Here**

The "reluctance to extend *Bivens* is not without good reason." *Holly v. Scott*, 434 F.3d 287, 289 (4th Cir. 2006). Because the cause of action under *Bivens* "is implied" by courts "without any express congressional authority whatsoever," it is "hardly the preferred course." *Id.* Rather, the "decision to create a private right of action is" generally "better left to legislative judgment," *Sosa v. Alvarez-Machain*, 542 U.S. 692, 727 (2004), because Congress generally "is in a better position to decide whether or not the public interest would be served" by imposing a "new substantive legal liability," *Chilicky*, 487 U.S. at 426-27; *see* Libby Mem 7-9.

1.    The implied cause of action in *Bivens* cannot be extended to new contexts if there are any "special factors counselling hesitation by the court in the absence of affirmative action by Congress." *Bivens*, 403 U.S. at 396. The context of this case itself provides special reasons counseling hesitation. *See* Libby Mem. 14-15. This is a suit by an individual claiming that she was a covert CIA operative, and that her cover was wrongfully blown by other government

3

officials. The Supreme Court has declined to extend *Bivens* to First Amendment claims by ordinary government employees because "the Legislature is far more competent than the Judiciary to carry out the necessary 'balancing [of] governmental efficiency and the rights of employees.'" *Chilicky*, 487 U.S. at 423 (quoting *Bush*, 462 U.S. at 390). *A fortiori* the Legislative and Executive branches have superior competence in balancing those needs when the employee at issue claims to have been a spy.

*Bivens* claims by supposed covert operatives, moreover, implicate difficult security and confidentiality concerns. They will, for example, often require the disclosure of confidential information, such as whether the plaintiff truly was a covert operative or, worse still, whether there are legitimate but confidential reasons for the disclosure. In *Tenet v. Doe*, 544 U.S. 1, 8-10 (2005), the Supreme Court invoked similar concerns in establishing an across-the-board rule barring putative spies from bringing breach of contract actions against the government: "[P]ublic policy forbids the maintenance of *any suit* . . . which would inevitably lead to the disclosure of matters which the law itself regards as confidential." *Id.* at 8 (quoting *Totten v. United States*, 92 U.S. 105, 107 (1876)); *cf. Beattie v. Boeing Co.*, 43 F.3d 559, 563 (10th Cir. 1994) (national security clearances a special factor counseling against recognizing *Bivens* claim). Any balance between the creation of an individual remedy and the potential for judicial intrusion into the government's intelligence agencies must be drawn by Congress. The federal courts ought not, on their own, create a judicial cause of action that requires them to strike that balance without guidance from the coordinate branches.

Plaintiffs' rejoinder—that this case involves "no state secret to be protected, only ruined lives to be reclaimed," Pl. Opp. 49—is unresponsive. The point is not that Mrs. Wilson's alleged status as a CIA operative is a state secret in this particular case. Rather, it is that the judiciary

should not on its own create a cause of action that intrudes on the relationship between the government and its operatives, and that may require inquiry into the inner workings of the CIA and the White House on matters related to national security—such as who is a covert operative and whether disclosure was in the government's interest—without any authorization or guidance from Congress and the Executive.

2. Here, moreover, Congress has carefully established a web of federal statutes that comprehensively regulate the issues being litigated. *See* Libby Mem. 9-14. All of plaintiffs' claims stem from the alleged disclosure of Mrs. Wilson's employment with the CIA. But Congress addressed that precise issue in the Intelligence Identities Protection Act ("IIPA"), 50 U.S.C. §§ 421-426, which establishes criminal penalties for the knowing disclosure of the names and identities of intelligence agents working undercover. Congress addressed unlawful government disclosure of an individual's information and records more generally under the Privacy Act, 5 U.S.C. § 552a, which creates a private cause of action against the offending government agency, but not against individual officers. Finally, Mrs. Wilson alleges impairment of her ability to pursue her career at the CIA. Am. Compl. ¶ 43. The Civil Service Reform Act, 5 U.S.C. § 7513 *et seq.*, and the regulations thereunder provide a comprehensive remedial scheme for federal employees alleging that they suffered adverse personnel actions.

That Congress has created comprehensive statutory regimes to address those areas—and determined whether and to what extent private causes of action should be recognized—precludes judicial supplementation through *Bivens*. Simply put, the courts ought not create a remedy Congress itself has chosen to withhold. For that reason, court after court has concluded that the Privacy Act and the Civil Service Reform Act preclude *Bivens* claims that fall within their penumbra. *See, e.g.*, *Hatfill v. Ashcroft*, 404 F. Supp. 2d 104, 115-17 (D.D.C. 2005) (declining

to recognize *Bivens* claim in light of Privacy Act); *Williams v. Dep't of Veteran Affairs*, 879 F.

Supp. 578, 586-87 (E.D. Va. 1995) (same); *Bush*, 462 U.S. at 367 (declining to recognize *Bivens*

action in light of CSRA); *Spagnola v. Mathis*, 859 F.2d 223, 228 (D.C. Cir. 1988) (en banc)

(same).

Plaintiffs argue that "these statutes are not a reason to preclude a *Bivens* remedy because

none provides a basis for relief" against the defendants here.  Pl. Opp. 52; see *id.* at 51 ("only

possible remedy").  But the Supreme Court has flatly rejected that argument.  "The absence of

statutory relief for a constitutional violation . . . does not by any means necessarily imply that

courts should award money damages against the officers responsible for the violation."

*Schweiker*, 487 U.S. at 421-22.  To the contrary, where Congress has legislated and opted not to

provide a private civil remedy against the government officer, "courts should defer to Congress'

judgment" not to establish that remedy.  *Spagnola*, 859 F.2d at 227-28.  "[T]he concept of

'special factors counseling hesitation'" necessarily "include[s] an appropriate judicial deference

to indications that congressional inaction has not been inadvertent."  *Dotson v. Griesa*, 398 F.3d

156, 167 (2d Cir. 2005) (quoting *Chilicky*, 487 U.S. at 423).  "[I]t is the overall comprehensive-

ness of the statutory scheme at issue, *not the adequacy of the particular remedies afforded*, that

counsels judicial caution in implying *Bivens* actions."  *Id.* at 166-67 (emphasis added).

In *Spagnola*, for example, the D.C. Circuit held that the comprehensiveness of the Civil

Service Reform Act ("CSRA") precluded a remedy for certain employees, even though the

CSRA itself provided them no relief, because "Congress's omission of a damages remedy . . .

was anything but inadvertent."  859 F.2d at 229; *see Dotson*, 398 F.3d at 168-69 (same).

Likewise here, Congress established a comprehensive set of statutes to address the disclosures at

issue. Plaintiffs are confined to the remedies provided by those statutes, and the federal courts are not free to create, by judicial implication, remedies that Congress itself declined to provide.[2]

## II.    Plaintiffs Have Not Pleaded Violations of Constitutional Rights, Much Less the "Clearly Established" Rights Necessary to Overcome Qualified Immunity

### A.    Count I Does Not State a Viable Claim for Violation of the First Amendment

1.    *Mr. Wilson Lacks Standing.*    As an initial matter, Mr. Wilson lacks standing to assert a First Amendment retaliation claim because the alleged retaliation consisted of disclosing *his wife's* CIA employment. Libby Mem. 21. Nonetheless, Mr. Wilson asserts that he has a First Amendment claim because he is "the person whose speech has been punished." Pl. Opp. 16. As that awkward locution demonstrates, Mr. Wilson simply cannot claim that *he* has suffered any particularized injury. To the contrary, the primary injury alleged in the Amended Complaint—that it "destroy[ed] *Mrs. Wilson's* cover" and thus her career—was suffered not by Mr. Wilson but rather by his wife. Am. Compl. ¶ 2.

Relying on his wife's alleged injuries, Mr. Wilson (Pl. Opp. 15) invokes *Cain v. Tigard-Tualatin School District*, 262 F. Supp. 2d 1120 (D. Or. 2003). In that case, a high school coach retaliated against a student after the student's parents filed complaints against the coach. In *Cain*, however, the parents alleged that *they themselves* had suffered injury as a result of the

---

[2] Urging that the Privacy Act cannot be a "special factor counseling hesitation," plaintiffs attempt to distinguish *Downie v. City of Middleburg Heights*, 301 F.3d 688 (6th Cir. 2002), and *Chung v. U.S. Dep't of Justice,* 333 F.3d 273 (D.C. Cir. 2003), by stating that the holdings in those cases were predicated on the plaintiffs' ability to pursue *viable claims* under the Act. *See* Pl. Opp. 53-54. But the holdings in those cases were predicated on the Act's applicability to the facts alleged, not the availability of a remedy. Plaintiffs' related contention that the "White House Office . . . is not an agency and therefore not subject to the Privacy Act," Pl. Opp. 52, is doubly mistaken. First, to the extent Congress exempted the White House from the Privacy Act, that reflects a congressional judgment about the need to avoid intruding on that entity's operations; the federal courts are not free to set aside Congress's judgment on that sensitive issue. In any event, the Privacy Act defines "agency" as "any executive department, military department, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President)." 5 U.S.C. § 552(f).

retaliation against their son.  *Id.* at 1128-29.  Here, Mr. Wilson has not alleged that he, personally, suffered any concrete and particularized injury.[3]  Likewise, while Mr. Wilson relies on *Dangler ex rel. Dangler v. Yorktown Central Schools*, 771 F. Supp. 625 (S.D.N.Y. 1991), and *Kounitz v. Slaaten*, 901 F. Supp. 650 (S.D.N.Y. 1995), those cases demonstrate precisely why Mr. Wilson does *not* have standing.  In both *Dangler* and *Kounitz*, the courts held that the person who *actually suffered the retaliation* had standing to sue—even though the retaliatory act was prompted by someone else's exercise of First Amendment rights.  *Dangler*, 771 F. Supp. at 630; *Kounitz*, 901 F. Supp. at 655.  Both courts expressly held that the people whose exercise of their First Amendment rights prompted the retaliation lacked standing, because they did not allege that they themselves had suffered a concrete and particularized injury.  *Dangler*, 771 F. Supp. at 630-31; *Kounitz*, 901 F. Supp. at 654; *see* Libby Mem. 21 n.6.  That is precisely Mr. Wilson's circumstance here.

   2.   *The Complaint Fails To Allege the Requisite Chill.*  Even where the plaintiff himself is injured, he must show that the retaliation chilled or threatened to chill his exercise of First Amendment rights.  *See* Libby Mem. 22-23.  Because he was not chilled in his speech, Mr. Wilson attempts to evade that requirement, urging that "[n]o case . . . has held that an individual who has been punished for his or her speech can establish a First Amendment violation only by proving that he or she was actually chilled in speaking."  Pl. Opp. 13.  That statement is inexplicable—Libby, Cheney, and Rove *each* explained in their motions to dismiss that, "[i]n *Hatfill* [*v. Ashcroft*, 404 F. Supp. 2d 104 (D.D.C. 2005)], this Court dismissed a First Amendment claim for precisely those reasons."  Libby Mem. 22-23; *see* Cheney Mem. 32-33;

---

[3] Mr. Wilson's suggestion that he has personally suffered an injury because his "family [is] in jeopardy," Pl. Opp. 16, likewise does not establish standing.  The injury must be to Mr. Wilson or to his property—injuries to others (particularly speculative ones like an abstract claim of danger) are not sufficient.

Rove Mem. 22.  And plaintiffs themselves cite (Pl. Opp. 15) *Kounitz*, which dismissed a First Amendment retaliation claim for failure to establish injury-in-fact where the plaintiff did not allege that his "speech actually has been chilled."  901 F. Supp. at 654.

In *Hatfill*—decided by this Court less than two years ago—the plaintiff had been designated a "person of interest" in the FBI's highly publicized investigation into the mailing of anthrax-laden envelopes to Senators.  404 F. Supp. 2d at 106-08.  The plaintiff alleged, among other things, that the government had retaliated against him for publicly proclaiming his innocence and filing formal complaints with the FBI and Department of Justice Offices of Professional Responsibility.  *Id.* at 117.  This Court explained that, to make out a First Amendment retaliation claim, the plaintiff must prove that the "'defendants' actions effectively chilled the exercise of his First Amendment right.'"  *Id.* at 117-18 (quoting *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001)); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000) (same).  This Court dismissed the plaintiff's claim for failing to plead that element:

> Here, Dr. Hatfill has continued to exercise his First Amendment rights subsequent to his first public statement.  Accordingly, Dr. Hatfill, having failed to show that his First Amendment rights were *actually chilled*, has not stated a claim for which relief can be granted . . . .

*Hatfill*, 404 F. Supp. 2d. at 119 (emphasis in original).  Likewise here, the alleged retaliation has done nothing to chill Mr. Wilson's continued speech.

Unable to distinguish *Hatfill*, plaintiffs ignore it.  They argue that *Toolaprashad v. Bureau of Prisons*, 286 F.3d 576 (D.C. Cir. 2002), requires them to plead only that "the harassment is likely to deter a person of ordinary firmness from that exercise."  Pl. Op. 14 (quoting *Toolaprashad*, 286 F.3d at 585) (internal punctuation omitted).  However, as *Hatfill* explained, the "person of ordinary firmness" standard in *Toolaprashad* does not replace but rather *supplements* the "actual chill" requirement, ensuring that any actual chill the plaintiff

claims to have suffered was, in fact, objectively reasonable. *Hatfill*, 404 F. Supp. 2d. at 118-19.
As the court stated, "'[a]llegations of a subjective "chill" are not an adequate substitute for a
claim of specific present objective harm or a threat of specific future harm.'" *Id.* at 118 (quoting
*Laird v. Tatum*, 408 U.S. 1, 13-14 (1972)).[4]   Plaintiffs' assertion that they "need claim only
something more than *de minimis* harm," Pl. Opp. 14, is equally unavailing.  Here, they have
plead *no harm at all* to Mr. Wilson, much less some chilling of his willingness to engage in free
expression.  Under *Hatfill*, that is fatal to their claim.[5]

    3.    *Libby Is Entitled To Qualified Immunity*.  Plaintiffs do not dispute that qualified
immunity shields "government officials performing discretionary functions" from suit so long as
"their conduct does not violate" the plaintiffs' "clearly established" rights.  *Harlow v. Fitzgerald*,
457 U.S. 800, 818 (1982).   "Clearly established" means "settled, indisputable law" involving
"basic, unquestioned . . . rights."  *Zweibon v. Mitchell*, 720 F.2d 162, 172-73 (D.C. Cir. 1983).  It
is not enough that "the relevant 'legal rule'" or "right" is "clearly established" at a high level of
generality—rather, the "contours of the right must be sufficiently clear that a reasonable official

---

[4] The D.C. Circuit in *Toolaprashad* does not appear to have required the plaintiff—a prisoner
who claimed to have been transferred in retaliation for filing grievances—to establish that his
speech actually had been chilled.  But it is difficult to read too much into that silence, as *Hatfill*
makes clear.  In any event, the Second Circuit has held that a lesser standard applies in cases like
*Toolaprashad* in "the prison context."  *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004).  By
contrast, in cases "involving criticism of public officials by private citizens," there is "an actual
chill requirement for First Amendment retaliation claims."  *Id.*

[5] The question, moreover, is not whether *any* person of ordinary firmness would be deterred, but
whether a "similarly situated" person would be deterred.  *Blankenship v. Manchin*, 471 F.3d 523,
531 (4th Cir. 2006) (relevant standard was "public official of ordinary firmness"); *see also Balti-
more Sun Co. v. Ehrlich*, 437 F.3d 410, 418-19 (4th Cir. 2006) (relevant standard was "reporter
of ordinary firmness").  Thus, while plaintiffs are not required to plead that someone as "truly
inspiring" and "courageous" as Mr. Wilson is alleged to be would find themselves chilled, they
must establish that an experienced businessman, diplomat, and/or former ambassador of ordinary
firmness would be deterred by the alleged retaliation.  *See* Am. Compl. ¶ 8.  Nowhere in the
Complaint have plaintiffs alleged that a "person of ordinary firmness" from the general public
would be deterred by the alleged retaliation, much less a person of Mr. Wilson's extensive
experience, worldliness, and connections.

would understand that *what he is doing* violates *that right*."  *Siegert v. Gilley*, 895 F.2d 797, 802

(D.C. Cir. 1990) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (emphasis added),

*aff'd* 500 U.S. 226 (1991).  Consequently, qualified immunity shields the defendant from suit

unless, "on an objective basis, it is obvious that no reasonably competent officer" confronting the

specific circumstances before the defendant "would have concluded" that the conduct was

lawful.  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  "[I]f officers of reasonable competence

could disagree," then "immunity should be recognized."  *Id*.  Qualified immunity thus provides

"'ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those

who knowingly violate the law.'"  *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley*,

475 U.S. at 343, 341).

     Under those standards, it is clear that Libby is entitled to qualified immunity.  Plaintiffs

have cited absolutely no authority for the proposition that merely disclosing that a person's

spouse is employed by the CIA constitutes retaliation sufficient to chill an experienced

businessman, diplomat, and ambassador in the exercise of his First Amendment rights.

Moreover, in *Hatfill*, this Court held that no constitutional violation occurs where the individual

is not actually chilled.  *See also Curley*, 268 F.3d at 73 ("Where a party can show no change in

his behavior, he has quite plainly shown no chilling of his First Amendment right to speech.").

Accordingly, a competent officer could reasonably have believed that the conduct here—which

caused no chill—would not violate Mr. Wilson's First Amendment rights.

     Plaintiffs nonetheless assert that it is "clearly established" that "[t]he First Amendment

. . . protects individuals from being punished by the government for their expression."  Pl. Opp.

12.  That, however, defines "the relevant constitutional right in [such] overly general terms" as to

"strip the qualified immunity defense of all meaning."  *Butera v. Dist. of Columbia*, 235 F.3d

637, 646 (D.C. Cir. 2001). Qualified immunity cannot be denied in a due process case, for example, simply because "the right to due process of law is quite clearly established by the Due Process Clause." *Anderson*, 483 U.S. at 639. Instead, the qualified immunity "inquiry . . . must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The "contours of the right must be sufficiently clear that a reasonable official would understand that *what he is doing* violates *that right*." *Siegert*, 895 F.2d at 802 (quoting *Anderson*, 483 U.S. at 640) (emphasis added). In *Hatfill*, this Court found no First Amendment violation absent an actual chilling effect. *A fortiori*, a reasonable officer could have believed there was no violation here, where no chilling occurred either.[6]

### B.    Plaintiffs' Equal Protection Claim is an Invalid Restatement of Their First Amendment Retaliation Claim

1.    *Plaintiffs Have No Equal Protection Claim.* Plaintiffs' equal protection claim is likewise without merit. Plaintiffs do not allege class-wide discrimination on the basis of some prohibited characteristic. Instead, they urge a "class of one" equal protection claim under *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000), because defendants "vindictive[ly]" and "illegitimate[ly]" disclosed Mrs. Wilson's identity in retaliation for Mr. Wilson's speech. Am. Compl. ¶¶ 50-54. But, as we have already made clear (Libby Mem. 23-24), the courts have

---

[6] Plaintiffs flatly err when they summarily assert that the criminal prohibition in the Intelligence Identities Protection Act, 50 U.S.C. § 421, other statutes, and comments by former Presidents gave Libby "fair warning" that his "conduct was wrong," thereby precluding qualified immunity. Pl. Opp. 60. Plaintiffs neither attempt to prove that Libby violated, nor assert claims based on violations of, any of those statutes. Instead, plaintiffs assert violations of their *constitutional* rights. Under Supreme Court precedent, qualified immunity must be granted unless the "*right alleged to have been violated*" was "clearly established"—*i.e.*,"the contours of the right must have been sufficiently clear that a reasonable official would understand that what he is doing violates *that right*." *Saucier*, 533 U.S. at 202 (emphasis added). The provisions of the U.S. Code that plaintiffs cite cannot "clearly establish" the scope of the *constitutional* rights plaintiffs assert, much less make it obvious to every reasonable officer that his conduct violates *those rights*.

universally rejected efforts, like plaintiffs', to transmogrify First Amendment retaliation claims into equal protection violations.  Plaintiffs do not dispute that those cases by their terms preclude this equal protection claim.  And they concede that their equal protection claim rests on the assertion that defendants' actions were "retaliation for Mr. Wilson's speech."  Pl. Opp. 17.

Plaintiffs nonetheless urge that the Supreme Court's decision in *Olech*, which reaffirmed class-of-one claims, effectively overruled those decisions.  Not so:  Numerous post-*Olech* cases—including cases from this Court—continue to hold that the Equal Protection Clause does not protect against retaliation for speech.  *See, e.g.*, *So. Growers, Inc. v. Veneman*, No. 05-1821, 2006 WL 2244628, at *1-2 (D.D.C. Aug. 4, 2006) ("the Fifth Amendment does not confer a general right to be free from retaliation"); *R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427, 440 (6th Cir. 2005) (same); *Boyd v. Ill. State Police*, 384 F.3d 888, 898 (7th Cir. 2004) ("the right to be free from retaliation may be vindicated under the First Amendment or Title VII, but not the equal protection clause").  No court has disavowed its pre-*Olech* decisions.  Both before *Olech* and after, claims arising from "vindictive" retaliation against a citizen because of his speech must be asserted as First Amendment rather than equal protection claims.[7]

The cases cited by plaintiffs (Pl. Opp. 18-19) for the contrary proposition do not involve retaliation for protected speech.  Instead, they alleged animus against homosexuals, *Scarbrough v. Morgan County Bd. of Educ.*, 470 F.3d 250, 261 (6th Cir. 2006); personal animus, *DeMuria v. Hawkes*, 328 F.3d 704, 706-07 (2d Cir. 2003); or prior activities, *Cobb v. Pozzi*, 363 F.3d 89, 110

---

[7] By plaintiffs' own admission, *Olech* merely reaffirmed the longstanding existence of class-of-one claims.  Plaintiffs' Br. 17 (noting that *Olech* relied on class-of-one cases "dating back to 1923"); *see also id.* at 19 n.1.  So it is hardly relevant that some cases rejecting retaliation-based equal protection claims predate *Olech*.

(2d Cir. 2003) (employee who allegedly engaged in an "unlawful job action").[8]  None suggests that a First Amendment speech-retaliation claim may be recast as a class-of-one equal protection claim.  *Vukadinovich v. Bartels* 853 F.2d 1387, 1391-92 (7th Cir. 1988) (rejecting equal protection claim as a "mere rewording of plaintiff's First Amendment-retaliation claim").

2.     *Libby Is Entitled To Qualified Immunity*.  Libby is in any event entitled to qualified immunity.  Plaintiffs can cite not one case finding an equal protection violation based on an officer's retaliation for protected speech—and myriad cases reject that theory.  That conclusively demonstrates that there is no clearly established equal protection right in these circumstances.  *See Ratliff v. DeKalb County*, 62 F.3d 338, 340 (11th Cir. 1995) (finding qualified immunity because "no clearly established right exists under the equal protection clause to be free from retaliation").

**C.     Count III Does Not State a Viable Claim for Violation of Plaintiffs' Right to Privacy**

1.     Plaintiffs' third *Bivens* claim (Count III) rests on their assertion that the Fifth Amendment's Due Process Clause "prohibits government officials from violating any individual's right to privacy by publicly disclosing personal information."  Am. Compl. ¶ 56.  Plaintiffs do not dispute, however, that the Supreme Court has never expressly held that the Constitution secures a general right to nondisclosure of personal information.  *See* Libby Mem. 24-25.  They do not deny that the D.C. Circuit has expressed "grave doubts as to the existence of a constitutional right of privacy in the nondisclosure of information."  *Am. Fed'n of Gov't Employees v. HUD*, 118 F.3d 786, 791 (D.C. Cir. 1997).  And plaintiffs nowhere deny that the

---

[8] Plaintiffs characterize *Pozzi* as a "'class of one' First Amendment" case.  Pl. Opp. 19.  They fail to mention, however, that the Second Circuit found this claim "insufficient as a matter of law."  *Pozzi*, 363 F.3d at 110.

Sixth Circuit, in *J.P. v. DeSanti*, 653 F.2d 1080, 1090 (6th Cir. 1981), held that "the Constitution does not encompass a general right to nondisclosure of private information."

Nonetheless, plaintiffs cite cases from other circuits that allegedly establish a constitutional right to nondisclosure of personal information.  Pl. Opp. 21.  In each and every one of those cases, however, the courts actually held that the plaintiffs had *failed* to establish an actionable violation based on the disclosure.  For example, in *Walls v. City of Petersburg*, 895 F.2d 188 (4th Cir. 1990), the Fourth Circuit observed that the right to privacy extends to "matters relating to marriage, procreation, contraception, family relationships, and child rearing and education."  *Id.* at 192 (citations omitted).  Nevertheless, the Fourth Circuit upheld a police department job application that required disclosure of the plaintiff's "Homosexual Relations," "Marriages, Divorces, etc., and Children," "Arrests or Convictions of Family Members," and "Financial Information."  *Id.* at 193-95.  Likewise, in *United States v. Westinghouse Electric Corp.*, 638 F.2d 570 (3d Cir. 1980), the Third Circuit held that a subpoena for medical records did not violate the plaintiff's constitutional rights, notwithstanding the fact that medical records "may contain intimate facts of a personal nature."  *Id.* at 577, 580.  In *In re Crawford*, 194 F.3d 954 (9th Cir. 1999), the Ninth Circuit held that requiring non-attorneys to disclose their social security numbers on publicly filed bankruptcy documents did not violate the Constitution.  *Id.* at 960.  And the Second and Fifth Circuits have both rejected claims that financial disclosure laws violate a constitutional right to informational privacy.  *Barry v. City of New York*, 712 F.2d 1554, 1562 (2d Cir. 1983); *Plante v. Gonzalez*, 575 F.2d 1119, 1138 (5th Cir. 1978).

At most, those cases acknowledge the *possibility* of a right to informational privacy in some circumstances.  But they cannot overcome the D.C. Circuit's "grave doubts."  More fundamentally, those cases make it clear that, to the extent the Constitution affords a right to

keep certain information private, that right can extend only to deeply private matters that are of no governmental concern—marriage, procreation, and the like. *See* Libby Mem. 26 n.7; *Walls*, 895 F.2d at 192. They nowhere suggest that the Constitution affords CIA employees or other operatives a right to keep *their employment status* secret.

2.  For the same reasons, plaintiffs cannot overcome qualified immunity. The D.C. Circuit at the very least has expressed "grave doubts as to the existence of a constitutional right of privacy in the nondisclosure of information," *Am. Fed'n of Gov't Employees*, 118 F.3d at 791, and the Sixth Circuit has held that no such right exists, *DeSanti*, 653 F.2d at 1090; *see* p. 14, *supra*. Where, as here, there is judicial disagreement or uncertainty on whether the constitutional right exists, a defendant is entitled to immunity. "If judges thus disagree on a constitutional question, it is unfair to subject [government officials] to money damages for picking the losing side of the controversy." *Wilson v. Layne*, 526 U.S. 603, 618 (1999). Moreover, it is far from clearly established that, if such right existed, it would extend to nondisclosure of employment status—information well beyond the sorts of intensely personal privacy interests historically protected under the Fifth Amendment.

3.  In a last-ditch attempt to salvage their "right to privacy" claim, plaintiffs attempt to recast it as a "state endangerment" claim. *See* Pl. Opp. 22-28. But no "state endangerment claim" appears in Count III—or anywhere else. When a plaintiff asserts a substantive due process claim, the court must "'focus on the allegations in the complaint to determine *how [plaintiff] describes the constitutional right at stake* and what the [defendant] allegedly did to deprive her . . . of that right.'" *Estate of Phillips v. Dist. of Columbia*, 455 F.3d 397, 403 (D.C. Cir. 2006) (quoting *Collins v. Harker Heights*, 503 U.S. 115, 125 (1992)) (emphasis added). In this case, Count III by its terms asserts a violation of plaintiffs' "Fifth Amendment [r]ight to

[p]rivacy." Amended Complaint at 20 (Count III heading); *id.* ¶ 56 (alleging that the defendants "violate[d] the Due Process Clause . . . which prohibits government officials from violating any individual's *right to privacy* by disclosing personal information") (emphasis added). A state endangerment claim, by contrast, is not a privacy claim at all. It is instead founded on the notion that the Fifth Amendment affords individuals a right to personal security—*i.e.*, a "right to protection . . . from . . . violence." *Butera*, 235 F.3d at 652. Because Count III alleges a right to privacy, not to freedom from violence, there is no state endangerment claim in this case.

In any event, Count III falls well short of establishing the elements of a state endangerment claim, because plaintiffs have failed to plead truly outrageous conduct resulting in physical injury. For example, in *Butera*, a former crack cocaine user acting as an informant was beaten to death while participating in an undercover drug buy. 235 F.3d at 640. Recognizing the state endangerment doctrine for the first time, the D.C. Circuit held:

> [A]n individual can assert a substantive due process right to protection by the [government] from third-party violence when [government] officials affirmatively act to increase or create the *danger that ultimately results in the individual's harm*.

*Id.* at 651 (emphasis added). The D.C. Circuit cautioned, moreover, that a plaintiff must also show that the conduct was "'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Id.* (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)). The court noted that "this stringent requirement" is necessary to differentiate substantive due process claims from ordinary tort law. *Id.*[9]

---

[9] The *Butera* court did not address whether the particular conduct at issue there "shocked the conscience." Instead, it held that, because the state endangerment rule was not clearly established when the defendants acted, the defendants were therefore entitled to qualified immunity. 235 F.3d at 652-53.

Here, plaintiffs do not plead the "key requirement" that the misconduct "increase or create the danger *that results in harm* to the individual," *Butera*, 235 F.3d at 650 (emphasis added); *see also id.* at 651 (violation occurs only where State's action "ultimately results in the individual's harm").    The plaintiff in *Butera,* for example, satisfied the "actual harm" requirement because he was brutally beaten to death.  By contrast, plaintiffs here plead only that they "fear for their safety and for the safety of their children," and that "the disclosure of Mrs. Wilson's covert identity makes her and her family a target for those persons and groups who bear hostility to the United States."  Am. Compl. ¶ 42.

Plaintiffs also fail to allege facts demonstrating that the conduct was "'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience,'" *Butera*, 235 F.3d at 651 (quoting *Lewis*, 523 U.S. at 847 n.8)—a "threshold" requirement for any state endangerment claim, *see Fraternal Order of Police v. Williams*, 375 F.3d 1141, 1145 (D.C. Cir. 2004).  Courts typically find the "conscience shocking" threshold met only in extreme circum-stances, such as where government officials deliberately inflict physical harm (or threaten to inflict *imminent* physical harm) on the plaintiff.  *See, e.g.*, *Norris v. Dist. of Columbia*, 737 F.2d 1148, 1151 (D.C. Cir. 1984) (corrections officers' brutal and habitual beatings of prisoner); *Black v. Stephens*, 662 F.2d 181, 189 (3d Cir. 1981) (undercover officer's brandishing firearm 18 inches from plaintiff's head, with plaintiff's wife "in the precise line of fire," and then threaten-ing to shoot); *contrast Pittsley v. Warish*, 927 F.2d 3, 7 (1st Cir. 1991) (police officer's threat to four- and ten-year-old children that "if we see your father on the streets again, you'll never see him again" does *not* shock the conscience).  As *Butera* makes clear, "the sort of official action

18

most likely to rise to the conscience-shocking level" is "conduct *intended to injure*" the plaintiff. 235 F.3d at 651 (quoting *Lewis*, 523 U.S. at 848-49) (emphasis added).[10]

Notwithstanding plaintiffs' rhetoric, they cannot show that the alleged retaliation was *intended* to place plaintiffs in physical danger—much less that the alleged retaliation was so egregious that it "shocks the conscience." Instead, they blithely assert that defendants "had full knowledge of the potential consequences of their actions." Pl. Opp. 24. The Amended Complaint, however, contains no such allegation. It states that Libby knew and disclosed to reporters that "Wilson's wife worked at the CIA," *see* Am. Compl. ¶¶ 19.e., f., h., l., p., r., t., x., 20, 24, but *nowhere* alleges that he *knew* that Mrs. Wilson was *active in undercover* operations. Nor could such a claim be made.[11] And if Libby did not know that Mrs. Wilson was undercover, he could have had no reason to believe that disclosing that she "worked at the CIA" would subject her to increased risk of physical harm. For that reason too, plaintiffs' belated "state-created endangerment" theory must fail.[12]

---

[10] Plaintiffs argue in passing that they should only be required to prove "deliberate indifference," as opposed to intentional conduct, on the part of the defendants. Pl. Opp. 24. As a preliminary matter, the deliberate indifference standard "applies only in circumstances where the State has a heightened obligation toward the individual," *FOP*, 375 F.3d at 1146, and plaintiff has not established that Libby owed Mrs. Wilson any "heightened obligation." In any event, "[d]eliberate indifference must still be conscience-shocking in order to state a substantive due process claim." *Phillips*, 455 F.3d at 403.

[11] Libby, like other defendants, was not told that Mrs. Wilson was a *covert* operative. *See* R. Jeffrey Smith, *Armitage Believes He Was Novak's Source on Plame*, WASH. POST, Sept. 8, 2006, at A3 (As Ambassador Armitage explained to reporters, the memorandum from which he learned of Mrs. Wilson's employment with the CIA "did not mention her covert status.").

[12] Plaintiffs rely heavily on the Sixth Circuit's decision in *Kallstrom v. City of Columbus*, 136 F.3d 1055 (6th Cir. 1998), for the proposition that mere disclosure of employment status may be actionable under the state endangerment doctrine. *See* Pl. Opp. 25-27. *Kallstrom*, however, did not apply the "conscience shocking" standard to the defendants' conduct. Whatever the rule may be in the Sixth Circuit, in the D.C. Circuit it is clear that "[t]he conscience-shock inquiry is a 'threshold question'" in evaluating any state endangerment claim. *FOP*, 375 F.3d at 1145.

In any event, Libby is entitled to qualified immunity on this claim, too. Even if the state endangerment theory is generally accepted as an abstract matter, its "contours" were not "sufficiently clear" that it would have been "obvious" that the conduct here "would violate [plaintiff's] right." *Siegert*, 895 F.2d at 803. To this day there is "little consistency in courts' explanations of the types of actions that would amount to constitutional liability" under the state endangerment theory. *Butera*, 235 F.3d at 653. Plaintiffs cite no case holding that disclosing a person's employment status "shocks the conscience," much less that it does so where, as here, the officer has no reason to believe that the disclosure would place the person at risk of imminent physical harm, and no physical harm actually results. Because "officers of reasonable competence" certainly could disagree as to whether Libby's alleged actions violated the Constitution under the state endangerment doctrine, Libby is entitled to qualified immunity. *Malley*, 475 U.S. at 341.

### D. Count IV Fails Because Plaintiffs Have Not Alleged Deprivation of a Recognized Property Right

Finally, Mrs. Wilson alleges that Libby deprived her of her property right in continued employment as a covert CIA operative. Pl. Opp. 28.[13] But the Amended Complaint fails to establish that Mrs. Wilson had a "legitimate claim of entitlement" to employment as an operative under *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).

1.     As an initial matter, Mrs. Wilson acknowledges that she continued to be employed by the CIA long after her allegedly covert identity was revealed. Pl. Opp. 30; Am. Compl. ¶ 7. Her due-process claim thus boils down to the assertion that she had a property right not just to continued CIA employment, but to a specific position—covert agent—within the CIA.

---

[13] Plaintiffs make no claim that Mrs. Wilson might have been denied a property or liberty interest in obtaining *future* government employment. Nor could they. *See* Libby Mem. 27-28.

Mrs. Wilson, however, points to no government contract, regulation, statute, or caselaw that gives her an entitlement to such a job.  The law in any event is crystal-clear that CIA employees have no right to continued employment at all, much less to continued employment in a covert status.  *Doe v. Gates*, 981 F.2d 1316, 1320-21 (D.C. Cir. 1993); *cf. Dep't of the Navy v. Egan*, 484 U.S. 518, 528 (1988) ("It should be obvious that no one has a 'right' to a security clearance.").  That too forecloses plaintiffs' claim.  Plaintiffs nonetheless urge that Mrs. Wilson had a right to continued covert employment *unless terminated by the CIA Director*.  D.C. Circuit precedent is to the contrary: "The law is clear that if a statute relegates termination decisions to the discretion of the Director, *no property entitlement exists*."  *Gates*, 981 F.2d at 1320 (emphasis added).

2.      Even if those issues were subject to debate, Libby is entitled to qualified immunity.  Plaintiffs have cited no precedent supporting their claim that Mrs. Wilson had a Fifth Amendment property right in continued CIA employment, much less employment as a covert operative.  They thus have failed to meet their burden of showing that her right was so "clear" that any competent officer "would understand that what he is doing violates that right."  *Siegert*, 895 F.2d at 803.

## III.    Plaintiffs' Claims Are Barred by the Statute of Limitations

### A.      Plaintiffs' Claims Are All Subject to a One-Year Limitations Period

In the D.C. Circuit, the statute of limitations applicable to a *Bivens* action is borrowed from the most "analogous" cause of action under local law.  *McClam v. Barry*, 697 F.2d 366, 373 (D.C. Cir. 1983).  In determining which state law is most analogous, the relevant comparison is not "the interests they protect," *id.*, but "the facts that must be litigated in trying them," *id.* at 374.  Thus, whenever the *Bivens* claim and a state cause of action "are so alike that plaintiffs can

be expected to plead the common law claim as a pendent claim in constitutional suits, then the same judgment about repose applies to both claims." *Id.* at 375.

Plaintiffs concede that Count III of the Amended Complaint, their Fifth Amendment right-to-privacy claim, is "analogous to the D.C. common law tort of public disclosure of private facts," and therefore subject to the one-year statute of limitations provided for that tort in D.C. Code Ann. § 12-301(4). Pl. Opp. 39. They argue, however, that "[t]he other constitutional tort claims . . . have no direct corollary in state law and thus are subject to the catch-all three-year limitations period provided in D.C. Code Ann. § 12-301(8)." *Id.* Under *McClam*, however, the focus is on "the *facts* that must be litigated," not the interests protected. 697 F.2d at 374.[14] Here, the underlying facts are the same for each of plaintiffs' claims—they are all predicated on the alleged disclosure of Mrs. Wilson's employment with the CIA. As a result, the one-year limitations period applicable to "public disclosure of private facts," D.C. Code Ann. § 12-301(4), governs all of plaintiffs' claims, notwithstanding plaintiffs' effort to gussy up their "public disclosure" claims in First Amendment, equal protection, and due process garb.

Plaintiffs also cite *Owens v. Okure*, 488 U.S. 235 (1989), for the proposition that, "where a cause of this nature presents multiple claims with differing statutes of limitations, the 'residual' statute of limitations applies to all claims." Pl. Opp. 40. But *Owens* was a § 1983 case, and it relied on a prior § 1983 decision, *Wilson v. Garcia*, 471 U.S. 261 (1985), as well as § 1983's unique legislative history. *See Owens*, 488 U.S. at 240-41; *Wilson*, 471 U.S. at 278, 280. That precedent and legislative history has no bearing on the judicially created cause of action under *Bivens*. Besides, plaintiffs concede that the D.C. Circuit has not "expressly incorporated the *Owens* approach for *Bivens* claims." Pl. Opp. 41. Nor has the D.C. Circuit overruled *McClam*.

---

[14] The D.C. Circuit recognized that constitutional claims under *Bivens* will often "differ from closely analogous common-law claims in the interests they protect." 697 F.2d at 373.

As a result, this Court must follow *McClam*'s command to borrow the limitations period from the most "analogous" cause of action under local law, 697 F.2d at 373.

### B.    There is No Basis for Tolling the Limitations Period

Plaintiffs also argue that their claims are timely because they did not learn of the most important facts until Special Counsel Fitzgerald filed an indictment against Libby on October 28, 2005.  Pl. Opp. 45.  In effect, plaintiffs urge that, until the allegations in the indictment were laid out for them to cut-and-paste into a complaint, they "did not have knowledge of their claims." Pl. Opp. 45.  But that is not the law.  As plaintiffs concede, "[a] cause of action normally accrues for statute of limitations purposes when the plaintiff 'has either actual notice of her cause of action or is deemed to be on inquiry notice . . . .'"  Pl. Opp. 42 (quoting *Diamond v. Davis*, 680 A.2d 364 (D.C. Ct. App. 1996).  Here, plaintiffs at least had inquiry notice when Robert Novak published his article on July 14, 2003, disclosing that, according to "administration officials," "Valerie Plame is an agency operative on weapons of mass destruction."  Am. Compl. ¶ 14.

Plaintiffs nevertheless contend that they did not have "knowledge of their claims" because the article did not mention the defendants by name.  But "notice" does *not* mean having all of the facts and the precise names of all of the potential defendants handed to one on a silver platter:

> In every case, the plaintiff has a duty to investigate matters affecting her affairs with reasonable diligence under all of the circumstances.  Once the plaintiff actually knows, or with the exercise of reasonable diligence would have known, of some injury, its cause-in-fact, and some evidence of wrongdoing, then she is bound to file her cause of action within the applicable limitations period, measured from the date of her acquisition of the actual or imputed knowledge.

*Diamond*, 680 A.2d at 381.  Thus, while a "plaintiff's knowledge of the grounds for a suit must generally extend to awareness of the persons responsible for plaintiff's injury," that "by no means impl[ies] that a plaintiff may postpone suit until he knows every defendant by name and

title." *Hobson v. Wilson*, 737 F.2d 1, 36 (D.C. Cir. 1984). Here, Novak's article stated that his sources were "two senior administration officials." Am. Compl. ¶ 14. That the article did not identify "every defendant by name and title," *Hobson*, 737 F.2d at 36, is irrelevant—it was certainly enough information to put plaintiffs on notice of their claims, or at a minimum to trigger their duty "to investigate matters affecting [their] affairs with reasonable diligence." *Diamond*, 680 A.2d at 381. Plaintiffs have not alleged that they made *any* attempt to identify the "two senior administration officials," much less that they could not have succeeded in identifying the defendants through reasonable diligence.[15]

Finally, plaintiffs argue that the statute of limitations should be tolled because "the defendants fraudulently concealed their involvement in this matter." Pl. Opp. 47. But, as plaintiffs concede (Pl. Opp. 44), "the doctrine of fraudulent concealment does not come into play, whatever the lengths to which a defendant has gone to the conceal the wrongs, if a plaintiff is on notice of a potential claim." *Hobson*, 737 F.2d at 35. Here, there is no doubt that plaintiffs were "on notice of a potential claim" from the time Novak's article was published. Moreover, the doctrine of fraudulent concealment only applies where the defendant has attempted to conceal the *wrongful act*, not his role in it. *Id.* at 33 (fraudulent concealment applies where "*the fraud* has been concealed") (emphasis added). There is no allegation that the allegedly wrongful

---

[15] *Fitzgerald v. Seamans*, 553 F.2d 220 (D.C. Cir. 1977), does not help plaintiffs. Fitzgerald was a deputy in the Air Force who was terminated after he testified before a Congressional subcommittee on military procurement cost problems. Fitzgerald knew immediately that he was being punished for his testimony and that Air Force officers were responsible for the wrongful termination. Years later, he discovered that an official in the White House had also been in-volved in his dismissal. He did not bring suit within the limitations period, and the D.C. Circuit upheld dismissal of the claims against *all* Air Force officials, even those whose names he did not know at the time of the termination. *Id.* at 229. The court held that the limitations period had not run as to the White House official, however, because he was in "a different center of power." *Id.* Here, by contrast, Novak's article clearly identified the "center of power" in which the defendants were employed—the administration. That was sufficient to put plaintiffs on notice of their claims.

24

act here was concealed—indeed, given that the alleged wrongful act is the public disclosure of information, it could not possibly have been concealed.

## IV.    Libby Must Be Dismissed from Count V

As discussed in detail in our opening brief (at 28-30), Count V must be dismissed.  As a federal employee acting within the scope of employment at the time of the alleged conduct, Libby has absolute immunity from state-law tort claims under the Westfall Act, 28 U.S.C. § 2679(b)(1).  The United States thus has filed a Westfall Act "scope certification" asking to substitute the United States as the sole defendant.  Although plaintiffs challenge the United States' certification, that challenge is without merit for the reasons given in the government's briefs.

## CONCLUSION

For the foregoing reasons and those stated in Libby's opening memorandum, plaintiffs' claims should be dismissed.

Dated: February 15, 2007                               Respectfully submitted,


                                                       /s/ William H. Jeffress, Jr.
Theodore V. Wells, Jr.                                 William H. Jeffress, Jr.
(DC Bar No. 468934)                                    (DC Bar No. 041152)
James L. Brochin                                       Alex J. Bourelly
(DC Bar No. 455456)                                    (DC Bar No. 441422)
Paul, Weiss, Rifkind, Wharton                          Baker Botts LLP
  & Garrison LLP                                       1299 Pennsylvania Avenue, NW
1285 Avenue of the Americas                            Washington, DC  20004
New York, NY  10019-6064                               Tel:  (202) 639-7751
Tel:  (212) 373-3089                                   Fax: (202) 585-1087
Fax: (212) 373-2217


                                                       *Counsel for Defendant I. Lewis Libby*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 15th day of February, 2007, a true and correct copy of I. Lewis Libby's Reply in Support of His Motion to Dismiss the Complaint was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ William H. Jeffress, Jr.
William H. Jeffress, Jr.
(DC Bar No. 041152)
Baker Botts LLP
1299 Pennsylvania Avenue, NW
Washington, DC  20004
Tel:  (202) 639-7751
Fax: (202) 585-1087